William L. Wallander, SBT #20780750
Clayton T. Hufft, SBT #24056658
Beth Lloyd, SBT #24060179
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel:  214-220-7700
Fax: 214-220-7716
bwallander@velaw.com; chufft@velaw.com
blloyd@velaw.com

**PROPOSED COUNSEL FOR THE DEBTORS**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** § § § § | | **CASE NO. 10-33565-SGJ** |
| **TRIDIMENSION ENERGY, L.P.,** *et al.*, | § § § § | **Chapter 11** |
| | | **Joint Administration Requested** |
| **DEBTORS.** | § § § | |

**MOTION TO ESTABLISH PROCEDURES
FOR MONTHLY AND INTERIM COMPENSATION AND
<u>REIMBURSEMENT OF EXPENSES FOR CASE PROFESSIONALS</u>**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-referenced debtors and debtors in possession (collectively, the "<u>Debtors</u>")[1] file this *Motion to Establish Procedure for Monthly and Interim Compensation and Reimbursement of Expenses for Case Professionals* (the "<u>Motion</u>"), and in support thereof, the Debtors respectfully state as follows:

---

[1] The Debtors include TriDimension Energy, L.P., TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, Ram Drilling, LP, TDE Operating GP LLC and TDE Subsidiary GP LLC.

## JURISDICTION AND PROCEDURAL BACKGROUND

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On May 21, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5. As of the date hereof, an official committee of unsecured creditors has not yet been appointed in the Cases.

## STATEMENT OF FACTS

### The Debtors and Their Business

6. TDE Operating GP LLC, a Delaware limited liability company (the "General Partner") is the general partner of TriDimension Energy, L.P., a privately held Delaware limited partnership ("TriDimension"). TriDimension and its five direct operating subsidiaries, TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, and Ram Drilling, LP, each a Louisiana partnership in commendam (collectively, the "TriDimension Subsidiaries"), are engaged in the acquisition, development, exploration, production, and sale of oil and natural gas. TDE Subsidiary GP LLC, a Delaware limited liability company ("Subsidiary GP"), is the general partner of each of the TriDimension Subsidiaries. Each of General Partner, Subsidiary GP, TriDimension, and the TriDimension Subsidiaries is a Debtor.

7. The Debtors lease approximately 165,268 net acres of oil and gas property. The Debtors' principal place of business is in Dallas, Texas and their operating properties are located in various portions of Louisiana and Mississippi. The Debtors have proven reserves of approximately 5.1 million barrels of oil based on fourth quarter 2009 data.

8. The Debtors are lessees under oil and gas leases and are parties to certain operating agreements, farmout agreements, joint venture agreements, gas marketing agreements, gas transportation agreements, and other agreements.

9. The Debtors' current organizational structure is the result of a business acquisition that was completed in April 2008. As a result of that transaction, (i) General Partner owns a .01% general partnership interest in TriDimension, (ii) TriDimension currently owns all of the membership interests in Subsidiary GP and a 99.99% limited partnership interest in each of the TriDimension Subsidiaries, and (iii) Subsidiary GP owns a .01% general partnership interest in each of the TriDimension Subsidiaries.

**Secured Debt**

10. TriDimension is the borrower under that certain Loan Agreement dated April 23, 2008 (as amended from time to time, the "Loan Agreement"), by and among TriDimension, as borrower, the TriDimension Subsidiaries, as guarantors, Amegy Bank, N.A. ("Amegy"), as administrative agent, and the other lenders from time to time party thereto (together with Amegy, the "Secured Lenders").[2] The aggregate principal amount of the advances currently outstanding under the Loan Agreement is approximately $37.5 million. Each of the TriDimension Subsidiaries has guaranteed the obligations of TriDimension under the Loan Agreement.

---

[2] The lenders that are currently parties to the Loan Agreement are Amegy, BMO Capital Markets Financing, Inc. and Union Bank, N.A.

