U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed June 28, 2010**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO. 10-33565-SGJ |
| TRIDIMENSION ENERGY, L.P., _et al.,_ | § § § | Chapter 11 |
| DEBTORS. | § § § § | (Jointly Administered) |

### AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL, AUTHORIZING CREDIT SECURED BY SENIOR LIENS, AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS

On June 22, 2010, the Court considered the _Emergency Motion for Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral, (B) Authorizing the Debtors to Obtain Post-Petition Financing, (C) Granting Security Interests and Superpriority Administrative Expense Status to the Post-Petition Lenders, (D) Granting Adequate Protection_

*to Existing Lienholders, (E) Authorizing the Debtors to Make Payments to Certain Royalty and Working Interest Owners, and (F) Granting Related Relief* [Docket No. 22] (the "Motion")[1] filed by the above-referenced debtors and debtors in possession (collectively, the "Debtors"),[2] seeking, *inter alia*, pursuant to sections 105, 361, 362(a), 363(c), 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the following:

a) authority for the Debtors to use Cash Collateral (as defined below) of Amegy Bank, N.A. ("Amegy"), BMO Capital Markets Financing, Inc., and Union Bank, N.A. (collectively, in their capacity as pre-petition lenders, the "Pre-Petition Lenders"), and Amegy, as agent for the Pre-Petition Lenders (in such capacity, the "Agent"), in accordance with the terms and conditions set forth herein;

b) authority for the Debtors to obtain post-petition credit from Amegy and BMO Capital Markets Financing, Inc. (collectively, in their capacity as post-petition lenders, the "Post-Petition Lenders"), with Amegy serving as agent for the Post-Petition Lenders (in such capacity, the "DIP Agent"), up to an amount advanced, whether in a single advance or numerous advances from time to time, in an amount not to exceed $2,150,000 on an interim basis, and $6,750,000 on a final basis, cumulative of any amounts advanced on an interim basis (the "DIP Financing"), and including, without limitation, principal, interest, fees, expenses, and other costs of the Post-Petition Lenders and DIP Agent in these bankruptcy cases (collectively, the "Cases"), in

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Motion.
[2] The Debtors include TriDimension Energy, L.P., TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, Ram Drilling, LP, TDE Operating GP LLC, and TDE Subsidiary GP LLC.

**AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL, AUTHORIZING CREDIT SECURED BY SENIOR LIENS, AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS**
US 391568v.8

Page 2 of 38

accordance with the terms and conditions set forth herein and in the attached Senior Secured Superpriority Debtor-In-Possession Amendment and Seventh Amendment to Loan Agreement (the "DIP Agreement")[3] and all related documents (collectively, the "DIP Facility");

c)     authority for the Debtors to execute, deliver, and perform under the DIP Facility, the loan documents, credit agreements, amendments, notes, security agreements, and financing statements related to the DIP Facility, and all other related agreements and documents creating, evidencing, or securing indebtedness of the Debtors to the DIP Agent and Post-Petition Lenders on account of the DIP Facility or granting or perfecting liens or security interests by the Debtors in favor of and for the benefit of the DIP Agent and the Post-Petition Lenders on account of the DIP Facility, as same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the documents currently executed or to be executed in connection therewith or related thereto, by and among the Debtors, the DIP Agent, and/or the Post-Petition Lenders, the terms of which are referenced and incorporated herein as if set forth *in haec verba* (collectively, the "DIP Facility Documents");

d)     approval of the terms and conditions of the DIP Facility and the DIP Facility Documents as so executed and delivered;

---

[3]  A copy of the DIP Agreement is attached hereto as Exhibit "A", and incorporated herein as if set forth *in haec verba*.  Any express conflict between the DIP Agreement and this Final Order shall be governed by the terms and conditions of this Final Order.  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DIP Agreement.

e) granting of first priority liens and adequate protection to the DIP Agent and Post-Petition Lenders with respect to their interests in the DIP Collateral (as defined below);

f) granting of adequate protection to the Agent and the Pre-Petition Lenders with respect to their interests in the Pre-Petition Collateral (as defined below);

g) granting of adequate protection to other secured creditors, if any, of these estates;

h) authorizing the transfer of Cash Collateral to and for the benefit of the DIP Agent, Agent, Post-Petition Lenders, and the Pre-Petition Lenders as set forth herein; and

i) authorizing the Debtors to make payments to royalty and working interest owners on account of the pre-petition sale of oil and gas in amounts consistent with the Budget.

The Debtors, the DIP Agent, on behalf of itself and the Post-Petition Lenders, and the Agent, on behalf of itself and the Pre-Petition Lenders (the Pre-Petition Lenders and the Post-Petition Lenders, when used collectively, are referred to herein as the "Lenders", and each individually as a "Lender", provided that such reference shall not in any way alter the priority of the claims and liens of the Post-Petition Lenders over those of the Pre-Petition Lenders), have represented to the Court that they have agreed in good faith to the terms and conditions of this *Agreed Final Order Authorizing Use of Cash Collateral, Authorizing Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders* (the "Final Order").

## INTERIM HEARING ON MOTION

This Court held an interim hearing on the Motion on May 25, 2010, and this Court entered its *Interim Agreed Order Authorizing Use of Cash Collateral, Authorizing Credit*

*Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders* [Dkt. No. 63] (the "Interim Order") on May 27, 2010.  Pursuant to the Interim Order, any objections to the relief requested in the Motion were to be filed and served on or before 4:00 p.m. (prevailing Central time) on June 15, 2010.[4]  This Court held a final hearing (the "Hearing") on the Motion on June 22, 2010.

## Findings of Fact and Conclusions of Law

Having considered the Motion, evidence proffered or presented, and arguments of counsel, the Court hereby finds and concludes as follows:

## Jurisdiction and Venue

A.    This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Venue is appropriate in the Northern District of Texas, Dallas Division pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (M), and (O).

## Notice

B.    Under the circumstances, the notice given by the Debtors of the Motion and the Hearing on the Motion constitute due and sufficient notice thereof and complies with Rules 2002, 4001(b), (c), and (d), and 9014 of the Bankruptcy Rules and the local rules and procedures of this Court.

## Opportunity to Object

C.    The mailing and service of a copy of this Final Order by first class mail, postage prepaid, on those entities set forth on the Master Service List shall be deemed to constitute

---

[4] By agreement of the Debtors and the DIP Agent, the the Committee's objection deadline to the Motion was extended until June 19, 2010.

compliance with the applicable notice provisions of Bankruptcy Rule 4001 regarding obtaining post-petition credit, agreements for use of cash collateral, and relief from the automatic stay.

