William L. Wallander, SBT #20780750
Clayton T. Hufft, SBT #24056658
Bradley R. Foxman, SBT #24065243
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; chufft@velaw.com;
bfoxman@velaw.com

**COUNSEL FOR THE LP DEBTORS[1]**

Peter Franklin, SBT #07378000
Erin K. Lovall, SBT #24032553
**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**
10501 N. Central Expressway, Suite 106
Dallas, TX 75231
Tel: 972.755.7100
Fax: 972.755.7110
pfranklin@fslhlaw.com; elovall@fslhlaw.com

**COUNSEL FOR THE GP DEBTORS[2]**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: § | § | Case No. 10-33565-SGJ |
| TRIDIMENSION ENERGY, L.P., *et al.* § | § | Chapter 11 |
| DEBTORS. § | § | Jointly Administered |

## DEBTORS' EMERGENCY MOTION FOR ORDER
## (A) AUTHORIZING THE DEBTORS TO CONTINUE USE OF CASH
## COLLATERAL, (B) AUTHORIZING THE DEBTORS TO OBTAIN ADDITIONAL
## POST-PETITION FINANCING, AND (C) GRANTING RELATED RELIEF

---

[1] The LP Debtors include TriDimension Energy, L.P., TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, and Ram Drilling, LP.
[2] The GP Debtors include TDE Operating GP LLC and TDE Subsidiary GP LLC.

**THE DEBTORS HAVE REQUESTED THAT AN INTERIM HEARING BE CONDUCTED ON THIS MATTER ON SEPTEMBER 30, 2010 AT 2:30 P.M. IN THE COURTROOM OF THE HONORABLE STACEY G. C. JERNIGAN, 1100 COMMERCE STREET, 14TH FLOOR, DALLAS, TEXAS 75242. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT BY OCTOBER 8, 2010. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**TO THE HONORABLE STACEY G. C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:**

The above-referenced debtors and debtors in possession (collectively, the "Debtors")[3] file this *Emergency Motion for Order (A) Authorizing the Debtors to Continue Use of Cash Collateral, (B) Authorizing the Debtors to Obtain Additional Post-Petition Financing, and (C) Granting Related Relief* (the "Motion") and in support thereof, respectfully state as follows:

## JURISDICTION AND PROCEDURAL BACKGROUND

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On May 21, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (collectively, the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

---

[3] The Debtors include the LP Debtors and the GP Debtors.

5. An official committee of unsecured creditors (the "Committee") was appointed in the Cases on June 2, 2010.

## RELIEF REQUESTED

6. By this Motion, the Debtors request, *inter alia*, entry of an order (the "Supplemental Financing Order", a proposed form of which will be filed with this Court prior to the hearing on this Motion), substantially in the form of the Prior Final Order, pursuant to §§ 105, 361, 362, 363 and 364 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

(a) authorizing the Debtors to continue to use Cash Collateral (as defined below) of Amegy Bank, N.A. ("Amegy"), BMO Capital Markets Financing, Inc., and Union Bank, N.A. (collectively, in their capacity as pre-petition lenders, the "Pre-Petition Lenders"), and Amegy, as agent for the Pre-Petition Lenders (in such capacity, the "Agent"), until at least November 30, 2010, in accordance with the terms and conditions set forth herein and in the Supplemental Financing Order;

(b) authorizing the Debtors to obtain additional post-petition credit from Amegy and BMO Capital Markets Financing, Inc. (collectively, in their capacity as post-petition lenders, the "Post-Petition Lenders"), with Amegy serving as agent for the Post-Petition Lenders (in such capacity, the "DIP Agent"), up to an amount advanced in the amount of up to $650,000[4] (the "Supplemental DIP Financing"), and including, without limitation, principal, interest, fees, expenses, and other costs of the Post-Petition Lenders and DIP Agent in these Cases, in accordance with the terms and conditions set forth herein, in the Supplemental Financing Order, and in an amendment to the DIP Agreement (as defined

---

[4] This amount is in addition to the $6.75 million in post-petition financing authorized by the Prior Financing Orders.

