William L. Wallander, SBT #20780750
Clayton T. Hufft, SBT #24056658
Bradley R. Foxman, SBT #24065243
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; chufft@velaw.com;
bfoxman@velaw.com

**COUNSEL FOR THE LP DEBTORS[1]**

Peter Franklin, SBT #07378000
Erin K. Lovall, SBT #24032553
**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**
10501 N. Central Expressway, Suite 106
Dallas, TX 75231
Tel: 972.755.7100
Fax: 972.755.7110
pfranklin@fslhlaw.com; elovall@fslhlaw.com

**COUNSEL FOR THE GP DEBTORS[2]**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| | § | |
| | § | |
| **IN RE:** | § | **Case No. 10-33565-SGJ** |
| | § | |
| **TRIDIMENSION ENERGY, L.P.,** *et al.* | § | **Chapter 11** |
| | § | |
| **DEBTORS.** | § | **Jointly Administered** |
| | § | |

## MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE; (C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE BID PROTECTIONS AND PROCEDURES; AND (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH <u>THE TRANSACTION CONTEMPLATED BY THE PURCHASE AGREEMENT</u>

---

[1] The LP Debtors include TriDimension Energy, L.P., TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, and Ram Drilling, LP.
[2] The GP Debtors include TDE Operating GP LLC and TDE Subsidiary GP LLC.

US 601592v.5

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 27, 2010 AT 1:30 PM (PREVAILING CENTRAL TIME) IN THE COURTROOM OF THE HONORABLE STACEY G. C. JERNIGAN, 1100 COMMERCE STREET, 14TH FLOOR, DALLAS, TEXAS 75242. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT ON OR BEFORE 5:00 PM (PREVAILING CENTRAL TIME) ON OCTOBER 25, 2010. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**TO THE HONORABLE STACEY G. C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:**

The above-referenced debtors and debtors in possession (collectively, the "Debtors")[3] file this *Motion to (A) Approve the Procedures for the Solicitation of Offers; (B) Approve the Form and Manner of Notice; (C) Approve Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (D) Approve the Bid Protections and Procedures; and (E) Approve a Break-Up Fee in Connection with the Transaction Contemplated by the Purchase Agreement* (the "Motion")[4] and in support thereof would respectfully show the Court as follows:

## JURISDICTION AND PROCEDURAL BACKGROUND

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On May 21, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned cases (the "Cases").

---

[3] The Debtors include both the LP Debtors and the GP Debtors.
[4] Capitalized terms not defined herein shall have the meaning given to them in the Bid Procedures.

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5. An official committee of unsecured creditors (the "Committee") was appointed in the Cases on June 2, 2010.

## STATEMENT OF FACTS

### Case Background

6. TDE Operating GP LLC, a Delaware limited liability company (the "General Partner") is the general partner of TriDimension Energy, L.P., a privately held Delaware limited partnership ("TriDimension"). TriDimension and its five direct operating subsidiaries, TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, and Ram Drilling, LP, each a Louisiana partnership in commendam (collectively, the "TriDimension Subsidiaries"), are engaged in the acquisition, development, exploration, production, and sale of oil and natural gas. TDE Subsidiary GP LLC, a Delaware limited liability company ("Subsidiary GP"), is the general partner of each of the TriDimension Subsidiaries. Each of General Partner, Subsidiary GP, TriDimension, and the TriDimension Subsidiaries is a Debtor.

7. The Debtors' principal place of business is in Dallas, Texas and their operating properties are located in various portions of Louisiana and Mississippi. The Debtors have proven reserves of approximately 5.1 million barrels of oil based on fourth quarter 2009 data.

### The Marketing Process

8. Beginning in April of 2010 and through their investment bankers, Stephens Inc. ("Stephens"), the Debtors have extensively explored various sale and reorganization alternatives, including the sale of assets or properties of the Debtors. Stephens contacted approximately 148 parties who it thought might be interested in engaging in a transaction with the Debtors. Among the parties contacted by Stephens were other oil and gas companies, hedge funds, private equity

funds and other investors. 57 parties signed confidentiality agreements in order to obtain access to the diligence materials assembled by the Debtors. Stephens continued discussions with prospective buyers through October of 2010. The Debtors received at least 11 bids or bona fide indications of interest from third parties. Ultimately, the Debtors, their counsel, and Stephens engaged in substantial negotiation of agreements with at least 2 parties.

**The Purchase Agreement**

9.      The Debtors propose to effectuate the transactions contemplated by the Asset Purchase Agreement dated as of October 18, 2010 (the "Purchase Agreement") among SR Acquisition I, LLC (the "Potential Buyer") and the Debtors (the "Transaction"), subject to receipt of higher or better offers. A copy of the Purchase Agreement, without exhibits, schedules, annexes, and other attachments, is attached hereto as **Exhibit A**. The Purchase Agreement provides for, among other things, the sale of the Debtors' right, title and interest in, to and under substantially all of the Debtors' assets (collectively, the "Properties") free and clear of any and all liens,[5] encumbrances, claims and other interests, except as otherwise set forth in the Purchase Agreement. The Transaction is subject to higher or better offers as more particularly set forth in this Motion and the Bid Procedures. In consideration for the Properties, the Potential Buyer has agreed to provide consideration at the closing of the Transaction comprised of cash in the amount of $28,000,000.00 (subject to certain adjustments as set forth in the Purchase Agreement).

