**EXHIBIT B**

## BID PROCEDURES

On October 19, 2010, TDE Operating GP LLC ("Operating GP"), TriDimension Energy, L.P. ("TriDimension"), TDE Subsidiary GP LLC, TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, and Ram Drilling, LP (collectively, the "Debtors") filed their *Motion for an Order Authorizing (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of Claims, Encumbrances, Liens, and Interests, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Related Relief* [Docket No. __] (the "Sale Motion"). Subject to receipt of a higher or better offer(s), under the Sale Motion, the Debtors propose to effectuate the transactions contemplated by the Asset Purchase Agreement dated as of October 18, 2010 (the "Purchase Agreement") among SR Acquisitions I, LLC (the "Potential Buyer") and the applicable Debtors parties thereto (the "Transaction"). The Purchase Agreement provides for the transfer of the Debtors' right, title, and interest in, to and under substantially all of the Debtors' assets. These Bid Procedures[1] have been approved and authorized pursuant to the *Order (A) Approving the Procedures for the Solicitation of Offers; (B) Approving the Form and Manner of Notice; (C) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (D) Approving the Bid Protections and Procedures; and (E) Approving a Break-Up Fee in Connection with the Transaction Contemplated by the Purchase Agreement* [Docket No. __] (the "Bid Procedures Order") entered by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, on October __, 2010.

## The Bidding Process

Under the circumstances set forth in the Purchase Agreement and subject to the conditions set forth therein, at any time on or before November 11, 2010 at 4:00 p.m. (prevailing Central Time) (the "Bid Deadline"), TriDimension[2] may, directly or indirectly through its Representatives[3], (i) engage in discussions and negotiations regarding an Alternative Transaction (as defined in the Purchase Agreement) with any entity (the "Alternative Bidder") that the board of directors of Operating GP or any committee of the board of directors of Operating GP acting pursuant to authority of such committee granted by such board of directors (the "Board of Directors") reasonably believes could lead to a bona fide written offer relating to an Alternative Transaction that would meet the requirements of these Bid Procedures (the "Superior Proposal"), (ii) furnish to such Alternative Bidder and its Representatives, and to any other party that has made a request therefor (together with the Alternative Bidders, the "Potential Bidders") in connection with its consideration of making an offer or proposal relating to an Alternative Transaction (each, a "Bid"), public and non-public information relating to any Debtor pursuant to a confidentiality agreement with such Potential Bidder (the "Confidentiality Agreement") containing terms that are no less favorable to the Debtors than those contained in the confidentiality agreement dated April 29, 2010 between TriDimension and the Potential Buyer,

---

[1] Except as expressly noted herein, capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order.

[2] In acting under these Bid Procedures, TriDimension is expressly authorized to act on its own behalf and on behalf of the other Debtors pursuant to the Order of the Bankruptcy Court approving these Bid Procedures.

[3] "Representatives" means, with respect to any person, the officers, directors, employees, members, managers, partners, investment bankers, attorneys, accountants, consultants or other advisors, agents or representatives of such person, when acting in such capacity on behalf of such person.

and afford to any such Potential Bidder who has signed a Confidentiality Agreement reasonable access to any datasite, properties, assets, books or records of any Debtor or the business of the Debtors. Each Confidentiality Agreement entered into after the date of the entry of the Bid Procedures Order shall recognize that the Debtors are obligated to comply with the terms of these Bid Procedures. Each confidentiality agreement previously entered into between the Debtors and a Potential Bidder in effect on the date of the entry of the Bid Procedures Order shall be deemed to be a Confidentiality Agreement. By participating in the Bidding Process (as defined below), each Potential Bidder shall be deemed to have agreed to any and all modifications to any previously executed confidentiality agreement as necessary to permit the Debtors to comply with the terms of these Bid Procedures and the Purchase Agreement.

TriDimension shall provide these Bid Procedures, together with a copy of the Purchase Agreement, to each Potential Bidder after the Court's entry of the Bid Procedures Order. To the extent the Purchase Agreement is amended, modified or supplemented after the date of the Purchase Agreement (collectively, the "Supplemental Information"), such Supplemental Information also shall be provided to parties to whom the Purchase Agreement is delivered pursuant to the preceding sentence.

