William L. Wallander, SBT #20780750
Clayton T. Hufft, SBT #24056658
Bradley R. Foxman, SBT #24065243
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel:  214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; chufft@velaw.com;
bfoxman@velaw.com

**COUNSEL FOR THE LP DEBTORS[1]**

Peter Franklin, SBT #07378000
Erin K. Lovall, SBT #24032553
**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**
10501 N. Central Expressway, Suite 106
Dallas, TX  75231
Tel:  972.755.7100
Fax:  972.755.7110
pfranklin@fslhlaw.com; elovall@fslhlaw.com

**COUNSEL FOR THE GP DEBTORS[2]**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § § | Case No. 10-33565-SGJ |
| TRIDIMENSION ENERGY, L.P., *et al.* | § § § | Chapter 11 |
| DEBTORS. | § § § | Jointly Administered |

**MOTION FOR AN ORDER AUTHORIZING (A) THE SALE OF
THE DEBTORS' RIGHT, TITLE AND INTEREST IN, TO AND UNDER
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND
CLEAR OF CLAIMS, ENCUMBRANCES, LIENS, AND INTERESTS, (B) THE
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
<u>UNEXPIRED LEASES, AND (C) RELATED RELIEF</u>**

---

[1] The LP Debtors include TriDimension Energy, L.P., TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, and Ram Drilling, LP.

[2] The GP Debtors include TDE Operating GP LLC and TDE Subsidiary GP LLC.

**THE DEBTORS HAVE REQUESTED THAT A HEARING BE CONDUCTED ON THIS MATTER ON NOVEMBER 17, 2010 AT 1:30 PM IN THE COURTROOM OF THE HONORABLE STACEY G. C. JERNIGAN, 1100 COMMERCE STREET, 14TH FLOOR, DALLAS, TEXAS 75242. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT ON OR BEFORE NOVEMBER 12, 2010 AT 4:00 PM. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**TO THE HONORABLE STACEY G. C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:**

The above-referenced debtors and debtors in possession (collectively, the "Debtors") file this *Motion for an Order Authorizing (A) the Sale of the Debtors' Right, Title and Interest In, To and Under Substantially All of the Debtors' Assets Free and Clear of Claims, Encumbrances, Liens, and Interests, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Related Relief* (the "Sale Motion"), and in support thereof, the Debtors respectfully state as follows:

## JURISDICTION AND PROCEDURAL BACKGROUND

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Sale Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  On May 21, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned cases (the "Cases").

4.  Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5. An official committee of unsecured creditors (the "Committee") was appointed in the Cases on June 2, 2010.

## STATEMENT OF FACTS

### Case Background

6. TDE Operating GP LLC, a Delaware limited liability company (the "General Partner"), is the general partner of TriDimension Energy, L.P., a privately held Delaware limited partnership ("TriDimension"). TriDimension and its five direct operating subsidiaries, TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, and Ram Drilling, LP, each a Louisiana partnership in commendam (collectively, the "TriDimension Subsidiaries"), are engaged in the acquisition, development, exploration, production, and sale of oil and natural gas. TDE Subsidiary GP LLC, a Delaware limited liability company ("Subsidiary GP"), is the general partner of each of the TriDimension Subsidiaries. Each of General Partner, Subsidiary GP, TriDimension, and the TriDimension Subsidiaries is a Debtor.

7. The Debtors' principal place of business is in Dallas, Texas and their operating properties are located in various portions of Louisiana and Mississippi. The Debtors have proven reserves of approximately 5.1 million barrels of oil based on fourth quarter 2009 data.

