U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed October 28, 2010**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| **IN RE:** | § | Case No. 10-33565-SGJ |
| | § | |
| **TRIDIMENSION ENERGY, L.P.,** _et al.,_ | § | Chapter 11 |
| | § | |
| **DEBTORS.** | § | Jointly Administered |
| | § | |
| | § | |

## ORDER (A) APPROVING THE PROCEDURES FOR THE SOLICITATION OF OFFERS; (B) APPROVING THE FORM AND MANNER OF NOTICE; (C) APPROVING PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING THE BID PROTECTIONS AND PROCEDURES; AND (E) APPROVING A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED <u>BY THE PURCHASE AGREEMENT</u>

At a hearing on October 27, 2010 (the "<u>Bid Procedures Hearing</u>"), this Court considered

the _Motion to (A) Approve the Procedures for the Solicitation of Offers; (B) Approve the Form_

_and Manner of Notice; (C) Approve Procedures for Determining Cure Amounts for Executory_

_Contracts and Unexpired Leases; (D) Approve the Bid Protections and Procedures; and (E)_

US 601607v.6

*Approve a Break-Up Fee in Connection with the Transaction Contemplated by the Purchase Agreement* [Docket No. 365] (the "Motion")[1] filed by the above-referenced debtors and debtors-in-possession (collectively, the "Debtors").[2] The Court hereby finds and determines that:

A.      It has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      As reflected in the *Certificate of Service* [Docket No. 372] filed on October 20, 2010 and the *Certificate of Service* attached to the Motion, the Motion and the notice of the Bid Procedures Hearing has been served on the parties identified on the Master Service List maintained in these Cases (who do not receive electronic notice) and on all known holders of liens or security interests in any of the Debtors' assets, via first class United States mail, postage prepaid, and via the Court's electronic filing system on those parties receiving electronic notice by such system (collectively, the "Original Notice").

C.      As reflected in the *Certificate of Service* [Docket No. 376] filed on October 21, 2010, the *Notice of (A) Filing of Motion to Approve Bid Procedures and Protections, Notice Procedures, and Other Related Relief (B) Hearing Thereon and (C) Related Objection Deadline* [Docket No. 375] (the "Supplemental Notice") has been served on the parties identified on the Master Service List maintained in these Cases (who do not receive electronic notice), all known holders of liens or security interests in any of the Debtors' assets, and the full creditor matrix

---

[1] Capitalized terms that are not defined herein shall have the meanings given to them in the Motion.
[2] The Debtors are TriDimension Energy, L.P., Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, Ram Drilling, LP, TDE Property Holdings, LP, TDE Operating GP LLC, and TDE Subsidiary GP LLC.

maintained in the Cases, via first class United States mail, postage prepaid, and via the Court's electronic filing system on those parties receiving electronic notice by such system.

D.     The Original Notice and the Supplemental Notice are reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Bid Procedures Hearing is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

E.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Granting the relief is in the best interests of the Debtors, their estates and creditors.

F.     The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion.  Such good and sufficient reasons were set forth in the Motion and on the record at the Bid Procedures Hearing and are incorporated by reference herein and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.     The bid procedures (the "Bid Procedures"), in the form attached hereto as **Exhibit "A"**, are fair, reasonable and appropriate and are designed to maximize the value of the Debtors' estates.

H.     The Debtors have demonstrated a compelling and sound business justification for (i) approval of the bid protections contained in Article IX of the Asset Purchase Agreement dated as of October 18, 2010 (the "Purchase Agreement") by and among SR Acquisitions I, LLC (the "Potential Buyer") and the Debtors (the "Bid Protections"), in the form of Exhibit A to the Motion, and (ii) performance of their respective obligations under the Purchase Agreement,

including the payment to the Potential Buyer of a break-up fee in the amount of $750,000.00 (the "Break-Up Fee") under the circumstances described in Section 9.03 of the Purchase Agreement.

I.      The Potential Buyer has expended, and likely will continue to expend, considerable time, money and energy pursuing the Transaction (defined below) and has engaged in extended and lengthy good faith negotiations.  In particular, the Bid Protections are part of an extensive process undertaken by the Debtors and their professionals to identify and negotiate a transaction that the Debtors believe to be the highest or best proposal for an acquisition of the Debtors' assets, in order to maximize the value realized for the benefit of the Debtors' estates, their creditors and other parties in interest.

J.      The Purchase Agreement, including the Break-Up Fee, was negotiated, proposed and entered into by the Debtors and the Potential Buyer without collusion, in good faith and from arms' length bargaining positions.

K.      The Break-Up Fee is (1) an actual and necessary cost of preserving the Debtors' estates within the meaning of Section 503(b) and 507(a) of the Bankruptcy Code, (2) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Potential Buyer, (3) reasonable and appropriate in light of, among other things (a) the size and nature of the transaction contemplated under the Purchase Agreement (the "Transaction") and comparable transactions, (b) the substantial efforts that have been and will be expended by the Potential Buyer and (c) the benefits the Potential Buyer has provided to the Debtors' estates, their creditors and other parties in interest, notwithstanding that the Purchase Agreement may be terminated by the Debtors if any higher or otherwise better Alternative Transaction (as defined in the Purchase Agreement) is identified, and (4) necessary to induce the Potential Buyer to serve as a "stalking horse" bidder and to continue to pursue the Transaction.  The grant, allowance and

payment of the Break-Up Fee are in the best interest of the Debtors, their respective estates and their creditors. The Break-Up Fee induced the Potential Buyer to submit a bid that will serve as a minimum floor on which the Debtors, their creditors and other bidders may rely. The Potential Buyer has provided a material benefit to the Debtors and their creditors (and the Debtors have received a material benefit) by increasing the likelihood that the best possible price for the Properties will be received.

L.      The payment to the Potential Buyer of the Break-Up Fee under the terms and conditions set forth in the Purchase Agreement and the Bid Procedures should be approved because, among other things: (1) the protection afforded to the Potential Buyer by the Break-Up Fee was a material inducement for, and express condition of, the Potential Buyer's willingness to enter into the Purchase Agreement, and (2) assurance to the Potential Buyer of payment of the Break-Up Fee has promoted (and will promote) more competitive bidding by, among other things, inducing the Potential Buyer's offer, which offer otherwise would not have been made and without which competitive bidding would be limited. Further, the Break-Up Fee induced the Potential Buyer to conduct due diligence with respect to the Transaction. Thus, the Potential Buyer has provided a material and substantial benefit to the Debtors' estates, their creditors and other parties in interest by increasing the likelihood that the price at which a Transaction may be effected, or a sale of the Debtors' right, title and interest in, to and under substantially all of the Debtors' assets will be made, will reflect their true value. Accordingly, the Bid Procedures and the Break-Up Fee are fair, reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

M.      The Auction is necessary to determine whether any person other than the Potential Buyer is willing to enter into a definitive agreement on terms and conditions more favorable to

the Debtors than the Purchase Agreement.  The protections afforded to the Potential Buyer by the Break-Up Fee were material inducements for, and express conditions of, the Potential Buyer's willingness to enter into the Purchase Agreement, given the possibility that the Debtors may terminate the Purchase Agreement if a higher or otherwise better offer is identified.

N.     The service of the notice of the Bid Procedures and the respective dates, times and places for an auction, if required under the Bid Procedures (the "<u>Transaction Notice</u>"), substantially in the form attached hereto as **Exhibit "B"**, advising parties of, among other things, (a) the deadline to file objections to the Sale Motion, and (b) the date of the hearing to consider approval of the Sale Motion (the "<u>Sale Hearing</u>") are adequate and reasonably calculated to provide due, proper, and timely notice to all interested parties of (i) the Bid Procedures, (ii) the auction of, and/or transaction involving, the Properties (the "<u>Auction</u>"), (iii) the deadline to object to the Sale Motion, (iv) the Sale Hearing in accordance with Bankruptcy Rule 2002 and the applicable provisions of the Bankruptcy Code, and (v) entry of this Order.  Except as otherwise set forth herein, no other or further notice is necessary.

O.     The service of the notice of the potential assumption and assignment of executory contracts and unexpired leases and rights thereunder (the "<u>Assumption Notice</u>"), substantially in the form attached hereto as **Exhibit "C"**, is adequate and reasonably calculated to provide due, proper and timely notice to all counterparties of the potential assumption and assignment of their executory contracts and unexpired leases and rights thereunder and the maximum amount that the Debtors may pay to cure all defaults, if any, and to pay all losses and damages that have resulted from defaults, under executory contracts and unexpired leases that the Debtors propose to assume and assign (collectively, the "<u>Cure Amounts</u>").  Except as otherwise set forth herein, no other or further notice is necessary.

P.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** in its entirety and as set forth herein.

2.      All Objections to the relief requested in the Motion, if any, that have not been withdrawn, waived, or settled as announced to the Court at the Bid Procedures Hearing are denied and overruled in their entirety on the merits, with prejudice.

3.      The Bid Protections are hereby approved, and the Debtors are hereby granted the power and authority to execute, and deliver, and to perform all of their obligations under, the Purchase Agreement and all of the other Transaction Documents as defined therein.  All actions of the Debtors as authorized herein may be taken by any officer of the Debtors or member of the Board of Directors (as defined in the Bid Procedures).  Notwithstanding the foregoing, the consummation of the Transaction shall remain subject to the entry of an Order granting the Sale Motion.

