William L. Wallander, SBT #20780750
Clayton T. Hufft, SBT #24056658
Beth Lloyd, SBT #24060179
Bradley R. Foxman, SBT #24065243
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; chufft@velaw.com;
blloyd@velaw.com; bfoxman@velaw.com

**COUNSEL FOR THE LP DEBTORS**

Charles S. Kelley, SBT #11199580 ___
Andres G. Romay, SBT #24060516
**MAYER BROWN LLP**
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Tel.: 713.238.3000
Fax: 713.238.4634
ckelley@mayerbrown.com; aromay@mayerbrown.com

**COUNSEL FOR THE SENIOR LIEN AGENT**

Peter Franklin, SBT #07378000
Erin K. Lovall, SBT #24032553
**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Tel: 972.755.7100
Fax: 972.755.7110
pfranklin@fslhlaw.com; elovall@fslhlaw.com

**COUNSEL FOR THE GP DEBTORS**

Richard M. Roberson, SBT #16993800 ___
Michael S. Haynes, SBT #24050735
**GARDERE WYNNE SEWELL LLP**
3000 Thanksgiving Tower
1601 Elm Street
Dallas, TX 75201-4761
Tel.: 214.999.3000
Fax: 214.999.4667
rroberson@gardere.com; mhaynes@gardere.com

**COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

IN RE:

TRIDIMENSION ENERGY, L.P., *et al.*

DEBTORS.

§
§
§
§
§
§
§
§
§

Case No. 10-33565-SGJ

Chapter 11

Jointly Administered

## AMENDED JOINT PLAN OF LIQUIDATION FOR THE DEBTORS

### DATED: ~~FEBRUARY 18,~~ MARCH 21, 2011

AMENDED JOINT PLAN OF LIQUIDATION FOR THE DEBTORS        Cover Page
691736_~~9~~_10.DOC

**TABLE OF CONTENTS**

**Page**

Article I        DEFINITIONS ........................................................................................1

Article II       TREATMENT OF ADMINISTRATIVE CLAIMS ....................................15
    2.1    Treatment .....................................................................................15
    2.2    General Administrative Claims ......................................................15
    2.3    Treatment of Priority Tax Claims ..................................................15
    2.4    Professional Fee Claims ................................................................15
    2.5    U.S. Trustee Fees ..........................................................................16

Article III      DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS .............16
    3.1    Introduction ..................................................................................16
    3.2    Claims against and Equity Interests in the Debtors .......................16

Article IV       PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS .....17
    4.1    Introduction ..................................................................................17
    4.2    Treatment of Classified Claims and Equity Interests. ...................17
    4.3    Designation of Impaired and Unimpaired Classes. ........................20

Article V        ACCEPTANCE OR REJECTION OF THIS PLAN .............................21
    5.1    Classes Entitled to Vote .................................................................21
    5.2    Acceptance by Impaired Classes of Claims ....................................21
    5.3    Cramdown .....................................................................................21

Article VI       MEANS FOR IMPLEMENTATION OF THIS PLAN ..........................21
    6.1    Conditions Precedent to the Effective Date ...................................21
    6.2    Creation of the Liquidating Trust ..................................................22
    6.3    Transfer of Liquidating Trust Assets .............................................22
    6.4    Conflicts Between Liquidating Trust Agreement and Plan ..............22
    6.5    Plan is Motion to Transfer Liquidating Trust Assets .....................22
    6.6    Issuance of Liquidating Trust Interests .........................................23
    6.7    Cancellation of Equity Interests ...................................................23
    6.8    Limited Substantive Consolidation ...............................................23
    6.9    Cancellation of Lien Documents ...................................................24
    6.10   Termination of Directors, Officers, and/or Managers of the Debtors ...24
    6.11   Authority ......................................................................................24
    6.12   Procedures regarding M&M Secured Claims and Operational Cure Claims. ...25
    6.13   Release of Liens ............................................................................27
    6.14   Preservation of Rights of Action; Settlement of Litigation Claims. ...27

Article VII      THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE ........28
    7.1    The Liquidating Trust ....................................................................28
    7.2    Funding of Res of Trust .................................................................28
    7.3    The Liquidating Trustee .................................................................29

| | | | |
|---|---|---|---|
| 7.4 | Retention of Professionals | | 29 |
| 7.5 | Compensation of the Liquidating Trustee | | 30 |
| 7.6 | Liquidating Trust Expenses | | 30 |
| 7.7 | Liability; Indemnification | | 30 |
| 7.8 | Preparation of Final Tax Returns | | 31 |
| 7.9 | Bonding Requirement | | 3132 |
| 7.10 | The SR Environmental Claim | | 32 |
| 7.11 | Termination | | 32 |

Article VIII COMMITTEE AND LIQUIDATING TRUST COMMITTEE 3233

| | | | |
|---|---|---|---|
| 8.1 | Dissolution of Committee | | 3233 |
| 8.2 | Creation of Liquidating Trust Committee | | 33 |
| 8.3 | Procedures | | 33 |
| 8.4 | Function, Duties, and Responsibilities | | 33 |
| 8.5 | Duration | | 33 |
| 8.6 | Compensation and Expenses | | 33 |
| 8.7 | Liability; Indemnification | | 33 |

Article IX PROVISIONS GOVERNING PAYMENTS AND DISTRIBUTIONS GENERALLY 34

| | | | |
|---|---|---|---|
| 9.1 | Payments for Claims Allowed as of the Effective Date | | 34 |
| 9.2 | Means of Cash Payment | | 34 |
| 9.3 | Delivery of Payment | | 34 |
| 9.4 | Fractional Dollars; De Minimis Payments | | 34 |
| 9.5 | Withholding and Reporting Requirements | | 35 |
| 9.6 | Setoffs | | 35 |
| 9.7 | Duty to Disgorge Overpayments | | 35 |

Article X DISTRIBUTIONS TO HOLDERS OF ALLOWED CLASSES 6A AND 6B CLAIMS 35

| | | | |
|---|---|---|---|
| 10.1 | Initial Cash Distribution to Holders of Class 6A Allowed Senior Lien Deficiency Claims on Account of Series A Liquidating Trust Interests | | 35 |
| 10.2 | Initial Cash Distribution to Holders of Class 6B Allowed Non-Senior Lien General Unsecured Claims on Account of Series B Liquidating Trust Interests | | 35 |
| 10.3 | Subsequent Cash Distributions to Holders of Class 6A Allowed Senior Lien Deficiency Claims on Account of Series A Liquidating Trust Interests | | 36 |
| 10.4 | Subsequent Cash Distributions to Holders of Class 6B Allowed Non-Senior Lien General Unsecured Claims on Account of Series B Liquidating Trust Interests | | 36 |

Article XI RESERVES ADMINISTERED BY THE LIQUIDATING TRUST 36

| | | | |
|---|---|---|---|
| 11.1 | Establishment of Reserve Accounts | | 36 |
| 11.2 | Undeliverable Distribution Reserve | | 36 |
| 11.3 | Liquidating Trust Expense Reserve | | 37 |
| 11.4 | Senior Lien Holder Distribution Reserve | | 38 |
| 11.5 | Senior Claim Reserve | | 38 |

| | | |
|---|---|---|
| 11.6 | Carveout Reserve | 39 |
| 11.7 | Series A Distribution Reserve | 39 |
| 11.8 | Series B Distribution Reserve | 39 |
| 11.9 | Unrestricted Liquidating Trust Cash Proceeds | 40 |
| | | |
| Article XII | PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS | 40 |
| 12.1 | Objection Deadline; Prosecution of Objections | 40 |
| 12.2 | No Payments or Distributions Pending Allowance | 41 |
| | | |
| Article XIII | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; PAYMENT OF CURE CLAIMS | 41 |
| 13.1 | Cure of Operational Cure Claims | 4142 |
| 13.2 | Cure of Non-Operational Cure Claims | 42 |
| 13.3 | Cure of Pryme Cure Claims | 42 |
| | | |
| Article XIV | EFFECTS OF CONFIRMATION | 42 |
| 14.1 | Discharge | 42 |
| 14.2 | Legal Binding Effect | 4243 |
| 14.3 | Exculpation and Limitation of Liability | 43 |
| 14.4 | Release Of Senior Lien Agent And Senior Lien Holders | 43 |
| 14.5 | Insurance | 44 |
| | | |
| Article XV | RETENTION OF JURISDICTION | 4445 |
| 15.1 | Retention | 4445 |
| 15.2 | Rights of the Liquidating Trustee | 46 |
| | | |
| Article XVI | MISCELLANEOUS PROVISIONS | 46 |
| 16.1 | Revocation, Withdrawal or Non-Consummation | 46 |
| 16.2 | Severability of Plan Provisions | 4647 |
| 16.3 | Exemption from Transfer Taxes and Recording Fees | 47 |
| 16.4 | Interest Accrual | 47 |
| 16.5 | Allocation of Plan Payments between Principal and Interest | 47 |
| 16.6 | Rules of Interpretation; Computation of Time | 47 |
| 16.7 | The Liquidating Trust Is Not a Successor | 48 |
| 16.8 | Plan Documents | 48 |
| 16.9 | Reservation of Rights | 48 |
| 16.10 | Further Assurances | 48 |
| 16.11 | Successors and Assigns | 48 |
| 16.12 | Governing Law | 48 |
| 16.13 | Notice of Effective Date | 48 |
| 16.14 | Plan Supplement | 4849 |
| 16.15 | Entire Agreement | 49 |
| 16.16 | Waiver of Stay | 49 |
| | | |
| Article XVII | MODIFICATION OF THIS PLAN | 49 |

Exhibit 1        Liquidating Trust Agreement

TriDimension Energy, L.P., Axis E&P, LP, Axis Marketing, LP, Axis Onshore, LP, Ram Drilling, LP, TDE Operating GP LLC, TDE Property Holdings, LP, and TDE Subsidiary GP LLC, the debtors and debtors in possession in the above-referenced jointly administered bankruptcy cases, together with the Senior Lien Agent and the Committee, hereby propose this Amended Joint Plan of Liquidation for the Debtors dated ~~February 18,~~ March 21, 2011 pursuant to the provisions of chapter 11 of the Bankruptcy Code for the resolution and treatment of the Debtors' outstanding Claims, Liens and Equity Interests.  Reference is hereby made to the Disclosure Statement for the Amended Joint Plan of Liquidation for the Debtors for a discussion of, among other things, the history, businesses, properties, results of operations, risk factors, and a summary and analysis of this Plan, and related matters of the Debtors.  All holders of Claims, Liens and Equity Interests are encouraged to read both this Plan and the Disclosure Statement before voting to accept or to reject this Plan.  In the event of any inconsistencies between this Plan and Disclosure Statement, the terms and provisions of this Plan shall control.  The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date pursuant to the terms of this Plan.

# ARTICLE I

## DEFINITIONS

Except as expressly provided or unless the context otherwise requires, the terms set forth in this Article I shall have the following meanings when used in initially capitalized form in this Plan.  Any term used in initially capitalized form in this Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.  Such meanings shall be equally applicable to both the singular and plural forms of such terms.

0.1 **1933 Act** means the Securities Act of 1933, as amended, and the rules and regulations as promulgated thereunder.

0.2 **Administrative Claim** means a Claim for payment of an administrative expense of the kind specified in Bankruptcy Code § 503(b) and entitled to priority pursuant to Bankruptcy Code § 507(a)(2), including Professional Fee Claims and U.S. Trustee Fees.

0.3 **Ad Valorem Tax Claim** means a Claim for taxes (together with any related interest, penalty, addition to tax or additional amount imposed by any Governmental Authority) which is assessed based upon the value of a Debtor's property and which is secured by a statutory Lien upon that property, or the net proceeds from the sale of such property, to the extent of the value, as of the Effective Date (or such other date as is established by the Bankruptcy Court) of such Lien as determined by a Non-Appealable Order or as otherwise agreed upon in writing by the holder of such Claim and (a) the Debtors (if such agreement is effectuated prior to the Effective Date); or (b) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date).

**0.4** **Allowed** means, with reference to a Claim or any portion thereof: (a) a Claim against any of the Debtors, proof of which, if required, was Filed on or before the Bar Date (or with respect to an Administrative Claim, the Post-Confirmation Bar Date), which is not a Disputed Claim; (b) if no Proof of Claim was so Filed, a Claim against any of the Debtors which has been or hereafter is listed by any of the Debtors in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent and on account of which payment has not been made; or (c) a Claim allowed hereunder or by a Non-Appealable Order. An Allowed Claim does not include any Claim, or portion thereof, which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof or pursuant to a Non-Appealable Order. A Disputed Claim may become an Allowed Claim in accordance with Section 12.1. Unless otherwise specifically provided in this Plan, or by a Non-Appealable Order of the Bankruptcy Court or otherwise allowed under applicable bankruptcy law, an Allowed Claim shall not include any amount for punitive or exemplary damages, penalties, fines, post-petition interest, attorney's fees or other costs.

**0.5** **Allowed Amount** means the amount of any Allowed Claim.

**0.6** **Available Cash** means (a) with respect to Distributions to be made to holders of Series A Liquidating Trust Interests pursuant to Sections 10.1 and 10.3 of the Plan, Cash held in the Series A Distribution Reserve, and (b) with respect to Distributions to be made to holders of Series B Liquidating Trust Interests pursuant to Sections 10.2 and 10.4 of the Plan, Cash held in the Series B Distribution Reserve less the amount determined by the Liquidating Trustee to be necessary to be reserved on account of Disputed Claims to ensure that all Allowed Non-Senior Lien General Unsecured Claims receive, in the aggregate, the same percentage recovery on account of such Allowed Non-Senior Lien General Unsecured Claims.

**0.7** **Available Cash Determination Date** means each semi-annual anniversary of the Effective Date or such earlier date, as determined in the discretion of the Liquidating Trustee.

**0.8** **Avoidance Actions** means any and all rights, claims and causes of action which a trustee, Debtor in Possession or other appropriate party in interest (including the Committee and the Liquidating Trustee) would be able to assert on behalf of any of the Estates under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542 through 551, and 553.

**0.9** **Axis E&P** means Axis E&P, LP, a Louisiana partnership in commendam and one of the jointly administered Debtors herein.

**0.10** **Axis Marketing** means Axis Marketing, LP, a Louisiana partnership in commendam and one of the jointly administered Debtors herein.

**0.11** **Axis Onshore** means Axis Onshore, LP, a Louisiana partnership in commendam and one of the jointly administered Debtors herein.

**0.12** **Ballot** means each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote on which the holder is to indicate acceptance or

rejection of this Plan in accordance with the voting instructions and make any other elections or representations required pursuant to this Plan or the Disclosure Statement Order.

**0.13** **Bankruptcy Code** means title 11 of the United States Code, as amended.

**0.14** **Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

**0.15** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, and the Local Rules of the United States Bankruptcy Court for the Northern District of Texas, each as now in effect or as hereafter amended, to the extent applicable to the Cases or proceedings therein, as the case may be.

**0.16** **Bankruptcy Schedules** means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information Filed by each Debtor pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007, as same may be amended, supplemented or modified from time to time.

**0.17** **Bar Date** means with respect to all Priority Tax Claims, Ad Valorem Tax Claims, Priority Claims, Senior Lien Secured Claims, M&M Secured Claims, Other Secured Claims, and General Unsecured Claims, the deadline set by the Bankruptcy Court by which a Proof of Claim must have been or must be Filed, which deadline is (i) July 28, 2010 (with respect to non-Priority Tax Claims and non-Ad Valorem Tax Claims) or November 17, 2010 (with respect to Priority Tax Claims and Ad Valorem Tax Claims), (ii) in the case of a Claim for damages arising from the rejection of an executory contract or unexpired lease, thirty days after the Effective Date, and (iii) such other date as the Bankruptcy Court may fix.

**0.18** **Business Day** means any day, excluding Saturdays, Sundays or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Dallas, Texas.

**0.19** **Carveout Reserve** means either (i) a segregated account established by the Liquidating Trustee, or (ii) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 11.6 of this Plan.

**0.20** **Carveout Reserve Amount** means Cash in the amount of $1,300,000 (or such higher amount as may be agreed to by the Senior Lien Agent), less all amounts paid by the Debtors prior to the Effective Date on account of Operational Cure Claims pursuant to the Sale Order, which shall be funded from the Sale Proceeds and deposited in the Carveout Reserve on the Effective Date.