11. Amegy was also the hedge provider with respect to certain hedge transactions in effect under that certain ISDA Agreement dated as of June 7, 2006 between Amegy and TriDimension (the "Hedges"). On May 7, 2010, TriDimension and Amegy mutually agreed to terminate and unwind the Hedges in order for TriDimension to gain the benefit of certain favorable changes in commodity prices and prevent greater anticipated indebtedness due to commodity price changes over the upcoming summer months. Ultimately, the Hedges were terminated and unwound, which resulted in a settlement claim of approximately $5.6 million and the Secured Lenders assert such amounts are secured *pari passu* with the remaining amounts outstanding under the Loan Agreement and accrue interest at the same rates.

12. The Debtors granted the Secured Lenders liens on substantially all of the Debtors' assets and, on information and belief, such liens have been filed of public record. In addition, TriDimension has pledged to the Secured Lenders TriDimension's rights, title and interest in the equity of each of the TriDimension Subsidiaries.

**Trade Creditors**

13. In the ordinary course of business, the Debtors utilize an assortment of vendors, including drilling contractors, labor and repair contractors, parts and equipment suppliers, pipeline companies, heavy machinery and equipment lessors, hydrocarbon transporters, laborers, professionals, and employee benefits providers. As of the Petition Date, unsecured claims aggregate approximately $6 million, which amount excludes deficiency claims under the Loan Agreement, if any.

14. Certain parties, including contractors and subcontractors, allege that they have provided goods and services to the Debtors, and have asserted that they have perfected statutory

liens on, and security interests in, certain leaseholds and the related property and equipment (collectively, the "Trade Liens").

### Events Leading to Chapter 11

15. The Debtors have experienced financial difficulties as a result of the current economic environment and the historic declines in the prices of crude oil and natural gas since the summer of 2008, as well as the effects of weather related delays and difficulties affecting the Debtors' development and production activities.  As a result of the current economic environment, the Debtors have been unable to procure capital resources from other sources such as bank funding, private investment, or debt and equity markets.  The combination of these factors has severely impaired the Debtors' liquidity and compelled the Debtors to commence these Cases in order to maximize the value of their assets for the benefit of their creditors and other constituencies.

### RELIEF REQUESTED

16. Pursuant to Bankruptcy Code § 331, all professionals employed in bankruptcy cases (collectively, the "Professionals") are entitled to submit applications for interim compensation and reimbursement of expenses every 120 days "or more often if the Court permits." 11 U.S.C. § 331.

17. The Debtors hereby request that the Court enter an Order establishing a procedure for compensating and reimbursing professionals on a monthly basis.  Such a procedure will provide: (a) the Court and other parties an effective means to monitor the fees incurred; (b) the Professionals, whose time commitment is expected to be significant, a means to receive interim

payments on account; and (c) the Debtors a means to avoid irregular payments that might result in large depletions of their cash flow.

18. The requested monthly compensation procedure would permit (but not require) all Professionals retained in the Debtors' Cases to present to their respective client(s) a detailed statement of services rendered and expenses incurred for each month period (each, a "Period") (unless otherwise provided in an Order of this Court approving the employment of a Professional). If no timely objection is filed, the Debtors would promptly pay 80 percent of the amount of fees incurred for the Period, with a 20 percent holdback, and 100 percent of out-of-pocket expenses for the Period. These payments would be subject to the Court's subsequent approval as part of the normal fee application process approximately every 120 days.

19. The Debtors propose that the monthly payment of compensation and reimbursement of expenses be structured as follows:

    a. On or before the 20th day of each month following the month for which compensation is sought, each Professional will serve a detailed statement of services rendered and expenses incurred during the prior month (a "Monthly Fee Statement"), via electronic mail, facsimile, or overnight mail, upon (i) the Debtors; (ii) the Debtors' counsel; (iii) counsel to the official committee of unsecured creditors, if any; (iv) counsel for Amegy, and (v) the Office of the United States Trustee (collectively, the "Parties"). Each entity receiving a Monthly Fee Statement will have 10 days after the date of receipt to review and raise written objections, if any, to each Monthly Fee Statement. At the expiration of the 10-day objection period, the Debtors shall promptly pay 80 percent of the fees and 100 percent of the out-of-pocket expenses identified in each Monthly Fee Statement, except such fees or expenses to which an objection has been served by one of the Parties.