## The Filing/Committee Status

D.    Each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code on May 21, 2010 (the "Petition Date").  Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

E.    On June 2, 2010, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").

## Pre-Petition Lenders' Claims

F.    Subject to prior and unavoidable liens and security interests, if any, and the Challenge Rights (as defined in paragraph 43 below) in the Challenge Period (as defined in paragraph 43 below) and the rights of Trade Lien Creditors (as defined below) preserved in paragraph 46 below, the Debtors acknowledge and stipulate as follows:

(1)    Pursuant to the Pre-Petition Claim Documents (as defined below) and applicable law, the Agent and Pre-Petition Lenders hold valid, enforceable, and allowable claims against the Debtors, as of the Petition Date, in an aggregate amount equal to approximately $43,566,317.59 in unpaid principal and accrued but unpaid interest, plus any and all other fees, cost, expenses, charges, other debts or obligations of the Debtors to the Agent and the Pre-Petition Lenders under the Pre-Petition Claim Documents (as defined below) and applicable law (the "Pre-Petition Claims").  The Pre-Petition Claims constitute allowed, legal, valid, binding, and enforceable obligations of the Debtors.

## The Pre-Petition Claim Documents

(2)     The Pre-Petition Claims are evidenced by certain documents executed and delivered to the Agent and/or the Pre-Petition Lenders by the Debtors that are valid and binding on the Debtors, including, without limitation, that certain Loan Agreement dated as of April 23, 2008, by and among TriDimension Energy, L.P., as borrower, TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, and Ram Drilling, LP, each as guarantors, the Pre-Petition Lenders, and Amegy, as agent for the Pre-Petition Lenders (as amended and supplemented from time to time prior to this date, the "Loan Agreement") and that certain ISDA Agreement dated as of June 7, 2006 between Amegy and TriDimension (as amended and supplemented from time to time prior to this date, the "Hedge Agreement").  The Loan Agreement, the Hedge Agreement, and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, and other instruments or documents executed in connection therewith or related thereto shall be referred to herein as the "Pre-Petition Claim Documents."  True and correct copies of certain of the Pre-Petition Claim Documents are retained by the Agent, and will be available to interested parties upon request.

## The Pre-Petition Collateral

(3)     Subject to Prior Liens (as defined below), if any, the Pre-Petition Claims evidenced by the Pre-Petition Claim Documents are secured by valid, binding, properly-perfected and enforceable first priority liens and security interests and other liens granted by certain of the Debtors upon and in those assets and properties described in the recorded Pre-Petition

Claim Documents, whether then owned or thereafter acquired or arising, and all proceeds and products thereof (collectively, the "Pre-Petition Collateral").

(4)    The Agent and the Pre-Petition Lenders have properly perfected their first priority liens and security interests and other liens in the Pre-Petition Collateral (including the Cash Collateral (as defined below)), subject to Prior Liens (as defined below), if any.   The Agent's and Pre-Petition Lenders' liens and security interests in the Pre-Petition Collateral were granted pursuant to, *inter alia*, the Pre-Petition Claim Documents and are evidenced by, among other things, the Pre-Petition Claim Documents, documents held in possession of the Agent, and documents filed with the appropriate state, county, and other offices.

## Binding Agreement

G.    The agreements and arrangements authorized in this Final Order have been negotiated at arms' length, are fair and equitable under the circumstances, and are enforceable pursuant to their terms. The Agent, the DIP Agent, the Lenders, and the Debtors have acted in good faith (including, without limitation, as that term is used in section 363 of the Bankruptcy Code and otherwise) in the negotiation and preparation of this Final Order, have been represented by counsel, and intend to be and are bound by the terms of this Final Order.

## Cash Collateral

H.    Subject to Prior Liens, if any, and the Challenge Rights (as defined in paragraph 43 below) during the Challenge Period (as defined in paragraph 43 below), the Debtors stipulate that all cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents, whenever acquired, in which the estates have an interest, including the proceeds,

products, offspring, rents, or profits of property subject to a security interest including the Pre-Petition Collateral as provided in section 552(b) of the Bankruptcy Code, whether existing before or after the commencement of these cases, constitutes the cash collateral of the Agent and the Pre-Petition Lenders (collectively, the "<u>Cash Collateral</u>").

**AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL, AUTHORIZING CREDIT SECURED BY SENIOR LIENS, AND <u>GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS</u>**
US 391568v.8

Page 9 of 38

## Need for and Consent to Limited Use of Cash Collateral

I. The Agent and Pre-Petition Lenders do not consent to the Debtors' use of Cash Collateral except in strict accordance with the terms and conditions contained in this Final Order.[5] The relief hereunder is necessary because, without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain their assets, sell or otherwise liquidate their assets, provide financial information, pay necessary employees, payroll taxes, overhead, and other expenses necessary to preserve and maximize the value of the Debtors' assets and estates. The Debtors require the use of Cash Collateral as provided herein.

J. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The use of Cash Collateral will benefit the Debtors and their estates. The ability of the Debtors to maximize the value of their assets depends upon the Debtors' ability to use the Cash Collateral of the Agent and Pre-Petition Lenders. Accordingly, the use of Cash Collateral by the Debtors is actual and necessary to preserving their estates.

## Need for DIP Facility

K. Without the use of Cash Collateral and the DIP Facility, the Debtors will not have the funds necessary to maintain their assets, sell or otherwise liquidate their assets, provide financial information, pay necessary employees, payroll taxes, overhead, and other expenses necessary to maximize the value of the Debtors' assets. The use of the Cash Collateral and obtaining the DIP Facility is actual and necessary to preserving the Debtors and their estates. The Post-Petition Lenders are willing to provide the DIP Facility to or for the benefit of the Debtors

---

[5] All consents and approvals by the Agent hereunder shall be deemed to have been given on behalf of the Pre-Petition Lenders. All consents and approvals by the Agent or by the Pre-Petition Lenders hereunder shall be in accordance with the terms of the Loan Agreement.

only in accordance with the terms of the DIP Agreement and this Final Order.

L.     The Debtors have requested that the Post-Petition Lenders provide the DIP Facility in order to provide funds to be used for the purposes set forth in the Budget, and such other purposes as required by this Final Order and to which the DIP Agent consents[6] in writing.

M.     The Debtors have sought to obtain financing from other sources and are unable to obtain credit allowable under Bankruptcy Code § 503(b)(1), or pursuant to Bankruptcy Code §§ 364(a), (b), (c) or (d), on terms more favorable to the Debtors than the terms of the DIP Facility.

N.     The terms of the DIP Facility and this Final Order are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Facility and this Final Order have been negotiated in good faith and at arms' length by and among the Debtors, on the one hand, and the Agent, DIP Agent, and Lenders, on the other hand, with all parties being represented by counsel. Any credit extended under, or Cash Collateral consented to be used pursuant to, the terms of this Final Order and the DIP Facility shall be deemed to have been extended or consented to be used in good faith by the Agent, the DIP Agent, and the Lenders, as the term "good faith" is used in section 364(e) of the Bankruptcy Code.

## ORDER

Accordingly, it is therefore **ORDERED**:

---

[6] All consents and approvals by the DIP Agent hereunder shall be deemed to have been given on behalf of the Post-Petition Lenders. All consents and approvals by the DIP Agent or by the Post-Petition Lenders hereunder shall be in accordance with the terms of the DIP Agreement.

1.     The Motion is hereby **APPROVED** as set forth herein**,** and any objections to the Motion are hereby **DENIED**.  This Final Order shall become effective immediately upon its entry.