in the Prior Final Order) (the "Amended DIP Agreement")[5] and all related documents (collectively, the "DIP Facility");

(c) authorizing the Debtors to execute, deliver, and perform under the DIP Facility, the loan documents, credit agreements, amendments, notes, security agreements, and financing statements related to the DIP Facility, and all other related agreements and documents creating, evidencing, or securing indebtedness of the Debtors to the DIP Agent and Post-Petition Lenders on account of the DIP Facility or granting or perfecting liens or security interests by the Debtors in favor of and for the benefit of the DIP Agent and the Post-Petition Lenders on account of the DIP Facility, as same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the documents currently executed or to be executed in connection therewith or related thereto, by and among the Debtors, the DIP Agent, and/or the Post-Petition Lenders (collectively, the "DIP Facility Documents");

(d) approving the terms and conditions of the DIP Facility and the DIP Facility Documents as so executed and delivered;

(e) granting first priority liens and adequate protection to the DIP Agent and Post-Petition Lenders with respect to their interests in the DIP Collateral (as defined below) on substantially the same terms set forth in the Prior Final Order (as defined below);

---

[5] A copy of Amended DIP Agreement will be filed with this Court prior to the hearing on the Motion. The Amended DIP Agreement will include substantially the same terms as the DIP Agreement (as defined in the Prior Financing Orders). Any express conflict between the Amended DIP Agreement and the Supplemental Financing Order shall be governed by the terms and conditions of the Supplemental Financing Order. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Prior Financing Orders.

(f) granting adequate protection to the Agent and the Pre-Petition Lenders with respect to their interests in the Pre-Petition Collateral (as defined below) on substantially the same terms set forth in the Prior Final Order;

(g) granting adequate protection to other secured creditors, if any, of these estates on substantially the same terms set forth in the Prior Final Order; and

(h) authorizing the transfer of Cash Collateral to and for the benefit of the DIP Agent and Post-Petition Lenders on substantially the same terms set forth in the Prior Final Order.

**Statement in Compliance with Bankruptcy Rule 4001(b) and (c)**

7. In compliance with Bankruptcy Rule 4001(b) and (c), the Debtors make the following concise statement about the relief requested herein:

*DIP Financing*:

a. Borrower: TriDimension Energy, L.P.

b. Guarantors: Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, Ram Drilling, LP, TDE Operating GP LLC, TDE Property Holdings, LP, and TDE Subsidiary GP LLC.

c. Post-Petition Lenders: Amegy Bank, N.A. and BMO Capital Markets Financing, Inc.

d. Facility Amount: Up to $650,000 on an interim and final basis (which shall be in addition to amounts authorized to be advanced pursuant the Prior Financing Orders (as defined below)).

e. Purpose: Debtors will use the borrowings under the DIP Financing to fund its overhead, business, operating, restructuring, and related costs, including, without limitation, to maintain their assets, sell or otherwise liquidate their assets, provide financial information, pay necessary employees, payroll taxes, overhead, and other expenses necessary to preserve and maximize the value of

the Debtors' assets and estates, all in accordance with the terms, conditions and limitations set forth in the Budget.[6]

f. <u>Term</u>: The borrowings shall be repaid in full and the DIP Facility commitment shall terminate on the earliest of (i) November 30, 2010 (or such other date as may be agreed to by the Debtors, Agent, and DIP Agent), or (ii) upon five (5) business days notice of an event of default.

g. <u>Interest Rate</u>: Consistent with the Prior Financing Orders, the non-default interest rate will be (a) the equal or the greater of (i) the interest rate publicly announced by Amegy from time to time as its general reference rate of interest, which prime rate shall change upon any change in such announced or published general reference interest rate and which prime rate may not be the lowest interest rate charged by the Agent, or (ii) 5.00%, plus (b) 4%. Upon the occurrence and during the continuance of an Event of Default, interest on all outstanding loans under the DIP Facility shall be 4.0% above the then-applicable non-default rate.

h. <u>DIP Agent/Post-Petition Lender Expense Reimbursement</u>: Consistent with the Prior Financing Orders, the Debtors shall pay all reasonable post-petition fees and expenses of the DIP Agent's and Post-Petition Lenders' professionals incurred in connection with these Cases.