10.      The Debtors have extensively explored various sale and reorganization alternatives, including, without limitation, the sale of assets and properties of the Debtors. After extensive review and consideration of the proposals received from prospective buyers to date and the prospects for receipt of a higher or better offer, in consultation with Stephens, the Debtors

---

[5] As used herein, the term "liens" shall include, without limitation, "Liens" as defined in the Purchase Agreement.

have determined in the exercise of their business judgment to request the Court's approval of the Potential Purchaser as the "stalking-horse" bidder to set a minimum price in connection with a proposed auction process as described below.

11.     Contemporaneously herewith, the Debtors filed their *Motion for an Order Authorizing (A) the Sale of the Debtors' Right, Title and Interest In, To and Under Substantially All of the Debtors' Assets Free and Clear of Claims, Encumbrances, Liens, and Interests, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Related Relief* (the "Sale Motion") by which the Debtors seek authority to (i) sell the Debtors' right, title and interest in, to and under substantially all of their assets and (ii) assume and assign certain executory contracts and unexpired leases and rights thereunder.

## RELIEF REQUESTED

### Introduction

12.     Pursuant to Bankruptcy Code §§ 105, 363, 503(b), and 507(a)(2) and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors request that the Court (a) approve the bid protections set forth under Article IX of the Purchase Agreement (the "Bid Protections"), including the Break-Up Fee (as defined below), and the Potential Purchaser as the "stalking horse" bidder subject to all terms and conditions of the Purchase Agreement, (b) approve the bid procedures which are attached hereto as **Exhibit B** (the "Bid Procedures"), (c) approve the form and manner of notice of the Bid Procedures, the Sale Hearing (as defined below), the Objection Deadline, and the respective dates, times and places for an auction, if required under the Bid Procedures, substantially in the form attached hereto as **Exhibit C** (the "Transaction Notice"), (d) approve the form and manner of the notice of the possible assumption and assignment of executory contracts and unexpired leases and rights thereunder, substantially in the form attached hereto as **Exhibit D** (the "Assumption Notice"),

(e) establish procedures for objections to the Sale Motion and for determining cure amounts in connection with the assumption and assignment of executory contracts and unexpired leases and rights thereunder, (f) set a hearing on the Sale Motion, and (g) grant such other relief as is fair and equitable.

### Approval of the Bid Protections

13.     Under the Purchase Agreement, the Transaction is subject to higher or better offers and a possible auction as more particularly set forth herein. To afford the Potential Buyer the bid protections set forth in the Purchase Agreement and the Bid Procedures, and to enable the Debtors to take the steps contemplated under the Purchase Agreement and the Bid Procedures, the Debtors request approval of the Bid Protections.

14.     Pursuant to the Sale Motion, the Debtors are requesting authority, among other things, to enter into the Purchase Agreement, pursuant to which the Potential Buyer would purchase the Properties subject to the terms and conditions set forth therein. The Transaction under the Purchase Agreement is subject to higher or better offers, and consummation of the Transaction is conditioned upon entry of the Sale Order (as defined in the Purchase Agreement) and satisfaction of other conditions to closing contained in the Purchase Agreement.

15.     The pertinent terms of the Purchase Agreement are provided in the table below for summary and notice purposes only. To the extent any of the terms described below are inconsistent with the Purchase Agreement, the Purchase Agreement shall control.[6]

| Purchase Consideration: | The consideration payable by the Potential Buyer consists of $28,000,000.00 in cash, subject to certain adjustments, and the assumption of the Assumed Liabilities. |
|---|---|
| Other | The Purchase Price is subject to increase for (i) certain cash deposits held by |

---

[6] Capitalized terms used in this summary but not defined in either the summary or this Motion shall have the meanings given them in the Purchase Agreement. The description of the Purchase Agreement below is intended as a summary and is qualified in its entirety by reference to the Purchase Agreement.

| | |
|---|---|
| **Adjustments to the Purchase Consideration** | the Debtors, (ii) certain capital expenditures made by the Debtors and property expenses paid by the Debtors for periods on or after November 1, 2010 (the "<u>Effective Time</u>"), (iii) the net value of crude oil in storage tanks of the Debtors, and (iv) $40,000 per month for the Closing Period.<br><br>The Purchase Price is subject to decrease for (i) proceeds received by the Debtors that are attributable to the Debtors' share of production from the Oil and Gas Properties after the Effective Time, (ii) casualty losses between the signing and closing of the Purchase Agreement, (iii) certain title and environmental defects, and (iv) the proceeds received by the Debtors upon the sale of any Oil and Gas Property to any third party.<br><br>The Parties also agreed to adjust the Purchase Price for the apportionment of Non-Income Taxes, Tax Refunds, and prepaid expenses. |
| **Escrow Amount**: | The Potential Buyer agreed to deposit with Wells Fargo Bank, National Association $1,250,000.00 in cash, which will be held by the Escrow Agent in accordance with the provisions of the Escrow Agreement and the Purchase Agreement. |
| **Closing Conditions**: | The obligations of the Potential Buyer and the Debtors to close are subject to the requirement that: (i) no Applicable Law prohibit the Transactions or the consummation of the Closing, (ii) all actions by or filings with any Governmental Authority required to permit the Closing have been taken or obtained, and (iii) no Proceeding instituted by any Governmental Authority is pending and no injunction, order, decree or judgment of any Governmental Authority is in effect which seeks to or does, as applicable, prohibit, restrain or enjoin the consummation of the Transactions.<br><br>The obligation of the Potential Buyer to close is subject to the following conditions:<br><br>• The Debtors performed all of their covenants and other obligations and the representations and warranties of the Debtors are true and correct except: (A) for certain failures that do not constitute a Debtor Material Adverse Effect and (B) certain failures of environmental representations;<br>• The Bid Procedures Order and the Sale Order have been entered by the Bankruptcy Court and each such order is a Final Order in full force and effect;<br>• Certain assets are included in the Properties conveyed to the Potential Buyer;<br>• Title and environmental Defects and casualty losses do not exceed $8 million; and<br>• The Debtors secured sufficient debtor-in-possession financing in order to continue to operate the Properties in the Ordinary Course of Business. |