Any Potential Bidder wishing to conduct due diligence concerning a prospective Alternative Transaction shall be granted access, subject to execution of a Confidentiality Agreement, to all relevant business and financial and other information of the Debtors necessary to enable such Potential Bidder to evaluate the assets of the Debtors and the prospective Alternative Transaction. TriDimension shall make such access available during normal business hours as soon as reasonably practicable. Potential Bidders interested in conducting due diligence should contact Joseph Allio at Stephens Inc., 300 Crescent Court, Suite 600, Dallas, Texas 75201, (phone) 214.258.2764, (fax) 214.258.2740, joe.allio@stephens.com. Notwithstanding the foregoing, the Debtors are not required to provide confidential or proprietary information to any person if TriDimension reasonably believes that such disclosure would be detrimental to the interests and operations of the Debtors or any of the Debtors' affiliates.

Prior to the selection of the Transaction or the proposed Alternative Transaction as the highest or best offer (the "Successful Bid"), TriDimension may: (a) receive Bids from Potential Bidders, (b) request information from Potential Bidders and engage in discussions with Potential Bidders and take such other actions TriDimension desires to determine whether any Bid constitutes or could lead to a Superior Proposal, (c) evaluate any Bid made by a Potential Bidder, (d) engage in discussions and negotiations with any Alternative Bidder with respect to any Bid submitted by an Alternative Bidder, and (e) take any other actions contemplated under these Bid Procedures (collectively, the "Bidding Process").[4]

**Deliveries by Potential Bidders**

In order to participate in the Bidding Process, each Potential Bidder (but not the Potential Buyer) must deliver (unless previously delivered in a form acceptable to TriDimension as

---

[4] Nothing herein shall be deemed to limit or otherwise modify any of the Debtors' respective rights under the Purchase Agreement.

provided herein or waived by TriDimension in its sole and absolute discretion) to TriDimension prior to the Bid Deadline:

(a) An executed Confidentiality Agreement acceptable to TriDimension; and

(b) Financial statements of, or other information relating to, the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of the Alternative Transaction, financial statements of or other information relating to the equity holder(s) of the Potential Bidder, or such other form of financial disclosure or evidence of financial capability and performance and legal authority acceptable to TriDimension and its advisors as requested by TriDimension (and, if requested by TriDimension, certified to by a duly authorized representative of the Potential Bidder (or equity holders thereof, as applicable)), demonstrating such Potential Bidder's (individually or jointly with other Potential Bidders with whom such Potential Bidder is acting jointly, with the consent of TriDimension and without improper collusion under Bankruptcy Code § 363, in submitting a Bid) financial capability and legal authority to close the proposed transaction in a timely manner.

A Potential Bidder (or group of Potential Bidders acting jointly with the consent of TriDimension and without improper collusion under the Bankruptcy Code) that delivers the documents described in subparagraphs (a) and (b) above, and that TriDimension determines, in its business judgment, is financially capable of consummating the Alternative Transaction in a timely manner shall be permitted to further participate in the Bidding Process. TriDimension may require an update of such information and an affirmation of any Potential Bidder's financial capability to bid and consummate any Transaction or Alternative Transaction contemplated hereunder.

## Due Diligence for Potential Bidders

To obtain due diligence access or additional information from the Debtors, a Potential Bidder must first advise TriDimension of the nature and extent of additional due diligence such Potential Bidder may wish to conduct. TriDimension will designate an employee or other representative (which may be the Debtors' financial advisor or investment banker) to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline, except as otherwise agreed to by TriDimension in writing. None of the Debtors, their affiliates or any of their respective Representatives are obligated to furnish any information relating to the properties or equity interests in any of the respective Debtors to any person other than a Potential Bidder.

## Submission by Bid Deadline

A Potential Bidder who desires to make a Bid must deliver a written copy of its Bid on or before the Bid Deadline to counsel for the LP Debtors at Vinson & Elkins LLP, Attn: William L. Wallander, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas 75201, (fax) 214.999.7905, bwallander@velaw.com and to the investment bankers for the Debtors at

Stephens Inc., Attn: Joseph Allio, 300 Crescent Court, Suite 600, Dallas, Texas 75201, (fax) 214.258.2740, joe.allio@stephens.com.  TriDimension may, with the consent of the Potential Buyer, extend the Bid Deadline, but shall promptly notify the Potential Buyer and all Potential Bidders of any such extension.