### The Marketing Process

8. Beginning in April of 2010 and through their investment bankers, Stephens Inc. ("Stephens"), the Debtors have extensively explored various sale and reorganization alternatives, including the sale of assets and properties of the Debtors. Stephens contacted approximately 148 parties who it thought might be interested in engaging in a transaction with the Debtors. Among the parties contacted by Stephens were other oil and gas companies, hedge funds, private equity funds and other investors. 57 parties signed confidentiality agreements in order to obtain access to the diligence materials assembled by the Debtors. Stephens continued discussions with

prospective buyers through October of 2010. The Debtors received at least 11 bids or bona fide indications of interest from third parties. Ultimately, the Debtors, their counsel, and Stephens engaged in substantial negotiation of agreements with at least 2 parties.

**The Purchase Agreement**

9.     The Debtors propose to effectuate the transactions contemplated by the Asset Purchase Agreement dated as of October 18, 2010 (the "Purchase Agreement") by and among SR Acquisition I, LLC (the "Potential Buyer") and the Debtors, subject to receipt of a higher or better offer. A copy of the Purchase Agreement is attached hereto as **Exhibit "A"**. The Purchase Agreement provides for, among other things, the sale of the Debtors' right, title and interest in, to and under substantially all of the Debtors' assets free and clear of any and all claims (other than Assumed Liabilities (as defined in the Purchase Agreement)), encumbrances, liens[3] (other than Permitted Post-Closing Liens (as defined in the Purchase Agreement)), and other interests, except as otherwise set forth in the Purchase Agreement (the "Transaction").

10.     Pursuant to this Motion, the Debtors request authority to sell to the Potential Buyer or such other Successful Bidder (as defined in the Bid Procedures[4]), as applicable, the Debtors' right, title and interest in, to and under substantially all of the assets of the Debtors as set forth in the Purchase Agreement or other definitive agreement for an Alternative Transaction (as defined in the Purchase Agreement) (collectively, the "Properties") free and clear of all claims (other than certain assumed obligations), encumbrances, liens (other than certain permitted liens), and interests, with any holder's lien, claim, interest or encumbrance attaching to the proceeds of the sale with the same nature, validity and priority that such interest encumbered the Properties prior to the proposed sale. In consideration for the Properties, the Potential Buyer

---

[3] As used herein, the term "liens" shall include, without limitation, "Liens" as defined in the Purchase Agreement.
[4] As defined below.

has agreed to provide consideration at the closing of the Transaction comprised of cash in the amount of $28,000,000.00 (subject to certain adjustments).

11.     Contemporaneously herewith, the Debtors filed their *Motion to (A) Approve the Procedures for the Solicitation of Offers; (B) Approve the Form and Manner of Notice; (C) Approve Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (D) Approve the Bid Protections and Procedures; and (E) Approve a Break-Up Fee in Connection with the Transaction Contemplated by the Purchase Agreement* (the "Bid Procedures Motion," the terms of which the Debtors incorporate herein by reference) by which they seek authority to implement, among other things, certain sale, auction, and notice procedures in connection with the Transaction (the "Bid Procedures").

12.     The pertinent terms of the Purchase Agreement are provided in the table below for summary and notice purposes only. To the extent any of the terms described below are inconsistent with the Purchase Agreement, the Purchase Agreement shall control.[5]

| **Purchase Consideration**: | The consideration payable by the Potential Buyer consists of $28,000,000.00 in cash, subject to certain adjustments, and the assumption of the Assumed Liabilities. |
|---|---|
| **Other Adjustments to the Purchase Consideration** | The Purchase Price is subject to increase for (i) certain cash deposits held by the Debtors, (ii) certain capital expenditures made by the Debtors and property expenses paid by the Debtors for periods on or after November 1, 2010 (the "Effective Time"), (iii) the net value of crude oil in storage tanks of the Debtors, and (iv) $40,000 per month for the Closing Period.<br><br>The Purchase Price is subject to decrease for (i) proceeds received by the Debtors that are attributable to the Debtors' share of production from the Oil and Gas Properties after the Effective Time, (ii) casualty losses between the signing and closing of the Purchase Agreement, (iii) certain title and environmental defects, and (iv) the proceeds received by the Debtors upon the sale of any Oil and Gas Property to any third party. |

---

[5] Capitalized terms used in this summary but not defined in either the summary or this Motion shall have the meanings given them in the Purchase Agreement. The description of the Purchase Agreement below is intended as a summary and is qualified in its entirety by reference to the Purchase Agreement.