4.      The process for submitting Qualified Bids (as defined in the Bid Procedures) is fair, reasonable and appropriate and is designed to maximize recoveries for the benefit of the Debtors' estates, their creditors and other parties in interest.  The Debtors may proceed with the Transaction or an Alternative Transaction, as applicable, in accordance with the Bid Procedures, which procedures are hereby approved in their entirety in the form attached hereto as **Exhibit "A"**.  The Debtors are authorized to take any and all actions necessary or appropriate to

implement the Bid Procedures. Any disputes as to the selection of a Qualified Bid, Initial

Highest Bid and/or Successful Bid (all as defined in the Bid Procedures) shall be resolved by this

Court.

5.     The Debtors shall serve this Order by (a) first class United States mail, postage

prepaid on the parties identified on the Master Service List (who do not receive electronic notice)

at the addresses set forth therein; and (b) the Court's electronic filing system on those parties

receiving electronic notice by such system.

6.     The Transaction Notice, in the form attached hereto as **Exhibit "B"**, is hereby

approved. Within three (3) business days after the Court enters this Order, the Debtors shall

serve the Transaction Notice by (a) first class United States mail, postage prepaid on (i) the

parties identified on the Master Service List maintained in these Cases (who do not receive

electronic notice) at the addresses set forth therein, (ii) the parties identified on the Creditor

Matrix filed in these Cases at the addresses set forth therein, (iii) the parties that have filed proofs

of claim in these Cases at the addresses set forth in the respective proofs of claim, (iv) the

counterparties to executory contracts and unexpired leases with one or more of the Debtors, (v)

known holders of liens and security interests in any assets of the Debtors, (vi) all current and

former employees of any of the Debtors who were employed by the Debtors at any time within

two (2) years of the Petition Date, (vii) all known environmental agencies having jurisdiction

over any of the Properties, including the Environmental Protection Agency, (viii) all known

taxing authorities having jurisdiction over any of the Properties, including the Internal Revenue

Service, (ix) all parties who have filed a written request for notice in any of the Cases pursuant to

Bankruptcy Rule 2002, (x) all of the Debtors' current customers and vendors, (xi) all known

opposing parties in all litigation pending or threatened against any of the Debtors, (xii) all other

known parties who have expressed an interest in acquiring the Debtors or any of their assets, and (xiii) all other known potential creditors in these Cases; and (b) the Court's electronic filing system on those parties receiving electronic notice by such system.

7.      Within three (3) business days after the Court enters this Order, the Debtors shall (a) place a summary version of the Transaction Notice for one day in the Southwest Edition of the *Wall Street Journal*, the Baton Rouge *Advocate*, and the *Natchez Democrat* and (b) place a conspicuous copy of the Transaction Notice on the Debtors main website at http://www.tridimensionenergy.com.  Service of such Transaction Notice as approved and set forth herein shall be deemed proper, due, timely, good, and sufficient notice of, among other things, the entry of this Order, the Bid Procedures, the Auction (if required under the Bid Procedures), the Sale Hearing, the Sale Motion, and the proposed Transaction, including the transferring of the Debtors' right, title and interest in, to and under substantially all of the Debtors' assets free and clear of any and all liens[3], encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction (if applicable), and the procedure for objecting thereto, and no other or further notice is necessary.

8.      The form of Assumption Notice attached hereto as **Exhibit "C"** is approved.  In combination with the Transaction Notice, the Assumption Notice (a) contains the type of information required under Bankruptcy Rule 2002 that is currently known to the Debtors, and (b) is reasonably calculated to provide due, adequate and timely notice to all interested parties of (i) the potential assumption and assignment of executory contracts and unexpired leases and rights thereunder, (ii) the maximum amount and manner offered to satisfy the Cure Amounts, (iii) the

---

3 As used herein, the term "liens" shall include, without limitation, "Liens" as defined in the Purchase Agreement.

deadline to file objections to such assumption and assignment, applicable Cure Amounts, and the existence of any defaults and/or adequate assurance of future performance.

9.      Within three (3) business days after the Court enters this Order, the Debtors shall serve the Assumption Notice by (a) first class United States mail, postage prepaid on (i) the parties identified on the Master Service List maintained in these Cases (who do not receive electronic notice) at the addresses set forth therein, and (ii) all counterparties to executory contracts and unexpired leases that may be assumed by one or more of the Debtors pursuant to Bankruptcy Code § 365 and that the Potential Buyer desires (or may desire) to be assigned by the Debtor party thereto (the "Desired 365 Contracts"); and (b) the Court's electronic filing system on those parties receiving electronic notice by such system. Service of such Assumption Notice as approved and set forth herein shall be deemed proper, due, timely, good, and sufficient notice of, among other things, the proposed assumption and assignment of the Desired 365 Contracts and rights thereunder, the Cure Amounts, and the procedures for objecting thereto, and no other or further notice is necessary.

10.      For the reasons set forth in this Order, the Break-Up Fee as set forth in the Purchase Agreement is hereby approved. The Break-Up Fee (i) shall be a joint and several obligation of the Debtors, (ii) be paid as and when due, (iii) constitute an administrative expense claim against each Debtor under Bankruptcy Code § 503(b) and 507(a)(2), and (iv) be entitled to a "carve-out" priority status[4] under any cash collateral or debtor-in-possession financing orders approved by this Court with regards to any security interest the Lenders (as defined in the Purchase Agreement) hold in any proceeds from the sale of the Lenders' collateral in the applicable Alternative Transaction (but only to the extent unencumbered sale proceeds thereof, if

---

[4] Such "carve-out" priority status shall be *pari-passu* with any other party entitled to "carve-out" priority status pursuant to such cash collateral or debtor-in-possession financing orders.

US 601607v.6

any, are not available to pay the Break-Up Fee). The Debtors are authorized and directed to pay the Break-Up Fee, in cash, within two business days of the date of consummation of the first Alternative Transaction, from the sale proceeds thereof or in accordance with the Purchase Agreement, the Bid Procedures and this Order without need for any further motion, application, notice, approval or order of the Court. In the event of a successful credit bid by the Lenders, the Lenders shall pay the Break-Up Fee in cash directly to the Potential Buyer upon consummation of this type of Alternative Transaction and evidence payment of same in writing to the Debtors.[5] However, provided that the Potential Buyer is ready, willing and able to consummate the Transaction in accordance with the Purchase Agreement and the deadlines within any Bankruptcy Court order, if the Alternative Transaction includes a conveyance, assignment or transfer of ownership to the Lenders without generating proceeds, the Potential Buyer's right to the Break-Up Fee shall be paid by the Lenders upon consummation of such Alternative Transaction.

11. No person or entity, other than the Potential Buyer with respect to the Break-Up Fee, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or similar fee or payment.

12. The Sale Hearing shall be held on November 17, 2010 at 1:30 p.m prevailing Central Time in the courtroom of the Honorable Stacey G. C. Jernigan, 1100 Commerce Street, 14th Floor, Dallas, Texas 75242.

13. Objections, if any, to Sale Motion and/or the proposed assumption and assignment of the Desired 365 Contracts and rights thereunder, including but not limited to

---

[5] Nothing in this Order shall be construed as a determination as to whether the Lenders possess a right to credit bid under 11 U.S.C. § 363(k). All rights of the Lenders to assert a right to credit bid, and all rights of parties in interest to object to such an assertion, are reserved

objections relating to any Cure Amounts, the existence of any defaults, and/or adequate assurances of future performance, must (a) be in writing, (b) state with specificity the nature of such objection, (c) if concerning a Cure Amount, set forth a specific default in the Desired 365 Contract and claim a specific monetary amount that differs from the Cure Amount (if any) specified by the Debtors in the Assumption Notice (with appropriate documentation in support thereof), (d) comply with the Federal Rules of Bankruptcy Procedure, and (e) be filed with this Court and served upon the following parties in accordance with the Assumption Notice on or before 4:00 p.m., prevailing Central time, on November 12, 2010 (the "Objection Deadline"): (u) counsel for the LP Debtors at Vinson & Elkins LLP, Attn: William L. Wallander, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas, (fax) 214.999.7905, bwallander@velaw.com, (v) counsel for the GP Debtors at Franklin Skierski Lovall Hayward LLP, Attn: Peter Franklin, 10501 N. Central Expressway, Suite 106, Dallas, Texas 75231, fax 972.755.7100, pfranklin@fslhlaw.com, (w) counsel for the Potential Buyer at Jones Day, Attn: Tom A. Howley, 717 Texas, Suite 3300, Houston, Texas, 77002-2712, (fax) 832.239.3600, tahowley@jonesday.com, (x) counsel for the DIP Agent and Agent at Mayer Brown LLP, Attn: Charles S. Kelley, 700 Louisiana Street, Suite 3400, Houston, Texas, 77002-2730, (fax) 713.238.2634, ckelley@mayerbrown.com, (y) counsel for the Official Committee of Unsecured Creditors at Gardere Wynne Sewell LLP, Attn: Richard M. Roberson, 1601 Elm Street, Suite 3000, Dallas, Texas, 75201, (fax) 214.999.3955, rroberson@gardere.com, and (z) the United States Trustee's Office at Office of the United States Trustee, Attn: Nancy S. Resnick, 1100 Commerce Street, Room 9-C-60, Dallas, Texas, 75242, (fax) 214.767.6530, Nancy.S.Resnick@usdoj.gov, (collectively, the "Notice Parties").