**0.21** **Cases** means these chapter 11 cases assigned Case Nos. 10-33565, 10-33566, 10-33567, 10-33568, 10-33569, 10-33370, 10-33571, and 10-33572, in the Bankruptcy Court which are being jointly administered under Case No. 10-33565 (SGJ) and, as jointly administered, styled *In re TriDimension Energy, L.P., et al.*

**0.22** **Cash** means legal tender of the United States of America or equivalents thereof.

**0.23** **Causes of Action** means any and all rights, claims, causes of action, litigation, suits, proceedings, rights of setoff, rights of recoupment, complaints, defenses, counterclaims, cross-claims and affirmative defenses of any kind or character whatsoever whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, currently existing or hereafter arising, whether Scheduled or not Scheduled and whether arising under the Bankruptcy Code or other applicable law, in contract or in tort, in law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring, prior to the Petition Date or during the course of the Cases, to and including the Effective Date, (a) claims pursuant to Bankruptcy Code § 362, (b) claims and defenses such as fraud, mistake, duress and usury, (c) claims under Bankruptcy Code § 510(c), and (d) all Avoidance Actions.

**0.24** **Claim** means a claim as defined in Bankruptcy Code § 101(5) against any of the Debtors.

**0.25** **Class** means all of the holders of Claims or Equity Interests with respect to any Debtors having characteristics substantially similar to the other Claims or Equity Interests with respect to such Debtors and which have been designated as a Class in this Plan.

**0.26** **Collateral** means any property or interest in property of any of the Debtors subject to a valid, enforceable Lien that secures the payment or performance of any Claim, which Lien is not subject to avoidance and is not otherwise invalid under the Bankruptcy Code or other applicable law.

**0.27** **Committee** means the Official Committee of Unsecured Creditors appointed in one or more of the Cases pursuant to Bankruptcy Code § 1102(a).

**0.28** **Confirmation** means the entry of the Confirmation Order on the Bankruptcy Court's docket.

**0.29** **Confirmation Date** means the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

**0.30** **Confirmation Hearing** means the hearing or hearings before the Bankruptcy Court at which the Bankruptcy Court will consider the Confirmation of this Plan pursuant to Bankruptcy Code § 1128, as such hearings may be adjourned or continued from time to time.

**0.31** **Confirmation Order** means the Order entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code § 1129, as such Order may be amended, modified or supplemented.

**0.32** **Cure Claim** means a Claim relating to amounts that the Bankruptcy Court determines by Non-Appealable Order to be necessary to cure all defaults, if any, and to pay all losses that have resulted from defaults, under any executory contracts or unexpired leases

assumed by the Debtors and assigned to SR Acquisition I, LLC (or its designee) pursuant to the Sale Order, and includes Non-Operational Cure Claims, Operational Cure Claims, and Pryme Cure Claims.

      0.33    **Creditor** means a holder of a Claim.

      0.34    **Debtors in Possession** means the Debtors, when acting in their capacity as representatives of the Estates.

      0.35    **Debtors** means the LP Debtors and the GP Debtors, as debtors and debtors in possession of their respective Estates.

      0.36    **Deferred Professional Fee Claims** means an Administrative Claim of Vinson & Elkins LLP for compensation for services rendered as counsel to the LP Debtors incurred on and after October 1, 2010 and prior to the Effective Date to the extent, and only extent, such Administrative Claim remains unpaid as of the Effective Date and exceeds the amount authorized to be paid on account of such Administrative Claims in the Final DIP Order after giving effect to any budget variances and monthly carry-forwards and carry-backs to the extent authorized therein.

      0.37    **Direct Expenses** means the expenses incurred by the Liquidating Trust directly attributable to its collection of Unrestricted Liquidating Trust Cash Proceeds.

      0.38    **Disallowed Claim** means a Claim, or any portion thereof, that (a) has been disallowed by a Non-Appealable Order, (b) is Scheduled at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date, or (c) is not Scheduled and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date.

      0.39    **Disclosure Statement** means the Amended Disclosure Statement for the Amended Joint Plan of Liquidation for the Debtors dated ~~February 18,~~ March 21, 2011, including all exhibits and schedules thereto, as amended, supplemented or modified from time to time.

      0.40    **Disclosure Statement Order** means the [*Order (A) Approving Amended Disclosure Statement for the Amended Joint Plan of Liquidation for the Debtors; (B) Setting Dates for the Objection and Hearing Relating to the Confirmation of the Plan; and (C) Granting Other Relief Relating to Plan Solicitation and the Confirmation of the Plan*], entered by the Bankruptcy Court.

      0.41    **Disputed Claim** means a Claim, or any portion thereof, that is set forth in a Filed Proof of Claim: (a) that (i) has not been Scheduled, or (ii) has been Scheduled at zero or as contingent, unliquidated or disputed, (b) that differs in nature, amount or priority from the Bankruptcy Schedules, or (c) that is the subject of an objection Filed by the Debtors, the Committee, or the Liquidating Trustee (as applicable) and which objection has not been withdrawn or overruled by a Non-Appealable Order; provided, however, that with respect to an Administrative Claim, "Disputed Claim" means an Administrative Claim that has not been paid,

that has not been Allowed by Non-Appealable Order or that is a Disallowed Claim.  A Disputed Claim may become an Allowed Claim in accordance with Section 12.1.

      **0.42**    **Distribution** means the distribution of Cash to the holders of Series A Liquidating Trust Interests and/or Series B Liquidating Trust Interests pursuant to this Plan.

      **0.43**    **Effective Date** means the later of (a) the first Business Day on which all conditions precedent to the effectiveness of this Plan have been satisfied or waived as provided in Section 6.1 of this Plan, and (b) such other date agreed to by all of the Plan Proponents.

      **0.44**    **Equity Interest** means an existing membership, stock, partnership, and/or equity interest in any Debtor or equity security (within the meaning of Bankruptcy Code §101(16)), in or to any Debtors, including, without limitation, all issued, unissued, authorized or outstanding shares of stock or other equity interests (including common and preferred) of the Debtors, together with any warrants, options, other derivative securities, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such membership or equity interests at any time and all rights arising with respect thereto.

      **0.45**    **Estates** means the estates created by Bankruptcy Code § 541 upon the commencement of the respective Cases.

      **0.46**    **Face Amount** means (a) when used in reference to a Disputed or Disallowed Claim, the full stated amount claimed by the holder of such Claim in any Proof of Claim timely Filed or otherwise deemed timely Filed by a Non-Appealable Order or other applicable bankruptcy law, (b) when used in reference to Cure Claims or Claims secured by M&M Liens, the full stated amount claimed by the holder of such Claim, and (c) when used in reference to an Allowed Claim, the Allowed Amount of such Claim.

      **0.47**    **Fee Application** means an application to the Bankruptcy Court for allowance of a Professional Fee Claim pursuant to Bankruptcy Code §§ 328 or 330 and Bankruptcy Rule 2016(a).

      **0.48**    **Filed** means filed with the clerk of the Bankruptcy Court or, in the case of a Proof of Claim, filed with the clerk of the Bankruptcy Court or The BMC Group, Inc., the Bankruptcy Court appointed Claims Agent.

      **0.49**    **Final DIP Order** means the *Second Agreed Final Order Authorizing Use of Cash Collateral, Authorizing Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders* [Dkt. No. 401], as amended, extended or supplemented from time to time by notices filed with the Bankruptcy Court.

      **0.50**    **Free and Clear** means free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, claims, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Debtors or the

Estates, and all expenses, and charges, of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order, except any Liquidating Trust Permitted Liens (with respect to the Liquidating Trust Assets) which are not otherwise released or satisfied under this Plan.

       **0.51**   **General Unsecured Claim** means a Claim that is not a Priority Tax Claim, Administrative Claim, Ad Valorem Tax Claim, Priority Claim, Senior Lien Secured Claim, M&M Secured Claim, Other Secured Claim, Cure Claim, or Subordinated Claim.

       **0.52**   **Governmental Authority** means any transnational, domestic or foreign federal, state or local, governmental unit, authority, department, court, agency or official, including any political subdivision thereof, or any tribal authority.

       **0.53**   **GP Debtors** means TDE Operating and TDE Subsidiary, as debtors and debtors in possession of their respective Estates.

       **0.54**   **Impaired** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Bankruptcy Code § 1124.

       **0.55**   **Intercompany Claim** means any Claim by a Debtor against another Debtor.

       **0.56**   **Lien** means, with respect to any property or asset, any mortgage, lien, interest pledge, charge, security interest, encumbrance, mechanics' lien, materialman's lien, statutory lien or right, and other consensual or non-consensual lien, whenever granted and including, without limitation, those charges or interests in property within the meaning of "lien" under Bankruptcy Code § 101(37).

       **0.57**   **Lien Documents** means any agreement, instrument, affidavit, filing, or recording evidencing, creating or perfecting a Lien.

       **0.58**   **Liquidating Trust** means the liquidating trust created under the Liquidating Trust Agreement for the benefit of the holders of Allowed Claims in Classes 6A and 6B.

       **0.59**   **Liquidating Trust Agreement** means the Liquidating Trust Agreement to be executed by the Debtors and the Liquidating Trustee, in substantially the same form as attached hereto as **Exhibit 1**.

       **0.60**   **Liquidating Trust Assets** means all legal and equitable interests of the Debtors in their respective assets, real and personal, including without limitation, all Cash, Sale Proceeds, accounts, receivables, contract rights (including all rights, claims, and defenses of the Debtors and their Estates under the Purchase Agreement), general intangibles, and rights relating thereto, real property, personal property, Causes of Action, and all books and records of the Debtors.

       **0.61**   **Liquidating Trust Beneficiary** means the holder of a Liquidating Trust Interest.

**0.62** **Liquidating Trust Committee** means the committee established upon the Effective Date, to monitor and supervise the Liquidating Trustee's administration of the Liquidating Trust and to take such other actions as are set forth in this Plan, the Liquidating Trust Agreement, and the Confirmation Order or as may be approved by the Bankruptcy Court.

**0.63** **Liquidating Trust Expense Carveout** means Cash in the amount of $100,000 to be funded by $75,000 from the Sale Proceeds and $25,000 from the Carveout Reserve and deposited in the Liquidating Trust Expense Reserve on the Effective Date.

**0.64** **Liquidating Trust Expense Reserve** means (i) a segregated account established by the Liquidating Trustee, or (ii) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 11.3 of this Plan.

**0.65** **Liquidating Trust Expenses** means the projected operating expenses, including indemnity claims arising under Section 7.7 of this Plan, of the Liquidating Trust and the Liquidating Trustee, as measured and projected as of the Effective Date and on each applicable Available Cash Determination Date (including, without limitation, any actual or projected tax liabilities of, or assumed by, the Liquidating Trust).

**0.66** **Liquidating Trust Interest** means any Series A Liquidating Trust Interest or any Series B Liquidating Trust Interest.

**0.67** **Liquidating Trust Permitted Liens** means with respect to the Sale Proceeds, any Liens, Claims, encumbrances, other interests, claims, liens, security interests, rights of setoff, expenses, and charges, of any type under, among other things, any document, instrument, agreement, cause, Cause of Action, or state or federal law against the Debtors or the property or assets of the Debtors and their respective Estates which, pursuant to this Plan and except as otherwise set forth herein, shall attach to the applicable Reserve Account held by the Liquidating Trust with the same force, validity, priority, and effect, if any, as such Liens, Claims, encumbrances, other interests, claims, liens, security interests, rights of setoff, expenses, and charges formerly had against any Debtors, their Estates or any property or assets of the Debtors and their respective Estates. For the avoidance of doubt, M&M Liens and any liens on account of Operational Cure Claims shall attach solely to the Carveout Reserve as set forth in Section 4.2(d), and shall not attach, in any respect, to amounts held in the Senior Claim Reserve, the Senior Lien Holder Distribution Reserve, the Series A Distribution Reserve, or the Series B Distribution Reserve.

**0.68** **Liquidating Trustee** means the trustee of the Liquidating Trust and any successor to that trustee.

**0.69** **LP Debtors** means TriDimension, Axis E&P, Axis Marketing, Axis Onshore, Ram Drilling, and TDE Property, as debtors and debtors in possession of their respective Estates.

**0.70** **M&M Claim** means any Claims of any Persons, other than Claims asserted by operators of oil and gas properties arising under operating agreements to which a Debtor is a party, arising on account of labor performed, or services, materials, goods or equipment furnished with respect to development, drilling, completion, maintenance, repair, operations or related

activity on or with respect to any lands, material, machinery, supplies, improvements, oil and gas leases, or wells or pipelines owned, in whole or in part, by one or more of the Debtors.

0.71 **M&M Liens** means any Liens or Claims of any Persons, other than Liens or Claims asserted by operators of oil and gas properties arising under operating agreements to which a Debtor is a party, to the extent arising and properly perfected on account of labor performed, or services, materials, goods or equipment furnished with respect to development, drilling, completion, maintenance, repair, operations or related activity on or with respect to any lands, material, machinery, supplies, improvements, oil and gas leases, or wells or pipelines owned, in whole or in part, by one or more of the Debtors, to the extent arising under these categories and under applicable law, including without limitation, the Louisiana Oil Well Lien Act or similar laws of that or any other state.

0.72 **M&M Secured Claim** means a Secured Claim that is secured by an M&M Lien.

0.73 **Non-Appealable Order** means an Order or order of another court of competent jurisdiction on its docket as to which (a) the time to appeal, petition for certiorari, or move for reargument, new trial or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, new trial or rehearing shall then be pending; or (b) in the event that any appeal, writ of certiorari, reargument, new trial or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument, new trial or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument, new trial or rehearing shall have expired; provided, however, that no order shall fail to be a Non-Appealable Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or a similar rule under the Federal Rules of Bankruptcy Procedure may be filed with respect to such order.

0.74 **Non-Operational Cure Claim** means a Claim, other than a Pryme Cure Claim, relating to amounts that the Bankruptcy Court determines by Non-Appealable Order to be necessary to cure all defaults, if any, and to pay all losses that have resulted from defaults, under any executory contracts or unexpired leases assumed and assigned pursuant to the Sale Order and that do not relate to direct operations of an oil and gas well. For purposes of illustration, Non-Operational Cure Claims include Cure Claims related to prepayments by non-Debtor working interest owners, amounts due royalty owners, amounts due working interest owners related to authorizations for expenditures, amounts due on vehicle leases, amounts due on office leases, and any other Cure Claims, other than Pryme Cure Claims, due in connection with the assumption and assignment of unexpired leases or executory contracts that are not amounts due related to direct operations of an oil and gas well pursuant to a joint operating agreement or equipment lease.

0.75 **Non-Senior Lien General Unsecured Claim** means a General Unsecured Claim that is not a Senior Lien Deficiency Claim.

0.76 **Operational Cure Claim** means a Claim, other than a Pryme Cure Claim, relating to amounts that the Bankruptcy Court determines by Non-Appealable Order to be necessary to cure all defaults, if any, and to pay all losses that have resulted from defaults, under any executory contracts or unexpired leases assumed and assigned pursuant to the Sale Order and that relate to

direct operations of an oil and gas well. For purposes of illustration, Operational Cure Claims include amounts due related to direct operations of an oil and gas well pursuant to a joint operating agreement or equipment lease other than Pryme Cure Claims.

**0.77** **Order** means an order of the Bankruptcy Court.

**0.78** **Other Secured Claim** means a Secured Claim that is not an Ad Valorem Tax Claim, Senior Lien Secured Claim, or M&M Secured Claim.

**0.79** **Payment** means the payment of Cash or the issuance of Liquidating Trust Interests to the holders of Allowed Claims pursuant to this Plan.

**0.80** **Person** means any person, entity or Governmental Authority of any nature whatsoever, specifically including an individual, firm, company, corporation, partnership, trust, joint venture, association, joint stock company, limited liability company, estate, unincorporated organization or other entity or organization.

**0.81** **Petition Date** means May 21, 2010, the date on which the Debtors commenced their Cases in the Bankruptcy Court.

**0.82** **Plan** means this *Amended Joint Plan of Liquidation for the Debtors* dated ~~February 18,~~March 21, 2011, together with any supplements, amendments, or modifications thereto.

**0.83** **Plan Documents** means all documents, forms, lists, and agreements contemplated under this Plan to effectuate the terms and conditions hereof.

**0.84** **Plan Proponents** means the Debtors, the Senior Lien Agent, and the Committee.

**0.85** **Plan Supplement** means the compilation of Plan Documents and any other documents, forms, exhibits, lists, and schedules as specified in this Plan and the Disclosure Statement which will be Filed with the Bankruptcy Court not later than five Business Days prior to the commencement of the Confirmation Hearing, as such documents may be altered, restated, modified, or supplemented from time to time.

**0.86** **Post-Confirmation Bar Date** means 4:00 p.m., prevailing Central time, on the first Business Day that is at least thirty days after the Effective Date.

**0.87** **Priority Claim** means a Claim that is entitled to priority under Bankruptcy Code § 507(a)(4)-(7), (9)-(10).

**0.88** **Priority Tax Claim** means a Claim that is entitled to priority under Bankruptcy Code § 507(a)(8).

**0.89** **Pro Rata** means the proportion that the amount of an Allowed Claim in a Class bears to the aggregate amount of all Claims in that Class, including Disputed Claims but excluding Disallowed Claims. For purposes of this calculation, the amount of a Disputed Claim will equal

the lesser of (a) its Face Amount, and (b) the amount estimated as allowable by the Bankruptcy Court.