    b. Any Professional who fails to file a Monthly Fee Statement for a particular month or months may subsequently submit a consolidated Monthly Fee Statement for a particular month or months. All Monthly Fee Statements shall comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, applicable Fifth Circuit law, and the Local Rules of this Court.

  c. In the event that one of the Parties has an objection to the compensation or reimbursement sought in a particular Monthly Fee Statement, such Party shall, within 10 days after the receipt of such Monthly Fee Statement, serve upon the Parties a written "Notice of Objection to Fee Statement," with a statement setting forth the precise nature of the objection and the amount at issue. Thereafter, the objecting Party and the Professional to whose Monthly Fee Statement an objection has been served shall attempt to reach an agreement regarding the correct payment to be made. If the Parties are unable to reach an agreement on the objection within 10 days after receipt of such objection, the Professional whose Monthly Fee Statement is subject to an objection shall have the option of (i) filing the objection, together with a request for payment of the disputed amount, with the Court, or (ii) foregoing payment of the disputed amount until the next interim fee application hearing, at which time the Court will consider and dispose of the objection if payment of the disputed amount is requested. However, the Debtors will be required to pay promptly that percentage set forth above of any portion of the fees and disbursements requested that are not the subject of a Notice of Objection to Fee Statement.

  d. The first Monthly Fee Statement may be submitted by each of the Professionals by July 15, 2009 and shall cover the period from the Petition Date through June 30, 2010.

  e. Approximately every three months, each of the Professionals shall file with the Court and serve on the Parties, on or before the last day following the end of the period for which compensation is sought, an application for interim Court approval and allowance, pursuant to Bankruptcy Code § 331, of compensation and reimbursement of expenses incurred during the prior three months (an "<u>Interim Fee Application</u>"). The first such Interim Fee Application shall be filed by each Professional on or before September 30, 2010 and shall cover the period from the Petition Date through August 31, 2010. Any Professional who fails to file an Interim Fee Application when due as directed by this subparagraph shall be ineligible to receive further monthly or interim payments of fees or expenses as provided herein until such time as the application is submitted.

  f. The pendency of an objection or a Court order stating that payment of compensation or reimbursement of expenses was improper as to a particular Monthly Fee Statement or Interim Fee Application shall not disqualify a Professional from the future payment of monthly and interim compensation or reimbursement of expenses as set forth above, except as otherwise directed by an Order of this Court.

      g.    Neither the payment of, nor the failure to pay, in whole or in part, monthly or interim compensation and reimbursement as provided herein shall bind any party in interest or the Court with respect to the allowance of applications for compensation and reimbursement of Professionals.

      h.    The Debtors will include all payments to Professionals on their monthly operating reports, detailed so as to state the amount paid to each of the Professionals.

20. The procedure suggested herein will enable all parties to closely monitor costs of administration and the Debtors to implement efficient cash management. Any Professional desiring to do so would be allowed to submit Monthly Fee Statements in accordance with the procedures outlines above.

## **PRAYER**

The Debtors respectfully request that the Court enter an Order authorizing the Professionals to receive monthly and interim compensation and reimbursement of expenses in accordance with the procedures described herein. The Debtors also request such other and further` relief to which they may be justly entitled.

Dated: May 21, 2010

        Respectfully submitted,

        */s/ Clayton T. Hufft*
        William L. Wallander, SBT #20780750
        Clayton T. Hufft, SBT #24056658
        Beth Lloyd, SBT #24060179
        **VINSON & ELKINS LLP**
        Trammell Crow Center
        2001 Ross Avenue, Suite 3700
        Dallas, Texas 75201-2975
        Tel: 214.220.7700
        Fax: 214.220.7716
        bwallander@velaw.com;
        chufft@velaw.com; blloyd@velaw.com

        **PROPOSED COUNSEL FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

I certify that on May 24, 2010, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas, and by facsimile or overnight delivery to those parties listed, and as indicated, on the attached proposed Master Service List.

        */s/ Beth Lloyd*
        One of Counsel

## CERTIFICATE OF CONFERENCE

I certify that I provided a copy of this pleading and the related proposed Order in draft forms to the Agent for the Secured Lenders. The Debtors will continue to discuss the relief requested with that party.

        */s/ Clayton T. Hufft*
        One of Counsel