2.     The Debtors are hereby authorized to use Cash Collateral as provided herein in accordance with the terms and conditions provided in this Final Order.

3.     The Debtors are hereby authorized to obtain credit in accordance with the DIP Agreement and this Final Order.  The Debtors are hereby authorized to obtain post-petition loans and other extensions of credit in an amount not to exceed $6,750,000 pursuant to the terms of this Final Order and the DIP Agreement.

4.     The Debtors shall be permitted to use Cash Collateral and DIP Financing to pay the expenses to the extent accrued (as to amounts eligible in the Carve-Out and payroll), and as incurred and described in the expenditures contained in the budget attached hereto as **Exhibit B** (together with any extensions or modifications thereof as permitted herein and approved by the Agent and DIP Agent, the "Budget"), in an amount not to exceed those amounts as set forth in the Budget plus the permitted variance below and further in accordance with the terms of this paragraph.  Any expense amounts listed in the Budget that are unused in any one-month period may be carried over and used by the Debtors in the next one-month period on a line-item basis; provided, that, any such unused expense amounts listed in the Budget for fees and expenses of the Debtors', Committee's, DIP Agent's, Agent's, Post-Petition Lenders', and Pre-Petition Lenders' professionals may be carried over and used in any later one-month period for such applicable professionals.  There shall be a permitted monthly variance of 10% for any expense amounts listed in the Budget for a particular line item.

5.     Notwithstanding anything in the Budget or this Final Order to the contrary, the Agent and the DIP Agent reserve all rights to object to any motion, application, or other request for relief that relates to the items referred to or covered by the Budget.

## Cash Collateral Accounts

6.     The Debtors shall immediately, and shall continue to, segregate, remit, and deposit all Cash Collateral in the Debtors' accounts, possession, custody or control and which any Debtor may receive in the future, in accordance with the applicable cash management orders entered by this Court, and consistent with the Debtors' past and ordinary business practices.  The bank accounts of the Debtors (individually or collectively, the "Cash Collateral Accounts") shall be in the name of the Debtors, but the Debtors shall be prohibited from withdrawing funds from the Cash Collateral Accounts except in strict compliance with the terms of this Final Order and the DIP Facility.  All Cash Collateral Accounts shall be maintained with the DIP Agent, except as otherwise agreed with respect to local petty cash disbursement accounts.

## Events of Default/Remedies/Extensions of Authority

7.     Pursuant to Rule 4001(b)(2) and (c)(2) of the Bankruptcy Rules, but subject to any other terms and conditions set forth in the DIP Agreement and this Final Order, the Debtors' authority to use Cash Collateral and to obtain DIP Financing will remain in effect until the earlier of (i) September 30, 2010 (or such later date as may be agreed to by the Debtors, the Agent, and the DIP Agent, and provided that the Debtors, Lenders and Committee will review the Budget on or before August 24, 2010 for the continued use of Cash Collateral and will file an updated Budget regarding same to the extent modified), or (ii) upon notice of any Event of Default (as

defined below) as provided in this paragraph. Without any affect on any other provision of this Final Order, the Debtors' authorization to use Cash Collateral and to obtain DIP Financing (each subject to and on the terms and conditions of this Final Order) shall immediately and automatically terminate after five (5) business days written notice to the Debtors and the Committee of any Event of Default; provided, that, after any such termination, the Debtors' authority to use Cash Collateral shall continue to pay only (a) professional fees and expenses and other amounts reserved for or paid pursuant to the Carve-Out and the Budget and (b) necessary and unpaid Budgeted expense amounts on a line item basis accrued in or before the week in which such termination occurred, but only insofar as such payments are consistent with this Final Order and the Budget.

8. If the Debtors' right to use Cash Collateral and obtain DIP Financing has not been previously terminated pursuant to the provisions of this Final Order, such right may be extended and/or the Budget amended only upon the DIP Agent's (with respect to extensions of the DIP Facility, usage of Cash Collateral, and Budget amendment) and Agent's (with respect to usage of Cash Collateral or Budget amendment) written consent (a copy of which shall be filed with this Court and served on counsel to the Committee, and which shall be immediately effective upon filing) or further Order of this Court. The Agent and the DIP Agent, as applicable, shall have no obligation to agree to such an extension under any circumstances and may elect or not elect to agree to such an extension as it determines in its sole and absolute discretion, provided that the Debtors shall have the right to seek authority from this Court to use Cash Collateral on an expedited basis in the event the Agent does not consent to an extension hereof.

9. Except as otherwise permitted in subclauses (a) and (b) of paragraph 7, the Debtors' right to use Cash Collateral and to obtain DIP Financing under this Final Order shall immediately and automatically terminate upon the earlier to occur of (a) the passing of 5:00 p.m. (prevailing Central time) on September 30, 2010 (or such later date as may be agreed to by the Debtors the Agent, and the DIP Agent), or (b) after five (5) business days notice of the following (each, including subclause (a) above, an "Event of Default"):

(i) the failure by any of the Debtors to pay principal, interest or fees (including post-petition fees and expenses of the attorneys and financial advisors for the DIP Agent and Pre-Petition Lenders) when due (including, without limitation, on the Prepayment Date (as defined in the DIP Agreement));

(ii) the breach by any of the Debtors of any of the negative covenants set forth in the DIP Agreement or any mortgages and security agreements executed in connection therewith;

(iii) the breach by any of the Debtors of any other covenant or agreement contained in the DIP Agreement or any mortgages and security agreements executed in connection therewith, and such breach shall continue unremedied for more than five (5) business days;

(iv) any representation or warranty made by any of the Debtors in the DIP Agreement or any mortgages and security agreements executed in connection therewith shall prove to have been incorrect in any material respect when made;

(v) (A) the Case of any Debtor shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code; (B) a chapter 11 trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of any Debtor shall be appointed in the Cases and the order appointing such trustee, responsible officer, or examiner shall not be reversed or vacated within five (5) business days after the entry thereof; (C) any other superpriority claim (other than the Cash Management Obligations (as defined in the DIP Agreement) and any superpriority claims granted pursuant to paragraph 19 of this Final Order on account of Prior Liens) which is _pari passu_ with or senior to the claims of the DIP Agent and the Pre-Petition Lenders shall be granted in any of the Cases; or (D) the Court shall enter an order terminating the use of Cash Collateral authorized herein;

(vi)    the Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest other than Prior Liens and Permitted Liens (as defined in the DIP Agreement) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any of the Debtors which have an aggregate value in excess of $150,000;

(vii)    any material provision of the DIP Agreement or the DIP Facility Documents shall cease to be valid and binding on any of the Debtors, or any of the Debtors shall so assert in any pleading filed in any court;

(viii)    an order shall be entered reversing, amending, supplementing, staying for a period in excess of five (5) business days, vacating or otherwise modifying this Final Order;