i. <u>DIP Collateral</u>: All of the properties and assets of the Debtors and their bankruptcy estates, both real or personal, including, without limitation, those assets described in the Pre-Petition Claim Documents, this Prior Financing Orders, the DIP Facility Documents, and the Amended DIP Agreement, together with all cash, accounts, inventory, equipment, oil and gas interests, general intangibles, intellectual property of all kinds including patents, trademarks, trade names, service marks and copyrights, securities, instruments, investment property, deposit accounts, chattel paper, warehouse receipts, bills of lading, tax refunds of any nature, insurance proceeds, insurance premium refunds, deposits of any kind, security deposits, utility deposits, bonds and proceeds of same, causes of action (whether by contract or tort, common law or statutory, equitable or otherwise, but excluding causes of action brought against the Agent or Lenders), leasehold interests in real estate or personal property and customer lists, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products, proceeds, rents, revenues, and profits thereof (including, without limitation, claims of the Debtors against third parties for loss or damage to such property), and all accessions thereto, substitutions and replacements therefor, and wherever located, and all assets acquired by the Debtors post-petition and recoveries by the estates under any

---

[6] A copy of the proposed Budget will be filed with the Court prior to the hearing on the Motion.

provision of the Bankruptcy Code or other applicable law, excluding, however, causes of action under chapter 5 of the Bankruptcy Code (collectively, the "DIP Collateral").

j. Security or Other Treatment for Post-Petition Lenders: Consistent with the Prior Final Order, all borrowings by the Debtors under the DIP Financing shall at all times:

   i. be secured by first priority claims, priming liens in the DIP Collateral (the "DIP Financing Liens"), senior to all other liens and security interests, but subject to the Carve-Out, Prior Liens and any replacement liens granted on account of Prior Liens; and

   ii. have a superpriority administrative expense status as provided and to the full extent allowed by sections 503(b) and 507(b) of the Bankruptcy Code and otherwise, senior in right to all other administrative claims against the estates, including the superpriority claims granted on account of the Pre-Petition Collateral, except for the Carve-Out and any superpriority claims granted on account of Prior Liens.

k. Event of Default/Termination: Consistent with the Prior Final Order, the Supplemental Financing Order will contain various Events of Default upon the occurrence of which the DIP Facility commitment and Debtors' authority to use Cash Collateral may be terminated by the Agent after five (5) business days written notice. The Events of Default include, without limitation, (i) the commencement by the Debtors or the Committee of any Proceedings (as defined in the DIP Agreement) challenging, in any fashion, the obligations under the Loan Agreement and/or under the Pre-Petition Claim Documents or any lien of the DIP Agent, Agent, or Lenders, (ii) extension of the Debtors' plan proposal exclusivity without the consent of the Post-Petition Lenders (not to be unreasonably withheld), and (iii) the filing (and/or pursuing confirmation) of any plan of reorganization that is contested by the Agent, DIP Agent, or Lenders in a written notice sent to the Debtors.

l. Stipulations as to Liens and Security Interests of Agent and Pre-Petition Lenders. Consistent with the Prior Final Order, the Supplemental Financing Order will contain stipulations by the Debtors as to the validity, perfection, and priority of the liens and security interests of the Agent and Pre-Petition Lenders with respect to the Pre-Petition Claims, subject to Challenge Rights and the rights of Trade Creditors preserved pursuant to paragraph 46 of the Prior Final Order.

m. Restrictions on Granting Liens in DIP Collateral. Except for Prior Liens (and any replacement liens granted on account of prior liens), no claim or lien having a priority superior to or *pari passu* to those granted to the DIP Agent

and Post-Petition Lenders shall be granted or allowed until the payment in full of the DIP Facility obligations.

n. <u>Restrictions on Availability of DIP Financing Advances</u>. The DIP Facility shall not be available for use by the Debtors unless and until, among other things, the Debtors have exhausted all Cash Collateral on hand on the Petition Date and thereafter coming into the Debtors' possession (after establishing reserves by an amount not to exceed $100,000 plus reserves for the Carve-Out rights and sufficient reserves for Amegy as cash management bank to ensure that no pre-petition cash management obligations arise as a result thereof).