| | The obligation of the Debtors to close is subject to the following conditions: |
|---|---|
| | <ul><li>The Potential Buyer has performed in all material respects all of its covenants and obligations;</li><li>The representations and warranties of the Potential Buyer are true with only certain exceptions as would not reasonably be expected to have a Potential Buyer Material Adverse Effect; and</li><li>The Bid Procedures Order and the Sale Order have been entered by the Bankruptcy Court and each order is a Final Order in full force and effect.</li></ul> |
| **Termination**: | The Purchase Agreement may be terminated prior to the Closing by either the Potential Buyer or the Debtors under mutual written agreement of the Debtors and the Potential Buyer, if the Closing does not occur before December 15, 2010 (unless extended by mutual written agreement of all of the Parties), or if the consummation of the Transactions is illegal or otherwise prohibited.<br><br>The Purchase Agreement may be terminated by Buyer if:<br><ul><li>The Bid Procedures Order is not entered before 45 days after the date of the Purchase Agreement;</li><li>The Bankruptcy Court approves any Alternative Transaction;</li><li>The Debtors breach any of their representations and warranties, or fail to perform or comply with any of their covenants and agreements, such that the closing condition relating to same is not satisfied, and the Potential Buyer has given at least ten days written notice to the Debtors to cure such breaches and failures; or</li><li>Certain closing conditions have become incapable of being satisfied by the End Date.</li></ul> |
| **Break-Up Fee**: | If the Purchase Agreement is terminated and the Potential Buyer has not breached any of its representations or warranties or failed to perform or comply with any of its covenants or agreements and the Debtors consummate an Alternative Transaction before 18 calendar months after the date of the Purchase Agreement, the Debtors agree to pay the Potential Buyer a termination fee of $750,000, which fee shall be payable within two business days of consummation of such Alternative Transaction from proceeds of the sale. |
| **Representations and Warranties:** | The Purchase Agreement contains customary representations and warranties. The representations and warranties do not survive the Closing and there is no indemnification for breaches of representations and warranties. |
| **Certain** | The Debtors agree to preserve their present business organization, maintain |

| Covenants: | in effect all Permits as may be necessary for the Debtors to own and operate the Oil and Gas Interests in the Ordinary Course of Business, and comply in all material respects with Applicable Laws. |
|---|---|
| | The Debtors agreed to not: |
| | • Incur capital expenditures, other than capital expenditures not exceeding $100,000 during any calendar month, except with respect to certain matters; |
| | • Make certain acquisitions of assets or businesses; |
| | • Transfer any Oil and Gas Interests, except (A) sales of Hydrocarbons in the Ordinary Course of Business, (B) sales of personal property or fixtures in the Ordinary Course of Business which have been replaced with an item of substantially equal suitability and (C) dispositions of Excluded Assets; |
| | • Enter into certain types of material contracts; |
| | • Amend, modify, or terminate any Purchased Contract; or |
| | • Change the methods of accounting or accounting practice by the Debtors. |

16.    To enable the Debtors to take the steps contemplated under the Bid Procedures, the Debtors request approval of the Bid Protections.

## Sale Hearing

17.    The Debtors request that a hearing on the Sale Motion (the "Sale Hearing") be held on November 17, 2010 at 1:30 p.m prevailing Central time in the courtroom of the Honorable Stacey G. C. Jernigan, 1100 Commerce Street, 14th Floor, Dallas, Texas 75242.

## Bid Procedures

18.    Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction.  Good cause exists to expose the assets and properties of the Debtors to auction.  An auction conducted substantially in accordance with the Bid Procedures (the "Auction") will enable the Debtors to obtain the highest or best offer(s) for the assets and properties of the Debtors, thereby maximizing the value of their respective estates.

19.     Pursuant to the Bid Procedures, any additional Bids must, among other requirements more particularly set forth in the Bid Procedures, (a) include aggregate consideration of at least $1,250,000.00 greater than the Purchase Price (as defined in the Purchase Agreement), (b) be accompanied by satisfactory evidence of committed financing or other financial ability, (c) identify each and every executory contract or unexpired lease that is to be assumed and assigned to the Potential Bidder (as defined in the Bid Procedures), and (d) provide a good faith deposit in the amount of $1,500,000.00 to the Debtors.   No person or entity, other than the Potential Buyer with respect to the Break-Up Fee, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or similar fee or payment.