### Determination of "Qualified Bid" Status

A Bid received from a Potential Bidder will constitute a "Qualified Bid" only if it includes all of the following documents (the compliance of which shall be determined by TriDimension in its sole and absolute discretion) and a good faith deposit as described below (collectively, the "Required Bid Documents") and meets all of the Bid Requirements (as defined below):

(a) A written acquisition agreement duly executed by the Potential Bidder, together with a copy of such agreement marked to show the specific changes to the Purchase Agreement that the Potential Bidder requires (which marked copy may be an electronic comparison of the written acquisition agreement submitted and the Purchase Agreement). The acquisition agreement submitted by a Potential Bidder:

(i) shall include a complete set of all disclosure schedules and exhibits thereto which, to the extent practicable, will be marked to show the specific changes to the disclosure schedules and exhibits to the Purchase Agreement, if applicable;

(ii) shall not contain any financing or due diligence contingencies to closing on the proposed transaction;

(iii) shall not contain any condition to closing of the transaction on the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental, and/or regulatory approval, if any); and

(iv) shall provide that the offer of the Potential Bidder is irrevocable through twenty days after the entry of an Order approving the Sale Motion and subject to the backup bidder provisions hereinbelow.

(b) An executed escrow agreement in substantially the form of Exhibit H to the Purchase Agreement and a good faith deposit (the "Good Faith Deposit") in the form of a certified or bank check (or other form acceptable to TriDimension in its sole and absolute discretion) payable to the order of TriDimension (or such other party as TriDimension may designate) in the amount of $1,500,000.

Each Potential Bidder that makes a Qualified Bid shall be referred to as a "Qualified Bidder." The Potential Buyer shall be deemed to be a Qualified Bidder and the Purchase Agreement and the Transaction shall be deemed to be a Qualified Bid.

**Bid Requirements**

All Bids must also satisfy all of the following requirements, all solely as determined by TriDimension (and, as to clause (a), by TriDimension in its business judgment after consultation with the Lenders[5] (as defined in the Sale Motion) and the Official Committee of Unsecured Creditors (the "Committee")) (collectively, the "Bid Requirements"):

(a) The Bid must provide for an aggregate consideration of at least $1,250,000 greater than the Purchase Price (as defined in the Purchase Agreement) under the Purchase Agreement (subject to adjustment as provided in the Purchase Agreement or, as to adjustments related to title or environmental defects, a methodology for such adjustments based on the allocated value of the Debtors' assets as submitted by a Potential Bidder; provided, that, any proposed adjustments to the Purchase Price must be submitted with the Bid and any Defect Notice (as defined in the Purchase Agreement) must be submitted by the Bid Deadline). In making this determination, TriDimension, in consultation with Representatives of the Lenders and Committee, may consider, among other things, the amount of cash and other consideration to be paid or delivered and the liabilities to be assumed or otherwise satisfied, and the determination by TriDimension hereunder shall be final for the purposes of these Bid Procedures.

(b) The Bid must be accompanied by satisfactory evidence of committed financing or other financial ability to consummate the Alternative Transaction in a timely manner.

(c) The Bid cannot be conditioned upon the Bankruptcy Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment.

(d) The Bid must expressly acknowledge and represent that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the business assets of the Debtors and the Alternative Transaction prior to making its Bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and the assets of the Debtors in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or assets of the Debtors or the Alternative Transaction, or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Purchase Agreement ultimately accepted and executed by the applicable Debtors.

(e) The Bid must identify each and every executory contract and unexpired lease that is to be assumed and assigned to the Potential Bidder pursuant to the Alternative Transaction.

---

[5] Any of the Lenders' rights of consultation set forth in these Bid Procedures will not apply in the event the Lenders assert or submit any credit bid pursuant to Bankruptcy Code Section 363(k).

(f) The Bid must be received by the Bid Deadline.