US 601435v.3

|  |  |
|---|---|
|  | The Parties also agreed to adjust the Purchase Price for the apportionment of Non-Income Taxes, Tax Refunds, and prepaid expenses. |
| **Escrow Amount**: | The Potential Buyer agreed to deposit with Wells Fargo Bank, National Association $1,250,000.00 in cash, which will be held by the Escrow Agent in accordance with the provisions of the Escrow Agreement and the Purchase Agreement. |
| **Closing Conditions**: | The obligations of the Potential Buyer and the Debtors to close are subject to the requirement that: (i) no Applicable Law prohibit the Transactions or the consummation of the Closing, (ii) all actions by or filings with any Governmental Authority required to permit the Closing have been taken or obtained, and (iii) no Proceeding instituted by any Governmental Authority is pending and no injunction, order, decree or judgment of any Governmental Authority is in effect which seeks to or does, as applicable, prohibit, restrain or enjoin the consummation of the Transactions.<br><br>The obligation of the Potential Buyer to close is subject to the following conditions:<br><br>• The Debtors performed all of their covenants and other obligations and the representations and warranties of the Debtors are true and correct except: (A) for certain failures that do not constitute a Debtor Material Adverse Effect and (B) certain failures of environmental representations;<br>• The Bid Procedures Order and the Sale Order have been entered by the Bankruptcy Court and each such order is a Final Order in full force and effect;<br>• Certain assets are included in the Properties conveyed to the Potential Buyer;<br>• Title and environmental Defects and casualty losses do not exceed $8 million; and<br>• The Debtors secured sufficient debtor-in-possession financing in order to continue to operate the Properties in the Ordinary Course of Business.<br><br>The obligation of the Debtors to close is subject to the following conditions:<br><br>• The Potential Buyer has performed in all material respects all of its covenants and obligations;<br>• The representations and warranties of the Potential Buyer are true with only certain exceptions as would not reasonably be expected to have a Potential Buyer Material Adverse Effect; and<br>• The Bid Procedures Order and the Sale Order have been entered by the Bankruptcy Court and each order is a Final Order in full force and effect. |

US 601435v.3

| | |
|---|---|
| **Termination**: | The Purchase Agreement may be terminated prior to the Closing by either the Potential Buyer or the Debtors under mutual written agreement of the Debtors and the Potential Buyer, if the Closing does not occur before December 15, 2010 (unless extended by mutual written agreement of all of the Parties), or if the consummation of the Transactions is illegal or otherwise prohibited.<br><br>The Purchase Agreement may be terminated by Buyer if:<br><br>• The Bid Procedures Order is not entered before 45 days after the date of the Purchase Agreement;<br>• The Bankruptcy Court approves any Alternative Transaction;<br>• The Debtors breach any of their representations and warranties, or fail to perform or comply with any of their covenants and agreements, such that the closing condition relating to same is not satisfied, and the Potential Buyer has given at least ten days written notice to the Debtors to cure such breaches and failures; or<br>• Certain closing conditions have become incapable of being satisfied by the End Date. |
| **Break-Up Fee**: | If the Purchase Agreement is terminated and the Potential Buyer has not breached any of its representations or warranties or failed to perform or comply with any of its covenants or agreements and the Debtors consummate an Alternative Transaction before 18 calendar months after the date of the Purchase Agreement, the Debtors agree to pay the Potential Buyer a termination fee of $750,000, which fee shall be payable within two business days of consummation of such Alternative Transaction from proceeds of the sale. |
| **Representations and Warranties:** | The Purchase Agreement contains customary representations and warranties. The representations and warranties do not survive the Closing and there is no indemnification for breaches of representations and warranties. |
| **Certain Covenants:** | The Debtors agree to preserve their present business organization, maintain in effect all Permits as may be necessary for the Debtors to own and operate the Oil and Gas Interests in the Ordinary Course of Business, and comply in all material respects with Applicable Laws.<br><br>The Debtors agreed to not:<br><br>• Incur capital expenditures, other than capital expenditures not exceeding $100,000 during any calendar month, except with respect to certain matters;<br>• Make certain acquisitions of assets or businesses;<br>• Transfer any Oil and Gas Interests, except (A) sales of Hydrocarbons in |