US 601607v.6

14.     The Debtors are authorized to amend the Assumption Notice by amending Cure Amounts by sending a new or amended Assumption Notice at any time at least five (5) calendar days prior to the Sale Hearing; provided, however, that counterparties to any Desired 365 Contracts whose Cure Amounts are amended shall have at least five (5) calendar days from service of the amended Assumption Notice to properly object to such Cure Amount amendment. The Debtors are authorized to amend the Assumption Notice by adding or deleting Desired 365 Contracts at any time prior to the Sale Hearing, and they shall use commercially reasonable efforts to affect the assumption and assignment of any such added 365 Contract (as defined in the Purchase Agreement or other definitive agreement to effectuate an Alternative Transaction (if applicable)) and rights thereunder by the applicable Debtor in accordance with the Bankruptcy Code and Sale Motion; provided, however, that counterparties to any such added 365 Contracts shall have at lease five (5) calendar days from service of the amended Assumption Notice to properly object to the assumption and assignment of their respective Desired 365 Contract and rights thereunder and the applicable Cure Amount.

15.     Any Person (as defined in the Purchase Agreement) failing to timely file an objection to the Sale Motion shall be forever barred from objecting to the Sale Motion, including the transferring of the Debtors' right, title and interest in, to and under substantially all of the Debtors' assets in accordance with the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable) free and clear of any and all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or other definitive agreement for an Alternative Transaction, if applicable, and will be deemed to consent to the Transaction or an Alternative Transaction (as applicable), including the transferring of the Debtors' right, title and interest in, to and under substantially all of the Debtors' assets in

accordance with the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable) free and clear of any and all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or such other definitive agreement for an Alternative Transaction, if applicable, and provided by such Transaction or Alternative Transaction.

16.     Any Person failing to timely file an objection to any Cure Amounts set forth in the Assumption Notice or the proposed assumption and assignment of the Debtors' right, title and interest in, to and under the Desired 365 Contracts shall be forever barred from objecting to the Cure Amounts and from asserting a claim for any cure or other amounts (or asserting that any defaults exist under the Desired 365 Contract as of the date of assumption) against any Debtors, their estates, the Potential Buyer or any of their respective affiliates (or such other Person that agrees to purchase the Properties under an Alternative Transaction that is approved by the Bankruptcy Court) with respect to its Desired 365 Contract arising prior to assumption and assignment of the Debtors' right, title and interest in, to and under the Desired 365 Contract and will be deemed to consent to the proposed assumption and assignment of the Debtors' right, title and interest in, to and under the Desired 365 Contracts as provided by such Transaction or Alternative Transaction.

17.     Where a counterparty to a Desired 365 Contract files a timely objection asserting a higher cure amount than the maximum Cure Amount set forth in the Assumption Notice and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Sale Hearing or such other date and time as may be fixed by this Court.   All other objections to the proposed

assumption and assignment of the Debtors' right, title and interest in, to and under the Desired 365 Contracts will be heard at the Sale Hearing.

18.     If any Person asserts that any property or right cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable), in accordance with the Transaction (or Alternative Transaction, as applicable) and Bankruptcy Code §§ 363 and/or 365 on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights, then such Person shall file and serve a notice with all supporting documentation (a "Rights Notice") so that the Rights Notice is actually received by the Notice Parties on or before the Objection Deadline.  Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right. The assertion of a Rights Notice shall not require an exercise of the underlying right asserted and any such right asserted shall be subject to the terms and conditions of the Purchase Agreement or definitive agreement for an Alternative Transaction, as the case may be (including, without limitation, any allocation contained therein).

19.     Any Person failing to timely file and serve a Rights Notice shall be (a) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under the properties of the Debtors to be sold, assumed and/or assigned pursuant to the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable), including, without limitation, the rights to act as operator under the

Operated JOAs (as defined in the Purchase Agreement) (which rights shall be assigned to and vest in the Buyer Designated Operator (as defined in the Purchase Agreement)), free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable), and from asserting any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under such properties, as set forth in the Purchase Agreement or such other definitive agreement for an Alternative Transaction (if applicable), and (b) deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of such right, title and interest in, to and under such properties, free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction, as applicable (regardless of whether such consent must be in writing).

20. If any Person timely files and serves a Rights Notice in accordance with this Order, the Debtors shall have the opportunity to object to any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights asserted such Person by filing an objection to such Rights Notice at any time prior to the Sale Hearing. Upon the Debtors' filing of such objection to the Rights Notice, any rights asserted shall be deemed to be disputed and the Debtors shall be entitled to assert a bona fide dispute exists as to such rights asserted. Nothing herein shall be deemed to be a waiver of any rights of the Debtors to contest any rights asserted by any Person in Rights Notices; all such rights of the Debtors are expressly preserved.

US 601607v.6

21.     Any Person desiring to submit a bid for the Debtors' right, title and interest in, to and under any of the Debtors' assets must comply with the Bid Procedures and shall not be permitted to participate at the Auction unless such Person is an Auction Participant (as defined in the Bid Procedures).

22.     If one or more Qualified Bids in addition to that of the Potential Buyer is determined by TriDimension in its business judgment to be higher or better than the Potential Buyer's Qualified Bid, the Debtors will conduct an auction at 9:30 a.m., prevailing Central time, on November 16, 2010 at the offices of Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3700, Dallas, Texas 75201 or at such later time or other place as agreed by the Potential Buyer and TriDimension, in consultation with the Representatives (as defined in the Bid Procedures) of the Lenders and the Committee, or approved by Order of the Bankruptcy Court, and of which the Debtors will notify the Potential Buyer and all Qualified Bidders (as defined in the Bid Procedures) who have submitted Qualified Bids that TriDimension has determined are higher or better than the Potential Buyer's Qualified Bid.  Qualified Bidders seeking to participate as a bidder at the Auction must comply with the Bid Procedures.

23.     Copies of the Purchase Agreement and Bid Procedures may be downloaded at http://www.bmcgroup.com or obtained upon receipt of a written request to TriDimension Energy, LP, c/o The BMC Group, PO Box 3020, Chanhassen, MN 55317-3020, Telephone: 888.909.0100.

24.     Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

US 601607v.6

25. The terms of this Order shall control to the extent of any conflict with the Motion.

26. This Order shall become effective immediately upon its entry.

27. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

28. Notwithstanding anything to the contrary in this Order, the attachments hereto, or the Motion or the attachments thereto:

    a. this Order shall not be construed as a determination as to whether the Lenders possess a right to credit bid under 11 U.S.C. § 363(k), and all rights of the Lenders to assert such a right and, correspondingly, all rights of parties in interest to contest such an assertion, are preserved;

    b. any allocation of purchase price by the Potential Buyer or any bidder (Qualified or otherwise) shall be binding on the estates only for the Transaction or Alternative Transaction contemplated in the Purchase Agreement; and

    c. the "Bid Requirements" contained in the Bid Procedures are modified such that a Bid must provide for an aggregate consideration of at least $1,125,000 greater than the Purchase Price (as opposed to aggregate consideration of at least $1,250,000 greater than the Purchase Price as proposed in the Motion).

### # # # END OF ORDER # # #

US 601607v.6

Submitted By:

William L. Wallander, SBT #20780750
Clayton T. Hufft, SBT #24056658
Bradley R. Foxman, SBT #24065243
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel:  214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; chufft@velaw.com;
bfoxman@velaw.com

**COUNSEL FOR THE LP DEBTORS**

# EXHIBIT "A"

# BID PROCEDURES

On October 19, 2010, TDE Operating GP LLC ("Operating GP"), TriDimension Energy, L.P. ("TriDimension"), TDE Subsidiary GP LLC, TDE Property Holdings, LP, Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, and Ram Drilling, LP (collectively, the "Debtors") filed their *Motion for an Order Authorizing (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of Claims, Encumbrances, Liens, and Interests, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Related Relief* [Docket No. 368] (the "Sale Motion"). Subject to receipt of a higher or better offer(s), under the Sale Motion, the Debtors propose to effectuate the transactions contemplated by the Asset Purchase Agreement dated as of October 18, 2010 (the "Purchase Agreement") among SR Acquisitions I, LLC (the "Potential Buyer") and the applicable Debtors parties thereto (the "Transaction"). The Purchase Agreement provides for the transfer of the Debtors' right, title, and interest in, to and under substantially all of the Debtors' assets[1]. These Bid Procedures have been approved and authorized pursuant to the *Order (A) Approving the Procedures for the Solicitation of Offers; (B) Approving the Form and Manner of Notice; (C) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (D) Approving the Bid Protections and Procedures; and (E) Approving a Break-Up Fee in Connection with the Transaction Contemplated by the Purchase Agreement* [Docket No. __] (the "Bid Procedures Order") entered by the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, on October __, 2010.