**0.90**    **Professional** means any Person employed in the Cases pursuant to Bankruptcy Code §§ 327 or 1103.

**0.91**    **Professional Fee Claim** means an Administrative Claim of a Professional for compensation for services rendered and/or reimbursement of costs and expenses incurred on and after the Petition Date and prior to the Effective Date.

**0.92**    **Proof of Claim** means a written statement setting forth a Creditor's Claim and conforming substantially to the appropriate official form.

**0.93**    **Pryme Cure Claim** means a Cure Claim required to be paid by Pryme Oil and Gas, Inc., Pryme Lake Exploration, LLC, and SR Acquisition I, LLC, pursuant to paragraph 51 of the Sale Order.

**0.94**    **Purchase Agreement** means that certain Asset Purchase Agreement dated as of October 18, 2010 by and among SR Acquisition I, LLC and the Debtors, as amended by that certain Amendment No. 1 to Asset Purchase Agreement dated as of November 17, 2010 by and among SR Acquisition I, LLC and the Debtors.

**0.95**    **Purchase Agreement Holdback Amount** means $625,000 of Sale Proceeds required to be retained and held in reserve by the Liquidating Trust pursuant to <u>Section 2.10</u> of the Purchase Agreement.

**0.96**    **Ram Drilling** means Ram Drilling, LP, a Louisiana partnership in commendam and one of the jointly administered Debtors herein.

**0.97**    **Released Parties** means the Senior Lien Agent, the Senior Lien Holders, and their respective successors, predecessors, affiliates, officers, directors, employees, agents, representatives, consultants and attorneys.

**0.98**    **Remaining Sale Proceeds** means the Sale Proceeds remaining on hand (or subsequently received) after the funding of the Carveout Reserve, the Liquidating Trust Expense Carveout (to the extent to be funded from the Sale Proceeds), and the Senior Claim Reserve.

**0.99**    **Reserve Accounts** shall mean the Carveout Reserve, Liquidating Trust Expense Reserve, Senior Claim Reserve, Senior Lien Holder Distribution Reserve, the Series A Distribution Reserve, the Series B Distribution Reserve, and Undeliverable Distribution Reserve established by the Liquidating Trustee pursuant to this Plan.

**0.100**    **Sale Order** means the *Order Authorizing (A) the Sale of the Debtors' Right, Title and Interest in, to, and under Substantially all of the Debtors' Assets Free and Clear of Claims, Encumbrances, Liens, and Interests, (B) the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Related Relief* [Docket No. 481].

**0.101 Sale Proceeds** means the net Cash proceeds (a) received by the Debtors in consideration for the sale of all of their right, title, and interest in, to and under substantially all of their assets pursuant to the Purchase Agreement and remaining on hand immediately prior to the Effective Date, or (b) to which the Debtors (or Liquidating Trust) become entitled to on or after the Effective Date in consideration for the sale of all of the Debtors' right, title, and interest, in, to and under substantially all of their assets pursuant to the Purchase Agreement, including, without limitation, any amounts received by the Debtors (or Liquidating Trust) in regard to the SR Environmental Claim and the post-closing adjustment process set forth in the Purchase Agreement.

**0.102 Scheduled** means, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Bankruptcy Schedules.

**0.103 Secured Claim** means (a) any Claim or portion thereof that is reflected in the Bankruptcy Schedules or a Proof of Claim as secured by a perfected security interest in, or Lien upon, any Collateral, or the net proceeds from the sale of such Collateral, in which a Debtor has an interest, to the extent of the value, as of the Petition Date (or such other date as is established by the Bankruptcy Court) of such security interest or Lien as determined by a Non-Appealable Order pursuant to Bankruptcy Code § 506 or as otherwise agreed upon in writing by the holder of such Claim and (i) the Debtors (if such agreement is effectuated prior to the Effective Date) or (ii) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date); or (b) a Setoff Claim.

**0.104 Senior Claim Reserve** means (a) a segregated account established by the Liquidating Trustee, or (b) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 11.5 of the Plan, and which shall be funded on the Effective Date from the Sale Proceeds in a sufficient amount as determined by the Bankruptcy Court necessary to pay all Allowed Ad Valorem Tax Claims, Allowed Administrative Claims (other than Deferred Professional Fee Claims), Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and Allowed Non-Operational Cure Claims and which remain unpaid as of the Effective Date. To the extent any funds remain in the Senior Claim Reserve after payment of all Allowed Ad Valorem Tax Claims, Allowed Administrative Claims (other than Deferred Professional Fee Claims), Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and Allowed Non-Operational Cure Claims, such funds shall constitute Remaining Sale Proceeds.

**0.105 Senior Lien Agent** means Amegy Bank, N.A., as administrative agent under the Senior Lien Loan Agreement, or any successor thereto.

**0.106 Senior Lien Claim** means the Senior Lien Secured Claim and the Senior Lien Deficiency Claim in the aggregate.

**0.107 Senior Lien Deficiency Claim** means a General Unsecured Claim held by a Senior Lien Holder.

**0.108 Senior Lien Documents** means the Senior Lien Loan Agreement, Senior Lien Notes and all other instruments, agreements, deeds of trust, mortgages, security agreements,

assignments, pledges, and financing statements that evidence, secure or relate to the Senior Lien Loan Agreement, the Senior Lien Notes or any Liens securing any Senior Lien Claims.

**0.109    Senior Lien Holder Distribution Reserve** means (a) a segregated account established by the Liquidating Trustee, or (b) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 11.4 of this Plan.

**0.110    Senior Lien Holders** means the Senior Lien Agent as a holder of Claims and any holders of Claims under the Senior Lien Loan Agreement or any other Senior Lien Documents.

**0.111    Senior Lien Loan Agreement** means the Loan Agreement dated April 23, 2008 by and among TriDimension, as borrower, Axis E&P, Axis Marketing, Axis Onshore, Ram Drilling, and TDE Property, each as guarantors, Amegy, as administrative agent, and the lenders party thereto, as amended prior to the DIP Loan Agreement.

**0.112    Senior Lien Notes** means any and all promissory notes of TriDimension or the other Debtors, if any, payable to the order of any Senior Lien Holder evidencing indebtedness of TriDimension to such holder under the Senior Lien Loan Agreement.

**0.113    Senior Lien Secured Claim** means a Secured Claim arising out of or under the Senior Lien Loan Agreement, or any other Senior Lien Documents, in each case as such amount may be adjusted from time to time consistent with Orders of the Bankruptcy Court.

**0.114    Series A Distribution Reserve** means (a) a segregated account established by the Liquidating Trustee, or (b) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 11.7 of this Plan, from which Distributions to holders of Series A Liquidating Trust Interests shall be made in accordance with Sections 10.1 and 10.3 of the Plan.

**0.115    Series A Liquidating Trust Beneficiary** means the holder of a Series A Liquidating Trust Interest.

**0.116    Series A Liquidating Trust Interest** means a beneficial interest in the Liquidating Trust issued to a holder of an Allowed Senior Lien Deficiency Claim.

**0.117    Series B Distribution Reserve** means (a) a segregated account established by the Liquidating Trustee, or (b) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 11.8 of this Plan, from which Distributions to holders of Series B Liquidating Trust Interests shall be made in accordance with Sections 10.2 and 10.4 of the Plan.

**0.118    Series B Liquidating Trust Beneficiary** means the holder of a Series B Liquidating Trust Interest.

**0.119    Series B Liquidating Trust Interest** means a beneficial interest in the Liquidating Trust issued to a holder of an Allowed Non-Senior Lien General Unsecured Claim.

**0.120    Setoff Claim** means a Claim of a holder that has a valid right of setoff with respect to such Claim which right is enforceable under Bankruptcy Code § 553 as determined by a Non-Appealable Order or as otherwise agreed in writing by the holder of such Claim and (a) the Debtors (if such agreement is effectuated prior to the Effective Date), or (b) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date), to the extent of the amount subject to such right of setoff.

**0.121    SR Environmental Claim** means the claim arising out of and/or related to the sought downward purchase price adjustment by SR Acquisition I, LLC (or its designee) currently being contested by the Debtors and their Estates and the amount of the purchase price held in escrow to the extent the Debtors (or Liquidating Trust) become entitled to such amount in accordance with the terms of the Purchase Agreement, including, without limitation, any claim for damages recoverable by the Debtors, their Estates, or the Liquidating Trust in connection therewith.

**0.122    Subordinated Claim** means any Claim (a) arising from rescission of a purchase or sale of a security of any of the Debtors or of an affiliate of any of the Debtors, (b) for damages arising from the purchase or sale of such a security, (c) for reimbursement or contribution allowed under Bankruptcy Code § 502 on account of a Claim described in (a) or (b) above, (d) otherwise subordinated pursuant to Bankruptcy Code § 510, (e) subordinated by Non-Appealable Order, or (f) based on fines, penalties, forfeiture or for multiple, exemplary, or punitive damages.

**0.123    TDE Operating** means TDE Operating GP LLC, a Delaware limited liability company and one of the jointly administered Debtors herein.

**0.124    TDE Property** means TDE Property Holdings, LP, a Louisiana partnership in commendam and one of the jointly administered Debtors herein.

**0.125    TDE Subsidiary** means TDE Subsidiary GP LLC, a Delaware limited liability company and one of the jointly administered Debtors herein.

**0.126    TriDimension** means TriDimension Energy, L.P., a Delaware limited partnership and one of the jointly administered Debtors herein.

**0.127    U.S. Trustee Fees** means fees payable pursuant to 28 U.S.C. § 1930.

**0.128    Undeliverable Distribution Reserve** means (a) a segregated account established by the Liquidating Trustee, or (b) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 11.2 of this Plan.

**0.129    Undeliverable or Unclaimed Payment or Distribution** means a Payment or Distribution by the Liquidating Trustee pursuant to this Plan that is either (a) attributable to a holder of an Allowed Claim in Classes 1-6B that has failed to prepare, execute and return to the Liquidating Trustee an Internal Revenue Service Form W-9 if so requested by the Liquidating Trustee, or (b) returned to the Liquidating Trustee as undeliverable or otherwise unclaimed.

**0.130 Unimpaired** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not Impaired.

**0.131 Unrestricted Liquidating Trust Cash Proceeds** means Cash or Cash proceeds constituting Liquidating Trust Assets from sources other than Sale Proceeds. For the avoidance of doubt, Unrestricted Liquidating Trust Cash Proceeds shall not include the Carveout Reserve Amount, the Liquidating Trust Expense Carveout, the Senior Claim Reserve, the Senior Lien Holder Distribution Reserve, or the Remaining Sale Proceeds.

**0.132 Voting Deadline** means the date and time, as fixed by an Order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received in order to be counted.

**0.133 Voting Record Date** means the record date for voting on this Plan, which shall be ~~_____~~ March 23, 2011.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE CLAIMS

**2.1 Treatment**. Except as otherwise provided herein, the holder of an Allowed Administrative Claim, in full satisfaction, settlement, release and discharge of, and in exchange for such Claim, shall (a) be paid by the Liquidating Trustee from the Senior Claim Reserve, as set forth in Section 11.5 of this Plan, in the amount of such holder's Allowed Claim in one Cash payment on the later of (i) the Effective Date (or as soon as reasonably practicable thereafter) or (ii) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (b) receive such other less favorable treatment that may be agreed upon in writing by the Liquidating Trustee and such holder.

**2.2 General Administrative Claims**. Except as otherwise set forth in this Article II, each holder of an Administrative Claim shall be required to file with the Bankruptcy Court, and to serve upon all parties required to receive notice, an application for allowance of such Administrative Claim on or before the Post-Confirmation Bar Date or be forever barred and discharged from doing so. The Administrative Claims subject to the Post-Confirmation Bar Date include (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. An Administrative Claim with respect to which an application has been properly and timely filed pursuant to this Section 2.2 shall be treated and paid as an Administrative Claim only to the extent allowed by Non-Appealable Order; provided, however, that Administrative Claims incurred and paid by any Debtor or the Liquidating Trustee in the ordinary course on and after the Petition Date shall be deemed Allowed Claims and shall not be required to submit applications for approval of Administrative Claims.

**2.3** **Treatment of Priority Tax Claims**.  Each holder of an Allowed Priority Tax Claim shall be paid in full by the Liquidating Trustee on the later of the Effective Date and allowance from the Senior Claim Reserve, as set forth in <u>Section 11.5</u> of this Plan.  The Cash payment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Priority Tax Claim.

**2.4** **Professional Fee Claims**.  Each Professional whose retention with respect to the Debtors' Cases has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Post-Confirmation Bar Date.  The failure to timely File the Fee Application shall result in the Professional Fee Claim being forever barred and discharged.  A Professional Fee Claim (other than a Deferred Professional Fee Claim) with respect to which a Fee Application has been properly and timely filed pursuant to this <u>Section 2.4</u> shall be treated and paid as an Administrative Claim only to the extent allowed by Non-Appealable Order.  A Deferred Professional Fee Claim (a) shall be paid only to the extent allowed by Non-Appealable Order, (b) shall not be paid from the Senior Claim Reserve, and (c) shall be paid only from Unrestricted Liquidating Trust Cash Proceeds (if any, and only to the extent if and when available) on a first-priority basis *pari passu* and pro rata with Direct Expenses.  No Professional Fee Claims shall be allowed on account of any services rendered by a Professional whose retention with respect to the Cases has not been approved by the Bankruptcy Court.

**2.5** **U.S. Trustee Fees**.  All unpaid U.S. Trustee Fees shall be paid in Cash in full by the Liquidating Trustee on and after the Effective Date (or as soon as reasonably practicable after such fees become due) from the Senior Claim Reserve, as set forth in <u>Section 11.5</u> of this Plan.

**ARTICLE III**

**DESIGNATION OF CLASSES**
**OF CLAIMS AND INTERESTS**

**3.1** **Introduction**.  In accordance with Bankruptcy Code § 1123(a)(1), all Claims and Equity Interests (except for Administrative Claims) are placed in the Classes described below for all purposes, including voting on, confirmation of, and Payments or Distributions under this Plan.  Administrative Claims have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class and is classified in other Classes only to the extent the other portion of the Claim or Equity Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving Payments or Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

**3.2** **Claims against and Equity Interests in the Debtors**.  The Claims against and Equity Interests in the Debtors are classified as follows:

| Class | Class Description | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| Class 1 | Allowed Ad Valorem Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 | Allowed Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 3 | Allowed Senior Lien Secured Claims | Impaired | Entitled to Vote |
| Class 4 | Allowed M&M Secured Claims | Impaired | Entitled to Vote |
| Class 5 | Allowed Other Secured Claims | Impaired | Entitled to Vote |
| Class 6A | Allowed Senior Lien Deficiency Claims | Impaired | Entitled to Vote |
| Class 6B | Allowed Non-Senior Lien General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Allowed Subordinated Claims | Impaired | Not Entitled to Vote |
| Class 8 | Allowed Equity Interests | Impaired | Not Entitled to Vote |

**ARTICLE IV**

**PROVISIONS FOR SATISFACTION
OF CLAIMS AND INTERESTS**

4.1 **Introduction**. The Claims and Equity Interests as classified in Article III shall be treated and satisfied in the manner set forth in this Article IV. The Payments or Distributions may be made as more particularly set forth in this Plan.

4.2 **Treatment of Classified Claims and Equity Interests**.

(a) **Class 1 (Allowed Ad Valorem Tax Claims)**. Each holder of an Allowed Ad Valorem Tax Claim against the Debtors' Estates shall either (i) be paid by the Liquidating Trustee from the Senior Claim Reserve, as set forth in Section 11.5 of this Plan, the amount of such holder's Allowed Ad Valorem Tax Claim in one Cash payment on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter), or (B) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (ii) receive such other less favorable treatment that may be agreed upon in writing by the Liquidating Trustee and such holder. The Cash payment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Ad Valorem Tax Claim; *provided, however,* that any Lien upon property, or the net proceeds from the sale of such property, related to such Claim shall attach to the Cash held in the Senior Claim Reserve with the same force, validity, priority, and effect, if any, of such security interest and Lien.

(b) **Class 2 (Allowed Priority Claims)**. Each holder of an Allowed Priority Claim against the Debtors' Estates shall either (i) be paid by the Liquidating Trustee from the Senior Claim Reserve, as set forth in Section 11.5 of this Plan, the amount of such holder's Allowed Priority Claim in one Cash payment on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter), or (B) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (ii) receive such other less favorable treatment that may be agreed upon in writing by the Liquidating Trustee and such holder. The Cash payment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Priority Claim.