(ix)    any judgment in excess of $1 million as to any post-petition obligation shall be rendered against any of the Debtors and the enforcement thereof shall not be stayed (by court-ordered stay or by consent of the party litigants); or there shall be rendered against any of the Debtors a non-monetary judgment with respect to a post-petition event which causes or reasonably could be expected to cause a material adverse change or a material adverse effect on the ability of the Debtors to perform their obligations under the DIP Agreement;

(x)    default in payment of post-petition debt in excess of $150,000 in the aggregate;

(xi)    the extension of the Debtors' plan proposal exclusivity without the consent of the Post-Petition Lenders, not to be unreasonably withheld;

(xii)    the commencement by the Debtors or the Committee of any Proceedings (as defined in the DIP Agreement) challenging, in any fashion, the obligations under the Loan Agreement and/or under the Pre-Petition Claim Documents or any lien of the DIP Agent, Agent, or Lenders;

(xiii)    except as authorized by paragraph 27 hereof, the taking of any action to surcharge or otherwise recover from any property securing the Pre-Petition Claims any amounts in excess of $25,000 under section 506(c) of the Bankruptcy Code;

(xiv)    any material adverse change in the operations of the Debtors' business shall have occurred from that set forth in Debtors' financial statements for the period ended April 30, 2010, or as otherwise disclosed to the Pre-Petition Lenders, other than those which customarily occur as a result of events leading up to and following the commencement of a proceeding under

chapter 11 of the Bankruptcy Code; and

(xv)    the filing (and/or pursuing confirmation) of any plan of reorganization that is contested by the Agent, DIP Agent, or Lenders in a written notice sent to the Debtors.

10.    Except as otherwise set forth herein, upon (a) the occurrence and continuation of an Event of Default, and (b) five (5) business days' written notice (which may be delivered by electronic mail) (an "<u>Enforcement Notice</u>") to the Debtors, their counsel, the U.S. Trustee, and the Committee, the DIP Agent and Post-Petition Lenders shall be authorized to (x) seek relief from the automatic stay to be heard by this Court on an expedited basis within five (5) business days and, if relief from the automatic stay is so granted, the Agent shall be entitled to enforce and foreclose, in accordance with applicable state law, upon the DIP Financing Liens (as defined below) granted to them pursuant to this Final Order and to exercise all rights and remedies provided for herein and (y) subject to the automatic stay, if applicable, exercise such other remedies as set forth in the DIP Agreement, including, without limitation, those remedies set forth in Section 11(d) of the DIP Agreement.[7]

## <u>Superpriority Liens and Administrative Claims</u>

11.    The DIP Agent, on behalf of the Post-Petition Lenders, is entitled to and is hereby granted first priority claims, priming liens and the protections of good faith credit providers under Bankruptcy Code §§ 364(c)(1), (c)(2), and (c)(3), 364(d)(1), and 364(e) to secure the DIP Facility, senior to all other liens and security interests, including any adequate protection and replacement liens granted pursuant to the terms of this Final Order, which liens and security

---

[7] For the avoidance of doubt, notwithstanding anything to the contrary set forth in the DIP Agreement, this Court's approval of the DIP Agreement shall not be deemed to authorize the DIP Agent or Post-Petition Lenders to exercise remedies under the DIP Agreement without first obtaining relief from the automatic stay from this Court.

interests shall secure all DIP Facility amounts (including principal and interest, fees, expenses, and other costs of the Lenders in these Cases, however incurred), but subject to Prior Liens, (as defined below), any replacement liens granted pursuant to paragraph 19 below on account of Prior Liens, and the Carve-Out (as defined below) (the "DIP Financing Liens").

12.     The DIP Financing Liens securing the DIP Facility shall be valid and automatically perfected first priority priming liens and security interests, subject only to Prior Liens, any replacement liens granted pursuant to paragraph 19 below on account of Prior Liens, and the Carve-Out, in and upon any and all of the properties and assets of the Debtors and their bankruptcy estates, both real or personal, including, without limitation, those assets described in the Pre-Petition Claim Documents, this Final Order, the DIP Facility Documents, and the DIP Agreement, together with all cash, accounts, inventory, equipment, oil and gas interests, general intangibles, intellectual property of all kinds including patents, trademarks, trade names, service marks and copyrights, securities, instruments, investment property, deposit accounts, chattel paper, warehouse receipts, bills of lading, tax refunds of any nature, insurance proceeds, insurance premium refunds, deposits of any kind, security deposits, utility deposits, bonds and proceeds of same, causes of action (whether by contract or tort, common law or statutory, equitable or otherwise, but excluding causes of action brought against the Agent or Lenders), leasehold interests in real estate or personal property and customer lists, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products, proceeds, rents, revenues, and profits thereof (including, without limitation, claims of the Debtors against third parties for loss or damage to such property), and all accessions thereto,

substitutions and replacements therefor, and wherever located, and all assets acquired by the Debtors post-petition and recoveries by the estates under any provision of the Bankruptcy Code or other applicable law, excluding, however, causes of action under chapter 5 of the Bankruptcy Code (collectively, the "DIP Collateral").

13.     In addition to all other protections and benefits granted the DIP Agent and Post-Petition Lenders herein, all DIP Facility advances shall be deemed to have been made under the Loan Agreement as a permitted loan or future advance, and all lien and security interest protections afforded under the Pre-Petition Claim Documents shall be afforded to the DIP Facility advances.

14.     On account of the DIP Facility, the DIP Agent and Post-Petition Lenders shall have an allowed superpriority administrative expense claim as provided and to the full extent allowed by sections 503(b) and 507(b) of the Bankruptcy Code and otherwise (the "Post-Petition Lender Superpriority Claims") on a pro rata basis as determined under the DIP Facility Documents, senior in right to all other administrative claims against the estates, including the Pre-Petition Lender Superpriority Claims (as defined below), except for the Carve-Out and any superpriority claims granted pursuant to paragraph 19 of this Final Order on account of Prior Liens.

15.     Additionally, the Debtors are authorized and directed, within twenty (20) days of submission of invoices therefor (which invoices shall be delivered to the Debtors, U.S. Trustee, the Committee, the Agent, the DIP Agent, and each other Lender which shall contain a detailed description of services rendered by providing standard monthly invoices for each professional

(which may be redacted for privilege) for the time period covered thereby), to pay all reasonable fees and expenses for the professionals of the DIP Agent and Post-Petition Lenders incurred in connection with these Cases (whether incurred before or after the Petition Date). None of the fees or expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute, if any, as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. Nothing contained herein shall be deemed to be a waiver by any party in interest of the right to object to the reasonableness of any such fees or expenses and the DIP Agent and Post-Petition Lenders, as applicable, shall be required to return and/or disgorge any payments of fees or expenses that are later determined to be unreasonable. The use of the Cash Collateral or DIP Facility advances to make such adequate protection payments for the fees, costs and expenses of the DIP Agent and Post-Petition Lenders shall not constitute a diminution in value of the Pre-Petition Collateral giving rise to an adequate protection obligation.