o. <u>Section 506(c) Waiver</u>. Consistent with the Prior Final Order and the exceptions set forth therein, the Debtors shall waive any and all claims, rights, and powers under 11 U.S.C. § 506(c) against the Post-Petition Lenders, the Pre-Petition Lenders, the Agent and the DIP Agent, and any other properties or assets of the Debtors subject in any manner whatsoever to the DIP financing liens of the DIP Agent and Post-Petition Lenders, and the liens (including adequate protection liens) and security interests of the Agent and Pre-Petition Lenders, which claims, rights or powers arise during or are related to the period from the Petition Date through the later to occur of (i) the termination of the Debtors' ability to borrow funds under the DIP Facility, and (ii) the termination of any right of the Debtors to use Cash Collateral. The foregoing waiver shall be binding upon any chapter 7 trustee, chapter 11 trustee or other similar Court appointed representative of the estates, but only with respect to professional fees and costs incurred during the course of the chapter 11 cases prior to appointment of such chapter 7 trustee, chapter 11 trustee or other similar estate representative.

p. <u>Indemnification</u>. The DIP Agent and Post-Petition Lenders shall be entitled to indemnification against any liability arising in connection with the DIP Facility Documents on the same terms as set forth in the Prior Final Order.

*Cash Collateral and Adequate Protection:*

q. <u>Alleged Entities with Interest in Cash Collateral</u>: The Agent, Pre-Petition Lenders and certain holders of Trade Liens (as defined below).

r. <u>Adequate Protection Granted to Agent and Pre-Petition Lenders on Account of Pre-Petition Claims</u>: Consistent with the Prior Final Order, as adequate protection to the Agent and Pre-Petition Lenders for any Diminution in Value in their interests in the Pre-Petition Collateral, the Agent and Pre-Petition Lenders shall be entitled to the following:

  i. To the extent of any Diminution in Value of their respective interests in the Pre-Petition Collateral, the Agent, on behalf of itself and the Pre-

Petition Lenders, shall have valid and perfected additional and replacement security interests in, and liens upon, all of the Debtors' right, title and interest in, to, and under (i) all assets in which the Agent held validly perfected liens as the Petition Date; and (ii) the DIP Collateral. These adequate protection liens shall be subject to the Carve-Out, junior in right to the DIP Financing Liens and Prior Liens, and *pari passu* with any replacement liens granted on account of Prior Liens.

    ii. To the extent that such liens are inadequate to satisfy any Diminution in Value of their respective interests in the Pre-Petition Collateral, the Agent and Pre-Petition Lenders shall have an allowed superpriority administrative expense claim as provided and to the full extent allowed by section 503(b) and 507(b) of the Bankruptcy Code and otherwise on a pro rata basis as determined under the Pre-Petition Claim Documents. Such superpriority claims shall be subject to the Carve-Out and (i) junior in right to the superpriority claims granted the Post-Petition Lenders and (ii) pari passu with any superpriority claims granted on account of Prior Liens, but senior to all other administrative claims.

s. <u>Adequate Protection of Other Secured Creditors</u>. Consistent with the Prior Final Order, as adequate protection to other secured creditors (including holders of Trade Liens) of the Debtors for use of their respective Cash Collateral or the DIP Facility (and only to the extent any other secured creditors hold valid and perfected non-avoidable liens and security interests in Cash Collateral, and there is a decrease in value of such respective interests as a result of sections 362, 363 or 364 of the Bankruptcy Code), then such secured creditor shall be granted replacement, same priority security interests in, and liens upon, all of the right, title and interest in, to, and under all assets of the applicable Debtor(s) against whom such Trade Lien holder held validly perfected unavoidable liens or security interests as the Petition Date or is entitled to perfect a valid lien or security interest after the Petition Date. In the event such adequate protection is not adequate, such secured creditor shall have a priority claim under § 507(b) of the Bankruptcy Code against the bankruptcy estate of the Debtor(s) against which it holds a secured claim.