20.     If one or more Qualified Bids in addition to that of the Potential Buyer are determined by TriDimension in its business judgment to be higher or better than the Potential Buyer's Qualified Bid, the Debtors will conduct an auction at 9:30 a.m., prevailing Central time, on November 16, 2010 at the offices of Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3700, Dallas, Texas 75201 or at such later time or other place as agreed by the Potential Buyer and the Debtors, in consultation with the Representatives of the Lenders and Committee, or approved by Order of the Bankruptcy Court, and of which the Debtors will notify the Potential Buyer and all Qualified Bidders who have submitted Qualified Bids that TriDimension has determined are higher or better than the Potential Buyer's Qualified Bid.   Qualified Bidders seeking to participate as a bidder at the Auction must comply with the Bid Procedures.

21.     The Bid Procedures provide an appropriate framework for obtaining offers for an Alternative Transaction (as defined in the Purchase Agreement) and will enable the Debtors to review, analyze and compare all bids received to determine which bid is in the best interests of

the Debtors' estates and creditors. Therefore, the Debtors respectfully request that this Court approve the Bid Procedures.

**Transaction Notice and Assumption Notice**

22.     Bankruptcy Rule 2002(a) provides, in relevant part, that all creditors must be given at least 21 days' notice by mail of a proposed use, sale or lease of property of the estate other than in the ordinary course of business unless the Court for cause shortens the time or directs another method of giving notice. Further, Bankruptcy Rule 2002(c) sets forth that the content of such notices must include the time and place of any sale, the terms and conditions of such sale, and the time fixed for filing objections.

23.     In accordance with Bankruptcy Rule 2002, the Debtors are required to notify their creditors of the proposed Transaction or Alternative Transaction (as applicable), including a disclosure of the time and place of the Auction and the hearing on the Sale Motion, the terms and conditions of the Transaction, and the deadline for filing any objections to the Sale Motion.

Transaction Notice

24.     The Transaction Notice (a) contains the type of information required under Bankruptcy Rule 2002 that is currently known to the Debtors, (b) includes information concerning the Bid Procedures and the Bid Protections, and (c) is reasonably calculated to provide due, adequate and timely notice to all interested parties of (i) the Bid Procedures, (ii) the Auction, (iii) the deadline to object to the Sale Motion, (iv) the Sale Hearing, and (v) the approval of this Motion. Sufficient cause exists for this Court to shorten the notice time required by Bankruptcy Rule 2002. Accordingly, the Debtors request that this Court approve the form and content of the Transaction Notice.

25.     The Debtors propose to serve the Transaction Notice within three (3) business days after the Court enters the Bid Procedures Order (which is anticipated to be approximately

17 days prior to the Sale Hearing), by (a) first class United States mail, postage prepaid on (i) the parties identified on the Master Service List maintained in these Cases (who do not receive electronic notice) at the addresses set forth therein, (ii) the parties identified on the Creditor Matrix filed in these Cases at the addresses set forth therein, (iii) the parties that have filed proofs of claim in these Cases at the addresses set forth in the respective proofs of claim, (iv) the counterparties to executory contracts and unexpired leases with one or more of the Debtors, (v) known holders of liens and security interests in any assets of the Debtors, (vi) all current and former employees of any of the Debtors who were employed by the Debtors at any time within two (2) years of the Petition Date, (vii) all known environmental agencies having jurisdiction over any of the Properties, including the Environmental Protection Agency, (viii) all known taxing authorities having jurisdiction over any of the Properties, including the Internal Revenue Service, (ix) all parties who have filed a written request for notice in any of the Cases pursuant to Bankruptcy Rule 2002, (x) all of the Debtors' current customers and vendors, (xi) all known opposing parties in all litigation pending or threatened against any of the Debtors, (xii) all other known parties who have expressed an interest in acquiring the Debtors or any of their assets, and (xiii) all other known potential creditors in these Cases; and (b) the Court's electronic filing system on those parties receiving electronic notice by such system. The Debtors also propose to place a conspicuous copy of the Transaction Notice on the Debtors' main website at http://www.tridimensionenergy.com and publish a summary of the Transaction Notice in the Southwest Edition of the *Wall Street Journal*, the Baton Rouge *Advocate*, and the *Natchez Democrat*, or such other newspapers or publications that this Court deems appropriate and are acceptable to the Potential Buyer. The Debtors assert that service of such Transaction Notice as proposed herein is proper, due, timely, good, and sufficient notice of, among other things, the

US 601592v.5

entry of the Bid Procedures Order, the Bid Procedures, the Auction (if required under the Bid Procedures), the Sale Hearing, the Sale Motion, and the proposed Transaction, including the transferring of the Debtors' right, title and interest in, to and under substantially all of the Debtors' assets free and clear of any and all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction (if applicable), and the procedure for objecting thereto, and no other or further notice is necessary.

<u>Assumption Notice</u>

26.    In accordance with Bankruptcy Rule 2002, the Debtors must provide notice of the (i) potential assumption and assignment of executory contracts and unexpired leases and rights thereunder, (ii) the maximum amount that the Debtors may pay to cure all defaults, if any, and to pay all losses that have resulted from defaults, under executory contracts and unexpired leases and rights thereunder that the Debtors propose to assume and assign (collectively, the "<u>Cure Amounts</u>"), and (iii) the deadline to file objections to such assumption and assignment, maximum Cure Amounts, the existence of any defaults, and/or adequate assurance of the future performance.