**Auction**

Prior to the Auction (as defined below), TriDimension shall evaluate the Qualified Bids and select the Qualified Bid or combination of Qualified Bids that TriDimension, in consultation with Representatives of the Lenders and Committee, determines in its business judgment to be the highest or best Qualified Bid(s) (the "Initial Highest Bid"). In making this determination, TriDimension, in consultation with Representatives of the Lenders and Committee, may consider, among other things, the amount of cash and other consideration to be paid or delivered and the liabilities to be assumed or otherwise satisfied, and the determination by TriDimension hereunder shall be final for the purposes of these Bid Procedures.

If one or more Qualified Bids are determined by TriDimension in its business judgment to be higher or better than the Potential Buyer's Qualified Bid, TriDimension will conduct an auction (the "Auction") with respect to such Qualified Bids in order to determine, in the business judgment of TriDimension, in consultation with the Representatives of the Lenders and Committee present at the Auction, the Successful Bid. If (a) no Qualified Bid (other than that of the Potential Buyer) is received by the Bid Deadline and (b) the Lenders do not exercise valid credit bid rights, if any, pursuant to Bankruptcy Code Section 363(k) by providing written notice on or before November 11, 2010 at 5:00 p.m. (prevailing Central Time) to the Debtors and Potential Buyer thereof and of their intent to submit a higher or better Bid than the Potential Buyer's Qualified Bid at the Auction, then TriDimension will deem the Potential Buyer's Qualified Bid the Successful Bid, and the Debtors will proceed to consummate the Purchase Agreement following the approval of the Sale Motion without conducting the Auction.

The Auction, if required, will commence at 9:30 a.m. (prevailing Central Time) on November 16, 2010, at the offices of Vinson & Elkins, L.L.P., 2001 Ross Avenue, Suite 3700, Dallas, Texas 75201 or at such later time or other place as agreed by the Potential Buyer and TriDimension, in consultation with Representatives of the Lenders and Committee, or approved by Order of the Bankruptcy Court, and of which TriDimension will notify all Qualified Bidders who have submitted Qualified Bids that TriDimension has determined are higher or better than the Potential Buyer's Qualified Bid (collectively, together with the Potential Buyer, the "Auction Participants").

Promptly upon determination of the Initial Highest Bid, and in any event, at least one business day prior to the commencement of the Auction, TriDimension will provide to the Auction Participants, the Lenders and the Committee a copy of the Initial Highest Bid. In order to allow the Auction Participants to evaluate the Initial Highest Bid, TriDimension shall use commercially reasonable efforts to disclose the value, if any, that in its business judgment, it places on the Initial Highest Bid and on such Auction Participant's Qualified Bid.

Only the Debtors, the Auction Participants, potential financing sources of Auction Participants, their respective professionals, and a reasonable number of representatives of the Lenders, Committee and Office of the United States Trustee will be entitled to attend, participate and be heard at the Auction, but only the Auction Participants (including the Potential Buyer) and the Lenders (provided that the Lenders have provided written notice to the Debtors and

Potential Buyer on or before November 11, 2010 at 5:00 p.m. (prevailing Central Time) of their intent to exercise their credit bid rights, if any, pursuant to Bankruptcy Code Section 363(k), and only to the extent of any such valid credit bid rights (if any)) will be entitled to make any subsequent Qualified Bids at the Auction.

At the commencement of the Auction, TriDimension shall formally announce the Initial Highest Bid. All Qualified Bids at the Auction will be based on and increased therefrom, and thereafter made in minimum increments of at least $100,000[6] higher than the previous Qualified Bid or in such higher increments as TriDimension may determine. The Potential Buyer's bid shall include the amount of the Break-Up Fee (as defined below) as a component of any subsequent Qualified Bid submitted by the Potential Buyer. For example, if at the Auction a subsequent Qualified Bid submitted by the Potential Buyer is the Successful Bid (over another Qualified Bid that was submitted), then the purchase price that must be paid by the Potential Buyer pursuant to such Successful Bid shall be reduced by the amount of the Break-Up Fee (such that the net amount received by the Debtors is the highest amount bid). TriDimension, in consultation with the Representatives of the Lenders and Committee present at the Auction, shall have the right to adopt such other rules for the Auction which it believes in its business judgment will promote the goals of the Auction.