|  | the Ordinary Course of Business, (B) sales of personal property or fixtures in the Ordinary Course of Business which have been replaced with an item of substantially equal suitability and (C) dispositions of Excluded Assets;<br>• Enter into certain types of material contracts;<br>• Amend, modify, or terminate any Purchased Contract; or<br>• Change the methods of accounting or accounting practice by the Debtors. |
|---|---|

13. In consultation with its financial advisors, the Debtors have determined that the Properties are not necessary for the reorganization of the Debtors' estates and that it is in the best interests of the Debtors' estates to sell the Properties at this time. The Debtors believe that the Transaction, subject to a market test through the auction process more fully described in the Bid Procedures, will serve to maximize the value received by the Debtors for the Properties. The consideration to be provided by the Potential Buyer or Successful Bidder for the Properties (i) is fair and reasonable, (ii) is the highest and best offer for the Properties after a thorough marketing process, and (iii) constitutes reasonably equivalent value, fair value, and fair consideration therefor. Accordingly, the Debtors, in the exercise of their business judgment, are requesting the Court's approval of the Transaction or an Alternative Transaction with the Potential Buyer or other Successful Bidder, as applicable.

## RELIEF REQUESTED

### Introduction

14. Pursuant to Bankruptcy Code §§ 105(a), 363, and 365 and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek an Order (a) authorizing the sale of the Properties to the Potential Buyer or such other Successful Bidder free and clear of all claims, encumbrances, liens, and interests (other than as set forth in the Purchase Agreement or other definitive agreement to effectuate an

Alternative Transaction), (b) authorizing the assumption and assignment of executory contracts and unexpired leases and rights thereunder, and (c) granting such other relief to which the Debtors may be entitled.

### Sale of Properties Free and Clear of Interests

15. Pursuant to Bankruptcy Code § 105(a), a bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *See* 11 U.S.C. § 105(a). Bankruptcy Code § 363(b)(1) provides, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

16. The proposed use, sale or lease of property of the estate may be approved under Bankruptcy Code § 363(b) if it is supported by sound business justification. *See e.g. Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Resources Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 714 (Bankr.W.D.Tex.1989). In reviewing a proposed sale of assets, a bankruptcy court should give deference to the business judgment of a debtor in possession when it deems the sale to be appropriate. *See Esposito v. Title Ins. Co. (In re Fernwood Mkts.)*, 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987).

17. The Debtors have determined in the sound exercise of their business judgment that consummation of the Transaction (or an Alternative Transaction in the event the Potential Buyer is not the Successful Bidder) is in the best interest of their estates and creditors. After evaluating various alternatives and conducting an extensive marketing process, the Debtors have concluded that the Transaction (or an Alternative Transaction in the event the Potential Buyer is not the Successful Bidder) will maximize the value of their estates and will be in the best interests of their creditors. Through Stephens, the Debtors have thoroughly marketed the Properties for sale and they believe that the Potential Buyer's proposed purchase price is reasonable and satisfactory per the terms of the Purchase Agreement. Further, the Debtors anticipate that an auction, as proposed in the Bid Procedures Motion, will result in a transaction that represents fair market value. The Debtors further submit that the sale of the Properties outside a plan of reorganization pursuant to the Purchase Agreement or a definitive agreement for an Alternative Transaction is reasonable and appropriate under the circumstances and does not impermissibly dictate the terms of any future plan of reorganization or liquidation that may be filed by the Debtors, individually or collectively, and is not a *sub rosa* plan.