## The Bidding Process

Under the circumstances set forth in the Purchase Agreement and subject to the conditions set forth therein, at any time on or before November 11, 2010 at 4:00 p.m. (prevailing Central Time) (the "Bid Deadline"), TriDimension[2] may, directly or indirectly through its Representatives[3], (i) engage in discussions and negotiations regarding an Alternative Transaction (as defined in the Purchase Agreement) with any entity (the "Alternative Bidder") that the board of directors of Operating GP or any committee of the board of directors of Operating GP acting pursuant to authority of such committee granted by such board of directors (the "Board of Directors") reasonably believes could lead to a bona fide written offer relating to an Alternative Transaction that would meet the requirements of these Bid Procedures (the "Superior Proposal"), (ii) furnish to such Alternative Bidder and its Representatives, and to any other party that has made a request therefor (together with the Alternative Bidders, the "Potential Bidders") in connection with its consideration of making an offer or proposal relating to an Alternative Transaction (each, a "Bid"), public and non-public information relating to any Debtor pursuant to a confidentiality agreement with such Potential Bidder (the "Confidentiality Agreement") containing terms that are no less favorable to the Debtors than those contained in the

---

[1] Except as expressly noted herein, capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order.

[2] In acting under these Bid Procedures, TriDimension is expressly authorized to act on its own behalf and on behalf of the other Debtors pursuant to the Order of the Bankruptcy Court approving these Bid Procedures.

[3] "Representatives" means, with respect to any person, the officers, directors, employees, members, managers, partners, investment bankers, attorneys, accountants, consultants or other advisors, agents or representatives of such person, when acting in such capacity on behalf of such person.

confidentiality agreement dated April 29, 2010 between TriDimension and the Potential Buyer, and afford to any such Potential Bidder who has signed a Confidentiality Agreement reasonable access to any datasite, properties, assets, books or records of any Debtor or the business of the Debtors. Each Confidentiality Agreement entered into after the date of the entry of the Bid Procedures Order shall recognize that the Debtors are obligated to comply with the terms of these Bid Procedures. Each confidentiality agreement previously entered into between the Debtors and a Potential Bidder in effect on the date of the entry of the Bid Procedures Order shall be deemed to be a Confidentiality Agreement. By participating in the Bidding Process (as defined below), each Potential Bidder shall be deemed to have agreed to any and all modifications to any previously executed confidentiality agreement as necessary to permit the Debtors to comply with the terms of these Bid Procedures and the Purchase Agreement.

TriDimension shall provide these Bid Procedures, together with a copy of the Purchase Agreement, to each Potential Bidder after the Court's entry of the Bid Procedures Order. To the extent the Purchase Agreement is amended, modified or supplemented after the date of the Purchase Agreement (collectively, the "Supplemental Information"), such Supplemental Information also shall be provided to parties to whom the Purchase Agreement is delivered pursuant to the preceding sentence.

Any Potential Bidder wishing to conduct due diligence concerning a prospective Alternative Transaction shall be granted access, subject to execution of a Confidentiality Agreement, to all relevant business and financial and other information of the Debtors necessary to enable such Potential Bidder to evaluate the assets of the Debtors and the prospective Alternative Transaction. TriDimension shall make such access available during normal business hours as soon as reasonably practicable. Potential Bidders interested in conducting due diligence should contact Joseph Allio at Stephens Inc., 300 Crescent Court, Suite 600, Dallas, Texas 75201, (phone) 214.258.2764, (fax) 214.258.2740, joe.allio@stephens.com. Notwithstanding the foregoing, the Debtors are not required to provide confidential or proprietary information to any person if TriDimension reasonably believes that such disclosure would be detrimental to the interests and operations of the Debtors or any of the Debtors' affiliates.

Prior to the selection of the Transaction or the proposed Alternative Transaction as the highest or best offer (the "Successful Bid"), TriDimension may: (a) receive Bids from Potential Bidders, (b) request information from Potential Bidders and engage in discussions with Potential Bidders and take such other actions TriDimension desires to determine whether any Bid constitutes or could lead to a Superior Proposal, (c) evaluate any Bid made by a Potential Bidder, (d) engage in discussions and negotiations with any Alternative Bidder with respect to any Bid submitted by an Alternative Bidder, and (e) take any other actions contemplated under these Bid Procedures (collectively, the "Bidding Process").[4]

### Deliveries by Potential Bidders

In order to participate in the Bidding Process, each Potential Bidder (but not the Potential

---

[4] Nothing herein shall be deemed to limit or otherwise modify any of the Debtors' respective rights under the Purchase Agreement.

Buyer) must deliver (unless previously delivered in a form acceptable to TriDimension as provided herein or waived by TriDimension in its sole and absolute discretion) to TriDimension prior to the Bid Deadline:

(a)     An executed Confidentiality Agreement acceptable to TriDimension; and

(b)     Financial statements of, or other information relating to, the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of the Alternative Transaction, financial statements of or other information relating to the equity holder(s) of the Potential Bidder, or such other form of financial disclosure or evidence of financial capability and performance and legal authority acceptable to TriDimension and its advisors as requested by TriDimension (and, if requested by TriDimension, certified to by a duly authorized representative of the Potential Bidder (or equity holders thereof, as applicable)), demonstrating such Potential Bidder's (individually or jointly with other Potential Bidders with whom such Potential Bidder is acting jointly, with the consent of TriDimension and without improper collusion under Bankruptcy Code § 363, in submitting a Bid) financial capability and legal authority to close the proposed transaction in a timely manner.

A Potential Bidder (or group of Potential Bidders acting jointly with the consent of TriDimension and without improper collusion under the Bankruptcy Code) that delivers the documents described in subparagraphs (a) and (b) above, and that TriDimension determines, in its business judgment, is financially capable of consummating the Alternative Transaction in a timely manner shall be permitted to further participate in the Bidding Process. TriDimension may require an update of such information and an affirmation of any Potential Bidder's financial capability to bid and consummate any Transaction or Alternative Transaction contemplated hereunder.

### Due Diligence for Potential Bidders

To obtain due diligence access or additional information from the Debtors, a Potential Bidder must first advise TriDimension of the nature and extent of additional due diligence such Potential Bidder may wish to conduct. TriDimension will designate an employee or other representative (which may be the Debtors' financial advisor or investment banker) to coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline, except as otherwise agreed to by TriDimension in writing. None of the Debtors, their affiliates or any of their respective Representatives are obligated to furnish any information relating to the properties or equity interests in any of the respective Debtors to any person other than a Potential Bidder.

### Submission by Bid Deadline

A Potential Bidder who desires to make a Bid must deliver a written copy of its Bid on or before the Bid Deadline to counsel for the LP Debtors at Vinson & Elkins LLP, Attn: William L. Wallander, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas 75201,

(fax) 214.999.7905, bwallander@velaw.com and to the investment bankers for the Debtors at Stephens Inc., Attn: Joseph Allio, 300 Crescent Court, Suite 600, Dallas, Texas 75201, (fax) 214.258.2740, joe.allio@stephens.com. TriDimension may, with the consent of the Potential Buyer, extend the Bid Deadline, but shall promptly notify the Potential Buyer and all Potential Bidders of any such extension.

**Determination of "Qualified Bid" Status**

A Bid received from a Potential Bidder will constitute a "Qualified Bid" only if it includes all of the following documents (the compliance of which shall be determined by TriDimension in its sole and absolute discretion) and a good faith deposit as described below (collectively, the "Required Bid Documents") and meets all of the Bid Requirements (as defined below):

(a) A written acquisition agreement duly executed by the Potential Bidder, together with a copy of such agreement marked to show the specific changes to the Purchase Agreement that the Potential Bidder requires (which marked copy may be an electronic comparison of the written acquisition agreement submitted and the Purchase Agreement). The acquisition agreement submitted by a Potential Bidder:

(i) shall include a complete set of all disclosure schedules and exhibits thereto which, to the extent practicable, will be marked to show the specific changes to the disclosure schedules and exhibits to the Purchase Agreement, if applicable;

(ii) shall not contain any financing or due diligence contingencies to closing on the proposed transaction;

(iii) shall not contain any condition to closing of the transaction on the receipt of any third party approvals (excluding required Bankruptcy Court approval and any required governmental, and/or regulatory approval, if any); and

(iv) shall provide that the offer of the Potential Bidder is irrevocable through twenty days after the entry of an Order approving the Sale Motion and subject to the backup bidder provisions hereinbelow.

(b) An executed escrow agreement in substantially the form of Exhibit H to the Purchase Agreement and a good faith deposit (the "Good Faith Deposit") in the form of a certified or bank check (or other form acceptable to TriDimension in its sole and absolute discretion) payable to the order of TriDimension (or such other party as TriDimension may designate) in the amount of $1,500,000.

Each Potential Bidder that makes a Qualified Bid shall be referred to as a "Qualified Bidder." The Potential Buyer shall be deemed to be a Qualified Bidder and the Purchase Agreement and the Transaction shall be deemed to be a Qualified Bid.

**Bid Requirements**

All Bids must also satisfy all of the following requirements, all solely as determined by TriDimension (and, as to clause (a), by TriDimension in its business judgment after consultation with the Lenders[5] (as defined in the Sale Motion) and the Official Committee of Unsecured Creditors (the "<u>Committee</u>")) (collectively, the "<u>Bid Requirements</u>")):

(a)     The Bid must provide for an aggregate consideration of at least $1,125,000 greater than the Purchase Price (as defined in the Purchase Agreement) under the Purchase Agreement (subject to adjustment as provided in the Purchase Agreement or, as to adjustments related to title or environmental defects, a methodology for such adjustments based on the allocated value of the Debtors' assets as submitted by a Potential Bidder; <u>provided</u>, <u>that</u>, any proposed adjustments to the Purchase Price must be submitted with the Bid and any Defect Notice (as defined in the Purchase Agreement) must be submitted by the Bid Deadline). In making this determination, TriDimension, in consultation with Representatives of the Lenders and Committee, may consider, among other things, the amount of cash and other consideration to be paid or delivered and the liabilities to be assumed or otherwise satisfied, and the determination by TriDimension hereunder shall be final for the purposes of these Bid Procedures.