(c) **Class 3 (Allowed Senior Lien Secured Claims)**. The Allowed Senior Lien Secured Claims shall be satisfied in full by the Payment by the Liquidating Trustee of (a) the

full amount of the Remaining Sale Proceeds on hand on the Effective Date (or as soon as reasonably practicable thereafter) and (b) the full amount of any Remaining Sale Proceeds that become available thereafter from the Senior Lien Holder Distribution Reserve as soon as reasonably practicable or upon reasonable request of the Senior Lien Agent, each by wire transfer to a single account designated by the Senior Lien Agent in writing to the Liquidating Trustee. Such Payments shall be in exchange for and in full satisfaction and discharge of all Allowed Senior Lien Secured Claims. The Senior Lien Agent shall be solely responsible for the further distribution to the holders of Allowed Senior Lien Secured Claims of such Payment made to it in accordance with this <u>Section 4.2(c)</u>. None of the Debtors, the Liquidating Trust, or the Liquidating Trustee shall have any responsibility for the making of any such further disbursements by the Senior Lien Agent, nor shall any of them have any liability on account of any disbursements that are made, or not made, by the Senior Lien Agent in accordance with this <u>Section 4.2(c)</u>.

Notwithstanding the foregoing, subject to the prior written consent of the Senior Lien Agent, the Liquidating Trustee shall be authorized to reserve amounts from the Remaining Sale Proceeds and transfer such amounts to the Liquidating Trust Expense Reserve for the payment of, and solely for the payment of, Liquidating Trust Expenses directly attributable to the collection of Remaining Sale Proceeds (including the SR Environmental Claim).

Any Lien or security interest of the Senior Lien Agent and/or the Senior Lien Holders on account of the Allowed Senior Lien Secured Claims shall attach solely to the Remaining Sale Proceeds and any funds held in the Senior Lien Holder Distribution Reserve, with all other Liens or security interests of the Senior Lien Agent and/or the Senior Lien Holders being released and expunged on the Effective Date of this Plan.

(d)     **Class 4 (Allowed M&M Secured Claims)**. Each holder of an Allowed M&M Secured Claim against any of the Debtors' Estates shall either (i) be paid by the Liquidating Trustee from the Carveout Reserve, as set forth in <u>Section 11.6</u> of this Plan, the amount of such holder's Allowed M&M Secured Claim in one Payment on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter) or (B) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (ii) receive such other less favorable treatment that may be agreed upon in writing by the Liquidating Trustee and such holder, in exchange for and in full satisfaction and discharge of the holder's Allowed M&M Secured Claim; *provided, however,* any security interest in or Lien upon, property, or the net proceeds from the sale of such property, related to such Claim, shall attach to the Cash held in the Carveout Reserve with the same force, validity, priority, and effect, if any, of such security interest and Lien.

(i)     Notwithstanding the foregoing, the Committee, in its sole and absolute discretion, may, prior to the Confirmation Hearing (a) seek to settle any or all Claims of creditors asserting M&M Secured Claims, and (b) object to any or all Claims of creditors asserting M&M Secured Claims. Such objections may include (but not be limited to) the extent, if any, that an M&M Secured Claim is entitled to treatment as a Class 4 Allowed M&M Secured Claim versus treatment as a Class 6B Allowed Non-Senior Lien General Unsecured Claim. The Committee and holder of an M&M Secured Claim, with the written consent of the Debtors, may settle and agree that none, a portion, or all of an asserted M&M Secured Claim shall be entitled to treatment as a Class 4 Allowed M&M

Secured Claim (each, a "Settled M&M Secured Claim"), with the portion of such asserted M&M Secured Claim that is not a Settled M&M Secured Claim receiving treatment as a Class 6B Allowed Non-Senior Lien General Unsecured Claim. Any such proposed settlements shall be disclosed in the Disclosure Statement or Plan Supplement, and this Plan (as supplemented by the Disclosure Statement and Plan Supplement) shall constitute a motion to approve any such settlements pursuant to Rule 9019 of the Bankruptcy Rules.

(ii) As part of any settlement, the holder of a Settled M&M Secured Claim shall agree that eighty percent (80%) of such Settled M&M Secured Claim shall be an Allowed M&M Secured Claim and paid from the Carveout Reserve. The remaining twenty percent (20%) of the Settled M&M Secured Claim (the "Redistributed M&M Secured Claim") shall remain in the Carveout Reserve for distribution first to holders of Allowed Operational Cure Claims and other Allowed M&M Secured Claims (only to the extent necessary) and, thereafter, to the extent any such amounts remain, be transferred to the Series B Distribution Reserve for the benefit of holders of Allowed Non-Senior Lien General Unsecured Claims. Holders of a Settled M&M Secured Claim shall waive any right to assert a Claim or right to distribution on account of the Redistributed M&M Secured Claim.

(iii) The holder of a Settled M&M Secured Claim shall evidence their acceptance of such settlement by electing on a timely cast Ballot to receive such treatment as agreed upon and as set forth herein, in the Disclosure Statement, and/or the Plan Supplement. An election to settle an M&M Secured Claim shall constitute a vote to accept the Plan, a waiver of the right to collect, and a release of all M&M Secured Claims held by such electing holder, and the holder of such M&M Secured Claims shall be deemed to have released: (i) its M&M Secured Claims, and (ii) any and all liability for, or enforcement of, any potential liens, Liens or Claims with respect to the property to which such M&M Secured Claims, potential liens, Liens or Claims relate. The Debtors and Liquidating Trustee shall release such holder of a Settling M&M Secured Claim from any and all Avoidance Actions. The holder of such M&M Secured Claim that timely elects to settle its M&M Secured Claim shall be deemed to be the holder of an Allowed M&M Secured Claim in the Face Amount of such M&M Secured Claim for classification and voting, but shall have an Allowed Claim only in the amount of the Settled M&M Secured Claim for purposes of distribution. Any holder of an M&M Secured Claim making the election to settle such M&M Secured Claim shall be deemed to assign its M&M Liens to the Liquidating Trust; *provided, however,* notwithstanding any assignment of such M&M Liens: (i) the M&M Liens are assigned solely for the purpose of avoiding dilution of the priority of Liens against the property affected thereby, (ii) any such M&M Liens assigned to the Liquidating Trust shall not be enforced or enforceable against any other Person or any property of any other Person, and (iii) any such M&M Liens shall be, and are, released, including of record, pursuant to the Plan (including Sections 6.9 and 6.13 of this Plan).

(iv) Each holder of a Settled M&M Secured Claim against any of the Debtors' Estates shall be paid, on the Effective Date (or as soon as reasonably practicable thereafter), the amount of such holder's Allowed M&M Secured Claim (in accordance

with Section 4.2(d)(ii) of this Plan) in exchange for and in full satisfaction and discharge of the holder's M&M Secured Claim provided that the holder of such M&M Secured Claim elects on a timely cast Ballot to receive such treatment with respect thereto.

(e) **Class 5 (Allowed Other Secured Claims)**. Each holder of an Allowed Other Secured Claim against any of the Debtors' Estates shall either (i) as set forth in <u>Section 11.5</u> of this Plan, be paid by the Liquidating Trustee from the Senior Claim Reserve the amount of such holder's Allowed Other Secured Claim in one Payment on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter) and (B) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (ii) receive such other less favorable treatment that may be agreed upon in writing by the Liquidating Trustee and such holder, in exchange for and in full satisfaction and discharge of the holder's Allowed Other Secured Claim; *provided, however,* any security interest in or Lien upon, property, or the net proceeds from the sale of such property, related to such Claim, shall attach to the Cash held in the Senior Claim Reserve with the same force, validity, priority, and effect, if any, of such security interest and Lien.

(f) **Class 6A (Allowed Senior Lien Deficiency Claims)**. Each holder of an Allowed Senior Lien Deficiency Claim against any of the Debtors' Estates shall receive in exchange for and in full satisfaction and discharge of such Claim its Pro Rata share of (i) the Series A Liquidating Trust Interests on the Effective Date (or as soon as reasonably practicable thereafter), and (ii) Distributions of Available Cash from the Series A Distribution Reserve on account of such Series A Liquidating Trust Interest as provided in <u>Sections 10.1</u> and <u>10.3</u> of this Plan, subject to other applicable terms of this Plan and the Liquidating Trust Agreement.

(g) **Class 6B (Allowed Non-Senior Lien General Unsecured Claims)**. Each holder of an Allowed Non-Senior Lien General Unsecured Claim against any of the Debtors' Estates shall receive in exchange for and in full satisfaction and discharge of such Claim its Pro Rata share of (i) the Series B Liquidating Trust Interests on the Effective Date (or as soon as reasonably practicable thereafter), and (ii) Distributions of Available Cash from the Series B Distribution Reserve on account of such Series B Liquidating Trust Interest as provided in <u>Sections 10.2</u> and <u>10.4</u> of this Plan, subject to other applicable terms of this Plan and the Liquidating Trust Agreement.

(h) **Class 7 (Allowed Subordinated Claims)**. Holders of Subordinated Claims against any of the Debtors' Estates shall not be entitled to receive any Payments or retain any property under this Plan or from the Liquidating Trust on account of such Claims.

(i) **Class 8 (Allowed Equity Interests)**. Holders of Equity Interests in any of the Debtors shall not be entitled to receive any Payments or retain any property under this Plan or from the Liquidating Trust on account of such Equity Interests. Upon the Effective Date, all Equity Interests shall be cancelled, terminated and extinguished except for the limited purposes set forth in <u>Section 7.8</u> of this Plan.

**4.3**     **Designation of Impaired and Unimpaired Classes**.

    (a)     **Impaired Classes of Claims**. Classes 3, 4, 5, 6A, and 6B are Impaired, and therefore, holders of Claims in such Classes are entitled to cast Ballots with respect to this Plan. Class 7 is also Impaired; however, the Creditors in that Class are not entitled to cast Ballots with respect to this Plan because they are not entitled to receive or retain any property under this Plan and are deemed to have rejected this Plan in accordance with Bankruptcy Code § 1126(g).

    (b)     **Impaired Classes of Equity Interests**. Class 8 is Impaired; however, the holders of Equity Interests in that Class are not entitled to cast Ballots with respect to this Plan because such holders are not entitled to receive or retain any property under this Plan and are deemed to have rejected this Plan in accordance with Bankruptcy Code § 1126(g).

# ARTICLE V

## ACCEPTANCE OR REJECTION OF THIS PLAN

**5.1**     **Classes Entitled to Vote**. Each Impaired Class of Claims that will receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan as provided in the Disclosure Statement Order or any other Order.

**5.2**     **Acceptance by Impaired Classes of Claims**. An Impaired Class of Claims shall have accepted this Plan if (a) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

**5.3**     **Cramdown**. If each Impaired Class of Claims does not accept this Plan, the Debtors request Confirmation of this Plan under Bankruptcy Code § 1129(b). The Plan Proponents reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code § 1129(b) requires modification or for any other reason in their discretion.

# ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THIS PLAN

**6.1**     **Conditions Precedent to the Effective Date**. Each of the following events shall occur on or before the Effective Date:

    (a)     the Confirmation Order, in a form and substance reasonably acceptable to each of the Plan Proponents, shall have been entered by the Bankruptcy Court and shall not be subject to a stay and shall include one or more findings that (i) this Plan is confirmed with respect to each Debtor, (ii) the Debtors have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code as set forth in Bankruptcy Code § 1125(e), and (iii) the

Debtors are authorized to take all actions and consummate all transactions contemplated under this Plan;

(b)    the Court shall have approved the transfer of the Liquidating Trust Assets to the Liquidating Trust Free and Clear and the termination and extinguishment of the Equity Interests in the Debtors;

(c)    the Liquidating Trustee shall be identified in the Plan Supplement;

(d)    the Bankruptcy Court shall have determined that the Liquidating Trustee is or will be duly authorized to take the actions contemplated in this Plan and the Liquidating Trust Agreement, which approval and authorization may be set forth in the Confirmation Order;

(e)    the Bankruptcy Court shall have entered an Order approving the substantive consolidation of the Debtors on the terms set forth in <u>Section 6.7</u>;

(f)    all documents, instruments, and agreements provided under, or necessary to implement, this Plan shall have been executed and delivered by the applicable parties; and

(g)    all other documents required to be Filed with the Plan Supplement, each in form and substance reasonably acceptable to the Plan Proponents, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

**6.2    Creation of the Liquidating Trust**.  On the Effective Date, the Liquidating Trust shall be formed pursuant to this Plan, the Liquidating Trust Agreement shall be executed, and the Liquidating Trust shall be established and become effective.  In accordance with this Plan and the Liquidating Trust Agreement, the Liquidating Trust shall be established for the purpose of collecting, receiving, holding, maintaining, administering, and liquidating the Liquidating Trust Assets; resolving all Disputed Claims; making all payments and distributions to holders of Allowed Claims in accordance with the terms of this Plan; closing the Cases; and otherwise implementing the Plan and finally administering the Estates.  The Liquidating Trust shall not engage in a trade or business and shall conduct its activities consistent with the Liquidating Trust Agreement.  On and after the Effective Date, the Liquidating Trust shall perform and pay when due liabilities, if any, related to ownership or operation of the Liquidating Trust Assets.

**6.3    Transfer of Liquidating Trust Assets**.  Except as otherwise set forth in this Plan or the Confirmation Order, on the Effective Date, the Liquidating Trust Assets shall be transferred and assigned to, the Liquidating Trust Free and Clear, but subject to the Liquidating Trust's obligations under the Plan.  The Debtors shall convey, transfer, assign and deliver to the Liquidating Trust all or any portion of the Liquidating Trust Assets, subject to all Liens that are Liquidating Trust Permitted Liens or are not released pursuant to the terms of this Plan.

**6.4    Conflicts Between Liquidating Trust Agreement and Plan**.  In the event of any inconsistencies or conflict between the Liquidating Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

**6.5** **Plan is Motion to Transfer Liquidating Trust Assets**. This Plan shall be considered a motion pursuant to Bankruptcy Code §§ 105, 363, and 365 to transfer and assign to the Liquidating Trust Free and Clear, but subject to the Liquidating Trust's obligations under the Plan, any and all Liquidating Trust Assets as of the Effective Date, with all benefits to the Estates under such sections of the Bankruptcy Code. Any objections to such transfer and assignment must be made as an objection to Confirmation of this Plan to be heard at the Confirmation Hearing.

After the Effective Date, the Liquidating Trustee may present such Order(s) or assignment(s) to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where the Liquidating Trust Assets are or were located, which provide that such property is conveyed to the Liquidating Trust. The Order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred and assigned. This Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by this Plan, shall be given prior to the presentation of such Order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any Liquidating Trust Assets shall be conclusively deemed to have consented to the transfer and assignment of such Liquidating Trust Assets Free and Clear to the Liquidating Trust by failing to object to confirmation of this Plan, except as otherwise provided in this Plan.

**6.6** **Issuance of Liquidating Trust Interests**. It is an integral and essential element of this Plan that the offer and issuance of Liquidating Trust Interests pursuant to this Plan, to the extent such Liquidating Trust Interests constitute securities under the 1933 Act, shall be exempt from registration under the 1933 Act and any State or local law, pursuant to Bankruptcy Code § 1145 or other applicable exemptions, without limitation. The Confirmation Order shall include a finding and conclusion, binding upon all parties to the Cases, the Debtors, the Liquidating Trustee, the U.S. Securities and Exchange Commission and all other federal, state and local regulatory enforcement agencies, to the effect that the Liquidating Trustee is a successor to the Debtors under this Plan pursuant to Bankruptcy Code § 1145, that the offer of the Liquidating Trust Interests is occurring pursuant to this Plan, that the offer of the Liquidating Trust Interests is in exchange for a claim against, or an interest in, the Debtors, and that such offer and issuance, to the extent such Liquidating Trust Interests constitute securities under the 1933 Act, fall within the exemption from registration under the 1933 Act and any state or local law pursuant to Bankruptcy Code § 1145. In lieu of certificates evidencing the Liquidating Trust Interests, the Liquidating Trustee shall maintain a register of the names, addresses, and interest percentages of the holders of the Liquidating Trust Interests based upon the provisions of this Plan which designate the Persons who are entitled to receive the beneficial interests in the Liquidating Trust. The Liquidating Trust Interests may not be transferred, sold, pledged, or otherwise disposed of, or offered for sale except for transfers by operation of law.

**6.7** **Cancellation of Equity Interests**. On the Effective Date, all Equity Interests in the Debtors (including those Equity Interests held in treasury by any of the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those Equity Interests shall be deemed cancelled (all without further action by any Person or the

Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in any of the Debtors.