## Indemnification of the DIP Agent and Post-Petition Lenders

16.     The Debtors are hereby authorized and directed to indemnify the DIP Agent and Post-Petition Lenders against any liability to the extent arising in connection with the DIP Facility Documents to the extent provided in and subject to the DIP Agreement.  All such indemnity obligations of the Debtors in favor of the DIP Agent and Post-Petition Lenders shall constitute DIP Facility obligations and shall be secured by the DIP Facility Liens and afforded all of the priorities and protections afforded to the obligations under this Final Order and the other DIP Facility Documents.  Notwithstanding anything to the contrary set forth in the DIP Agreement (including, without limitation, Section 7A(n) of Annex A to the DIP Agreement), the indemnity obligations of the Debtors approved hereby shall extend only to the DIP Agent and the Post-Petition Lenders (and not in regards to claims arising exclusively as a result of their role as Agent and Pre-Petition Lenders).   To the extent the DIP Agreement (including Section 7A(n) of Annex A thereof) imposes any indemnification obligations upon the Debtors in favor of the Agent and the Pre-Petition Lenders, the DIP Agreement is hereby amended and modified to remove any such indemnification obligations to the extent they grant indemnification obligations in favor of the Agent and the Pre-Petition Lenders.  .

## Adequate Protection

17.     The Agent and each Pre-Petition Lender is entitled, pursuant to sections 361, 362, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its interests in the Pre-Petition Collateral on account of the Debtors' use of the Pre-Petition Collateral that results in a decrease in value, any decrease in value resulting from the granting of senior DIP Financing Liens

to the Post-Petition Lenders, and any other decrease in value of such interests on account of sections 362, 363 or 364 or the Bankruptcy Code (the "Diminution in Value").

18.    As adequate protection to the Agent and Pre-Petition Lenders for the aggregate Diminution in Value of their respective interests in the Pre-Petition Collateral, the Agent and Pre-Petition Lenders shall be and hereby are granted the following:

(a)    Adequate Protection Liens.  To the extent of any Diminution in Value of their respective interests in the Pre-Petition Collateral, the Agent, on behalf of itself and the Pre-Petition Lenders, shall have valid and perfected additional and replacement security interests in, and liens upon (the "Adequate Protection Liens"), all of the Debtors' right, title and interest in, to, and under (i) all assets in which the Agent held validly perfected liens as the Petition Date; and (ii) the DIP Collateral.  The Adequate Protection Liens shall be subject to the Carve-Out (as defined below), junior in right to the DIP Financing Liens and Prior Liens, and *pari passu* with any replacement liens granted pursuant to paragraph 19 below on account of Prior Liens.

(b)    Superpriority Claims.  To the extent that the Adequate Protection Liens are inadequate to satisfy any Diminution in Value of their respective interests in the Pre-Petition Collateral, the Agent and Pre-Petition Lenders shall have an allowed superpriority administrative expense claim as provided and to the full extent allowed by section 503(b) and 507(b) of the Bankruptcy Code and otherwise (the "Pre-Petition Lender Superpriority Claims", and together with the Post-Petition Lender Superpriority Claims, the "Superpriority Claims") on a pro rata basis as determined under the Pre-Petition Claim Documents.  The Pre-Petition Lender Superpriority Claims shall be subject to the Carve-Out (as defined below) and (i) junior in right to

the Post-Petition Lender Superpriority Claims and (ii) *pari passu* with any superpriority claims

granted pursuant to paragraph 19 of this Final Order on account of Prior Liens, but senior to all

other administrative claims.

(c)     Periodic Cash Payments.  For the benefit of the Pre-Petition Lenders, the

Debtors shall pay to the Pre-Petition Lenders an amount equal to the pre-petition and post-

petition interest due and payable under the Pre-Petition Claim Documents on the applicable

monthly due date as set forth in the Pre-Petition Claim Documents.  Interest shall be calculated

for the purposes of these periodic cash payments at the non-default rate for the pre-petition

period[8] and at the default rate for the post-petition period (each as set forth in the Pre-Petition

Claim Documents).

(d)     Payment of Fees and Expenses of Professionals.  For the benefit of the

Agent and the Pre-Petition Lenders, the Debtors are authorized and directed to pay all reasonable

fees and expenses for the professionals of the Agent and Pre-Petition Lenders incurred in

connection with these Cases (whether incurred before or after the Petition Date) in accordance

with the notice, objection, and payment procedures set forth in paragraph 15 hereof.  The use of

the Cash Collateral or DIP Facility advances to make such adequate protection payments for the

fees, costs and expenses of the Agent and Pre-Petition Lenders shall not constitute a Diminution

in Value giving rise to an adequate protection obligation.

(e)     Restoration Adjustment.  In the event it is determined that the Pre-Petition

---

[8] The Agent and Pre-Petition Lenders began accruing interest on the Pre-Petition Claims at the default rate beginning May 7, 2010.  At this time, the Debtors are not requesting approval to pay interest at the default rate for such pre-petition period.  The Agent and Pre-Petition Lenders reserve all rights to payment of interest at the default rate during such pre-petition period.

Lenders are undersecured following notice and hearing pursuant to motion or other pleading seeking such determination, then the principal amount of the Pre-Petition Lenders' respective secured claims shall be reduced on account of the amounts paid pursuant to paragraphs 18(c) and (d) of this Final Order (and paragraphs 16(c) and (d) of the Interim Order) to the extent necessary to true up the estates on an economic basis in accordance with section 506 of the Bankruptcy Code, and the Court shall hear disputes, if any, in connection therewith. Any valuation offered and/or accepted by the Court at the Hearing shall be solely for the purposes of determining adequate protection hereunder and shall have no preclusive effect otherwise.

(f) <u>Reporting Materials</u>. The Debtors shall provide the Agent and the Pre-Petition Lenders with such other reports as required under the DIP Facility and as reasonably requested from time to time, including, without limitation the Global Budget (as defined in the DIP Agreement). The Debtors shall provide the Committee with copies of such reports to the extent in compliance with confidentiality restrictions as regards to the Committee.

## **Adequate Protection – Other Secured Creditors**

19. As adequate protection to any other secured creditor (including any secured creditor asserting liens on oil and gas mineral leases and any production proceeds thereof, and post-petition collections of joint interest billings encumbered by a valid and perfected non-avoidable mineral subcontractor lien) (collectively, the "<u>Trade Lien Creditors</u>") of the Debtors' for use of their respective Cash Collateral, if any, pursuant to Bankruptcy Code § 363(c) or as a result of the DIP Facility (and only to the extent any other secured creditors hold valid and perfected non-avoidable liens and security interests in Cash Collateral, and there is a decrease in

value of such respective interests as a result of sections 362, 363 or 364 of the Bankruptcy Code), then such secured creditor is hereby granted (effective upon the Petition Date and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements, or otherwise) replacement, same priority[9] security interests in, and liens upon, all of the right, title and interest in, to, and under all assets of the applicable Debtor(s) against whom such secured creditor held validly perfected unavoidable liens or security interests as the Petition Date or is entitled to perfect a valid lien or security interest after the Petition Date. In the event such adequate protection is not adequate, such secured creditor shall have a priority claim under § 507(b) of the Bankruptcy Code against the bankruptcy estate of the Debtor(s) against which it holds a secured claim. This paragraph is without prejudice to the right of any party in interest to challenge, without limitation, the existence, validity, priority or perfection of such asserted liens or any asserted diminution in value of such interests.