## STATEMENT OF FACTS

### The Debtors and Their Business

8. TDE Operating GP LLC, a Delaware limited liability company (the "General Partner") is the general partner of TriDimension Energy, L.P., a privately held Delaware limited partnership ("TriDimension"). TriDimension and its five direct operating subsidiaries, TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, and Ram Drilling, LP, each a Louisiana partnership in commendam (collectively, the "TriDimension Subsidiaries"), are engaged in the acquisition, development, exploration, production, and sale of oil and natural gas. TDE Subsidiary GP LLC, a Delaware limited liability company ("Subsidiary GP"), is the general partner of each of the TriDimension Subsidiaries. Each of General Partner, Subsidiary GP, TriDimension, and the TriDimension Subsidiaries is a Debtor.

9. The Debtors' principal place of business is in Dallas, Texas and their operating properties are located in various portions of Louisiana and Mississippi. The Debtors have proven reserves of approximately 5.1 million barrels of oil based on fourth quarter 2009 data.

10. The Debtors' current organizational structure is the result of a business acquisition that was completed in April 2008. As a result of that transaction, (i) General Partner owns a .01% general partnership interest in TriDimension, (ii) TriDimension currently owns all of the membership interests in Subsidiary GP and a 99.99% limited partnership interest in each of the TriDimension Subsidiaries, and (iii) Subsidiary GP owns a .01% general partnership interest in each of the TriDimension Subsidiaries.

### Pre-Petition Secured Debt

11. TriDimension is the borrower under that certain Loan Agreement dated April 23, 2008 (as amended from time to time, the "Loan Agreement"), by and among TriDimension, as

**DEBTORS' EMERGENCY MOTION FOR ORDER
(A) AUTHORIZING THE DEBTORS TO CONTINUE USE OF CASH
COLLATERAL, (B) AUTHORIZING THE DEBTORS TO OBTAIN ADDITIONAL
POST-PETITION FINANCING, AND (C) GRANTING RELATED RELIEF** Page 10 of 20
US 385823v.3

borrower, the TriDimension Subsidiaries, as guarantors, Amegy, as administrative agent, and the Pre-Petition Lenders. Each of the TriDimension Subsidiaries has guaranteed the obligations of TriDimension under the Loan Agreement.

12. Amegy was also the hedge provider with respect to certain hedge transactions in effect under that certain ISDA Agreement dated as of June 7, 2006 between Amegy and TriDimension (the "Hedges"). On May 7, 2010, TriDimension and Amegy mutually agreed to terminate and unwind the Hedges in order for TriDimension to gain the benefit of certain favorable changes in commodity prices and prevent greater anticipated indebtedness due to commodity price changes over the upcoming summer months. Ultimately, the Hedges were terminated and unwound. As of the Petition Date, approximately $43.5 million was outstanding pursuant to the Loan Agreement and Hedges.

### Trade Creditors

13. In the ordinary course of business, the Debtors utilize an assortment of vendors, including drilling contractors, labor and repair contractors, parts and equipment suppliers, pipeline companies, heavy machinery and equipment lessors, hydrocarbon transporters, laborers, professionals, and employee benefits providers. As of the Petition Date, unsecured claims aggregated approximately $6 million, which amount excludes deficiency claims under the Loan Agreement, if any.

14. Certain parties, including contractors and subcontractors, allege that they have provided goods and services to the Debtors, and have asserted that they have perfected statutory liens on, and security interests in, certain leaseholds and the related property and equipment (collectively, the "Trade Liens").

### Prior Authorizations of DIP Financing and Cash Collateral Usage

15. On May 22, 2010, the Debtors filed their *Emergency Motion for Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral, (B) Authorizing the Debtors to Obtain Post-Petition Financing, (C) Granting Security Interests and Superpriority Administrative Expense Status to the Post-Petition Lenders, (D) Granting Adequate Protection to Existing Lienholders, (E) Authorizing the Debtors to Make Payments to Certain Royalty and Working Interest Owners, and (F) Granting Related Relief* [Dkt. No. 22].