27.    Thus, the Debtors propose to serve the Assumption Notice in substantially the form attached hereto as **<u>Exhibit D</u>**,[7] which will contain a detailed list of the maximum Cure Amounts related to each executory contract and unexpired lease and information as to the party[8] to whom such Cure Amounts will be paid.  As a result of the complexities surrounding these varying types of Cure Amounts, the Debtors propose to (i) pay all valid and undisputed Cure

---

[7] The inclusion of any contract or lease in the Assumption Notice shall not be deemed to be an admission by the Debtors that such contract or lease is an "executory contract" or "unexpired lease" for purposes of Section 365 of the Bankruptcy Code, and the Debtors reserve all rights in connection with same.
[8] The counterparty (or counterparties) or some other third party (or third parties).

Amounts as provided in the cure notices, and/or (ii) establish a cash reserve to satisfy disputed Cure Amounts upon approval by the Court.

28.     In combination with the Transaction Notice, the Assumption Notice (a) contains the type of information required under Bankruptcy Rule 2002 that is currently known to the Debtors, and (b) is reasonably calculated to provide due, adequate and timely notice to all interested parties of (i) the potential assumption and assignment of executory contracts and unexpired leases and rights thereunder, (ii) the maximum amount and manner offered to satisfy the Cure Amounts, (iii) the deadline to file objections to such assumption and assignment, applicable Cure Amounts, and the existence of any defaults and/or adequate assurance of future performance, and (iv) the Sale Hearing.

29.     The Debtors propose to serve the Assumption Notice within three (3) business days after the Court enters the Bid Procedures Order by (a) first class United States mail, postage prepaid on (i) the parties identified on the Master Service List maintained in these Cases at the addresses set forth therein, (ii) all counterparties to executory contracts and unexpired leases that may be assumed by one or more of the Debtors pursuant to Bankruptcy Code § 365 and that the Potential Buyer desires (or may desire) to be assigned by the Debtor party thereto (the "Desired 365 Contracts"); and (b) the Court's electronic filing system on those parties receiving electronic notice by such system.  The Debtors assert that service of such Assumption Notice as proposed is proper, due, timely, good, and sufficient notice of, among other things, the proposed assumption and assignment of the Desired 365 Contracts and rights thereunder, the Cure Amounts, the procedures for objecting thereto, the Sale Hearing, and no other or further notice is necessary.

## Objections and Related Procedures

30. The Debtors request that the following procedures be implemented with respect to the notices discussed herein and relief related thereto:

a. Objections, if any, to the Sale Motion and/or the proposed assumption and assignment of the Desired 365 Contracts and rights thereunder, including but not limited to objections relating to any Cure Amounts, the existence of any defaults, and/or adequate assurances of future performance, must (a) be in writing, (b) state with specificity the nature of such objection, (c) if concerning a Cure Amount, set forth a specific default in the Desired 365 Contract and claim a specific monetary amount that differs from the Cure Amount (if any) specified by the Debtors in the Assumption Notice (with appropriate documentation in support thereof), (d) comply with the Federal Rules of Bankruptcy Procedure, and (e) be filed with this Court and served upon the following parties in accordance with the Assumption Notice on or before 4:00 p.m., prevailing Central time, on November 12, 2010 (the "Objection Deadline"): (u) counsel for the LP Debtors at Vinson & Elkins LLP, Attn: William L. Wallander, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas, (fax) 214.999.7905, bwallander@velaw.com, (v) counsel for the GP Debtors at Franklin Skierski Lovall Hayward LLP, Attn: Peter Franklin, 10501 N. Central Expressway, Suite 106, Dallas, Texas 75231, fax 972.755.7100, pfranklin@fslhlaw.com, (w) counsel for the Potential Buyer at Jones Day, Attn: Tom A. Howley, 717 Texas, Suite 3300, Houston, Texas, 77002-2712, (fax) 832.239.3600, tahowley@jonesday.com, (x) counsel for the DIP Agent and Agent at Mayer Brown LLP, Attn: Charles S. Kelley, 700 Louisiana Street, Suite 3400, Houston, Texas, 77002-2730, (fax) 713.238.2634, ckelley@mayerbrown.com, (y) counsel for the Official Committee of Unsecured Creditors at Gardere Wynne Sewell LLP, Attn: Richard M. Roberson, 1601 Elm Street, Suite 3000, Dallas, Texas, 75201, (fax) 214.999.3955, rroberson@gardere.com, and (z) the United States Trustee's Office at Office of the United States Trustee, Attn: Nancy S. Resnick, 1100 Commerce Street, Room 9-C-60, Dallas, Texas, 75242, (fax) 214.767.6530, Nancy.S.Resnick@usdoj.gov (collectively, the "Notice Parties").