The Potential Buyer and, by making a Qualified Bid at the Auction, each Auction Participant, shall be deemed to have agreed to keep its final Qualified Bid made at or prior to the Auction open through twenty days after the entry of an Order approving the Sale Motion. Bidding at the Auction will continue until such time as the highest or otherwise best Qualified Bid is determined in the business judgment of TriDimension, in consultation with Representatives of the Lenders and Committee present at the Auction. To facilitate a deliberate and orderly consideration of competing Qualified Bids submitted at the Auction, TriDimension, in its sole and absolute discretion, may adjourn the Auction at any time and from time-to-time and may conduct multiple rounds of bidding. Prior to conclusion of the Auction, TriDimension may, in consultation with Representatives of the Lenders and Committee, permit one or more Auction Participants to join together as a single Qualified Bidder for the purpose of submitting a joint Qualified Bid to acquire specified assets or properties of the Debtors. Upon conclusion of the Auction, TriDimension will (a) review each Qualified Bid on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale and (b) in consultation with Representatives of the Lenders and Committee present at the Auction, identify the Successful Bid. In making this determination, TriDimension, in consultation with Representatives of the Lenders and Committee present at the Auction, may consider, among other things, the amount of cash and other consideration to be paid or delivered and the liabilities to be assumed or otherwise satisfied, and the determination by TriDimension hereunder shall be final for the purposes of these Bid Procedures.

---

[6] Minimum bid increments must consist solely of cash consideration unless otherwise authorized by TriDimension in the exercise of its business judgment, in consultation with Representatives of the Lenders and Committee present at the Auction.

**Break-Up Fee**

If (a) the Purchase Agreement is terminated (i) by the Potential Buyer pursuant to and in accordance with Section 9.01(d)(ii) of the Purchase Agreement or (ii) by the Debtors pursuant to and in accordance with Section 9.01(e)(i) of the Purchase Agreement, (b) the other requirements of Section 9.03 of the Purchase Agreement are satisfied, and (c) any Debtor or Debtors consummate any Alternative Transaction at any time on or prior to the date that is eighteen calendar months after the date of the Purchase Agreement, the Debtors shall pay to the Potential Buyer an amount equal to $750,000 (the "Break-Up Fee") in cash, within two business days of the date of consummation of the first Alternative Transaction, from the sale proceeds thereof or, in the event of a successful credit bid by the Lenders, the Lenders shall pay the Break-Up Fee in cash directly to the Potential Buyer upon consummation of this type of Alternative Transaction and evidence payment of same in writing to the Debtors. Such Break-Up Fee shall constitute an administrative expense Claim against any Debtor under Section 503(b) or 507(a)(2) of the Bankruptcy Code and, to the extent an Alternative Transaction has been consummated, be entitled to a "carve-out" priority status with regard to any security interest the Lenders hold in any proceeds from the sale of Lenders' collateral in such Alternative Transaction but only to the extent unencumbered sales proceeds thereof, if any, are not available to pay the Break-Up Fee. Such right to payment from sales proceeds of an Alternative Transaction shall be *pari-passu* with any other party entitled to "carve-out" priority status in any cash collateral or DIP financing orders approved by the Bankruptcy Court. However, provided that the Potential Buyer is ready, willing and able to consummate the Transaction in accordance with the Purchase Agreement and the deadlines within any Bankruptcy Court order, if the Alternative Transaction includes a conveyance, assignment or transfer of ownership to the Lenders without generating proceeds, the Potential Buyer's right to the Break-Up Fee shall be paid by the Lenders upon consummation of such Alternative Transaction.

**Sale Hearing**

An evidentiary hearing to consider the Sale Motion and approval of the Successful Bid (the "Sale Hearing"), will be held on November 17, 2010 at 1:30 p.m prevailing Central Time (the "Sale Hearing Date") in the courtroom of the Honorable Stacey G.C. Jernigan, 1100 Commerce Street, 14th Floor, Dallas, Texas 75242. The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court or by the Debtors with the approval of the Successful Bidder but without further notice to creditors and parties in interest other than by announcement by Debtors of the adjourned date at the Sale Hearing.

The Debtors' presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute the Debtors' acceptance of the Bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by Order of the Bankruptcy Court.