18. Pursuant to Bankruptcy Code § 363(f), a debtor may sell property free and clear of all claims, encumbrances, liens, and other interests if (i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest; (ii) the lienholder or claimholder consents; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is a bona fide dispute; or (v) the lienholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *See* 11 U.S.C. § 363(f). These five conditions are written in the disjunctive, permitting the sale of estate assets upon the satisfaction of any one of

the five conditions, including consent of the lienholders. *See Pelican Homestead v. Wooten (In re Gabel)* 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (stating that a trustee may sell property of the estate for purposes other than in the ordinary course of business free and clear of all existing liens and encumbrances provided that any one of the conditions of § 363(f) are met); *In re Taxi Holders, Inc.*, 307 B.R. 525, 528-29 (Bankr. E.D. Va. 2004).

19.    Furthermore, it is well established that a bankruptcy court has the power, pursuant to section 363(f) of the Bankruptcy Code, to approve the sale of a debtor's assets free and clear of any claims against the debtor. *In re TWA, Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (holding that successor liability claims are "interests in property" within the meaning of §363(f)); *United Mine Workers of Am. Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996) (same).

20.    The Debtors will demonstrate that at least one of the five conditions of Bankruptcy Code § 363(f) is satisfied with respect to any other interest asserted by any other party in the Properties. Parties asserting any interest in the Properties will be adequately protected by such interest attaching to the proceeds of the Transaction with the same nature, validity and priority that such interest encumbered the Properties prior to the proposed Transaction.

21.    Having exercised sound business judgment in determining to sell the Properties, the sale of the Properties to the Potential Buyer or the Successful Bidder, free and clear of all claims[6] (other than certain assumed obligations), encumbrances, liens (other than permitted

---

[6] For purposes of clarity, the Debtors will have material unpaid pre-petition unsecured claims after the closing of the Transaction or Alternative Transaction. Neither the Potential Buyer nor any other party would likely be willing to purchase the Properties if it were at risk of liability for those claims under principles of successor liability. In addition, the Debtors are providing direct notice of the sale to all known creditors of the Debtors' estates and are also publishing notice of the sale in the Southwest Edition of the *Wall Street Journal*, the *Baton Rouge Advocate*, and the *Natchez Democrat*. The Debtors submit that notice of the "no successor liability" findings to be included in the proposed Sale Order is sufficient to bind all potentially affected parties.

liens), and interests, with any holder's lien, claim, interest or encumbrance attaching to the proceeds of the Transaction (or an Alternative Transaction, as applicable) with the same nature, validity and priority that such interest encumbered the Properties prior to the proposed Transaction (or an Alternative Transaction, as applicable), as set forth in the Purchase Agreement or definitive agreement for an Alternative Transaction (as applicable), should be approved.

### Good Faith Sale

22. Bankruptcy Code § 363(m) states, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

23. The Purchase Agreement is the result of an arm's length, good faith negotiation between the Debtors and the Potential Buyer. The Debtors and the Potential Buyer have retained legal counsel, conducted due diligence, and have negotiated and agreed upon the terms of the Purchase Agreement. The Debtors believe the Potential Buyer is a "good faith" purchaser within the meaning of Bankruptcy Code § 363(m). Further, to the Debtors' knowledge, no party has engaged in any conduct that would cause or permit the Purchase Agreement to be set aside under section 363(n) of the Bankruptcy Code.

24. The Debtors also submit that the Successful Bidder (if not the Potential Buyer), will be a "good faith" purchaser within the meaning of Bankruptcy Code §363(m) as such Successful Bidder will have participated in the auction in accordance with the Bid Procedures. Accordingly, Debtors request findings and protections pursuant to Bankruptcy Code § 363(m).