(b)     The Bid must be accompanied by satisfactory evidence of committed financing or other financial ability to consummate the Alternative Transaction in a timely manner.

(c)     The Bid cannot be conditioned upon the Bankruptcy Court's approval of any bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment.

(d)     The Bid must expressly acknowledge and represent that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the business assets of the Debtors and the Alternative Transaction prior to making its Bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and the assets of the Debtors in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or assets of the Debtors or the Alternative Transaction, or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Purchase Agreement ultimately accepted and executed by the applicable Debtors.

---

[5] Any of the Lenders' rights of consultation set forth in these Bid Procedures will not apply in the event the Lenders assert or submit any credit bid pursuant to Bankruptcy Code Section 363(k).

(e)     The Bid must identify each and every executory contract and unexpired lease that is to be assumed and assigned to the Potential Bidder pursuant to the Alternative Transaction.

(f)     The Bid must be received by the Bid Deadline.

## Auction

Prior to the Auction (as defined below), TriDimension shall evaluate the Qualified Bids and select the Qualified Bid or combination of Qualified Bids that TriDimension, in consultation with Representatives of the Lenders and Committee, determines in its business judgment to be the highest or best Qualified Bid(s) (the "Initial Highest Bid"). In making this determination, TriDimension, in consultation with Representatives of the Lenders and Committee, may consider, among other things, the amount of cash and other consideration to be paid or delivered and the liabilities to be assumed or otherwise satisfied, and the determination by TriDimension hereunder shall be final for the purposes of these Bid Procedures.

If one or more Qualified Bids are determined by TriDimension in its business judgment to be higher or better than the Potential Buyer's Qualified Bid, TriDimension will conduct an auction (the "Auction") with respect to such Qualified Bids in order to determine, in the business judgment of TriDimension, in consultation with the Representatives of the Lenders and Committee present at the Auction, the Successful Bid. If (a) no Qualified Bid (other than that of the Potential Buyer) is received by the Bid Deadline and (b) the Lenders do not exercise valid credit bid rights, if any, pursuant to Bankruptcy Code Section 363(k) by providing written notice on or before November 11, 2010 at 5:00 p.m. (prevailing Central Time) to the Debtors and Potential Buyer thereof and of their intent to submit a higher or better Bid than the Potential Buyer's Qualified Bid at the Auction, then TriDimension will deem the Potential Buyer's Qualified Bid the Successful Bid, and the Debtors will proceed to consummate the Purchase Agreement following the approval of the Sale Motion without conducting the Auction.

The Auction, if required, will commence at 9:30 a.m. (prevailing Central Time) on November 16, 2010, at the offices of Vinson & Elkins, L.L.P., 2001 Ross Avenue, Suite 3700, Dallas, Texas 75201 or at such later time or other place as agreed by the Potential Buyer and TriDimension, in consultation with Representatives of the Lenders and Committee, or approved by Order of the Bankruptcy Court, and of which TriDimension will notify all Qualified Bidders who have submitted Qualified Bids that TriDimension has determined are higher or better than the Potential Buyer's Qualified Bid (collectively, together with the Potential Buyer, the "Auction Participants").

Promptly upon determination of the Initial Highest Bid, and in any event, at least one business day prior to the commencement of the Auction, TriDimension will provide to the Auction Participants, the Lenders and the Committee a copy of the Initial Highest Bid. In order to allow the Auction Participants to evaluate the Initial Highest Bid, TriDimension shall use commercially reasonable efforts to disclose the value, if any, that in its business judgment, it places on the Initial Highest Bid and on such Auction Participant's Qualified Bid.

Only the Debtors, the Auction Participants, potential financing sources of Auction

Participants, their respective professionals, and a reasonable number of representatives of the Lenders, Committee and Office of the United States Trustee will be entitled to attend, participate and be heard at the Auction, but only the Auction Participants (including the Potential Buyer) and the Lenders (provided that the Lenders have provided written notice to the Debtors and Potential Buyer on or before November 11, 2010 at 5:00 p.m. (prevailing Central Time) of their intent to exercise their credit bid rights, if any, pursuant to Bankruptcy Code Section 363(k), and only to the extent of any such valid credit bid rights (if any)) will be entitled to make any subsequent Qualified Bids at the Auction.

At the commencement of the Auction, TriDimension shall formally announce the Initial Highest Bid. All Qualified Bids at the Auction will be based on and increased therefrom, and thereafter made in minimum increments of at least $100,000[6] higher than the previous Qualified Bid or in such higher increments as TriDimension may determine. The Potential Buyer's bid shall include the amount of the Break-Up Fee (as defined below) as a component of any subsequent Qualified Bid submitted by the Potential Buyer. For example, if at the Auction a subsequent Qualified Bid submitted by the Potential Buyer is the Successful Bid (over another Qualified Bid that was submitted), then the purchase price that must be paid by the Potential Buyer pursuant to such Successful Bid shall be reduced by the amount of the Break-Up Fee (such that the net amount received by the Debtors is the highest amount bid). TriDimension, in consultation with the Representatives of the Lenders and Committee present at the Auction, shall have the right to adopt such other rules for the Auction which it believes in its business judgment will promote the goals of the Auction.

The Potential Buyer and, by making a Qualified Bid at the Auction, each Auction Participant, shall be deemed to have agreed to keep its final Qualified Bid made at or prior to the Auction open through twenty days after the entry of an Order approving the Sale Motion. Bidding at the Auction will continue until such time as the highest or otherwise best Qualified Bid is determined in the business judgment of TriDimension, in consultation with Representatives of the Lenders and Committee present at the Auction. To facilitate a deliberate and orderly consideration of competing Qualified Bids submitted at the Auction, TriDimension, in its sole and absolute discretion, may adjourn the Auction at any time and from time-to-time and may conduct multiple rounds of bidding. Prior to conclusion of the Auction, TriDimension may, in consultation with Representatives of the Lenders and Committee, permit one or more Auction Participants to join together as a single Qualified Bidder for the purpose of submitting a joint Qualified Bid to acquire specified assets or properties of the Debtors. Upon conclusion of the Auction, TriDimension will (a) review each Qualified Bid on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale and (b) in consultation with Representatives of the Lenders and Committee present at the Auction, identify the Successful Bid. In making this determination, TriDimension, in consultation with Representatives of the Lenders and Committee present at the Auction, may consider, among other things, the amount of cash and other consideration to be paid or delivered and the liabilities to be assumed or otherwise

---

[6] Minimum bid increments must consist solely of cash consideration unless otherwise authorized by TriDimension in the exercise of its business judgment, in consultation with Representatives of the Lenders and Committee present at the Auction.

satisfied, and the determination by TriDimension hereunder shall be final for the purposes of these Bid Procedures.

## Break-Up Fee

If (a) the Purchase Agreement is terminated (i) by the Potential Buyer pursuant to and in accordance with Section 9.01(d)(ii) of the Purchase Agreement or (ii) by the Debtors pursuant to and in accordance with Section 9.01(e)(i) of the Purchase Agreement, (b) the other requirements of Section 9.03 of the Purchase Agreement are satisfied, and (c) any Debtor or Debtors consummate an Alternative Transaction at any time on or prior to the date that is eighteen calendar months after the date of the Purchase Agreement, the Debtors shall pay to the Potential Buyer an amount equal to $750,000 (the "Break-Up Fee") in cash, within two business days of the date of consummation of the first Alternative Transaction, from the sale proceeds thereof or, in the event of a successful credit bid by the Lenders, the Lenders shall pay the Break-Up Fee in cash directly to the Potential Buyer upon consummation of this type of Alternative Transaction and evidence payment of same in writing to the Debtors. Such Break-Up Fee shall constitute an administrative expense Claim against any Debtor under Section 503(b) or 507(a)(2) of the Bankruptcy Code and, to the extent an Alternative Transaction has been consummated, be entitled to a "carve-out" priority status with regard to any security interest the Lenders hold in any proceeds from the sale of Lenders' collateral in such Alternative Transaction but only to the extent unencumbered sales proceeds thereof, if any, are not available to pay the Break-Up Fee. Such right to payment from sales proceeds of an Alternative Transaction shall be *pari-passu* with any other party entitled to "carve-out" priority status in any cash collateral or DIP financing orders approved by the Bankruptcy Court. However, provided that the Potential Buyer is ready, willing and able to consummate the Transaction in accordance with the Purchase Agreement and the deadlines within any Bankruptcy Court order, if the Alternative Transaction includes a conveyance, assignment or transfer of ownership to the Lenders without generating proceeds, the Potential Buyer's right to the Break-Up Fee shall be paid by the Lenders upon consummation of such Alternative Transaction.