**6.8** **Limited Substantive Consolidation**. Pursuant to the Bankruptcy Court's *[Order Approving Substantive Consolidation of the Debtors]*, solely for the purpose of the Cases and the Plan, (a) each Claim against any of the Debtors will be deemed to be a claim against a consolidated entity consisting of all of the Debtors; (b) any Proof of Claim Filed against one or more of the Debtors will be deemed to have been filed against the consolidated entity; (c) all intercompany claims by and among the Debtors will be eliminated and released except any intercompany claims that are subject to an M&M Claim or M&M Lien, provided notwithstanding the foregoing, (i) such intercompany claims shall be preserved solely for the purposes of preserving the M&M Claim or M&M Liens in collateral to avoid dilution of the priority of Liens against the property affected thereby, and (ii) any such M&M Claim or Lien shall not be enforced or enforceable against any Liquidating Trust Assets; and (d) all guarantees by one of the Debtors in favor of any of the other Debtors will be eliminated, and all guarantees executed by any of the Debtors in favor of a creditor will be deemed to be a single obligation. Substantive consolidation shall have no effect on valid, enforceable, and unavoidable Liens except for Liens that secure an intercompany claim that is eliminated by virtue of substantive consolidation and Liens against property that ceases to exist by virtue of substantive consolidation. Specifically, substantive consolidation shall not increase the percentage working interest against which a holder of a Secured Claim asserts a Lien. Further, substantive consolidation shall not (u) create a Claim in a Class different from the Class in which a Claim would have been placed in the absence of substantive consolidation, (v) change the priority or nature of a Claim in a manner different from the priority or nature of such Claim in the absence of substantive consolidation, (w) affect any preserved Causes of Action, including Avoidance Actions, of each of the Debtors, (x) affect the legal or organizational structure of the Debtors or their respective ownership of any property or assets; (y) affect the defenses to any Causes of Action, other than proper-party defenses, or (z) affect payments out of any insurance policies or proceeds of such policies. Except as otherwise set forth herein, on the Effective Date, the Debtors are discharged and released from all intercompany claims and all intercompany claims are extinguished and eliminated.

**6.9** **Cancellation of Lien Documents**. On the Effective Date, the Senior Lien Documents and all other Lien Documents, if any, shall be deemed cancelled, discharged, released, terminated, and of no further force or effect and this Plan shall operate to cancel all obligations of the Debtors and the Liquidating Trust under the Senior Lien Documents and all other Lien Documents. Notwithstanding the foregoing, (i) such cancellation of the Lien Documents shall not be applicable to any Liquidating Trust Permitted Liens (with respect to the Liquidating Trust Assets), (ii) such cancellation of the Lien Documents shall not impair the rights of holders of any Claims arising under or relating to such Lien Documents to receive Distributions from the Liquidating Trust, or as otherwise provided in this Plan, on account of such Claims, and (iii) each Lien Document that is administered by an agent or servicer shall continue in effect solely for the purposes of (A) allowing such agent or servicer to make distributions to be made on account of such Claims under this Plan and (B) permitting such agent or servicer to maintain any rights it may have for fees, costs, and expenses under such agreement. Nothing herein shall impair the rights

and duties under the Senior Lien Documents as among the Senior Lien Agent and the Senior Lien Holders.

**6.10     Termination of Directors, Officers, and/or Managers of the Debtors**. Effective as of the Effective Date, all of the directors, officers, and/or managers of any of the Debtors shall be deemed terminated.

**6.11     Authority**.  All actions and transactions contemplated under this Plan, including, but not limited to, any certificates, agreements or other documents to be executed in connection with (a) the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust, (b) the issuance of the Liquidating Trust Interests, and (c) any mergers, consolidations, or dissolutions of the Debtors are and shall be authorized upon Confirmation of this Plan without the need of further approvals, notices or meetings of the Debtors' directors, officers, managers, and/or members, other than the notice provided by serving this Plan on (x) all known holders of Claims and (y) all current holders of Equity Interests of each of the Debtors.  Specifically, all amendments to the certificates of incorporation or formation, the articles of incorporation or organization, the operating agreements, the limited liability company agreements, the partnership agreements, and/or bylaws of any of the Debtors and all other corporate action on behalf of any of the Debtors as may be necessary to put into effect or carry out the terms and intent of this Plan, including, without limitation, any mergers, consolidations, or dissolutions of the Debtors, may be effected, exercised, and taken without further action by the Debtors' directors, officers, managers, and/or members with like effect as if effected, exercised, and taken by unanimous action of the directors, officers, managers, and/or members of the Debtors.  The Confirmation Order shall include provisions dispensing with the need of further approvals, notices or meetings of the Debtors or holders of Equity Interests and authorizing and directing the Liquidating Trustee, as authorized signatory of each respective Debtor, to execute any document, certificate or agreement necessary to effectuate this Plan and all actions and transactions contemplated under this Plan on behalf of such Debtor (including, without limitation, any mergers, consolidations or dissolutions of the Debtors), and shall further order the Secretary of State of the States of Delaware and Louisiana to accept and file any articles or certifications of merger or dissolution or such other documents as may be necessary in order to effect such actions, which documents, certificates and agreements shall be binding on the Debtors, all holders of Claims, and all holders of Equity Interests and, upon execution by the Liquidating Trustee as authorized herein and in the Confirmation Order, shall have the same force and effect as if approved by all requisite partners, members, managers or Equity Interest holders of each Debtor.

**6.12     Procedures regarding M&M Secured Claims and Operational Cure Claims.**

(a)     **M&M Secured Claims**.  As provided in Section 4.2(d), the Committee, in its sole and absolute discretion, may, prior to the Confirmation Hearing (a) seek to settle any or all Claims of creditors asserting M&M Secured Claims, and (b) object to any or all Claims of creditors asserting M&M Secured Claims.  Such objections may include (but not be limited to) the extent, if any, that an M&M Secured Claim is entitled to treatment as a Class 4 Allowed M&M Secured Claim versus treatment as a Class 6B Allowed Non-Senior Lien General Unsecured Claim.  The Committee currently contemplates that the Committee and parties asserting M&M Secured Claims shall attempt to reach an agreement as to the extent that an asserted M&M Secured Claim shall be entitled to treatment as a Class 4 M&M Secured Claim,

and the extent to which an asserted M&M Secured Claim shall be entitled to treatment as a Class 6B Allowed Non-Senior Lien General Unsecured Claim.

The Committee further contemplates that if the Committee and a party asserting an M&M Secured Claim reach an agreement as to the extent that an asserted M&M Secured Claim shall be entitled to treatment as a Class 4 M&M Secured Claim (which agreement shall be subject to the Debtors' written consent), such Class 4 M&M Secured Claim shall be a Settled M&M Secured Claim, and the balance of the M&M Secured Claim shall be a Class 6B Allowed Non-Senior Lien General Unsecured Claim. Eighty percent (80%) of a Settled M&M Secured Claim shall be an Allowed M&M Secured Claim and paid from the Carveout Reserve. The remaining twenty percent (20%) of the Settled M&M Secured Claim (defined above as the "Redistributed M&M Secured Claim") shall remain in the Carveout Reserve for distribution first to holders of Allowed Operational Cure Claims and other Allowed M&M Secured Claims (only to the extent necessary) and, thereafter, to the extent any such amounts remain, be transferred to the Series B Distribution Reserve for the benefit of holders of Series B Liquidating Trust Interests. Holders of a Settled M&M Secured Claim shall waive any right to assert a Claim or right to distribution on account of the Redistributed M&M Secured Claim.

Each holder of a Settled M&M Secured Claim against any of the Debtors' Estates shall be paid, on the Effective Date (or as soon as reasonably practicable thereafter), the amount of such Settled M&M Secured Claim in exchange for and in full satisfaction and discharge of the holder's M&M Secured Claim provided that the holder of such M&M Secured Claim elects on a timely cast Ballot to receive such treatment with respect thereto.

Any such proposed settlements shall be disclosed in the Disclosure Statement and/or Plan Supplement, and this Plan (as supplemented by the Disclosure Statement and Plan Supplement) shall constitute a motion to approve any such settlements pursuant to Rule 9019 of the Bankruptcy Rules.

In the event an asserted M&M Secured Claim is not settled as set forth herein or otherwise Allowed by a Non-Appealable Order entered prior to the Confirmation Hearing, the Liquidating Trustee shall be entitled to object to, resolve, settle, compromise, or litigate to judgment such Claim in accordance with Article XII hereof.

(b)     **Operational Cure Claims**.

The Committee, in its sole and absolute discretion, may, prior to the Confirmation Hearing (a) seek to settle any or all Claims of creditors asserting Operational Cure Claims, and (b) object to any or all Claims of creditors asserting Operational Cure Claims. Such objections may include (but not be limited to) the extent, if any, that an Operational Cure Claim must be paid in connection with the assumption and assignment of an executory contract or unexpired lease pursuant to the Sale Order. The Committee currently contemplates that the Committee and parties asserting Operational Cure Claims shall attempt to reach an agreement as to the extent that an asserted Operational Cure Claim must be paid in connection with the assumption and assignment of an executory contract or expired lease pursuant to the Sale Order, and the extent to

which an asserted Operational Cure Claim shall be treated as a Class 6B Allowed Non-Senior Lien General Unsecured Claim.

The Committee further contemplates that, if the Committee and a party asserting an Operational Cure Claim reach an agreement as to the extent that an Operational Cure Claim must be paid in connection with the Sale Order (which agreement shall be subject to the Debtors' written consent), such Operational Cure Claim shall be a "Settled Operational Cure Claim," and any unpaid balance of the Operational Cure Claim shall be treated as a Class 6B Allowed Non-Senior Lien General Unsecured Claim. Eighty percent (80%) of a Settled Operational Cure Claim shall be an Allowed Operational Cure Claim and paid from the Carveout Reserve. The remaining twenty percent (20%) of the Settled Operational Cure Claim (the "Redistributed Operational Cure Claim") shall remain in the Carveout Reserve for distribution first to holders of Allowed Operational Cure Claims and other Allowed M&M Secured Claims (only to the extent necessary) and, thereafter, to the extent any such amounts remain, transferred to the Series B Distribution Reserve for the benefit of holders of Series B Liquidating Trust Interests.

Any such proposed settlements shall be disclosed in the Disclosure Statement and/or Plan Supplement, and this Plan (as supplemented by the Disclosure Statement and Plan Supplement) shall constitute a motion to approve any such settlements pursuant to Rule 9019 of the Bankruptcy Rules.

To the extent an asserted Operational Cure Claim is not settled as set forth in this Section 6.12 or otherwise Allowed by Non-Appealable Order entered prior to the Confirmation Hearing, the Liquidating Trustee shall be entitled to object to, resolve, settle, compromise, or litigate to judgment such Claim in accordance with Article XII hereof.

**6.13**    **Release of Liens**.  On the Effective Date, all Liens (except any Liquidating Trust Permitted Liens with respect to the Liquidating Trust Assets) on any property of any Debtors shall automatically terminate, all Collateral subject to such Liens shall be automatically released, and all guarantees of any Debtors shall be automatically discharged and released; *provided, however,* that such Liquidating Trust Permitted Liens shall attach to Cash in the applicable Reserve Accounts in the Liquidating Trust, as provided in this Plan or the Confirmation Order.

**6.14**    **Preservation of Rights of Action; Settlement of Litigation Claims**.

(a)    **Preservation of Causes of Action**.  All Causes of Action, rights of setoff and other legal and equitable defenses of any Debtor or any Estate are preserved for the benefit of the Liquidating Trust unless expressly released, waived, or relinquished under the Plan or Confirmation Order.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Liquidating Trust will not pursue a Cause of Action against them.  The Causes of Action that are preserved for the benefit of the Liquidating Trust and for which the Liquidating Trustee shall be appointed representative of the Estates pursuant to Bankruptcy Code § 1123(b)(3)(B) shall include, but not be limited to, those Causes of Action described in Sections 3.15(a), (b), (d), and (e) of the Disclosure Statement.

(b) **Liquidating Trustee as Representative of the Estate**. The Liquidating Trustee shall be appointed representative of the Estates pursuant to Bankruptcy Code § 1123(b)(3)(B) with respect to the Causes of Action and, except as otherwise ordered by the Bankruptcy Court and subject to any releases in this Plan, on the Effective Date, the Liquidating Trust shall be transferred all Causes of Action, and may enforce, sue on, and, subject to Bankruptcy Court approval (except as otherwise provided herein) settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action. Except as otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall be vested with authority and standing to prosecute any Causes of Action. The Liquidating Trustee and his or her attorneys and other professional advisors shall have no liability for pursuing or failing to pursue any such Causes of Action.

(c) **Settlement of Litigation Claims and Disputed Claims**. At any time after the Confirmation Date and before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtors, with the consent of the Committee and the Senior Lien Holders, may settle some or all of the Causes of Action or the Disputed Claims subject to obtaining any necessary Bankruptcy Court approval. The proceeds from the settlement of a Cause of Action shall constitute a Liquidating Trust Asset that shall be transferred to the Liquidating Trust on the Effective Date, for Distribution in accordance with this Plan and the Liquidating Trust Agreement.

(d) **Release of Funds Reserved on Account of Disputed Claims**. In the event that any amount held in reserve by the Liquidating Trustee on account of a particular Disputed Claim remains after (i) all objections to such Disputed Claim are resolved or withdrawn and (ii) such Claim is paid to the extent Allowed, such remaining reserved amount shall remain in the applicable Reserve Account and thereafter be distributed by the Liquidating Trustee in accordance with the terms of this Plan applicable to funds held in such applicable Reserve Account.

## ARTICLE VII

## THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE

**7.1** **The Liquidating Trust**. The Liquidating Trust, duly organized under the laws of the State of Texas, is created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and making the Payments or Distributions to (i) certain holders of Allowed Claims from the Reserve Accounts and (ii) holders of Liquidating Trust Interests from the Series A Distribution Reserve and the Series B Distribution Reserve, as applicable, and the Liquidating Trust is not otherwise authorized to engage in any trade or business. The beneficiaries of the Liquidating Trust, who will be treated as the grantors and deemed owners for federal income tax purposes, are the holders of Allowed Senior Lien Deficiency Claims and Allowed Non-Senior Lien General Unsecured Claims in Classes 6A and 6B, respectively. The Liquidating Trustee shall file federal income tax returns for the Liquidating Trust as a grantor trust pursuant to § 671 of the Internal Revenue Code of 1986, as amended, and the Treasury Tax Regulations promulgated thereunder. The parties shall not take any position on their respective tax returns or with respect to any other matter related to taxes that is inconsistent

with treating the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance to the contrary from the Internal Revenue Service.

**7.2** **Funding of Res of Trust**. To fund the Liquidating Trust, all of the Liquidating Trust Assets shall be transferred and assigned to the Liquidating Trust, and the Liquidating Trust shall be in possession of, and have title to, all the Liquidating Trust Assets, as of the Effective Date. The Liquidating Trustee, as trustee of the Liquidating Trust shall be substituted as the plaintiff, defendant, or other party in all lawsuits regarding Causes of Action pending in which any of the Debtors or the Committee is the plaintiff as of the Effective Date. The conveyances of all Liquidating Trust Assets shall be accomplished pursuant to this Plan and the Confirmation Order and shall be effective upon the Effective Date. The Debtors shall convey, transfer, assign and deliver the Liquidating Trust Assets Free and Clear of all Liens that are not Liquidating Trust Permitted Liens or released pursuant to the terms of this Plan. Upon the Effective Date, the Liquidating Trust shall also be deemed to have taken (a) an assignment of all Causes of Action against third parties for obligations or claims existing on or created by virtue of the Effective Date, unless expressly released in this Plan, and (b) an assignment, bill of sale, deed and/or release covering all other Liquidating Trust Assets to the extent necessary to effect the transfer and assignment of such Liquidating Trust Assets. The Liquidating Trustee may present such Orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Liquidating Trust. Such Orders may be presented without further notice other than as has been given in this Plan.

For all federal and applicable state and local income tax purposes, all Persons (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) will treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries as (a) a transfer of the Liquidating Trust Assets directly to the Liquidating Trust Beneficiaries followed by (b) the transfer of the Liquidating Trust Assets by the Liquidating Trust Beneficiaries to the Liquidating Trust. The Liquidating Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Liquidating Trust Beneficiaries will be treated as the grantors and deemed owners of their allocable portion of the Liquidating Trust Assets for federal income tax purposes.

The fair market value of the portion of the Liquidating Trust Assets that is treated for U.S. federal income tax purposes as having been transferred to each Liquidating Trust Beneficiary, as described in the preceding paragraph, and to each of the Distribution Reserve Accounts, will be determined by the Liquidating Trustee, and all parties (including, without limitation, the Liquidating Trustee and the Liquidating Trust Beneficiaries) must utilize such fair market values determined by the Liquidating Trustee for federal and applicable state and local income tax purposes.

The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidating Trust Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust during the applicable taxable period. Such allocation will be binding on all parties for federal and applicable state and local income tax purposes, and the parties will be

responsible for the payment of any federal, state and local income tax due on the income and gain so allocated to them.