20.     Notwithstanding the foregoing, the Debtors shall not grant, and there is no grant to, the Agent, the DIP Agent, the Lenders, or such secured creditors of, security interests in or liens on any claims or causes of actions under chapter 5 of the Bankruptcy Code.

## Prior Liens

21.     The security interests and liens of the Agent and Lenders granted pursuant to the terms of this Financing Order shall not have priority over perfected (whether by filing or applicable law) and unavoidable liens and security interests in property of the Debtors' estates as of the Petition Date (other than the priority of the Post-Petition Lenders' liens in the DIP

---

[9] For the avoidance of doubt, and notwithstanding anything to the contrary set forth herein, any replacement liens granted pursuant to this paragraph 19 on account of Prior Liens shall be senior to the DIP Financing Liens and pari passu with the Adequate Protection Liens.

Collateral which shall have priority over the Pre-Petition Lenders' liens in the DIP Collateral), provided that (i) such perfected and unavoidable liens and security interests are valid, perfected and senior in priority to the Pre-Petition Lenders' pre-petition liens and security interests in accordance with applicable law (the "Prior Liens"), and (ii) the foregoing is without prejudice to the rights of the Debtors or any other party in interest, including the Agent, DIP Agent, Lenders, and Committee, to object to the validity, priority, or extent of such Prior Liens, or the allowance of such debts secured thereby, or to institute any actions or adversary proceedings with respect thereto.

## **Automatic Perfection**

22.     This Final Order, the Pre-Petition Claim Documents, and the DIP Facility Documents shall be sufficient and conclusive evidence of the priority, perfection, attachment, validity, and enforceability of all of the Lenders' liens and security interests in the DIP Collateral and Pre-Petition Collateral granted and created by this Final Order, and such liens and security interests shall constitute valid and automatically perfected security interests, with the priorities granted hereunder and thereunder, without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect (a) the security interests and liens granted to the Agent, the DIP Agent, and the Lenders by this Final Order and the DIP Facility Documents or (b) the adequate protection and replacement liens and security interests granted herein.

23.     To the extent that any applicable non-bankruptcy law otherwise would restrict the

granting, scope, enforceability, attachment, or perfection of the liens and security interests authorized, ratified, or created by this Final Order or otherwise would impose filing or registration requirements with respect to such liens, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court.

24.     Notwithstanding the foregoing, if the Post-Petition Lenders or the Pre-Petition Lenders shall, in their sole discretion, choose to require the execution of and/or file (as applicable) mortgages, financing statements, notices of liens and other similar instruments and documents, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded _nunc pro tunc_ at the time and on the date of the Petition Date.   Each and every federal, state and local government agency or department is hereby directed to accept the entry by this Court of this Final Order as evidence of the validity, enforceability and perfection on the Petition Date of the liens granted or authorized pursuant to this Final Order to or for the benefit of the Post-Petition Lenders or the Pre-Petition Lenders.

25.     Other than Prior Liens (and any replacement liens granted herein on account of Prior Liens), no claim or lien having a priority superior to or _pari passu_ with those granted by this Final Order to the DIP Agent and Post-Petition Lenders shall be granted or allowed until the indefeasible payment in full in cash and satisfaction of the DIP Facility obligations in the manner provided in the DIP Agreement.

**Automatic Stay**

26.     The automatic stay is hereby vacated and modified to the extent necessary to permit (a) the Debtors, the Agent, the DIP Agent, and the Lenders to commit all acts and take all actions necessary to implement the DIP Facility and this Final Order and (b) all acts, actions, and transfers contemplated herein, including, without limitation, transfers of Cash Collateral and other funds to the DIP Agent and the Agent for the benefit of the Lenders by the Debtors and the application by the DIP Agent and Agent of same as provided herein.

## Surcharge Protection

27.     Except with respect to amounts the Debtors are authorized to pay pursuant to clauses (a) and (b) of paragraph 7 hereof, the Debtors, on behalf of themselves and their respective bankruptcy estates, waive any and all claims, rights, and powers under 11 U.S.C. § 506(c) against the Post-Petition Lenders, the Pre-Petition Lenders, the Agent and the DIP Agent, and any other properties or assets of the Debtors subject in any manner whatsoever to the DIP Financing Liens of the DIP Agent and Post-Petition Lenders, the liens (including adequate protection liens) and security interests of the Agent and Pre-Petition Lenders, which claims, rights or powers arise during or are related to the period from the Petition Date through the later to occur of (i) the termination of the Debtors' ability to borrow funds under the DIP Facility, and (ii) the termination of any right of the Debtors to use Cash Collateral.  The foregoing waiver shall be binding upon any chapter 7 trustee, chapter 11 trustee or other similar Court appointed representative of the estates, but only with respect to professional fees and costs incurred during the course of the chapter 11 cases prior to appointment of such chapter 7 trustee, chapter 11 trustee or other similar estate representative.

## Carve-Out

28.     As used herein, the term "Carve-Out" shall mean (i) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court (the "Statutory Fees"), and (ii) the reasonable fees and expenses of the professionals engaged by the Debtors or the Committee, as set forth in and as allocated to the various professionals listed in the Budget prior to the delivery to the Debtors of an Enforcement Notice (as accrued and regardless of whether approved and unpaid or pending approval by the Bankruptcy Court), and after delivery to the Debtors and their counsel of an Enforcement Notice, the payment of fees and expenses of the professionals engaged by the Debtors (as accrued and regardless of whether approved and unpaid or pending approval by the Bankruptcy Court) incurred after delivery of an Enforcement Notice in an amount not to exceed $75,000 in the aggregate plus any retainers held by the Debtors' professionals.  All liens and claims of the Agent, the DIP Agent and the Lenders, irrespective of their nature or priority, shall be subject to the Carve-Out.  The Debtors shall reserve in a segregated account on a monthly basis sufficient funds necessary to fund any professional fees subject of the Carve-Out in accordance with the Budget.