16. On May 27, 2010, this Court entered its *Interim Agreed Order Authorizing Use of Cash Collateral, Authorizing Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders* [Dkt. No. 63] (the "Interim Order"). Thereafter, on June 28, 2010, this Court entered its *Agreed Final Order Authorizing Use of Cash Collateral, Authorizing Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders* [Dkt. No. 184] (the "Prior Final Order", and together with the Interim Order, the "Prior Financing Orders") pursuant to which this Court, *inter alia*, authorized the Debtors to use Cash Collateral of the Pre-Petition Lenders and to obtain post-petition credit from the Post-Petition Lenders in an amount not to exceed $6,750,000 on a final basis.

17. Pursuant to the Prior Financing Orders, the Debtors' authority to use Cash Collateral is currently scheduled to terminate, and the DIP Facility is currently scheduled to mature, on September 30, 2010.

### RELIEF REQUESTED

### Introduction

18. Since the Petition Date, the Debtors and their professionals have been working diligently toward a reorganization of the Debtors' businesses by engaging in a marketing process

to select a potential "stalking horse" bidder to serve as the initial bidder in a potential sale of substantially all of the assets of the Debtors. As a result of such marketing process, the Debtors intend to file a motion to approve bidding procedures and the selection of the stalking horse bidder in October 2010. However, despite these efforts and the Debtors' progress to date, the Debtors do not have sufficient available sources of working capital or cash to continue the operation of their businesses and the marketing and plan process past September 30, 2010 without access to additional DIP financing and use of Cash Collateral. The ability to obtain sufficient working capital and liquidity through additional DIP financing and use of Cash Collateral is vital to the preservation and maximization of the value of the Debtors' assets and to successfully reorganize the Debtors.

19. By this Motion, the Debtors request that this Court enter an order authorizing the Debtors to obtain additional DIP financing from the Post-Petition Lenders pursuant to Bankruptcy Code §§ 105, 361, 362 and 364 in the amount of approximately $650,000. Furthermore, pursuant to Bankruptcy Code § 363(c), the Debtors request authorization to continue to use Cash Collateral as set forth herein and on substantially the same terms as set forth in the Prior Final Order until at least November 30, 2010.

20. The Debtors assert the additional DIP financing and use of Cash Collateral is necessary to avoid immediate and irreparable harm to, and is in the best interests of, the Debtors and their estates and creditors. The proposed additional DIP financing and use of Cash Collateral will allow the Debtors to continue to fund necessary restructuring costs and other essential costs as the Debtors continue their marketing efforts and move toward a sale of their assets. These costs will be set forth in a proposed Budget to be filed with this Court prior to the Hearing on the Motion and will include, *inter alia*, the Debtors' operating expenses, marketing

expenses, professional fees, fees due under 28 U.S.C. § 1930, insurance, taxes, interest, and other miscellaneous costs.

**The DIP Financing Satisfies the Requirements of Section 364**

21. As a result of, among other things, the Debtors' financial condition and prepetition capital structure and the negative state of credit markets in general, the Debtors have been unable to obtain other sources of cash or credit in the form of unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to § 364(a) or (b) of the Bankruptcy Code. Financing on a post-petition basis is not otherwise available without the Debtors' granting, pursuant to § 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in §§ 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to §§ 364(c) and 364(d) of the Bankruptcy Code.

22. The terms of the additional DIP financing and adequate protection arrangements discussed below are fair and reasonable under the circumstances, reflect the exercise of prudent business judgment by the Debtors consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration. The Debtors believe that the additional DIP financing will give them the necessary liquidity they need to operate their businesses while continuing their marketing efforts and pursuit of a sale of substantially all their assets in order to maximize the value of their estates. The additional DIP financing will minimize disruption of the businesses and operations of the Debtors and permit the Debtors to continue to meet payroll and other operating expenses, obtain needed supplies and maintain the going concern value of their businesses by demonstrating an ability to maintain normal operations. The DIP Financing

should be approved under § 364 because "the credit acquired is of significant benefit to the Debtor's estate and the terms of the proposed loan are within the bounds of reason, irrespective of the inability of the Debtor to obtain comparable credit elsewhere." *In re Aqua Associates*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991). The Debtors submit that it has met the requirements under Bankruptcy Code § 364 to obtain additional postpetition financing and that the Motion should be granted.