b. The Debtors are authorized to amend the Assumption Notice by amending Cure Amounts by sending a new or amended Assumption Notice at any time at least five (5) calendar days prior to the Sale Hearing; provided, however, that counterparties to any Desired 365 Contracts whose Cure Amounts are amended shall have at least five (5) calendar days from service of the amended Assumption Notice to properly object to such Cure Amount amendment. The Debtors are authorized to amend the Assumption Notice by adding or deleting Desired 365 Contracts at any time prior to the Sale Hearing, and they shall use commercially reasonable efforts to affect the assumption and assignment of any such added 365 Contract (as defined in the Purchase Agreement or other definitive agreement to effectuate an Alternative Transaction (if applicable)) and rights thereunder by the applicable Debtor in accordance with the Bankruptcy Code and Sale Motion;

provided, however, that counterparties to any such added 365 Contracts shall have at least five (5) calendar days from service of the amended Assumption Notice to properly object to the assumption and assignment of their respective Desired 365 Contract and rights thereunder and the applicable Cure Amount.

c.     Any Person (as defined in the Purchase Agreement) failing to timely file an objection to the Sale Motion shall be forever barred from objecting to the Sale Motion, including the transferring of the Debtors' right, title, and interest in, to and under substantially all of the Debtors' assets in accordance with the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable) free and clear of any and all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or other definitive agreement for an Alternative Transaction, if applicable, and will be deemed to consent to the Transaction or an Alternative Transaction (as applicable), including the transferring of the Debtors' right, title, and interest in, to and under substantially all of the Debtors' assets in accordance with the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable) free and clear of any and all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or such other definitive agreement for an Alternative Transaction, if applicable, and provided by such Transaction or Alternative Transaction.

d.     Any Person failing to timely file an objection to any Cure Amounts set forth in the Assumption Notice or the proposed assumption and assignment of the Debtors' right, title and interest in, to and under Desired 365 Contracts shall be forever barred from objecting to the Cure Amounts and from asserting a claim for any cure or other amounts (or asserting that any defaults exist under the Desired 365 Contract as of the date of assumption) against any Debtors, their estates, the Potential Buyer or any of their respective affiliates (or such other Person that agrees to purchase the Properties under an Alternative Transaction that is approved by the Bankruptcy Court) with respect to its Desired 365 Contract arising prior to assumption and assignment of the Debtors; right, title and interest in, to and under the Desired 365 Contract and will be deemed to consent to the proposed assumption and assignment of the Desired 365 Contract and rights thereunder as provided by such Transaction or Alternative Transaction.

e.     Where a counterparty to a Desired 365 Contract files a timely objection asserting a higher cure amount than the maximum Cure Amount set forth in the Assumption Notice and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Sale Hearing or such other date and time as may be fixed by this Court. All other objections to the proposed assumption and assignment of the Debtors' right, title and interest in, to and under the Desired 365 Contracts will be heard at the Sale Hearing.

f.     If any Person asserts that any property or right cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and

other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable), in accordance with the Transaction (or Alternative Transaction, as applicable) and Bankruptcy Code §§ 363 and/or 365 on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights, then such Person shall file and serve a notice with all supporting documentation (a "Rights Notice") so that the Rights Notice is actually received by the Notice Parties on or before the Objection Deadline. Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right. The assertion of a Rights Notice shall not require an exercise of the underlying right asserted and any such right asserted shall be subject to the terms and conditions of the Purchase Agreement or definitive agreement for an Alternative Transaction, as the case may be (including, without limitation, any allocation contained therein).

g.      Any Person failing to timely file and serve a Rights Notice shall be (a) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the properties of the Debtors to be sold, assumed and/or assigned pursuant to the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable) including, without limitation, the rights to act as operator under the Operated JOAs (as defined in the Purchase Agreement) (which rights shall be assigned to and vest in the Buyer Designated Operator (as defined in the Purchase Agreement)), free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable), and from asserting any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under such properties, as set forth in the Purchase Agreement or such other definitive agreement for an Alternative Transaction (if applicable), and (b) deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under the properties, free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction, as applicable (regardless of whether such consent must be in writing).

h.      If any Person timely files and serves a Rights Notice in accordance with the Bid Procedures Order, the Debtors shall have the opportunity to object to any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights asserted by such Person by filing an objection to such Rights Notice at any time prior to the Sale Hearing. Upon the Debtors' filing of such objection to the

US 601592v.5

Rights Notice, any rights asserted shall be deemed to be disputed and the Debtors shall be entitled to assert a bona fide dispute exists as to such rights asserted. Nothing herein shall be deemed to be a waiver of any rights of the Debtors to contest any rights asserted by any Person in Rights Notices; all such rights of the Debtors are expressly preserved.

31.     The Debtors assert that the Transaction Notice and the Assumption Notice to be provided and the method of service proposed herein constitute good, proper and adequate notice of the Sale Motion, the Transaction or Alternative Transaction (as applicable), and the proceedings to be had with respect thereto (including, but not limited to, the Auction and the Sale Hearing).   Therefore, the Debtors respectfully request that this Court approve the foregoing notice and objection procedures.