**Objections**

Objections, if any, to the Sale Motion shall be filed and served such that each objection is actually received by the following parties on or before 4:00 p.m., prevailing Central time, on November 12, 2010 (the "Objection Deadline"): (a) counsel for the LP Debtors at Vinson & Elkins LLP, Attn: William L. Wallander, Trammell Crow Center, 2001 Ross Avenue, Suite

3700, Dallas, Texas 75201 (fax) 214.999.7905, bwallander@velaw.com, (b) counsel for the GP Debtors at Franklin Skierski Lovall Hayward LLP, Attn: Peter Franklin, 10501 N. Central Expressway, Suite 106, Dallas, Texas 75231, fax 972.755.7100, pfranklin@fslhlaw.com, (c) counsel for the Potential Buyer at Jones Day, Attn: Tom A. Howley, 717 Texas, Suite 3300, Houston, Texas, 77002-2712, (fax) 832.239.3600, tahowley@jonesday.com, (d) counsel for the DIP Agent and Agent at Mayer Brown LLP, Attn: Charles S. Kelley, 700 Louisiana Street, Suite 3400, Houston, Texas, 77002-2730, (fax) 713.238.2634, ckelley@mayerbrown.com, (e) counsel for the Official Committee of Unsecured Creditors at Gardere Wynne Sewell LLP, Attn: Richard M. Roberson, 1601 Elm Street, Suite 3000, Dallas, Texas 75201, (fax) 214.999.3955, rroberson@gardere.com, and (f) the United States Trustee's Office at Office of the United States Trustee, Attn: Nancy S. Resnick, 1100 Commerce Street, Room 9-C-60, Dallas, Texas 75242, (fax) 214.767.6530, Nancy.S.Resnick@usdoj.gov.

### Back-Up Bidders

If the Auction Participant whose Qualified Bid is the Successful Bid (the "Successful Bidder") fails to consummate the Transaction or Alternative Transaction (as applicable) because of a breach or failure to perform on the part of such Successful Bidder, the Auction Participant that had submitted the next highest or otherwise best Qualified Bid at the Auction (or in the case of the Potential Buyer, prior to or at the Auction) (the "Back-Up Bidder") will be deemed to be the Successful Bidder and the Debtors will be authorized to consummate the Transaction or Alternative Transaction (as applicable) with such Auction Participant without further order of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Successful Bid; provided that upon being notified that its Qualified Bid has become the Successful Bid, the Auction Participant submitting such Qualified Bid shall within three business days after such notification provide a Good Faith Deposit (unless such Auction Participant previously shall have provided a Good Faith Deposit that shall not have been returned as described below). Upon providing such Good Faith Deposit, such Auction Participant shall be deemed the Successful Bidder. If any Auction Participant fails to consummate the Transaction or Alternative Transaction (as applicable) because of a breach or failure to perform on the part of such Auction Participant (including without limitation the failure to timely deposit the Good Faith Deposit), the process described above may continue with other Auction Participants in decreasing order of the Qualified Bids as determined by Debtors until an Auction Participant shall consummate the Transaction or Alternative Transaction (as applicable).

### Return of Good Faith Deposit

The Good Faith Deposit of all Qualified Bidders (other than the Potential Buyer and the Successful Bidder) will be returned, without interest (other than any earnings on any such amounts under, and subject to, the terms of the escrow agreement pursuant to which such Good Faith Deposit is held), to each such Qualified Bidder within ten business days after the entry of an Order approving the Sale Motion, subject to the terms of the escrow agreement pursuant to which such Good Faith Deposit is held.

The Good Faith Deposit of the Potential Buyer and the Successful Bidder will be distributed pursuant to and in accordance with (a) the Purchase Agreement and the applicable

acquisition agreement, respectively, and (b) the escrow agreement pursuant to which such Good Faith Deposit is held, as applicable.

## Modifications

TriDimension, in consultation with Representatives of the Lenders and Committee, may determine (a) which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid, any bid that, in the discretion of TriDimension, in consultation with Representatives of the Lenders and Committee, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors, their estates and their creditors. At or before the conclusion of the Auction, the Debtors may impose such other terms and conditions upon Alternative Bidders as they determine to be in the best interests of the Debtors' estates in these cases.