US 601435v.3

**Assumption and Assignment of Executory Contracts and Unexpired Leases**

25. Pursuant to Bankruptcy Code § 365, the Debtors request authority to assume certain executory contracts and/or unexpired leases (collectively, the "Desired 365 Contracts") and to assign the Debtors' right, title and interest in, to and under those contracts and leases and rights thereunder (including, without limitation, the right to act as operator under the Operated JOAs (as defined in the Purchase Agreement)) to the Potential Buyer or Successful Bidder, subject to, and at the time of, the closing of the Purchase Agreement or a definitive agreement for an Alternative Transaction. A list of the potential Desired 365 Contracts that the Debtors may seek to assume and assign to the Potential Buyer or Successful Bidder, as applicable, is attached hereto as **Exhibit "B"**.[7] The Debtors' inclusion of any contract or lease on Exhibit "B" shall not be deemed to be an admission by the Debtors that such contract or lease is an "executory contract" or "unexpired lease" within the meaning of section 365 of the Bankruptcy Code, and the Debtors reserve all rights in connection with same. Specifically, the Debtors have included, among other things, certain mineral leases on Exhibit "B" that the Debtors assert are not "executory contracts" or "unexpired leases" within the meaning of section 365 of the Bankruptcy Code, but rather real property interests, out of an abundance of caution.

26. Bankruptcy Code § 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if—

---

[7] The Debtors propose in the Bid Procedures Motion that the Debtors be authorized to amend the Assumption Notice by amending Cure Amounts at any time at least five (5) calendar days prior to the Sale Hearing by sending a new or amended Assumption Notice; provided, however, that counterparties to any Desired 365 Contracts whose Cure Amounts are amended shall have at least five (5) calendar days from service of the amended Assumption Notice to properly object to such Cure Amount amendment. The Debtors further propose that the Debtors be authorized to amend the Assumption Notice by adding or deleting Desired 365 Contracts at any time prior to the Sale Hearing, and they shall use commercially reasonable efforts to affect the assumption and assignment of any such added 365 Contract (as defined in the Purchase Agreement or other definitive agreement to effectuate an Alternative Transaction (if applicable)) and rights thereunder by the applicable Debtor in accordance with the Bankruptcy Code; provided, however, that counterparties to any such added 365 Contracts shall have at least five (5) calendar days from service of the amended Assumption Notice to properly object to the assumption and assignment of their respective Desired 365 Contract and rights thereunder and the applicable Cure Amount.

US 601435v.3

  (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

  (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

  27. Bankruptcy Code § 365(a) authorizes a trustee to "assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Although Bankruptcy Code § 365 does not set forth standards for courts to apply in determining whether to approve a debtor's decision to assume an executory contract or unexpired lease, it is well-established that the decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See In re Taylor*, 913 F.2d 102, 107 (3rd Cir. 1990); *Sharon Steel Corn. v. Nat'l Fuel Gas Distrib. Corn.*, 872 F.2d 36, 39 (3rd Cir. 1989). Accordingly, assumption or rejection of any executory contract is appropriate where the assumption or rejection would benefit the estate. *Sharon Steel*, 872 F.2d at 40; *see also In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986).

  28. Pursuant to Bankruptcy Code § 365(b)(1), a debtor must cure, or provide adequate assurance that it will promptly cure, certain defaults prior to the assumption and/or assignment of executory contracts or unexpired leases. 11 U.S.C. § 365(b)(1). Bankruptcy Code § 365(b)(1) provides, in relevant part:

 (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

  (A) cures, or provides adequate assurance that the trustee will promptly cure, such default. . . ;

US 601435v.3

   (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

   (C)  provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

  29. The Potential Buyer has indicated that it may desire to acquire the benefit of certain executory contracts and unexpired leases and rights thereunder to be determined prior to the closing of the Purchase Agreement. Under the Purchase Agreement, the Debtors agree to satisfy any requirements regarding cure, including the payment of cure amounts owed to third parties, that may be imposed under Bankruptcy Code § 365(b) or applicable state law in connection with the proposed assumption and assignment of any Desired 365 Contract (the "Cure Amounts"). The making of any cure payments, as directed by the Court, will be in full and final satisfaction of all obligations to cure defaults and will compensate the respective counterparties to the Desired 365 Contracts for any pecuniary losses under such contracts or leases pursuant to Bankruptcy Code § 365(b)(1).