## Sale Hearing

An evidentiary hearing to consider the Sale Motion and approval of the Successful Bid (the "Sale Hearing"), will be held on November 17, 2010 at 1:30 p.m prevailing Central Time (the "Sale Hearing Date") in the courtroom of the Honorable Stacey G.C. Jernigan, 1100 Commerce Street, 14th Floor, Dallas, Texas 75242. The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court or by the Debtors with the approval of the Successful Bidder but without further notice to creditors and parties in interest other than by announcement by Debtors of the adjourned date at the Sale Hearing.

The Debtors' presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute the Debtors' acceptance of the Bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by Order of the Bankruptcy Court.

## Objections

Objections, if any, to the Sale Motion shall be filed and served such that each objection is

actually received by the following parties on or before 4:00 p.m., prevailing Central time, on November 12, 2010 (the "Objection Deadline"): (a) counsel for the LP Debtors at Vinson & Elkins LLP, Attn: William L. Wallander, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas 75201 (fax) 214.999.7905, bwallander@velaw.com, (b) counsel for the GP Debtors at Franklin Skierski Lovall Hayward LLP, Attn: Peter Franklin, 10501 N. Central Expressway, Suite 106, Dallas, Texas 75231, fax 972.755.7100, pfranklin@fslhlaw.com, (c) counsel for the Potential Buyer at Jones Day, Attn: Tom A. Howley, 717 Texas, Suite 3300, Houston, Texas, 77002-2712, (fax) 832.239.3600, tahowley@jonesday.com, (d) counsel for the DIP Agent and Agent at Mayer Brown LLP, Attn: Charles S. Kelley, 700 Louisiana Street, Suite 3400, Houston, Texas, 77002-2730, (fax) 713.238.2634, ckelley@mayerbrown.com, (e) counsel for the Official Committee of Unsecured Creditors at Gardere Wynne Sewell LLP, Attn: Richard M. Roberson, 1601 Elm Street, Suite 3000, Dallas, Texas 75201, (fax) 214.999.3955, rroberson@gardere.com, and (f) the United States Trustee's Office at Office of the United States Trustee, Attn: Nancy S. Resnick, 1100 Commerce Street, Room 9-C-60, Dallas, Texas 75242, (fax) 214.767.6530, Nancy.S.Resnick@usdoj.gov.

## Back-Up Bidders

If the Auction Participant whose Qualified Bid is the Successful Bid (the "Successful Bidder") fails to consummate the Transaction or Alternative Transaction (as applicable) because of a breach or failure to perform on the part of such Successful Bidder, the Auction Participant that had submitted the next highest or otherwise best Qualified Bid at the Auction (or in the case of the Potential Buyer, prior to or at the Auction) (the "Back-Up Bidder") will be deemed to be the Successful Bidder and the Debtors will be authorized to consummate the Transaction or Alternative Transaction (as applicable) with such Auction Participant without further order of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Successful Bid; provided that upon being notified that its Qualified Bid has become the Successful Bid, the Auction Participant submitting such Qualified Bid shall within three business days after such notification provide a Good Faith Deposit (unless such Auction Participant previously shall have provided a Good Faith Deposit that shall not have been returned as described below). Upon providing such Good Faith Deposit, such Auction Participant shall be deemed the Successful Bidder. If any Auction Participant fails to consummate the Transaction or Alternative Transaction (as applicable) because of a breach or failure to perform on the part of such Auction Participant (including without limitation the failure to timely deposit the Good Faith Deposit), the process described above may continue with other Auction Participants in decreasing order of the Qualified Bids as determined by Debtors until an Auction Participant shall consummate the Transaction or Alternative Transaction (as applicable).

## Return of Good Faith Deposit

The Good Faith Deposit of all Qualified Bidders (other than the Potential Buyer and the Successful Bidder) will be returned, without interest (other than any earnings on any such amounts under, and subject to, the terms of the escrow agreement pursuant to which such Good Faith Deposit is held), to each such Qualified Bidder within ten business days after the entry of an Order approving the Sale Motion, subject to the terms of the escrow agreement pursuant to which such Good Faith Deposit is held.

The Good Faith Deposit of the Potential Buyer and the Successful Bidder will be distributed pursuant to and in accordance with (a) the Purchase Agreement and the applicable acquisition agreement, respectively, and (b) the escrow agreement pursuant to which such Good Faith Deposit is held, as applicable.

## Modifications

TriDimension, in consultation with Representatives of the Lenders and Committee, may 1. determine (a) which Qualified Bid, if any, is the highest or otherwise best offer; and 2. (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid, any bid that, in the discretion of TriDimension, in consultation with Representatives of the Lenders and Committee, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors, their estates and their creditors. At or before the conclusion of the Auction, the Debtors may impose such other terms and conditions upon Alternative Bidders as they determine to be in the best interests of the Debtors' estates in these cases.

**EXHIBIT "B"**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| IN RE: | § § § § | Case No. 10-33565-SGJ |
| TRIDIMENSION ENERGY, L.P., *et al.,* | § § | Chapter 11 |
| DEBTORS. | § § § § | Jointly Administered |

## NOTICE OF TRANSACTION

**PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS WILL BE AFFECTED AS SET FORTH HEREIN.**

On May 21, 2010, the debtors and debtors in possession in the above-referenced bankruptcy cases (collectively, the "<u>Debtors</u>")[1] each filed a voluntary petition for relief (collectively, the "<u>Cases</u>") under chapter 11 of title 11 of the United States Code.

On October 19, 2010, the Debtors filed their *Motion for an Order Authorizing (A) the Sale of the Debtors' Right, Title and Interest In, To and Under Substantially All of the Debtors' Assets Free and Clear of Claims, Encumbrances, Liens, and Interests, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Related Relief* (the "<u>Sale Motion</u>") [Docket No. 368]. Subject to receipt of higher or better offer(s), the Debtors propose to effectuate the transactions contemplated by the Asset Purchase Agreement dated as of October 18, 2010 (as amended from time to time, the "<u>Purchase Agreement</u>") among SR Acquisitions I, LLC (the "<u>Potential Buyer</u>") and the Debtors (the "<u>Transaction</u>"). The Purchase Agreement provides for, among other things, the sale of the Debtors' right, title and interest in, to and under substantially all of the Debtors' assets to the Potential Buyer, free and clear of all liens, encumbrances, claims, and other interests except as otherwise set forth in the Purchase Agreement. The Potential Buyer has agreed to provide consideration of cash in the amount of $28,000,000.00 (subject to certain adjustments), upon the terms and subject to the conditions set forth in the Purchase Agreement.

On October 2_, 2010, the Court entered the *Order (A) Approving the Procedures for the Solicitation of Offers; (B) Approving the Form and Manner of Notice; (C) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (D) Approving the Bid Protections and Procedures; and (E) Approving a Break-Up Fee in Connection with the Transaction Contemplated by the Purchase Agreement* [Docket No. ___] (the "<u>Bid Procedures Order</u>") in which it, among other things, (a) approved the bid protections in the Purchase

---

[1] The Debtors are TriDimension Energy, L.P., Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, Ram Drilling, LP, TDE Property Holdings, LP, TDE Operating GP LLC, and TDE Subsidiary GP LLC.

Agreement (the "Bid Protections"), including the break-up fee payable thereunder, (b) approved the bid procedures in connection with the solicitation of higher or better offer(s), which are attached hereto as **Exhibit "A"** (the "Bid Procedures"), (c) scheduled an auction, (d) approved the form and manner of notice of the Bid Procedures and the respective dates, times and places for an auction, if required under the Bid Procedures, (e) approved the form and manner of the notice of the assumption and assignment of executory contracts and unexpired leases and rights thereunder, (f) established procedures for objecting to, and determining cure amounts in connection with, the assumption and assignment of executory contracts and unexpired leases and rights thereunder, (g) set a hearing to consider the Sale Motion on November 17, 2010 at 1:30 p.m. prevailing Central time (the "Sale Hearing"), and (h) granted other relief.

Any party desiring to make an offer or proposal relating to an Alternative Transaction (as defined in the Purchase Agreement) must comply with the Bid Procedures.

**Summary of Key Dates:**

| Bid Deadline | Thursday, November 11, 2010 at 4:00 p.m. |
| --- | --- |
| Objection Deadline/Deadline to Submit Rights Notices | Friday, November 12, 2010 at 4:00 p.m. |
| Auction | Tuesday, November 16, 2010 at 9:30 a.m. |
| Hearing on Sale Motion | Wednesday, November 17, 2010 at 1:30 p.m. |

Objections, if any, to Sale Motion or to the assumption and assignment of executory contracts and unexpired leases and rights thereunder shall be filed and served such that each objection is actually received by the following parties (collectively, the "Notice Parties") by 4:00 p.m., prevailing Central time, on November 12, 2010 (the "Objection Deadline"): (u) counsel for the LP Debtors at Vinson & Elkins LLP, Attn: William L. Wallander, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas, (fax) 214.999.7905, bwallander@velaw.com, (v) counsel for the GP Debtors at Franklin Skierski Lovall Hayward LLP, Attn: Peter Franklin, 10501 N. Central Expressway, Suite 106, Dallas, Texas 75231, fax 972.755.7100, pfranklin@fslhlaw.com, (w) counsel for the Potential Buyer at Jones Day, Attn: Tom A. Howley, 717 Texas, Suite 3300, Houston, Texas, 77002-2712, (fax) 832.239.3600, tahowley@jonesday.com, (x) counsel for the DIP Agent and Agent at Mayer Brown LLP, Attn: Charles S. Kelley, 700 Louisiana Street, Suite 3400, Houston, Texas, 77002-2730, (fax) 713.238.2634, ckelley@mayerbrown.com, (y) counsel for the Official Committee of Unsecured Creditors at Gardere Wynne Sewell LLP, Attn: Richard M. Roberson, 1601 Elm Street, Suite 3000, Dallas, Texas, 75201, (fax) 214.999.3955, rroberson@gardere.com, and (z) the United States Trustee's Office at Office of the United States Trustee, Attn: Nancy S. Resnick, 1100 Commerce Street, Room 9-C-60, Dallas, Texas, 75242, (fax) 214.767.6530, Nancy.S.Resnick@usdoj.gov.