7.3 **The Liquidating Trustee**. The Liquidating Trustee shall be appointed by mutual consent of the Senior Lien Agent and the Committee, in consultation with the Debtors. If no agreement can be reached by the Senior Lien Agent and the Committee, the Liquidating Trustee shall be appointed by the Court. The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. However, the Liquidating Trustee shall not be obligated to review, investigate, evaluate, analyze, or object to Fee Applications or Professional Fee Claims relating to services rendered and expenses incurred prior to the Effective Date. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B). Subject to the Bankruptcy Court's approval and appointment of the selection of the Liquidating Trustee at the Confirmation Hearing, a Person to be designated by the Debtors, the Senior Lien Agent and Committee in the Plan Supplement shall initially serve as the Liquidating Trustee. Matters relating to the appointment, removal and resignation of the Liquidating Trustee and the appointment of any successor Liquidating Trustee shall be set forth in the Liquidating Trust Agreement, provided that the Liquidating Trust Agreement shall authorize the Liquidating Trust Committee, in its sole discretion, to remove the Liquidating Trustee at any time. The Liquidating Trustee shall be required to perform his or her duties as set forth in this Plan and the Liquidating Trust Agreement.

7.4 **Retention of Professionals**. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust from the Liquidating Trust Expense Reserve upon the monthly submission of statements to the Liquidating Trustee. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business from the Liquidating Trust Assets, and shall not be subject to the approval of the Bankruptcy Court. Professionals of, among others, the Debtors and the Committee, shall be eligible for retention by the Liquidating Trustee, and former employees of the Debtors shall be eligible for retention by the Liquidating Trust and Liquidating Trustee.

7.5 **Compensation of the Liquidating Trustee**. The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be determined by the Senior Lien Agent and the Committee and disclosed in the Plan Supplement. The payment of the fees of the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be made by the Liquidating Trust from the Liquidating Trust Expense Reserve in accordance with this Plan and the Liquidating Trust Agreement.

7.6 **Liquidating Trust Expenses**. Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from the Liquidating Trust thereunder (including the

reimbursement of reasonable expenses) shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee. Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval.

Notwithstanding the foregoing, with respect to Liquidating Trust Expenses attributable to any objection to, negotiation of, and/or settlement relating to asserted M&M Claims and/or asserted Non-Senior Lien General Unsecured Claims (collectively, the "Carveout Reserve Expenses"), such expenses may be paid with funds held in the Liquidating Trust Expense Reserve (as set forth in Section 11.3 below); provided, however, to the extent the Liquidating Trust Expense Carveout (i.e., the initial $100,000 funded into the Liquidating Trust Expense Reserve) is insufficient to pay such Carveout Reserve Expenses, such Carveout Reserve Expenses shall be accounted for and assessed solely against the Unrestricted Liquidating Trust Cash Proceeds attributable to the Series B Liquidating Trust Beneficiaries such that these Carveout Reserve Expenses shall ultimately be borne solely by the Series B Liquidating Trust Beneficiaries. The Liquidating Trustee shall re-allocate such Carveout Reserve Expenses (solely to the extent the Liquidating Trust Expense Carveout is insufficient to pay such amounts) by deducting 75% of such Carveout Reserve Expenses incurred prior to each Distribution Date from the computed Distribution to be made on such Distribution Date to the Series B Liquidating Trust Beneficiaries and transfer such amount from the Series B Distribution Reserve into the Series A Distribution Reserve for the benefit of the Series A Liquidating Trust Beneficiaries.

**7.7** **Liability; Indemnification**. The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation and administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**7.8** **Preparation of Final Tax Returns**. The Liquidating Trustee shall be responsible for preparing and filing all tax returns required to be filed by any of the Debtors. The Liquidating Trustee shall provide TriDimension Holdings LP, a Delaware limited partnership ("Holdings"), with a copy of the final federal income tax return of TriDimension for the period ending on June 3, 2010 at least by the later of (a) 30 days prior to the due date for filing such returns or (b) 30 days after the Effective Date, for Holdings' review, comment and approval. The Liquidating Trustee shall provide Holdings with Schedule K-1s with respect to such final federal income tax returns

within 15 days after Holdings' approval of such returns. The Liquidating Trustee shall also prepare, or cause to be prepared, and provide to Holdings substitute federal income tax returns for TriDimension and the Debtors for the periods (i) from June 3, 2010 through December 31, 2010 and (ii) from January 1, 2011 through the Effective Date (collectively, the "<u>Substitute Returns</u>") prepared, in each case, as if TriDimension and the Debtors were a separate reporting entity for federal income tax purposes. Holding shall be responsible for all reasonable third party costs and expenses incurred (but not any allocable portion of the Liquidating Trustee's time) in the preparation of the Substitute Returns. The Liquidating Trustee shall provide such Substitute Returns to Holdings within the later of (i) 60 days after the end of each respective period or (ii) 30 days after the Effective Date. If TriDimension or any of the Debtors are required to be included in a combined franchise or state income tax return filed by a Person other than a Debtor for any period ending on or before the Effective Date, the Liquidating Trust shall pay the applicable taxing authority the franchise and/or state income tax (Collectively, the "<u>Combined State Taxes</u>") attributable to TriDimension or any such Debtor for such period as an Administrative Claim, Priority Tax Claim, Ad Valorem Tax Claim, or General Unsecured Claim, as applicable, in accordance with the terms of this Plan; provided, however, in the event the Liquidating Trust does not timely pay such Combined State Taxes attributable to any Debtor for any period ending on or before the Effective Date, and such Combined State Taxes are paid by Holdings, Holdings shall be entitled to reimbursement as an Administrative Claim, Priority Tax Claim, Ad Valorem Tax Claim, or General Unsecured Claim, as applicable, in accordance with the terms of this Plan and be subrogated to the rights of such taxing authority, to the extent of such payment. The Combined State Taxes attributable to TriDimension or any other Debtor shall be determined on a stand alone basis as if TriDimension or such other Debtor were filing a separate tax return.

**7.9    Bonding Requirement**. Within five (5) ~~business days~~<u>Business Days</u> after the Effective Date and unless waived in writing by the Liquidating Trust Committee, the Liquidating Trustee shall, [at the expense of the Liquidating Trust], procure a performance bond or bonds for the benefit of the Liquidating Trust in the amount of at least $~~======~~100,000 written by an insurance or bonding company authorized to do business in the State of Texas reasonably acceptable to the Liquidating Trust Committee.

**7.10    The SR Environmental Claim**. On the Effective Date, the SR Environmental Claim shall be transferred to the Liquidating Trust as a Liquidating Trust Asset, which shall be held and collected, prosecuted, compromised, and/or settled by the Liquidating Trust for the sole benefit for the holders of Allowed Class 3 Senior Lien Secured Claims. Any proceeds received by the Liquidating Trust on account of the SR Environmental Claim shall be deemed Remaining Sale Proceeds. Notwithstanding anything to the contrary set forth herein, any compromise and settlement of the SR Environmental Claim may only be made with the written consent of the Senior Lien Agent. Any Liquidating Trust Expenses directly attributable to the collection, prosecution, compromise, and/or settlement of the SR Environmental Claim shall only be paid from amounts reserved for such expenses pursuant to <u>Section 4.2(c)</u> of this Plan. After the Effective Date, upon the written request of all holders of Allowed Class 3 Senior Lien Secured Claims, the Liquidating Trustee shall assign and transfer the SR Environmental Claim to the Senior Lien Agent (or its designee), who shall be substituted as the proper party in any proceedings or actions with respect to the SR Environmental Claim and thereafter be authorized

to collect, prosecute, sue on, compromise or settle the SR Environmental Claim without further Bankruptcy Court approval.

**7.11** **Termination**.  The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets, including Causes of Action transferred and assigned to the Liquidating Trust, or involving the Liquidating Trustee on behalf of the Liquidating Trust, are fully resolved, abandoned or liquidated and the Available Cash and other amounts held in Reserve Accounts have been distributed in accordance with this Plan and the Liquidating Trust Agreement.  Except in the circumstances set forth below, the Liquidating Trust shall terminate no later than three years after the Effective Date.  However, if warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Liquidating Trust, the term of the Liquidating Trust may be extended one or more times (not to exceed a total of four extensions, unless the Liquidating Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue.  Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to all of the unpaid beneficiaries of the Liquidating Trust.  Upon the occurrence of the termination of the Liquidating Trust, the Liquidating Trustee shall File with the Bankruptcy Court a report thereof, seeking an order discharging the Liquidating Trustee.

## ARTICLE VIII

## COMMITTEE AND LIQUIDATING TRUST COMMITTEE

**8.1** **Dissolution of Committee**.  The Committee shall continue in existence through the Effective Date to exercise those powers and perform those duties specified in Bankruptcy Code § 1103.  Unless otherwise ordered by the Bankruptcy Court, on the Effective Date, (a) the Committee shall be dissolved and their members shall be released of all their duties, responsibilities and obligations in connection with the Cases, this Plan and the implementation of the same and (b) the retention or employment of the Committee's Professionals and other agents shall terminate.

**8.2** **Creation of Liquidating Trust Committee**.

(a) One member of the Liquidating Trust Committee shall be selected by the Senior Lien Agent, one member of the Liquidating Trust Committee shall be selected by the Committee, and one member of the Liquidating Trust Committee shall be selected jointly by the individuals selected by the Senior Lien Agent and the Committee.  If the individuals selected by the Senior Lien Agent and the Committee are unable to agree upon the third member of the Liquidating Trust Committee, then such selection shall be made by the Bankruptcy Court.

(b) If a member of the Liquidating Trust Committee resigns or is otherwise removed, a replacement Liquidating Trust Committee member, as identified in the Plan Supplement, will be appointed.

**8.3    Procedures**.  The Liquidating Trust Committee may adopt bylaws to provide for the governance of the Liquidating Trust Committee.

**8.4    Function, Duties, and Responsibilities**.  The function, duties, and responsibilities of the Liquidating Trust Committee shall be set forth in the Liquidating Trust Agreement.

**8.5    Duration**.  The Liquidating Trust Committee shall remain in existence until the Liquidating Trust is terminated in accordance with Section 7.11 of this Plan.

**8.6    Compensation and Expenses**.  The member of the Liquidating Trust Committee shall be entitled to reimbursement of reasonable expenses by the Liquidating Trust, provided, that, any such reimbursement of reasonable expenses pursuant to this Section 8.6 shall not include fees or compensation of an individual member's attorneys or other professionals.  Such reimbursement shall be paid from the Liquidating Trust without further order of the Bankruptcy Court.  Members of the Liquidating Trust Committee shall not be entitled to any other compensation from the Liquidating Trust.

**8.7    Liability; Indemnification**.  Neither the Liquidating Trust Committee, nor any of its members, or designees, nor any duly designated agent or representative of the Liquidating Trust Committee, or their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of the Liquidating Trust Committee, nor shall any member of the Liquidating Trust Committee be liable for any act or omission taken or omitted to be taken in its capacity as a member of the Liquidating Trust Committee, other than acts or omissions resulting from such member's willful misconduct, gross negligence or fraud.  The Liquidating Trust Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, and its agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Liquidating Trust Committee shall be under no obligation to consult with attorneys, accountants or its agents, and its determination to not do so shall not result in the imposition of liability on the Liquidating Trust Committee, or its members and/or designees, unless such determination is based on willful misconduct, gross negligence or fraud.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Committee and its members, designees, and Professionals, and any duly designated agent or representative thereof (in their capacity as such), from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the Liquidating Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

## ARTICLE IX

## PROVISIONS GOVERNING PAYMENTS AND DISTRIBUTIONS GENERALLY

**9.1    Payments for Claims Allowed as of the Effective Date**.  Except as otherwise provided herein or as ordered by the Bankruptcy Court, Payments, whether of Cash or Liquidating

Trust Interests, to be made on account of Claims that are Allowed Claims, as of the Effective Date, shall be made on or as soon as practicable after the Effective Date. The Liquidating Trustee shall make all Payments required under this Plan, except with respect to a Claim whose Payment is governed by an agreement and is administered by an agent or servicer, which Payments shall be deposited with the appropriate agent or servicer, who shall deliver such Payments to the holders of Claims in accordance with the provisions of this Plan.

9.2     **Means of Cash Payment**.  Cash payments made pursuant to this Plan shall be in U.S. funds, by the means, including by check or wire transfer, determined by the Liquidating Trustee as appropriate.

9.3     **Delivery of Payment**.  Payments to holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such holders (or at the last known address of such holders if no Proof of Claim is Filed or if the Debtors have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Debtors and the Liquidating Trustee (as applicable) after the date of any related Proof of Claim, or (c) if no Proof of Claim has been Filed and the Debtors and the Liquidating Trustee (as applicable) have not received a written notice of a change of address, at the addresses reflected in the Bankruptcy Schedules, if any.

9.4     **Fractional Dollars; De Minimis Payments**.  Notwithstanding any other provision of this Plan, payments of fractions of dollars shall not be made.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down).  The Liquidating Trustee shall not make any payment of less than twenty dollars with respect to any Claim unless a request therefor is made in writing to the Liquidating Trustee.  Notwithstanding the foregoing, the Liquidating Trustee may, in his or her discretion, make payments of fractions of dollars and/or of less than twenty dollars.

9.5     **Withholding and Reporting Requirements**.  In connection with this Plan and all Payments and Distributions hereunder, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Payments and Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements.

9.6     **Setoffs**.  The Liquidating Trustee may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Liquidating Trustee may have against the holder of such Claim; *provided, however*, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such Claim that the Liquidating Trustee may have against such holder, unless otherwise agreed to in writing by such holder and the Liquidating Trustee.

9.7     **Duty to Disgorge Overpayments**.  To the extent that a Claim may be an Allowed Claim in more than one Class, the holder of such Claim shall not be entitled to recover more than

the full amount of its Allowed Claim.  The holder of an Allowed Claim that receives more than payment in full of its Allowed Claim shall immediately return any excess payments to the Liquidating Trust.  In the event that the holder of an Allowed Claim fails to return an excess payment, the Liquidating Trustee may bring suit against such holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

# ARTICLE X

## DISTRIBUTIONS TO HOLDERS OF
## ALLOWED CLASSES 6A AND 6B CLAIMS

**10.1    Initial Cash Distribution to Holders of Class 6A Allowed Senior Lien Deficiency Claims on Account of Series A Liquidating Trust Interests**.  On or before the first semi-annual anniversary of (*i.e.*, upon the conclusion of the six month period following) the Effective Date, an initial Cash Distribution will be made Pro Rata from the Series A Distribution Reserve to holders of Series A Liquidating Trust Interests; provided, however, an initial Cash Distribution will be made only if the Liquidating Trustee determines, in accordance with the terms of the Trust Agreement, that sufficient Available Cash in the Series A Distribution Reserve exists.

**10.2    Initial Cash Distribution to Holders of Class 6B Allowed Non-Senior Lien General Unsecured Claims on Account of Series B Liquidating Trust Interests**.  On or before the first semi-annual anniversary of the Effective Date, an initial Cash Distribution will be made Pro Rata from the Series B Distribution Reserve to holders of Series B Liquidating Trust Interests; provided, however, an initial Cash Distribution will be made only if the Liquidating Trustee determines, in accordance with the terms of the Trust Agreement, that sufficient Available Cash in the Series B Distribution Reserve exists.

**10.3    Subsequent Cash Distributions to Holders of Class 6A Allowed Senior Lien Deficiency Claims on Account of Series A Liquidating Trust Interests**.  After the initial Cash Distribution under Section 10.1 of this Plan, the Liquidating Trustee shall make Cash Distributions Pro Rata from the Series A Distribution Reserve to holders of Series A Liquidating Trust Interests beginning on the first annual anniversary of the Effective Date and continuing on each semi-annual anniversary thereafter; provided, however, each such Distribution will be made only if the Liquidating Trustee determines, in accordance with the terms of the Trust Agreement, that sufficient Available Cash in the Series A Distribution Reserve exists; provided, further, if and when the Liquidating Trustee determines that sufficient Available Cash in the Series A Distribution Reserve exists to make a Distribution more frequently, the Liquidating Trustee may make such Distribution; provided, further, if the Liquidating Trustee intends to make its final Cash Distribution, such Cash Distribution shall be made regardless of the amount of Available Cash in the Series A Distribution Reserve.

**10.4    Subsequent Cash Distributions to Holders of Class 6B Allowed Non-Senior Lien General Unsecured Claims on Account of Series B Liquidating Trust Interests**.  After the initial Cash Distribution under Section 10.2 of this Plan, the Liquidating Trustee shall make Cash Distributions Pro Rata from the Series B Distribution Reserve to holders of Series B Liquidating Trust Interests beginning on the first annual anniversary of the Effective Date and continuing on each semi-annual anniversary thereafter; provided, however, each such Distribution

will be made only if the Liquidating Trustee determines, in accordance with the terms of the Trust Agreement, that sufficient Available Cash in the Series B Distribution Reserve exists; provided, further, if and when the Liquidating Trustee determines that sufficient Available Cash in the Series B Distribution Reserve exists to make a Distribution more frequently, the Liquidating Trustee may make such Distribution; provided, further, if the Liquidating Trustee intends to make its final Cash Distribution, such Cash Distribution shall be made regardless of the amount of Available Cash in the Series B Distribution Reserve.