29.     The Carve-Out shall not include, and Cash Collateral and the DIP Facility advances shall not be used for, the payment or reimbursement of any fees or disbursements of the Debtors' or the Committee's professionals, or any trustee appointed in these chapter 11 cases incurred in connection with (a) the assertion and prosecution of, or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, or discovery related to same, the purpose of which is to seek any order, judgment,

determination or similar relief: (i) commencing or prosecuting any action asserting claims pursuant to section 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or other cause of action (whether arising under state law, the Bankruptcy Code or other federal law) against the Agent, the DIP Agent, or Lenders with respect to the validity, extent, priority or enforceability of the obligations hereunder or the obligations under the DIP Facility Documents or Pre-Petition Claim Documents, or the validity, extent and priority of the liens and security interests securing the obligations hereunder or the obligations under the DIP Facility Documents or Pre-Petition Claim Documents; or (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Agent's, DIP Agent's, or Lenders' liens on and security interests in the DIP Collateral or Pre-Petition Collateral; (b) the assertion and prosecution of, or joinder in, any action or motion seeking to modify any of the rights granted to the DIP Agent, Agent, or Lenders hereunder, under the DIP Facility Documents, or the Pre-Petition Claim Documents, in each of the foregoing cases without such parties' prior written consent; (c) the payment of any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) in accordance with the Budget; (d) the assertion and prosecution by any party other than the Debtors of any motion or similar proceeding requesting authority to use Cash Collateral without the consent of the DIP Agent; or (e) the assertion and prosecution of, or joinder in, any action or other proceeding seeking the granting of a lien senior to, or on a parity with, the liens of the DIP Agent or Post-Petition Lenders in the DIP Collateral or any portion thereof. Notwithstanding the preceding sentence, Cash Collateral and/or DIP Facility advances may be used for the payment or reimbursement of fees and expenses of the Committee's

professionals incurred in connection with the investigation of (but not the assertion or prosecution of) the matters described in clauses (a) and (b) of the preceding sentence; provided, however, the amounts available from the Cash Collateral and DIP Financing advances for the Committee's professionals' investigation shall not exceed $50,000 in the aggregate.

## Reporting Requirements

30.     Unless otherwise agreed by the Debtors, the DIP Agent, and/or the Committee (as applicable), following entry of this Final Order, the Debtors shall deliver bi-weekly to the DIP Agent, its counsel, and counsel to the Committee a written accounting of all cash collected during the preceding two-week period and all expenditures of Cash Collateral and DIP Financing advances.  The Debtors shall immediately make available to the DIP Agent or any of its agents (including professionals) supporting documentation for all receipts and expenditures, including, but not limited to, bank statements, contracts, invoices, copies of checks and general ledgers.

## Other

31.     Notwithstanding anything herein to the contrary, this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Pre-Petition Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection at any time, and nothing herein shall affect the rights of any other party or entity to seek or oppose such modification of the grant of the adequate protection provided hereby.  Nothing herein shall impair the rights of any party to challenge or otherwise modify the adequate protection provided herein to the Pre-Petition Lenders; provided, that if any additional adequate protection claims, liens or other rights are awarded at any time, such claims, liens and/or other rights shall be at all times junior in all respects

to the claims and liens granted to or for the benefit of the Post-Petition Lenders and shall not affect the priority, validity, binding nature, enforceability or perfection of any of such claims and liens granted to or for the benefit of the Post-Petition Lenders; provided, further, that the foregoing is without prejudice to the right of the Debtors or any other party in interest, including the Post-Petition Lenders, to challenge any such request.

32.    The Debtors shall (and shall continue to so provide) the DIP Agent and any professional retained by the DIP Agent, with reasonable access during normal business hours to (i) the Debtors' premises, management and financial advisors, (ii) any and all books, records, engineering reports, documents and information relevant to the Debtors' business operations, and (iii) any other information or report regarding the Debtors or their Cases that the DIP Agent may from time to time reasonably request.

33.    The Debtors shall be authorized, but not directed, to make payments to royalty and working interest owners on account of the pre-petition sale of oil and gas in amounts consistent with the Budget, provided, that such payments shall not exceed $32,000 without further Order of this Court.  Further, the Debtors shall be authorized, but not directed, to make payments on account of the pre-petition sale of oil and gas to replace checks that were not honored as of the Petition Date.

34.    The Agent, the DIP Agent, and Lenders shall not (a) have liability to any third party nor shall it be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person", "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal

Revenue Code, the United States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), or owe any fiduciary duty to the Debtors, their creditors or their bankruptcy estates, and (b) the Agent's, the DIP Agent's, and Lenders' relationship with the Debtors shall not constitute nor be deemed to constitute a joint venture or partnership with any of the Debtors.

35.     Subject to the Challenge Rights in the Challenge Period with respect to the Agent and the Pre-Petition Lenders, (a) in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacatur shall affect the validity, enforceability or priority of any of the DIP Financing Liens, Adequate Protection Liens or the Superpriority Claims and (b) notwithstanding any such modification, amendment or vacatur, any claim granted to the Agent, the DIP Agent, or the Lenders hereunder arising before the effective date of such modification, amendment or vacatur shall be governed in all respects by the original provisions of this Final Order, and the Agent, DIP Agent, and Lenders shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Financing Liens and Adequate Protection Liens and priorities granted herein, with respect to any such claim (including the Superpriority Claims).

36.     The failure of the Agent, the DIP Agent, or Lenders to seek relief or otherwise exercise their rights and remedies under the Pre-Petition Claim Documents, DIP Facility Documents, or this Final Order shall not constitute a waiver of any of its rights thereunder, hereunder, or otherwise.

37.     The provisions of this Final Order shall be binding upon and shall inure to the

benefit of the Agent, the DIP Agent, the Lenders, any other secured creditors granted adequate protection liens hereunder, and the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for the Debtors or with respect to the Debtors' property).

38. Except as otherwise set forth herein (including, without limitation, paragraph 18(e) hereof), and subject to the Challenge Rights during the Challenge Period and the rights of Trade Lien Creditors preserved pursuant to paragraph 46 hereof, the DIP Facility, the Pre-Petition Claims, and the claims and liens granted to or for the benefit of the DIP Agent, Agent, Post-Petition Lenders, and Pre-Petition Lenders pursuant to this Final Order are not subject to any setoff or reduction of any kind, including, without limitation, under section 502(d) of the Bankruptcy Code, and any amounts owed under the DIP Facility shall not be discharged by the entry of an order confirming a chapter 11 plan in any of the Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive such discharge). Under no circumstances shall any chapter 11 plan in any Case be confirmed or become effective unless such plan provides that the Debtors' obligations under the DIP Facility shall be paid in full in cash and satisfied in the manner provided in the DIP Facility Documents on or before the effective date of such plan.

39. The validity, enforceability, priority or amount of any of the claims and liens granted to or for the benefit of the DIP Agent or Post-Petition Lenders under this Final Order with respect to the Debtors' obligations under the DIP Facility shall not be adversely affected by any finding or order of this Court or any other court regarding the Agent or any Pre-Petition

Lender or their liens against the Pre-Petition Collateral, including, without limitation, any order of this Court or any other Court invalidating any Pre-Petition Claims or the liens against the Pre-Petition Collateral.

40. To the extent that any of the Debtors' obligations under the DIP Facility remain unpaid, any amounts disgorged by the Agent or Pre-Petition Lenders in respect of any of the Pre-Petition Claims (whether such amounts were received by the Agent or Pre-Petition Lenders prior or subsequent to the Petition Date) shall upon such disgorgement be immediately delivered by the Debtors to the DIP Agent to be applied to repay the Debtors' obligations under the DIP Facility in accordance with the terms of the DIP Facility Documents.