23. The Debtors are without adequate funds, absent access to additional DIP Financing, with which to continue to operate their businesses past the end of September 2010. The additional DIP Financing is vital to avoid immediate and irreparable harm to the Debtors' estates and businesses. The expenses to be included in the Budget are reasonable and necessary business expenses that must be paid in order to continue the Debtors' businesses.

24. The Debtors propose and seek through this Motion that upon entry of the Supplemental Financing Order authorizing use of the additional DIP financing, the Debtors may continue to use the additional DIP Financing as set forth in the Budget for the subsequent time periods reflected in the Budget or any substitute budget, pursuant to the Amended DIP Agreement and the Supplemental Financing Order.

### Immediate Need for Use of Cash Collateral

25. Bankruptcy Code § 363(c) provides, in relevant part:

(c) (1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363 (c)(1) & (2).

26. As set forth above, the Debtors have an immediate need to use Cash Collateral, including cash proceeds, to continue the operation of their businesses. Without such funds, the Debtors will not be able to continue to pay costs and expenses, including, but not limited to, wages, salaries, rent, professional fees, general and administrative operating expenses, lease operating expenses, drilling costs, or lease acquisition and maintenance costs, that arise in the administration of these Cases and in the ordinary course of the Debtors' businesses.

27. The Debtors also request that the Court authorize them to continue to use Cash Collateral as set forth in the proposed Budget or any substitute budget after a hearing on this Motion.

**Grant of Adequate Protection**

Adequate Protection Pursuant to Bankruptcy Code § 363(e)

28. Bankruptcy Code § 363(e) provides that "on request of an entity that has an interest in property used . . . or proposed to be used . . ., the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The providing of adequate protection is mandatory. *See, e.g., In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary – it states that the court 'shall' grant the relief specified . . . ."); *In re Heatron, Inc.*, 6 B.R. 493, 494 (Bankr. W.D. Mo. 1980) ("Providing adequate protection is mandatory."). Bankruptcy Code § 361 sets forth a non-exclusive list of forms of adequate protection, which

include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. A determination of adequate protection is decided on a case-by-case basis, involving a consideration of the "nature of the creditor's interest in the property, the potential harm to the creditor as a result of the property's decline in value and the method of protection." *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1286 (5th Cir. 1986). The purpose of adequate protection is to ensure that a secured party's economic position is not worsened because of the filing of a bankruptcy case. *In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006).

<u>Adequate Protection to the Agent and Pre-Petition Lenders</u>

29. As adequate protection of the Agent's and Pre-Petition Lenders' interests in the Pre-Petition Collateral, the Debtors propose the following adequate protection consistent with that granted pursuant to the Prior Final Order:

> (a) <u>Adequate Protection Liens</u>. To the extent of any Diminution in Value of their respective interests in the Pre-Petition Collateral, the Agent, on behalf of itself and the Pre-Petition Lenders, shall be granted valid and perfected additional and replacement security interests in, and liens upon, all of the Debtors' right, title and interest in, to, and under (i) all assets in which the Agent held validly perfected liens as the Petition Date; and (ii) the DIP Collateral. These adequate protection liens shall be subject to the Carve-Out, junior in right to the DIP Financing Liens and Prior Liens, and *pari passu* with any replacement liens granted on account of Prior Liens; and

> (b) <u>Superpriority Administrative Claim Status</u>. To the extent that such liens are inadequate to satisfy any Diminution in Value of their respective interests in the Pre-Petition Collateral, the Agent and Pre-Petition Lenders shall be granted an allowed superpriority administrative expense claim as provided and to the full extent allowed by section 503(b) and 507(b) of the Bankruptcy Code and otherwise on a pro rata basis as determined under the Pre-Petition Claim Documents. Such superpriority claims shall be subject to the Carve-Out and (i) junior in right to the superpriority claims granted the Post-Petition Lenders and (ii) pari passu with any superpriority claims granted on account of Prior Liens, but senior to all other administrative claims.