## Bidding Protections Are Fair and Reasonable

32.     The Debtors, through their investment bankers, have aggressively marketed the assets and properties of the Debtors.  Although the Debtors have determined in their reasonable business judgment that the Transaction should be subject to the Auction, such Auction would be of little value absent the Potential Buyer setting the minimum value for the Transaction (or Alternative Transaction, as applicable).   As a result, the Debtors request authority to pay the Potential Buyer $750,000.00 (the "Break-Up Fee") if the conditions set forth in the Purchase Agreement and Bid Procedures are satisfied.  The Debtors propose that the Break-Up Fee be paid, in cash, on or within two business days of the date of consummation of the first Alternative Transaction, from the sale proceeds thereof or, in the event of a successful credit bid by the Lenders, the Lenders shall pay the Break-Up Fee directly to the Potential Buyer and evidence payment of same in writing to the Debtors.  The Debtors propose that such Break-Up Fee shall constitute an administrative expense claim against the Debtors pursuant to Bankruptcy Code § 503(b) or 507(a)(2) and, to the extent that an Alternative Transaction has been consummated, shall be part of the "Carve-Out" set forth in the most recent post-petition financing orders

entered in these Cases, but only to the extent unencumbered proceeds of the Alternative Transaction are not available to pay the Break-Up Fee.

33.     The Debtors submit that the Potential Buyer has expended, and likely will continue to expend, considerable time, money and energy pursuing the Transaction and has engaged in extended and lengthy good faith negotiations. In particular, the Purchase Agreement is part of an extensive process undertaken by the Debtors and their professionals to identify and negotiate a transaction that the Debtors currently believe to be the highest or best proposal for an acquisition of the Properties, in order to maximize the value realized for the benefit of the Debtors' estates, their creditors and other parties in interest.

34.     The Debtors submit that the Purchase Agreement and the Break-Up Fee were negotiated, proposed and entered into by the Debtors and Potential Buyer without collusion, in good faith and from arms' length bargaining positions.

35.     The Debtors submit that the Break-Up Fee is (1) an actual and necessary cost of preserving the Debtors' estates within the meaning of Section 503(b) and 507(a) of the Bankruptcy Code, (2) commensurate to the real and substantial benefit conferred on the Debtors' estates by the Potential Buyer, and (3) reasonable and appropriate in light of, among other things (a) the size and nature of the Transaction contemplated under the Purchase Agreement and comparable transactions, (b) the substantial efforts that have been and will be expended by the Potential Buyer, (c) the benefits the Potential Buyer has provided to the Debtors' estates, their creditors and other parties in interest, notwithstanding that the Purchase Agreement may be terminated by the Debtors if any higher or otherwise better Alternative Transaction is identified and consummated, and (d) necessary to induce the Potential Buyer to serve as a "stalking horse" bidder and to continue to pursue the Transaction. The grant, allowance and payment of the

Break-Up Fee are in the best interest of the Debtors, their respective estates and their creditors. The Break-Up Fee induced the Potential Buyer to submit a bid that will serve as a minimum floor on which the Debtors, their creditors and other bidders may rely. The Potential Buyer has provided a material benefit to the Debtors and their creditors (and the Debtors have received a material benefit) by increasing the likelihood that the best possible price for the Properties will be received.

36.     The Debtors submit that payment to the Potential Buyer of the Break-Up Fee under the terms and conditions set forth in the Purchase Agreement and the Bid Procedures should be approved because, among other things: (1) the protection afforded to the Potential Buyer by the Break-Up Fee was a material inducement for, and express condition of, the Potential Buyer's willingness to enter into the Purchase Agreement, and (2) assurance to the Potential Buyer of payment of the Break-Up Fee has promoted (and will promote) more competitive bidding by, among other things, inducing the Potential Buyer's offer, which offer otherwise would not have been made and without which competitive bidding would be limited. Further, the Break-Up Fee induced the Potential Buyer to conduct due diligence with respect to the Transaction. Thus, the Potential Buyer has provided a material and substantial benefit to the Debtors' estates, their creditors and other parties in interest by increasing the likelihood that the price at which a Transaction may be effected, or a sale of the Debtors' right, title and interest in, to and under substantially all of the Debtors' assets will be made, will reflect their true value. Accordingly, the Bid Procedures and the Break-Up Fee are fair, reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

37.     The payment of the Break-Up Fee under the terms and conditions set forth in the Purchase Agreement and the establishment of the Bid Procedures are both reasonable and

necessary to induce the Potential Buyer to enter into the Purchase Agreement and to obtain the highest price possible for the assets and properties of the Debtors.

38. The payment of a termination or break-up fee is normal and customary in transactions of this nature. Such fees frequently have been approved in connection with transactions in other chapter 11 cases. Break-up fees are a vital means by which a debtor in possession can manage value maximization risk by setting a value floor for assets to be conveyed, which is a key benefit to the Debtors and their estates and weighs heavily in favor of approving the Break-Up Fee. Moreover, without prompt approval of the Break-Up Fee, the sale and reorganization process would be substantially hampered. Such fees encourage an initial bidder to invest the time, effort and money necessary to consummate the transaction, despite the possibility that such bidder may not ultimately effectuate the transaction. A break-up fee is an important tool to be used to encourage bidding. Court approval of the Break-Up Fee is necessary, reasonable, and in the best interests of the Debtors, their estate and creditors.

39. The determination of whether a break-up fee should be allowed is made based on whether the fees and expenses are necessary to preserve the value of the estate. *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 534 (3rd Cir. 1999). The considerations that underlie a debtor's business judgment to pay a break-up fee are relevant to the Court's determination of the request. *Id*. Indeed, courts have evaluated break-up fee arrangements under the business judgment rule standard. *Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't Stores*, 683 F.Supp. 422 (S.D.N.Y. 1988); *In re Integrated Res., Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed by* 3 F.3d 49 (2nd Cir. 1993).