  30. On the closing date of the Transaction (or an Alternative Transaction, as applicable), the Debtors will (i) pay from proceeds of the sale of the Properties to each of the counterparties to the Desired 365 Contracts for which there is not a dispute as to Cure Amounts, or such other party as is necessary to cure defaults, the Cure Amounts related to the Desired 365 Contracts, and (ii) shall reserve such funds necessary to satisfy Cure Amounts for Desired 365 Contracts for which the Cure Amounts are disputed, unless otherwise ordered by the Court, and such Cure Amounts shall be paid upon separate final order of the Court. With respect to Desired 365 Contracts for which the Cure Amounts are disputed, the Debtors will establish a cash reserve of funds from the proceeds of the Transaction (or an Alternative Transaction, as

applicable) that is equal to the asserted amount of the Cure Amounts, unless otherwise ordered by the Court, in order to provide adequate assurance that the Debtors will cure defaults and compensate counterparties for any actual pecuniary loss resulting from such default.

31.    As set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction, the Potential Buyer and/or Successful Bidder is responsible for providing evidence of "adequate assurance of future performance" to the extent required in connection with the assumption and assignment of any Desired 365 Contract.  The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to Bankruptcy Code § 365 depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See Carlisle Homes, Inc. v. Arrar (In re Carlisle Homes, Inc.),* 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that the debtor will thrive or pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). If necessary, the Potential Buyer or Successful Bidder will demonstrate that the Potential Buyer or other Successful Bidder has the financial ability to perform under the Desired 365 Contracts at the hearing to approve this Sale Motion.

### Waiver of 14-Day Stay

32.    Because the parties intend to close the sale of the Properties as soon as practicable after the entry of a final order approving this Sale Motion, the Debtors request that the Court waive the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d).

### PRAYER

The Debtors respectfully request that this Court enter an Order (a) authorizing the sale of the Properties to the Potential Buyer or the Successful Bidder free and clear of all claims,

encumbrances, liens, and interests (other than as set forth in the Purchase Agreement or other definitive agreement to effectuate an Alternative Transaction), (b) authorizing the assumption and assignment of executory contracts and unexpired leases, and (c) granting such other relief to which the Debtors may be entitled.

Dated: October 19, 2010

Respectfully submitted,

| | |
|---|---|
| */s/ William L. Wallander* | */s/ Peter Franklin* |
| William L. Wallander, SBT #20780750 | Peter Franklin, SBT #07378000 |
| Clayton T. Hufft, SBT #24056658 | Erin K. Lovall, SBT #24032553 |
| Bradley R. Foxman, SBT #24065243 | **FRANKLIN SKIERSKI LOVALL** |
| **VINSON & ELKINS LLP** | **HAYWARD LLP** |
| Trammell Crow Center | 10501 N. Central Expressway, Suite 106 |
| 2001 Ross Avenue, Suite 3700 | Dallas, TX  75231 |
| Dallas, Texas 75201-2975 | Tel:  972.755.7100 |
| Tel:  214.220.7700 | Fax:  972.755.7110 |
| Fax: 214.220.7716 | pfranklin@fslhlaw.com; elovall@fslhlaw.com |
| bwallander@velaw.com; chufft@velaw.com; bfoxman@velaw.com | **COUNSEL FOR THE GP DEBTORS** |
| **COUNSEL FOR THE LP DEBTORS** | |

US 601435v.3

## **CERTIFICATE OF SERVICE**

I certify that on October 19, 2010, a copy of the foregoing document was served by the Electronic Case Filing system for the United States Bankruptcy Court for the Northern District of Texas on those parties receiving electronic notice therefrom.

                                                                         */s/ Bradley R. Foxman*
                                                                          One of Counsel

US 601435v.3