Any person failing to timely file an objection to the Sale Motion shall be forever barred from objecting to the Sale Motion, including the transferring of the Debtors' right, title, and interest in, to and under substantially all of the Debtors' assets in accordance with the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable) free and clear of any and all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or other definitive agreement for an Alternative Transaction, if applicable, and will be deemed to consent to the Transaction or an Alternative Transaction (as applicable), including the transferring of the Debtors' right, title, and interest in, to and under substantially all of the Debtors' assets in accordance with the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable) free and clear of any and all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or such other definitive agreement for an Alternative Transaction, if applicable, and provided by such Transaction or Alternative Transaction.

Any person failing to timely file an objection to the assumption and assignment of any executory contract or unexpired lease and rights thereunder, shall be forever barred from objecting to the assumption and assignment of such executory contract or unexpired lease and rights thereunder and will be deemed to consent to the assumption of such executory contract or unexpired lease.

If any Person asserts that any property or right cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable), in accordance with the Transaction (or Alternative Transaction, as applicable) and Bankruptcy Code §§ 363 and/or 365 on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights, then such Person shall file and serve a notice with all supporting documentation (a "Rights Notice") so that the Rights Notice is actually received by the Notice Parties on or before the Objection Deadline. Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right. The assertion of a Rights Notice shall not require an exercise of the underlying right asserted and any such right asserted shall be subject to the terms and conditions of the Purchase Agreement or definitive agreement for an Alternative Transaction, as the case may be (including, without limitation, any allocation contained therein).

Any Person failing to timely file and serve a Rights Notice shall be (a) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the properties of the Debtors to be sold, assumed and/or assigned pursuant to the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable) including, without limitation, the rights to act as operator under the Operated JOAs (as defined in the Purchase Agreement) (which rights shall be assigned to and vest in the Buyer Designated Operator (as defined in the Purchase Agreement)), free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable), and from asserting any alleged approval rights, consent rights, preferential purchase rights, rights of

purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under such properties, as set forth in the Purchase Agreement or such other definitive agreement for an Alternative Transaction (if applicable), and (b) deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under the properties, free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction, as applicable (regardless of whether such consent must be in writing).

If any Person timely files and serves a Rights Notice in accordance with the Bid Procedures Order, the Debtors shall have the opportunity to object to any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights asserted by such Person by filing an objection to such Rights Notice at any time prior to the Sale Hearing. Upon the Debtors' filing of such objection to the Rights Notice, any rights asserted shall be deemed to be disputed and the Debtors shall be entitled to assert a bona fide dispute exists as to such rights asserted. Nothing herein shall be deemed to be a waiver of any rights of the Debtors to contest any rights asserted by any Person in Rights Notices; all such rights of the Debtors are expressly preserved.

Copies of the Purchase Agreement, Bid Procedures, and Bid Procedures Order may be downloaded at http://www.bmcgroup.com or obtained upon receipt of a written request to TriDimension Energy, LP, c/o The BMC Group, PO Box 3020, Chanhassen, MN 55317-3020, Telephone: 888.909.0100.

Dated: October ___, 2010

Respectfully submitted,

_____
William L. Wallander, SBT #20780750
Clayton T. Hufft, SBT #24056658
Bradley R. Foxman, SBT #24065243
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; chufft@velaw.com;
bfoxman@velaw.com

**COUNSEL FOR THE LP DEBTORS**

**EXHIBIT "C"**

|   |   |
|---|---|
| § | |
| § | |
| IN RE: § | Case No. 10-33565-SGJ |
| § | |
| TRIDIMENSION ENERGY, L.P., *et al.,* § | Chapter 11 |
| § | |
| DEBTORS. § | Jointly Administered |
| § | |
| § | |

### NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT
### OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS WILL BE
AFFECTED AS SET FORTH HEREIN.**

On May 21, 2010, the debtors and debtors in possession in the above-referenced
bankruptcy cases (collectively, the "Debtors")[1] each filed a voluntary petition for relief
(collectively, the "Cases") under chapter 11 of title 11 of the United States Code.

On October 19, 2010, the Debtors filed their *Motion for an Order Authorizing (A) the
Sale of the Debtors' Right, Title and Interest In, To and Under Substantially All of the Debtors'
Assets Free and Clear of Claims, Encumbrances, Liens, and Interests, (B) the Assumption and
Assignment of Executory Contracts and Unexpired Leases, and (C) Related Relief* (the "Sale
Motion") [Docket No. 368]. Subject to receipt of higher or better offer(s), the Debtors propose
to effectuate the transactions contemplated by the Asset Purchase Agreement dated as of
October 18, 2010 (as amended from time to time, the "Purchase Agreement") among SR
Acquisitions I, LLC (the "Potential Buyer") and the Debtors (the "Transaction"). The Purchase
Agreement provides for, among other things, the sale of the Debtors' right, title and interest in, to
and under substantially all of the Debtors' assets to the Potential Buyer, free and clear of all
liens, encumbrances, claims, and other interests except as otherwise set forth in the Purchase
Agreement. The Potential Buyer has agreed to provide consideration of cash in the amount of
$28,000,000 (subject to certain adjustments), upon the terms and subject to the conditions set
forth in the Purchase Agreement.

On October 2_, 2010, the Court entered the *Order (A) Approving the Procedures for the
Solicitation of Offers; (B) Approving the Form and Manner of Notice; (C) Approving Procedures
for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (D) Approving
the Bid Protections and Procedures; and (E) Approving a Break-Up Fee in Connection with the*

---

[1] The Debtors are TriDimension Energy, L.P., Axis E&P, LP, Axis Onshore, LP, Axis Marketing, LP, Ram Drilling, LP, TDE Property Holdings, LP, TDE Operating GP LLC, and TDE Subsidiary GP LLC.

*Transaction Contemplated by the Purchase Agreement* [Docket No. ▢] (the "Bid Procedures Order") in which it, among other things, (a) approved the bid protections in the Purchase Agreement (the "Bid Protections"), including the break-up fee payable thereunder, (b) approved the bid procedures in connection with the solicitation of higher or better offer(s), which are attached hereto as **Exhibit "A"** (the "Bid Procedures"), (c) scheduled an auction, (d) approved the form and manner of notice of the Bid Procedures and the respective dates, times and places for an auction, if required under the Bid Procedures, (e) approved the form and manner of the notice of the assumption and assignment of executory contracts and unexpired leases and rights thereunder, (f) established procedures for objecting to, and determining cure amounts in connection with, the assumption and assignment of executory contracts and unexpired leases and rights thereunder, (g) set a hearing to consider the Sale Motion on November 17, 2010 at 1:30 p.m. prevailing Central time (the "Sale Hearing"), and (h) granted other relief.

In connection with the Transaction or an Alternative Transaction (as defined in the Purchase Agreement) (as applicable), the Debtors may seek to assume certain executory contracts and unexpired leases (collectively, the "Desired 365 Contracts") and rights thereunder and assign such executory contracts and unexpired leases and rights thereunder to the Potential Buyer or such other party that proposes an Alternative Transaction (as applicable). **You are receiving this notice because you are identified as a party to one or more Desired 365 Contracts that may be assumed by one or more of the Debtors and assigned to the Potential Buyer or such other party that proposes an Alternative Transaction** (the "Alternative Buyer").

A list of the Desired 365 Contracts, including a description of the Desired 365 Contracts and the maximum amount, if any, that will be paid to cure all defaults and arrearages under such Desired 365 Contract (the "Cure Amount"), is set forth on **Exhibit "B"** attached hereto. The inclusion of any contract or lease on Exhibit "B" shall not be deemed to be an admission by the Debtors that such contract or lease is an "executory contract" or "unexpired lease" for purposes of Section 365 of the Bankruptcy Code, and the Debtors reserve all rights in connection with same. Such Cure Amounts may be paid directly to you or to certain third parties, as applicable under state law, to cure all defaults and arrearages related to the Desired 365 Contract. Exhibit "B" sets forth the portion of the Cure Amount to be paid to you or to one or more third parties, as applicable. The Debtors propose to (i) pay all valid and undisputed Cure Amounts as provided in Exhibit B, and (ii) establish a cash reserve to satisfy disputed Cure Amounts upon approval by the Court. The Debtors believe that the Potential Buyer or Alternative Buyer (as applicable) provides you adequate assurance of future performance under your respective Desired 365 Contract.