# ARTICLE XI

## RESERVES ADMINISTERED BY THE LIQUIDATING TRUST

**11.1    Establishment of Reserve Accounts**.  The Liquidating Trustee shall establish each of the Reserve Accounts (which, notwithstanding anything to the contrary contained in this Plan, may be effected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidating Trustee).

**11.2    Undeliverable Distribution Reserve**.

(a)    **Deposits**.  If a Payment or Distribution to any holder of an Allowed Claim or Liquidating Trust Interest is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, such Payment or Distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such holder until such time as such Payment or Distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Section 11.2(b) of this Plan.

(b)    **Forfeiture**.  Any holder of an Allowed Claim or Liquidating Trust Interest that does not assert a claim pursuant to this Plan for an Undeliverable or Unclaimed Payment or Distribution within one year after the first Payment or Distribution is made to such holder shall be deemed to have forfeited its claim for such Undeliverable or Unclaimed Payment or Distribution and shall be forever barred and enjoined from asserting any such claim for the Undeliverable or Unclaimed Payment or Distribution against any Debtor, any Estate, the Liquidating Trustee, the Liquidating Trust, or their respective properties or assets.  In such cases, any Cash or other property held by the Liquidating Trust in the Undeliverable Distribution Reserve for distribution on account of such claims for Undeliverable or Unclaimed Payments or Distributions, including the interest that has accrued on such Undeliverable or Unclaimed Payments or Distribution while in the Undeliverable Distribution Reserve, shall become the property of the Liquidating Trust, notwithstanding any federal or state escheat laws to the contrary, and shall be available for immediate distribution by the Liquidating Trust as Unrestricted Liquidating Trust Cash Proceeds according to the terms of this Plan and the Liquidating Trust Agreement.

(c)    **Disclaimer**.  The Liquidating Trustee and his or her respective agents and attorneys are under no duty to take any action to either (i) attempt to locate any Claim holder, or (ii) obtain an executed Internal Revenue Service Form W-9 from any Claim holder.

(d)    **Payment or Distribution from Reserve**.  Within fifteen Business Days after the holder of an Allowed Claim or Liquidating Trust Interest (as applicable) satisfies the

requirements of this Plan such that the ~~payment~~Payment(s) or ~~distribution~~Distribution(s) attributable to its Claim or Liquidating Trust Interest (as applicable) is no longer an Undeliverable or Unclaimed Payment or Distribution (provided that satisfaction occurs within the time limits set forth in Section 11.2(b) of this Plan), the Liquidating Trustee shall pay out of the Undeliverable Distribution Reserve to such holder the amount of the Undeliverable or Unclaimed Payment or Distribution attributable to such Claim or Liquidating Trust Interest (as applicable), including the interest that has accrued on such Undeliverable or Unclaimed Payment or Distribution while in the Undeliverable Distribution Reserve.

**11.3    Liquidating Trust Expense Reserve**.

(a)    On the Effective Date, the Liquidating Trustee shall deposit the Liquidating Trust Expense Carveout into the Liquidating Trust Expense Reserve.  The funds constituting the Liquidating Trust Expense Reserve are to be used by the Liquidating Trustee solely to satisfy the expenses of the Liquidating Trust and the Liquidating Trustee as set forth in the Plan; *provided, however,* that all costs and expenses associated with the winding up of the Liquidating Trust and the storage of records and documents shall constitute expenses of the Liquidating Trust and shall be paid from the funds held in the Liquidating Trust Expense Reserve.  In no event shall the Liquidating Trustee be required or permitted to use his or her personal funds or assets for such purposes.

(b)    Beginning on the first semi-annual anniversary of the Effective Date and each semi-annual anniversary thereafter, the Liquidating Trustee shall evaluate and remove from the Remaining Sale Proceeds (only to the extent permitted by Section 4.2(c)) and the Unrestricted Liquidating Trust Cash Proceeds, as applicable, the amount that he or she estimates will be sufficient to pay the Liquidating Trust Expenses incurred during each six (6) month period following such semi-annual anniversary, as well as the costs and expenses associated with the winding up of the Liquidating Trust and the storage of records and documents, and such other amounts that the Liquidating Trustee deems necessary or appropriate in accordance with the procedures set forth in the Liquidating Trust Agreement; *provided, that,* until such time as the Allowed Deferred Professional Fees are paid in full, the Unrestricted Liquidating Trust Cash Proceeds may not be used to pay (or used to reserve for payment of) any Liquidating Trust Expenses other than Direct Expenses already accrued or incurred (which Direct Expenses shall be paid on a *pari passu* and pro rata basis with the Allowed Deferred Professional Fees); *provided, further,* that any Liquidating Trust Expenses directly attributable to the collection of Remaining Sale Proceeds shall only be paid from amounts reserved for such expenses pursuant to Section 4.2(c) of this Plan.

**11.4    Senior Lien Holder Distribution Reserve**.    On the Effective Date, the Liquidating Trustee shall establish the Senior Lien Holder Distribution Reserve.  After the Effective Date, all Remaining Sale Proceeds received by the Liquidating Trust shall be deposited and held in the Senior Lien Holder Distribution Reserve pending their Payment (less amounts reserved for payment of Liquidating Trust Expenses and transferred to the Liquidating Trust Expense Reserve pursuant to Section 4.2(c) of this Plan) to the holders of Allowed Senior Lien Secured Claims in accordance with Section 4.2(c) of this Plan.

**11.5     Senior Claim Reserve**.  On the Effective Date, the Liquidating Trustee shall establish the Senior Claim Reserve by depositing from the Sale Proceeds Cash in the amount estimated by the Bankruptcy Court to be necessary to satisfy all Allowed Ad Valorem Tax Claims, Allowed Administrative Claims (other than Deferred Professional Fee Claims), Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and Allowed Non-Operational Cure Claims payable or to be paid and that remain unpaid as of the Effective Date, and shall use such funds to pay such Allowed Claims.  If all or any portion of an Allowed Ad Valorem Tax Claim, Allowed Administrative Claim (other than a Deferred Professional Fee Claim), Allowed Priority Claim, Allowed Priority Tax Claim, Allowed Other Secured Claim, and Allowed Non-Operational Cure Claim shall become a Disallowed Claim, the amount on deposit in the Senior Claim Reserve attributable to such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Senior Claim Reserve, shall remain in the Senior Claim Reserve or be transferred out of the Senior Claim Reserve, as determined by the Liquidating Trustee, as follows:

            (a)      it shall remain in the Senior Claim Reserve to the extent that the Liquidating Trustee determines necessary to ensure that the Cash remaining in the Senior Claim Reserve is sufficient to ensure that all Allowed Ad Valorem Tax Claims, Allowed Administrative Claims (other than Deferred Professional Fee Claims), Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and Allowed Non-Operational Cure Claims payable or to be paid will be paid in accordance with the Plan; and

            (b)      to the extent not required to remain in the Senior Claim Reserve pursuant to clause (a), it shall be transferred to the Senior Lien Holder Distribution Reserve.

       The Purchase Agreement Holdback Amount shall be included within the amount reserved from the Sale Proceeds on account of Allowed Administrative Claims and held by the Liquidating Trust in the Senior Claim Reserve to the extent and for the time required by the Purchase Agreement for the express purpose of fulfilling the Liquidating Trust's obligations under Section 2.09 and Section 2.10 of the Purchase Agreement, if any.  Any amount of the Purchase Agreement Holdback Amount remaining after the fulfillment of the Liquidating Trust's obligations under Section 2.09 and Section 2.10 of the Purchase Agreement (if any) shall be transferred to the Senior Lien Holder Distribution Reserve and shall constitute Remaining Sale Proceeds.

       Beginning on the Effective Date and thereafter, on each semi-annual anniversary of the Effective Date, the Liquidating Trustee shall evaluate and deposit (from Unrestricted Liquidating Trust Cash Proceeds) or remove Cash in or from the Senior Claim Reserve in an amount that he or she estimates will be sufficient to pay U.S. Trustee Fees incurred during each twelve (12) month period beginning on the Effective Date or the anniversary thereof, as applicable.

**11.6     Carveout Reserve**.  On the Effective Date, the Liquidating Trustee shall establish the Carveout Reserve by depositing, from the Sale Proceeds, Cash in the amount of the Carveout Reserve Amount.  Amounts held in the Carveout Reserve shall (a) first, be used to pay $25,000 of the Liquidating Trust Expense Carveout, (b) second, be used to pay (or to reserve for payment of) all Allowed M&M Secured Claims and all Allowed Operational Cure Claims in full, and (c) thereafter, to the extent any funds remain in the Carveout Reserve, be transferred to the Series B

Distribution Reserve for Distribution to the holders of Series B Liquidating Trust Interests in accordance with the terms of this Plan. The Carveout Reserve shall not be used to pay any other Claims.

**11.7    Series A Distribution Reserve**.  On the Effective Date, the Liquidating Trustee shall establish the Series A Distribution Reserve for the sole benefit of holders of Series A Liquidating Trust Interests.  In accordance with and subject to the conditions and procedures set forth in Section 11.9 of this Plan, the Liquidating Trustee shall deposit Unrestricted Liquidating Trust Cash Proceeds in the Series A Distribution Reserve for the benefit of the holders of Series A Liquidating Trust Interests.  All Distributions of Available Cash to the holders of Series A Liquidating Trust Interests shall be made from the Series A Distribution Reserve.

**11.8    Series B Distribution Reserve**.  On the Effective Date, the Liquidating Trustee shall establish the Series B Distribution Reserve for the sole benefit of holders of Series B Liquidating Trust Interests.  In accordance with and subject to the conditions and procedures set forth in Section 11.9 of this Plan, the Liquidating Trustee shall deposit Unrestricted Liquidating Trust Cash Proceeds in the Series B Distribution Reserve for the benefit of the holders of Series B Liquidating Trust Interests.  The Liquidating Trustee shall also deposit Cash from the Carveout Reserve in the Series B Distribution Reserve if and to the extent Cash, if any, remains in the Carveout Reserve after (a) funding of $25,000 of the Liquidating Trust Expense Carveout and (b) payment (or reservation for payment) of all Allowed M&M Secured Claims and all Allowed Operational Cure Claims in accordance with the priorities set forth in Section 11.6 of this Plan. All Distributions of Available Cash to the holders of Series B Liquidating Trust Interests shall be made from the Series B Distribution Reserve.

**11.9    Unrestricted Liquidating Trust Cash Proceeds**

To the extent Unrestricted Liquidating Trust Cash Proceeds become available on or after the Effective Date, seventy-five percent (75%) of such Unrestricted Liquidating Trust Cash Proceeds shall be deposited in the Series A Distribution Reserve for the sole benefit of the holders of Series A Liquidating Trust Interests after (i) payment (or reservation for payment) of all incurred Direct Expenses and Allowed Deferred Professional Fee Claims and (ii) payment (or reservation for payment of incurred or anticipated Liquidating Trust Expenses in an amount determined by the Liquidating Trustee in his or her sole discretion) of Liquidating Trust Expenses. Such Unrestricted Liquidating Trust Cash Proceeds deposited in the Series A Distribution Reserve shall be paid to the holders of Series A Liquidating Trust Interests in accordance with Article X of this Plan.

To the extent Unrestricted Liquidating Trust Cash Proceeds become available on or after the Effective Date, twenty-five percent (25%) of such Unrestricted Liquidating Trust Cash Proceeds shall be deposited in the Series B Distribution Reserve for the sole benefit of the holders of Series B Liquidating Trust Interests after (i) payment (or reservation for payment) of all incurred Direct Expenses and Allowed Deferred Professional Fee Claims and (ii) payment (or

reservation for payment of incurred or anticipated Liquidating Trust Expenses in an amount determined by the Liquidating Trustee in his or her sole discretion) of Liquidating Trust Expenses. Subject to reallocation as set forth in Section 7.6 of this Plan, Such Unrestricted Liquidating Trust Cash Proceeds deposited in the Series B Distribution Reserve shall be paid to the holders of Series B Liquidating Trust Interests in accordance with Article X of this Plan.

# ARTICLE XII

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

**12.1     Objection Deadline; Prosecution of Objections**.   As soon as reasonably practicable, but in no event later than 180 days after the Effective Date (unless extended with or without notice by an Order of the Bankruptcy Court), the Liquidating Trustee shall File objections to Claims and serve such objections upon the holders of each of the Claims to which objections are made.  If the Liquidating Trustee does not File an Objection to a Claim on or before 180 days after the Effective Date (unless extended with or without notice by an Order of the Bankruptcy Court), such Claim shall be deemed to be an Allowed Claim.  Nothing contained herein shall limit the Liquidating Trustee's right to object to, or deem to Allow, Claims, if any, Filed or amended more than 180 days after the Effective Date.  Subject to the limitations set forth in this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized to resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having competent jurisdiction the validity, nature, and/or amount thereof.  If the Liquidating Trustee and the holder of a Disputed Claim agree to compromise, settle, and/or resolve a Disputed Claim by granting such holder an Allowed Claim in the amount of $50,000 or less, then the Liquidating Trustee may compromise, settle, and/or resolve such Disputed Claim without further Bankruptcy Court approval; *provided, however,* that the Liquidating Trustee shall File a notice with the Bankruptcy Court advising that the Allowed Claim has been compromised, settled, and/or resolved.  If the Liquidating Trustee and the holder of a Disputed Claim agree to compromise, settle, and/or resolve a Disputed Claim by granting such holder an Allowed Claim in an amount between $50,000 and $100,000, then the Liquidating Trustee may compromise, settle, and/or resolve such Disputed Claim with the consent of the Liquidating Trust Committee in accordance with the Liquidating Trust Agreement without further Bankruptcy Court approval; *provided, however,* that the Liquidating Trustee may not compromise, settle and/or resolve any Disputed Claim which would be payable from the Senior Claim Reserve in an amount to exceed $50,000 without either the written consent of the Senior Lien Agent or Bankruptcy Court Approval*; provided, further,* that the Liquidating Trustee shall File a notice with the Bankruptcy Court advising that the Allowed Claim has been compromised, settled, and/or resolved.  Otherwise, subject to the Liquidating Trust Agreement, the Liquidating Trustee may only compromise, settle, and/or resolve such Disputed Claim with Bankruptcy Court approval.

Any Proofs of Claim that are Filed after the applicable Bar Date, including amendments to existing Proofs of Claim, or applications for the allowance of an Administrative Claim that are Filed after the Post-Confirmation Bar Date shall be deemed invalid and Disallowed unless consented to by the Liquidating Trustee or authorized by Order of the Bankruptcy Court.

Notwithstanding the foregoing, objections to, and compromises, settlements, and resolutions of, M&M Secured Claims occurring prior to the Confirmation Hearing shall be governed solely by Section 6.12 of this Plan.

**12.2**     **No Payments or Distributions Pending Allowance**.  Notwithstanding any other provision of this Plan, no Payments or Distribution by the Liquidating Trustee shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Non-Appealable Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

**ARTICLE XIII**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; PAYMENT OF CURE CLAIMS**

Except to the extent (a) the Debtors previously have assumed or rejected an executory contract or unexpired lease, (b) prior to the Effective Date, the Bankruptcy Court has entered an Order assuming an executory contract or unexpired lease, or (c) at the Confirmation Hearing, the Bankruptcy Court approves the assumption of any executory contracts or unexpired leases, the Debtors' executory contracts and unexpired leases shall be deemed rejected on the Effective Date without further notice or motion, pursuant to Bankruptcy Code §§ 365 and 1123.

**13.1**     **Cure of Operational Cure Claims**.  Any Operational Cure Claims relating to the assumption and assignment of an executory contract or unexpired lease pursuant to the Sale Order and ordered to be paid by the Bankruptcy Court shall, to the extent not paid prior to the Effective Date, be paid by the Liquidating Trustee from the Carveout Reserve on or as soon as reasonably practicable after the Effective Date.  In the event of a dispute concerning the allowance or payment of an Operational Cure Claim, the dispute shall be resolved by the Bankruptcy Court or by the written agreement of the holder of such Operational Cure Claim and the Liquidating Trustee.  Nothing herein shall require the Liquidating Trustee to pay any cure amount on an Operational Cure Claim that is a Disputed Claim, but an amount of Cash necessary to pay the entire cure amount shall be maintained in the Carveout Reserve pending the entry of an Order of the Bankruptcy Court determining the amount of the Cure Claim to which such cure amount relates or upon payment by agreement hereunder.  As soon as practicable after any cure amount on an Operational Cure Claim that is a Disputed Claim becomes an Allowed Operational Cure Claim, the Liquidating Trustee shall distribute to the holder of such Allowed Operational Cure Claim, out of the Carveout Reserve, Cash in the full amount of such Allowed Operational Cure Claim.