41. Notwithstanding anything herein, all of the rights, remedies, benefits and protections provided: (i) to the DIP Agent and Post-Petition Lenders under this Final Order and the other DIP Facility Documents, and (ii) to the Agent and Pre-Petition Lenders under this Final Order and the Pre-Petition Claim Documents, shall survive the termination of the DIP Facility. Upon such termination, the principal of and all accrued interest and fees and all other obligations of the Debtors under the DIP Facility shall be immediately due and payable and the DIP Agent and Post-Petition Lenders shall have all other rights and remedies provided in this Final Order, the DIP Agreement, and applicable law.

42. Unless and until the DIP Financing has been indefeasibly repaid in full, in cash, (a) the Debtors shall not seek an order dismissing any of the Cases and (b) the protections afforded to the Agent, the DIP Agent, and Lenders under this Final Order, and any actions taken pursuant thereto, shall survive the entry of an order dismissing any of these Cases or converting any of

these Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and the DIP Financing Liens and Adequate Protection Liens in and to the Pre-Petition Collateral and DIP Collateral and the Superpriority Claims shall continue in these proceedings and in any such successor case, and the DIP Financing Liens, Adequate Protection Liens and Superpriority Claims shall maintain their priority as provided by this Final Order until the DIP Financing and Pre-Petition Claims have been indefeasibly paid in full in cash.

43.     Subject to paragraph 46 below, but notwithstanding anything else to contrary herein, any motion seeking authority from this Court to challenge the extent, validity, perfection, enforceability, or priority of the security interest and liens of the Agent or Pre-Petition Lenders or to assert pre-petition claims against the Agent or Pre-Petition Lenders in the these cases by the Committee or any other party in interest (the "Challenge Rights"), shall be filed on or before the 90th day following the date of the entry of this Final Order (the "Challenge Period"); *provided however*, that the Committee may request in writing an extension of the Challenge Period which the Agent and Pre-Petition Lenders may, in their sole and absolute discretion, agree to by stipulation that will be signed by their respective counsel and filed on or before the expiration of the Challenge Period.

44.     Notwithstanding anything contained herein to the contrary, the extent, validity, perfection, enforceability, and priority of the Pre-Petition Claims and the Agent's and Pre-Petition Lenders' liens on the Pre-Petition Collateral are for all purposes subject to the rights of any party in interest with proper standing other than the Debtors to file a complaint pursuant to Bankruptcy Rule 7001 within the Challenge Period, seeking to invalidate, subordinate, or otherwise challenge

the Pre-Petition Claims and/or the Agent's and/or Prepetition Lenders' prepetition liens upon and security interests in the Pre-Petition Collateral.

45.     Except as set forth in paragraph 46 below, unless such motion as provided in paragraph 43 or such complaint as provided in paragraph 44 is timely filed by the Committee or such other parties in interest with proper standing to assert such motion or complaint within the Challenge Period, then (a) the Prepetition Claims and the Agent's and Pre-Petition Lenders' security interests in and liens upon the Pre-Petition Collateral shall be recognized and allowable as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses, and perfected to the extent provided herein, and the Pre-Petition Claims shall be allowed in the full amount specified in paragraph F hereof pursuant to sections 502 and 506 of the Bankruptcy Code or any other applicable federal or state law, and (b) the acknowledgements contained in paragraph F shall be binding on all parties in interest.

46.     Notwithstanding anything to the contrary herein, this Final Order is without prejudice to, and shall not limit, the right of any Trade Lien Creditor to contest the extent, validity, or priority of the Pre-Petition Claims with respect to, and the Agent's and Pre-Petition Lenders' liens on, the Pre-Petition Collateral during or after the Challenge Period.  However, such rights of the Trade Lien Creditors are limited to only that Pre-Petition Collateral on which such Trade Lien Creditor asserts liens and security interests of such Trade Lien Creditor.  Subject to the limitations of this paragraph, the right of any Trade Lien Creditor to file, during or after the Challenge Period, a complaint pursuant to Bankruptcy Rule 7001, seeking to invalidate, subordinate, or otherwise challenge the Pre-Petition Claims and/or the Agent's or Pre-Petition

Lenders' prepetition liens upon and security interests in any portion of the Pre-Petition Collateral on which such Trade Lien Creditor asserts liens and security interests of such Trade Lien Creditor is unchanged by this Final Order.

47. **Provided that no Claims and Defenses (as defined below) are asserted prior to the expiration of the Challenge Period by the Committee, the Debtors hereby forever release, waive and discharge each Pre-Petition Lender (whether in its pre-petition or post-petition capacity), together with its respective officers, directors, employees, agents, sub-agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any: (a) Pre-Petition Claim Document; (b) aspect of the pre-petition relationship between the Debtors and any or all of the Released Parties, or (c) other acts or omissions by any or all of the Released Parties including, without limitation, any claims or defenses as to the extent, validity, priority or perfection of the liens against the Pre-Petition Collateral or Pre-Petition Claims, "lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any other claims and causes of action and any resulting subordination or recharacterization of any payments made to any Pre-Petition Lender pursuant to this Order (other than as set forth in paragraph 18(e), which is expressly preserved) (all such claims, defenses and other actions described in this paragraph are collectively defined as the "Claims and Defenses").  Nothing contained in this paragraph shall in any way affect or limit the rights of the Committee or any other party in interest to undertake any action**

**with respect to, including, without limitation, any investigation or prosecution of, Claims and Defenses as permitted in paragraphs 43, 44, 45, and 46 of this Final Order.**

48.     Notwithstanding anything to the contrary herein, this Final Order is without prejudice to, and shall not limit, any valid and enforceable recoupment rights that the Vada Group, L.P. ("Vada") may have under any applicable operating agreement or applicable law; provided, that entry of this Final Order shall not waive, prejudice, or have any effect on any rights, remedies, defenses, claims, or causes of action that the Debtors or any other parties may have with respect to such asserted recoupment rights, all such rights, remedies, defenses, claims, and causes of action being expressly preserved.

# # # END OF ORDER # # #

**AGREED TO AS TO FORM & SUBSTANCE:**

*Proposed Counsel for Debtors:*                    *Counsel for the Agent and DIP Agent:*

 /s/ William L. Wallander                            /s/ Charles S. Kelley
William L. Wallander, SBT #20780750          Charles S. Kelley, SBT #11199580 ___
Clayton T. Hufft, SBT #24056658              Andres G. Romay, SBT #24060516
Beth Lloyd, SBT #24060179                    **MAYER BROWN LLP**
**VINSON & ELKINS LLP**                          700 Louisiana Street, Suite 3400
Trammell Crow Center                         Houston, TX 77002-2730
2001 Ross Avenue, Suite 3700                 Tel.: 713-238-3000
Dallas, Texas 75201-2975                     Fax: 713-238-2634
Tel:  214.220.7700                           ckelley@mayerbrown.com;
Fax: 214.220.7716                            aromay@mayerbrown.com
bwallander@velaw.com; chufft@velaw.com;
blloyd@velaw.com

# EXHIBIT "A"

**SEE DOCKET NO. 176**

# EXHIBIT "B"

## SEE DOCKET NO. 181