30. Despite the Prior Final Order, the Debtors do not proposed to continue to pay post-petition interest and fees and expenses of the Agent and Pre-Petition Lenders as adequate protection of their interests. The Debtors anticipate that the adequate protection liens and superpriority administrative status described above are sufficient to adequately protect the Agent and Pre-Petition Lenders for any Diminution in Value resulting from the continued use of Cash Collateral and the additional DIP financing.

## **Adequate Protection to Other Secured Creditors**

31. Although the Debtors believe that many of the liens that other creditors are asserting against the Debtors' assets (a) may be defective; (b) may be avoidable; (c) do not cover Cash Collateral; and/or (d) are junior to the security interests and liens asserted by the Agent and Pre-Petition Lenders, the Debtors propose to grant other holders of valid and properly perfected liens or security interests the following adequate protection consistent with that granted pursuant to the Prior Final Order:

> (a) As adequate protection to other secured creditors (including holders of Trade Liens) of the Debtors for use of their respective Cash Collateral or the DIP Facility (and only to the extent any other secured creditors hold valid and perfected non-avoidable liens and security interests in Cash Collateral, and there is a decrease in value of such respective interests as a result of sections 362, 363 or 364 of the Bankruptcy Code), then such secured creditor shall be granted replacement, same priority security interests in, and liens upon, all of the right, title and interest in, to, and under all assets of the applicable Debtor(s) against whom such Trade Lien holder held validly perfected unavoidable liens or security interests as the Petition Date or is entitled to perfect a valid lien or security interest after the Petition Date. In the event such adequate protection is not adequate, such secured creditor shall have a priority claim under § 507(b) of the Bankruptcy Code against the bankruptcy estate of the Debtor(s) against which it holds a secured claim; and

> (b) In the event such adequate protection is not adequate, such secured creditor shall have a priority claim under § 507(b) of the Bankruptcy Code against the bankruptcy estate of the Debtor(s) against which it holds a secured claim.

32. The Debtors anticipate that these replacement liens and the granting of superpriority status will adequately protect other secured creditors (including holders of Trade Liens) for the use of Cash Collateral and the additional DIP financing.

## NOTICE

33. Pursuant to Bankruptcy Rule 4001, the Debtors have caused a copy of this Motion to be served on (i) those parties included on the Debtors' Master Service List, which includes the Agent, the DIP Agent, the Pre-Petition Lenders, the Post-Petition Lenders and their counsel; (ii) counsel to the Committee; (iii) the United States Trustee; (iv) those persons who have formally appeared in these Cases and requested service pursuant to Bankruptcy Rule 2002; and (iv) all applicable government agencies to the extent required by the Bankruptcy Rules and the Local Rules.

## PRAYER

The Debtors respectfully request that this Court enter an order (i) approving the terms of the additional DIP financing, (ii) authorizing the continued use by the Debtors of any Cash Collateral, (iii) approving and granting the adequate protection as proposed herein, and (iv) granting any and other such further relief to which the Debtors may be justly entitled.

Dated: September 24, 2010

Respectfully submitted,

| | |
|---|---|
| */s/ William L. Wallander* <br> William L. Wallander, SBT #20780750 <br> Clayton T. Hufft, SBT #24056658 <br> Bradley R. Foxman, SBT #24065243 <br> **VINSON & ELKINS LLP** <br> Trammell Crow Center <br> 2001 Ross Avenue, Suite 3700 <br> Dallas, Texas 75201-2975 <br> Tel:  214.220.7700 <br> Fax: 214.220.7716 <br> bwallander@velaw.com; chufft@velaw.com <br> bfoxman@velaw.com <br><br> **COUNSEL FOR THE LP DEBTORS** | */s/ Erin K. Lovall* <br> Peter Franklin, SBT #07378000 <br> Erin K. Lovall, SBT #24032553 <br> **FRANKLIN SKIERSKI LOVALL HAYWARD LLP** <br> 10501 N. Central Expressway, Suite 106 <br> Dallas, TX  75231 <br> Tel:  972.755.7100 <br> Fax:  972.755.7110 <br> pfranklin@fslhlaw.com; elovall@fslhlaw.com <br><br> **COUNSEL FOR THE GP DEBTORS** |