40. It is well-established that "[a] bankruptcy court should uphold a break-up fee which was not tainted by self-dealing and was the product of arm's-length negotiations." *In re*

*Integrated Res., Inc.*, 147 B.R. at 658. In the instant case, the proposed Break-Up Fee is the product of good faith, arm's-length negotiations among the Debtors and the Potential Buyer. The Break-Up Fee is approximately 2.7% of the consideration to be received by the Debtors under the Purchase Agreement. It is the Debtors' business judgment that the Break-Up Fee is fair and reasonable in light of the time, effort, cost and expense that the Potential Buyer has incurred, and will continue to incur, in negotiating the Purchase Agreement and related transaction documents, and the aggregate consideration to be paid by the Potential Buyer.

41. Further, the Break-Up Fee is necessary to enhance and preserve the value of the assets and properties of the Debtors for their estates and to allow them to obtain the best "stalking-horse" bid possible. Without the "stalking-horse" bid, the consideration for the Transaction or Alternative Transaction (as applicable) would be minimized. If higher or better bids in connection with an Alternative Transaction are received, it will be because the Potential Buyer has served as "stalking-horses" for such offers.

42. The Break-Up Fee of approximately 2.7% is within the spectrum of termination fees approved by bankruptcy courts in chapter 11 cases in this and other districts. *See e.g., In re VarTec Telecom, Inc.,* Case No. 04-81694 (SAF) (Bankr. N.D. Tex., November 23, 2004 and April 15, 2005) (Court approved a break-up fee of approximately 3% with respect to two sales of assets); *In re Datavon, Inc., et al.,* Case No. 02-38600-SAF-11 (Bankr. N.D. Tex. 2002) [Docket No. 224] (approving a 3% break-up fee); *In re Mirant Corp., et al.,* Case No. 03-46590 (DML) (Bankr. N.D. Tex. 2004) [Docket No. 6092] (approving 3% break-up fees); *In re Ameriserve*, Case No. 00-0358 (PJW) (Bankr. D. Del., September 27, 2000) (Court approved a break-up fee of 3.64% or $4,000,000 in connection with $110,000,000 sale); *In re Montgomery Ward Holding Corp.*, et al., Case No. 97-1409 (PJW) (Bankr. D. Del., June 15, 1998) (Court approved

termination fee of 2.7%, or $3,000,000, in connection with $110,000,000 sale of real estate assets); *see also Integrated Res.*, 147 B.R. at 648; *In re Crowthers McCall Pattern, Inc.*, 113 B.R. 877, 879 (Bankr. S.D.N.Y. 1990); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989); *In re Crusader Energy Group Inc.*, Case No. 09-31797 (Bankr. N.D. Tex. 2009) (approving approximately 3% break-up fee).

43.     As stated, the Purchase Agreement is subject to higher or better offers received pursuant to the Bid Procedures.  If higher or better offers emerge, they will be considered with reference and by comparison to the terms of the Purchase Agreement.  Therefore, the Break-Up Fee should be approved because it is necessary to maximize the value of the Transaction or Alternative Transaction (as applicable), and it does not prejudice the Debtors' estates.

## No Prior Request

44.     No prior request for the relief sought herein has been requested from this Court or any other court.

## PRAYER

The Debtors respectfully request the Court (a) approve the Bid Protections, including the Break-Up Fee, and the Potential Buyer as the "stalking horse" bidder subject to all terms and conditions in the Purchase Agreement, (b) approve the Bid Procedures, (c) approve the Transaction Notice, (d) approve the Assumption Notice, (e) establish procedures for objections to the Sale Motion and for determining cure amounts in connection with the assumption and assignment of executory contracts and unexpired leases and rights thereunder, (f) set a hearing on the Sale Motion, and (g) grant such other relief as is fair and equitable.

Dated:  October 19, 2010

US 601592v.5

Respectfully submitted,

| | |
|---|---|
| */s/ William L. Wallander* | */s Peter Franklin* |
| William L. Wallander, SBT #20780750 | Peter Franklin, SBT #07378000 |
| Clayton T. Hufft, SBT #24056658 | Erin K. Lovall, SBT #24032553 |
| Bradley R. Foxman, SBT #24065243 | **FRANKLIN SKIERSKI LOVALL** |
| **VINSON & ELKINS LLP** | **HAYWARD LLP** |
| Trammell Crow Center | 10501 N. Central Expressway, Suite 106 |
| 2001 Ross Avenue, Suite 3700 | Dallas, TX 75231 |
| Dallas, Texas 75201-2975 | Tel: 972.755.7100 |
| Tel: 214.220.7700 | Fax: 972.755.7110 |
| Fax: 214.220.7716 | pfranklin@fslhlaw.com; elovall@fslhlaw.com |
| bwallander@velaw.com; chufft@velaw.com | |
| bfoxman@velaw.com | **COUNSEL FOR THE GP DEBTORS** |
| | |
| **COUNSEL FOR THE LP DEBTORS** | |

US 601592v.5

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on October 19, 2010, a copy of the foregoing document was served by the Electronic Case Filing system for the United States Bankruptcy Court for the Northern District of Texas on those parties receiving electronic notice by such system.

                     */s/ Bradley R. Foxman*
                               One of Counsel