The Debtors are authorized to amend the Assumption Notice by amending Cure Amounts by sending a new or amended Assumption Notice at any time at least five (5) calendar days prior to the Sale Hearing; *provided*, however, that counterparties to any Desired 365 Contracts whose Cure Amounts are amended shall have at least five (5) calendar days from service of the amended Assumption Notice to properly object to such Cure Amount amendment. The Debtors are authorized to amend the Assumption Notice by adding or deleting Desired 365 Contracts at any time prior to the Sale Hearing, and they shall use commercially reasonable efforts to affect the assumption and assignment of any such added 365 Contract (as defined in the Purchase

Agreement or other definitive agreement to effectuate an Alternative Transaction (if applicable)) and rights thereunder by the applicable Debtor in accordance with the Bankruptcy Code and Sale Motion; provided, however, that counterparties to any such added 365 Contracts shall have at least five (5) calendar days from service of the amended Assumption Notice to properly object to the assumption and assignment of their respective Desired 365 Contract and rights thereunder and the applicable Cure Amount.

**After the assumption and assignment of your Desired 365 Contract and rights thereunder, the Debtors, the Potential Buyer or the buyer under an Alternative Transaction (as applicable) and their respective subsidiaries will be relieved of any liability to you that accrued or arose before the date of assumption and you shall look solely to the Debtors as to any such liability.** Further, your Desired 365 Contract will remain in full force and effect for the benefit of the Potential Buyer or the buyer under an Alternative Transaction (as applicable) in accordance with its terms, notwithstanding any provision in any such Desired 365 Contract which prohibits, restricts or conditions such assignment or transfer thereof or its rights thereunder.

Pursuant to the Bid Procedures Order, if you object to the proposed assumption and assignment of any Desired 365 Contracts and rights thereunder, including but not limited to the proposed maximum Cure Amounts or adequate assurance of future performance (or if you assert that a default exists that must be cured other than by payment of the Cure Amount), you must file with the Court and serve an objection upon the following parties (collectively, the "Notice Parties") by 4:00 p.m., prevailing Central time, on November 12, 2010 (the "Objection Deadline"): (u) counsel for the LP Debtors at Vinson & Elkins LLP, Attn: William L. Wallander, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas, (fax) 214.999.7905, bwallander@velaw.com, (v) counsel for the GP Debtors at Franklin Skierski Lovall Hayward LLP, Attn: Peter Franklin, 10501 N. Central Expressway, Suite 106, Dallas, Texas 75231, fax 972.755.7100, pfranklin@fslhlaw.com, (w) counsel for the Potential Buyer at Jones Day, Attn: Tom A. Howley, 717 Texas, Suite 3300, Houston, Texas, 77002-2712, (fax) 832.239.3600, tahowley@jonesday.com, (x) counsel for the DIP Agent and Agent at Mayer Brown LLP, Attn: Charles S. Kelley, 700 Louisiana Street, Suite 3400, Houston, Texas, 77002-2730, (fax) 713.238.2634, ckelley@mayerbrown.com, (y) counsel for the Official Committee of Unsecured Creditors at Gardere Wynne Sewell LLP, Attn: Richard M. Roberson, 1601 Elm Street, Suite 3000, Dallas, Texas, 75201, (fax) 214.999.3955, rroberson@gardere.com, and (z) the United States Trustee's Office at Office of the United States Trustee, Attn: Nancy S. Resnick, 1100 Commerce Street, Room 9-C-60, Dallas, Texas, 75242, (fax) 214.767.6530, Nancy.S.Resnick@usdoj.gov. Any objection must (a) be in writing, (b) state with specificity the nature of such objection, (c) if concerning a Cure Amount, set forth a specific default in the Desired 365 Contract and claim a specific monetary amount that differs from the Cure Amount (if any) specified by the Debtors in the Assumption Notice (with appropriate documentation in support thereof), (d) comply with the Federal Rules of Bankruptcy Procedure.

**IF YOU DO NOT OBJECT TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF YOUR DESIRED 365 CONTRACT AND RIGHTS THEREUNDER OR THE CURE AMOUNT OR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE BEFORE THE OBJECTION DEADLINE: (I) YOUR DESIRED 365**

**CONTRACT AND RIGHTS THEREUNDER MAY BE ASSUMED AND ASSIGNED IN WHICH CASE YOU WILL BE DEEMED TO HAVE CONSENTED AND WILL BE BOUND BY ORDER OF THE COURT TO SUCH ASSUMPTION AND ASSIGNMENT; (II) THE POTENTIAL BUYER OR THE BUYER UNDER AN ALTERNATIVE TRANSACTION (AS APPLICABLE) WILL ENJOY ALL OF THE RIGHTS AND BENEFITS UNDER YOUR DESIRED 365 CONTRACT WITHOUT THE NECESSITY OF OBTAINING YOUR WRITTEN CONSENT TO THE ASSUMPTION AND ASSIGNMENT THEREOF; (III) YOU WILL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS, THE POTENTIAL BUYER, OR THE BUYER UNDER AN ALTERNATIVE TRANSACTION (AS APPLICABLE), OR AN ASSIGNEE THAT ANY ADDITIONAL AMOUNTS, OTHER THAN THE CURE AMOUNT, ARE DUE OR DEFAULTS EXIST UNDER SUCH DESIRED 365 CONTRACT, OR THAT CONDITIONS TO ASSIGNMENT MUST BE SATISFIED UNDER SUCH DESIRED 365 CONTRACT FOR THE PERIOD PRIOR TO THE EFFECTIVE DATE; AND (IV) ANY CLAIMS YOU HAVE FILED ON ACCOUNT OF SUCH DESIRED 365 CONTRACT SHALL BE DISALLOWED AND EXPUNGED IN THESE CASES AS TO THE DEBTORS' ESTATES.**

Any Person failing to timely file an objection to any Cure Amounts set forth in the Assumption Notice or the proposed assumption and assignment of the Debtors' right, title and interest in, to and under the Desired 365 Contracts shall be forever barred from objecting to the Cure Amounts and from asserting a claim for any cure or other amounts (or asserting that any defaults exist under the Desired 365 Contract as of the date of assumption) against any Debtors, their estates, the Potential Buyer or any of their respective affiliates (or such other Person that agrees to purchase the Properties under an Alternative Transaction that is approved by the Bankruptcy Court) with respect to its Desired 365 Contract arising prior to assumption and assignment of the Debtors' right, title and interest in, to and under the Desired 365 Contract and will be deemed to consent to the proposed assumption and assignment of the Debtors' right, title and interest in, to and under the Desired 365 Contracts as provided by such Transaction or Alternative Transaction.

If any Person asserts that any property or right (including a Desired 365 Contract) cannot be transferred, sold, assumed, and/or assigned free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable), in accordance with the Transaction (or Alternative Transaction, as applicable) and Bankruptcy Code §§ 363 and/or 365 on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights, then such Person shall file and serve a notice with all supporting documentation (a "Rights Notice") so that the Rights Notice is actually received by the Notice Parties on or before the Objection Deadline. Each Rights Notice must identify the properties or rights that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.

Any Person failing to timely file and serve a Rights Notice shall be (a) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the properties of the Debtors to be sold, assumed and/or assigned pursuant to the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable) including, without limitation, the rights to act as operator under the Operated JOAs (as defined in the Purchase Agreement) (which rights shall be assigned to and vest in the Buyer Designated Operator (as defined in the Purchase Agreement)), free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction (as applicable), and from asserting any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under such properties, as set forth in the Purchase Agreement or such other definitive agreement for an Alternative Transaction (if applicable), and (b) deemed to consent to and approve of the transfer, sale, assumption, and/or assignment of the Debtors' right, title and interest in, to and under the properties, free and clear of all liens, encumbrances, claims and other interests except as otherwise set forth in the Purchase Agreement or a definitive agreement for an Alternative Transaction, as applicable (regardless of whether such consent must be in writing).

If any Person timely files and serves a Rights Notice in accordance with the Bid Procedures Order, the Debtors shall have the opportunity to object to any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, tag-along rights, or similar rights asserted by such Person by filing an objection to such Rights Notice at any time prior to the Sale Hearing. Upon the Debtors' filing of such objection to the Rights Notice, any rights asserted shall be deemed to be disputed and the Debtors shall be entitled to assert a bona fide dispute exists as to such rights asserted. Nothing herein shall be deemed to be a waiver of any rights of the Debtors to contest any rights asserted by any Person in Rights Notices; all such rights of the Debtors are expressly preserved.

Where a counterparty to a Desired 365 Contract files a timely objection asserting a higher cure amount than the Cure Amount set forth in the applicable Assumption Notice and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid will be determined at the Sale Hearing or such other date and time as may be fixed by this Court. All other objections to the proposed assumption and assignment of the Desired 365 Contracts will be heard at the Sale Hearing.

Copies of the Purchase Agreement, Bid Procedures, and Bid Procedures Order may be downloaded at http://www.bmcgroup.com or obtained upon receipt of a written request to TriDimension Energy, LP, c/o The BMC Group, PO Box 3020, Chanhassen, MN 55317-3020, Telephone: 888.909.0100.

Dated: October ⬛, 2010

Respectfully submitted,

_____

William L. Wallander, SBT #20780750
Clayton T. Hufft, SBT #24056658
Bradley R. Foxman, SBT #24065243
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; chufft@velaw.com;
bfoxman@velaw.com

**COUNSEL FOR THE LP DEBTORS**