**13.2**     **Cure of Non-Operational Cure Claims**.  Any Non-Operational Cure Claims relating to the assumption and assignment of an executory contract or unexpired lease pursuant to the Sale Order and ordered to be paid by the Bankruptcy Court shall, to the extent not paid prior to the Effective Date, be paid by the Liquidating Trustee from the Senior Claim Reserve on or as soon as reasonably practicable after the Effective Date.  In the event of a dispute concerning the allowance or payment of a Non-Operational Cure Claim, the dispute shall be resolved by the Bankruptcy Court or by the written agreement of the holder of such Non-Operational Cure Claim, the Liquidating Trustee, and the Senior Lien Agent.  Nothing herein shall require the Liquidating

Trustee to pay any cure amount on a Non-Operational Cure Claim that is a Disputed Claim, but an amount of Cash necessary to pay the entire cure amount shall be maintained in the Senior Claim Reserve pending the entry of an Order of the Bankruptcy Court determining the amount of the Cure Claim to which such cure amount relates or upon payment by agreement hereunder. As soon as practicable after any cure amount on a Non-Operational Cure Claim that is a Disputed Claim becomes an Allowed Non-Operational Cure Claim, the Liquidating Trustee shall distribute to the holder of such Allowed Non-Operational Cure Claim, out of the Senior Claim Reserve, Cash in the full amount of such Allowed Non-Operational Cure Claim.

**13.3    Cure of Pryme Cure Claims**.  Any Pryme Cure Claims shall be paid by Pryme Oil and Gas, Inc., Pryme Lake Exploration, LLC, and SR Acquisition I, LLC as required by paragraph 51 of the Sale Order, and shall not be an obligation or liability of the Debtors or the Liquidating Trust.

**ARTICLE XIV**

**EFFECTS OF CONFIRMATION**

**14.1    Discharge**.  Except as otherwise provided herein or in the Confirmation Order, pursuant to Bankruptcy Code § 1141, the Confirmation of the Plan will not discharge the Debtors of any debts.

**14.2    Legal Binding Effect**.  The provisions of this Plan shall bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept this Plan.  On and after the Effective Date, except as expressly provided in this Plan, all holders of Claims, Liens and Equity Interests shall be precluded from asserting any Claim, Cause of Action or Liens against the Debtors or the Estates, the Liquidating Trust, or the Liquidating Trustee or their respective property and assets based on any act, omission, event, transaction or other activity of any kind that occurred or came into existence prior to the Effective Date.

**14.3    Exculpation and Limitation of Liability.**  NOTWITHSTANDING ANYTHING SET FORTH HEREIN, NEITHER THE DEBTORS, THE ESTATES, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE SENIOR LIEN AGENT, THE SENIOR LIEN HOLDERS, THE COMMITTEE, NOR THE MEMBERS OF THE COMMITTEE (BUT SOLELY IN THEIR CAPACITY AS MEMBERS OF THE COMMITTEE) SHALL HAVE ANY RIGHT OF ACTION AGAINST THE DEBTORS, THE ESTATES, THE LIQUIDATING TRUSTEE, THE LIQUIDATING TRUST, THE SENIOR LIEN AGENT, THE SENIOR LIEN HOLDERS, THE COMMITTEE, THE MEMBERS OF THE COMMITTEE (BUT SOLELY IN THEIR CAPACITY AS MEMBERS OF THE COMMITTEE) OR ANY OF THEIR RESPECTIVE ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, FINANCIAL ADVISORS, OR OTHER PROFESSIONALS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO OR ARISING OUT OF THE CASES, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, THE PREPARATION AND DISTRIBUTION OF THE DISCLOSURE STATEMENT, THE ADMINISTRATION OF THE LIQUIDATING TRUST, THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, OR THE OFFER, ISSUANCE,

SALE, OR PURCHASE OF A SECURITY OFFERED OR SOLD UNDER THIS PLAN, PROVIDED SUCH EXCULPATED PERSON DID NOT AND DOES NOT ENGAGE IN WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR FRAUD AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND PROVIDED FURTHER THAT SUCH EXCULPATION SHALL NOT EXTEND TO SUCH EXCULPATED PERSON'S RIGHTS AND OBLIGATIONS UNDER THIS PLAN, THE PLAN DOCUMENTS OR THE LIQUIDATING TRUST AGREEMENT.

      14.4    <u>Release Of Senior Lien Agent And Senior Lien Holders.</u>

NOTWITHSTANDING ANYTHING SET FORTH HEREIN TO THE CONTRARY, IN CONSIDERATION FOR THE FUNDING OF THE CARVEOUT AMOUNT, THE LIQUIDATING TRUST EXPENSE RESERVE, AND THE SENIOR CLAIM RESERVE FROM THE SALE PROCEEDS AND OTHER BENEFITS PROVIDED BY THE RELEASED PARTIES IN CONNECTION WITH THE PLAN, ON THE EFFECTIVE DATE AND TO THE EXTENT NOT ALREADY RELEASED, EACH OF THE RELEASED PARTIES SHALL BE DEEMED TO HAVE BEEN IRREVOCABLY AND UNCONDITIONALLY RELEASED, ACQUITTED, AND OTHERWISE DISCHARGED BY THE DEBTORS (BOTH PRE- AND POST-PETITION), THEIR PREDECESSORS AND SUCCESSORS, AND THEIR RESPECTIVE ESTATES (INCLUDING WITHOUT LIMITATION FROM THE LIQUIDATING TRUST) OF AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION OR AVOIDANCE ACTIONS; WHETHER SOUNDING IN TORT, BREACH OF CONTRACT, NEGLIGENCE, NEGLIGENCE PER SE, FRAUD OR MISREPRESENTATION, STATUTORY VIOLATION OR ANY OTHER LEGAL THEORY; WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, NOW EXISTING OR HEREAFTER ARISING IN LAW, EQUITY OR OTHERWISE; WHETHER ARISING UNDER THE BANKRUPTCY CODE (INCLUDING, WITHOUT LIMITATION, UNDER CHAPTER 5 OF THE BANKRUPTCY CODE) OR OTHER APPLICABLE STATE, FEDERAL OR FOREIGN LAW; WHETHER ARISING FROM OR RELATED TO, ANY AND ALL RESPECTS, ACTS, CONDUCT, COMMUNICATIONS, ERRORS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE IN CONNECTION WITH, BASED ON, RELATING TO OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CASES, THE NEGOTIATION OF ANY TRANSACTION OR DOCUMENT IN THE CASES, INCLUDING WITHOUT LIMITATION ANY AND ALL LOAN DOCUMENTS, CREDIT AGREEMENTS, MORTGAGES, PLEDGES AND SECURITY AGREEMENTS, AND ANY AMENDMENTS, MODIFICATIONS OR RESTATEMENTS THERETO (AS DEFINED IN SUCH LOAN DOCUMENTS AND CREDIT AGREEMENTS BETWEEN THE LENDERS AND ANY OF THE DEBTORS).  ANY AND ALL SUCH CLAIMS THAT MAY BE ASSERTED BY, THROUGH AND UNDER THE DEBTORS OR THEIR RESPECTIVE ESTATES OR THE LIQUIDATING TRUST AGAINST THE RELEASED PARTIES SHALL AND ARE HEREBY WAIVED AND RELEASED IN FULL AS OF THE EFFECTIVE DATE.  NOTWITHSTANDING THE FOREGOING, NOTHING IN

**THIS <u>SECTION 14.4</u> SHALL RELEASE, ACQUIT, OR OTHERWISE DISCHARGE THE RELEASED PARTIES FROM ANY CLAIMS OR CAUSES OF ACTION HELD BY THIRD PARTIES OTHER THAN THE DEBTORS (BOTH PRE- AND POST-PETITION), THEIR PREDECESSORS AND SUCCESSORS, AND THEIR RESPECTIVE ESTATES (INCLUDING WITHOUT LIMITATION THE LIQUIDATING TRUST).**

14.5    **<u>Insurance</u>**.  Notwithstanding anything to the contrary in this Plan, neither the releases set forth herein or in the Confirmation Order nor Confirmation and consummation of this Plan shall have any effect on insurance policies of any of the Debtors or their current or former directors and officers (including, but not limited to, director and officer liability policies to the extent that the Debtors or their current or former directors and officers have any rights under such policies) in which any of the Debtors or their current or former directors and officers are or were an insured party or any claim asserted thereunder.  Each insurance company is prohibited from denying, refusing, altering or delaying coverage for any Debtor (or their current or former directors and officers) on any basis regarding or related to any of the Debtors' Cases, this Plan or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for insured Claims.

**ARTICLE XV**

**<u>RETENTION OF JURISDICTION</u>**

15.1    **<u>Retention</u>**.  Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Cases, this Plan, the Purchase Agreement, and the Liquidating Trust to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application or request for payment of any Administrative Claim, and the resolution of any objections to the allowance or priority of Claims or Equity Interest;

(b)    hear and determine all Fee Applications;

(c)    determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim against, or Causes of Action on behalf of, the Liquidating Trust;

(d)    enter such orders as may be necessary or appropriate to construe, execute, implement, or consummate the provisions of this Plan, the Liquidating Trust Agreement, the Purchase Agreement, and all property, contracts, instruments, releases, and other agreements or documents transferred, vested, or created in connection therewith;

(e)      hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, the Liquidating Trust Agreement, the Purchase Agreement, the Confirmation Order, any transactions or payment contemplated hereby, or any disputes arising under agreements, documents or instruments executed in connection therewith;

(f)      consider any modifications of this Plan, the Disclosure Statement, the Liquidating Trust Agreement, in each case to the extent requiring the approval of the Bankruptcy Court, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(g)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of this Plan, the Purchase Agreement, the Confirmation Order or any other order of the Bankruptcy Court;

(h)      hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement, the Purchase Agreement, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement, or the Purchase Agreement;

(i)      enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Cases;

(j)      hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146 (including the expedited determination of taxes under Bankruptcy Code § 505(b);

(k)      hear and determine all matters related to the property of the Estates, the Debtors, the Liquidating Trust, or the Liquidating Trustee from and after the Effective Date;

(l)      hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code;

(m)      hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts;

(n)      enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(o)      hear and determine any other matters related to this Plan and not inconsistent with the Bankruptcy Code;

(p)      determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Disclosure Statement Order, the Confirmation

Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan, the Disclosure Statement or the Plan Supplements;

(q)     hear any other matter not inconsistent with the Bankruptcy Code; and

(r)     enter final decrees closing the Cases.

**15.2    Rights of the Liquidating Trustee**.  Nothing contained in this <u>Article XV</u> shall be construed so as to limit the rights of the Liquidating Trustee to commence or to prosecute any Cause of Action in any court of competent jurisdiction.

**ARTICLE XVI**

**MISCELLANEOUS PROVISIONS**

**16.1    Revocation, Withdrawal or Non-Consummation**.  The Plan Proponents reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to file any amended or subsequent plans.  If Confirmation does not occur, or if the Effective Date does not occur on or prior to 120 days after the Confirmation Date, then (a) this Plan shall be null and void in all respects, (b) settlements or compromises embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumptions or rejections of executory contracts or unexpired leases affected by this Plan, and any documents or agreements executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

**16.2    Severability of Plan Provisions**.  If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**16.3    Exemption from Transfer Taxes and Recording Fees**.  In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under this Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the vesting or transfer of title to or ownership of any of the Debtors' interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with this Plan, including the releases of Liens contemplated under this Plan, shall be subject to any document recording tax,

stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state and/or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**16.4    Interest Accrual**.  Except with respect to and only to the extent permitted by bankruptcy law and applicable law as to Secured Claims, no post-petition interest shall accrue on any Claim or scheduled liability (including, but not limited to, Allowed Administrative Claims).

**16.5    Allocation of Plan Payments between Principal and Interest**.  To the extent that any Allowed Claim entitled to a payment under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such payment shall, for federal income tax purposes, be allocated to the principal amount of the Claim first, and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**16.6    Rules of Interpretation; Computation of Time**.  For purposes of this Plan, (a) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or containing particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in this Plan to Sections, Articles, and Exhibits, if any, are references to Sections, Articles, and Exhibits of or to this Plan, (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (e) the words "include", "includes" or "including" shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import, (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan, and (g) the rules of construction set forth in Bankruptcy Code § 102 and in the Bankruptcy Rules shall apply.  In computing any period of time prescribed or allowed by this Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply.  All references to immediately available funds, dollar amounts, or Cash Payments contained in this Plan shall mean United States dollars.

**16.7    The Liquidating Trust Is Not a Successor**.  Save and except as needed to comply with Bankruptcy Code § 1145, the Liquidating Trust shall not be deemed, as a result of actions taken in connection with this Plan, to be a successor to any of the Debtors or a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors.

**16.8    Plan Documents**.  The Plan Documents are incorporated herein and are a part of this Plan as if set forth in full herein.

**16.9    Reservation of Rights**.   This Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Prior to the Effective Date, none of the filing of this Plan, any statement or provision contained herein or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

**16.10    Further Assurances**.   The Debtors, the Liquidating Trustee, and all holders of Claims receiving Payments or Distributions hereunder and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**16.11    Successors and Assigns**.   This Plan and all rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**16.12    Governing Law**.   Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, and (b) governance matters shall be governed by the laws of the State of Texas, without giving effect to the principles of conflict of law thereof.

**16.13    Notice of Effective Date**.   On or before five Business Days after the occurrence of the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all holders of Claims in Class 6B that are not Disallowed Claims a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

**16.14    Plan Supplement**.   Any and all documents, forms, exhibits, lists, or schedules specified in this Plan but not Filed with this Plan shall be contained in the Plan Supplement and Filed with the Bankruptcy Court by ~~_____~~ April 14, 2011.   Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal Bankruptcy Court hours.

**16.15    Entire Agreement**.   This Plan and this Plan Documents set forth the entire agreement and understanding among the parties in interest relating to the subject matter hereof and supersede all prior discussions and documents.

**16.16    Waiver of Stay**.   Notwithstanding Bankruptcy Rules 3002(e), 6004(h), and 6006(d), the Debtors shall be authorized to consummate this Plan and the transactions and transfers contemplated thereby immediately after entry of the Confirmation Order.

# ARTICLE XVII

## MODIFICATION OF THIS PLAN

The Plan Proponents may alter, amend, or modify this Plan or any Plan Documents under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to the Effective Date, the Plan Proponents may, under Bankruptcy Code § 1127(b), (i) amend this Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and (iii) amend this Plan as may be necessary to carry out the purposes and effects of this Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims or Equity Interests under this Plan; provided, however, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

**DATED**: ~~February 18,~~March 21, 2011

Respectfully submitted,

| | |
|---|---|
| */s/ Clayton T. Hufft* | */s/ Peter Franklin* |
| William L. Wallander, SBT #20780750 | Peter Franklin, SBT #07378000 |
| Clayton T. Hufft, SBT #24056658 | Erin K. Lovall, SBT #24032553 |
| Bradley R. Foxman, SBT #24065243 | **FRANKLIN SKIERSKI LOVALL** |
| **VINSON & ELKINS LLP** | **HAYWARD LLP** |
| Trammell Crow Center | 10501 N. Central Expressway, Suite 106 |
| 2001 Ross Avenue, Suite 3700 | Dallas, TX  75231 |
| Dallas, Texas 75201-2975 | Tel:  972.755.7100 |
| Tel:  214.220.7700 | Fax:  972.755.7110 |
| Fax: 214.220.7716 | pfranklin@fslhlaw.com; elovall@fslhlaw.com |
| bwallander@velaw.com; chufft@velaw.com; | |
| bfoxman@velaw.com | **COUNSEL FOR THE GP DEBTORS** |
| | |
| **COUNSEL FOR THE LP DEBTORS** | |

| | |
|---|---|
| */s/ Charles S. Kelley* | */s/ Michael S. Haynes* |
| Charles S. Kelley, SBT #11199580 ___ | Richard M. Roberson, SBT #16993800 ___ |
| Andres G. Romay, SBT #24060516 | Michael S. Haynes, SBT #24050735 |
| **MAYER BROWN LLP** | **GARDERE WYNNE SEWELL LLP** |
| 700 Louisiana Street, Suite 3400 | 3000 Thanksgiving Tower |
| Houston, TX 77002-2730 | 1601 Elm Street |
| Tel.: 713.238.3000 | Dallas, TX 75201-4761 |
| Fax: 713.238.4634 | Tel.: 214.999.3000 |
| ckelley@mayerbrown.com; | Fax: 214.999.4667 |
| aromay@mayerbrown.com | rroberson@gardere.com; |
| | mhaynes@gardere.com |
| **COUNSEL FOR THE AGENT** | |
| | **COUNSEL FOR THE COMMITTEE** |

**<u>EXHIBIT 1</u>**

**<u>(Liquidating Trust Agreement)</u>**

**~~[TO BE FILED PRIOR TO DISCLOSURE STATEMENT HEARING]~~**

**<u>EXHIBIT 1</u>**
691736_~~9~~10.DOC