U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**



_____
**United States Bankruptcy Judge**

**Signed May 06, 2011**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| § | |
| § | |
| **IN RE:** § | **Case No. 10-33565-SGJ** |
| § | |
| **TRIDIMENSION ENERGY, L.P.,** *et al.* § | **Chapter 11** |
| § | |
| **DEBTORS.** § | **Jointly Administered** |
| § | |
| § | |

### ORDER CONFIRMING AMENDED JOINT
### PLAN OF LIQUIDATION FOR THE DEBTORS

On April 28, 2011 and May 6, 2011, the Bankruptcy Court held hearings (the "Confirmation Hearing") to consider confirmation of the *Amended Joint Plan of Liquidation for the Debtors* (as supplemented, amended, or modified, the "Plan")[1] filed by the Debtors, the Senior Lien Agent, and the Committee (collectively, the "Plan Proponents").

On February 18, 2011, the Plan Proponents filed their *Joint Plan of Liquidation for the Debtors* [Docket No. 621], and the Debtors filed their *Disclosure Statement for Joint Plan of*

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Plan.

*Liquidation for the Debtors* [Docket No. 622]. On March 21, 2011, the Plan Proponents filed their *Amended Joint Plan of Liquidation for the Debtors* [Docket No. 678], and the Debtors filed their *Amended Disclosure Statement for Amended Joint Plan of Liquidation for the Debtors* [Docket No. 680] (as supplemented, amended or modified, the "Disclosure Statement").

On March 24, 2011, the Bankruptcy Court entered its *Order (A) Approving (I) Amended Disclosure Statement for the Amended Joint Plan of Liquidation for the Debtors and (II) Related Notices; (B) Setting Dates for Objection Deadline and Hearing Relating to Confirmation of the Plan; and (C) Granting Other Relief Relating to Plan Solicitation and the Confirmation of the Plan* [Docket No. 690] (the "Disclosure Statement Order").

On April 14, 2011, the Plan Proponents filed their *Plan Supplement for Amended Joint Plan of Liquidation for the Debtors* [Docket No. 717] (as supplemented, amended, or modified, the "Plan Supplement"). On April 27, 2011, the Debtors filed the *Notice of Immaterial Modifications to Debtors' Amended Joint Plan of Liquidation* [Docket No. 760]. On April 29, 2011, the Debtors filed the *Expedited Motion to Compromise Controversies and Resolve Plan Objections in Supplement to Confirmation of Debtors' Amended Joint Plan of Liquidation* [Docket No. 767] (the "Supplemental Motion").

In support of Confirmation of the Plan, the Debtors filed, among other things, their *Brief in Support of Confirmation of Amended Joint Plan of Liquidation for the Debtors* [Docket No. 756] (the "Brief in Support") and the *Declaration of Myrtle H. John on Behalf of BMC Group, Inc., in Connection with the Solicitation and Tabulation of Votes with Respect to the Amended Joint Plan of Liquidation for the Debtors and Ballots Received* [Docket No. 740] (the "BMC Declaration").

Based upon the Bankruptcy Court's review of, among other things, (i) the Plan, (ii) the Plan Supplement, (iii) the Brief in Support, (iv) the BMC Declaration, (v) objections to Confirmation of the Plan, the Debtors' responses to the same, and settlements announced on the record at the Confirmation Hearing in connection with same, (vi) exhibits admitted and other evidence presented or proffered at the Confirmation Hearing, (vii) representations and arguments of counsel at the Confirmation Hearing, (viii) the docket of the Bankruptcy Cases, (ix) the Supplemental Motion, and (x) other relevant factors affecting these Bankruptcy Cases, the Bankruptcy Court makes the following findings of fact and conclusions of law, and issues this *Order Confirming Amended Joint Plan of Liquidation for the Debtors*:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction and Venue

A.     <u>Jurisdiction; Venue; Core Proceeding</u>.    The Bankruptcy Court has jurisdiction over these Cases pursuant to 28 U.S.C. §§ 157 and 1334.   Venue in the Bankruptcy Court is proper under 28 U.S.C. §§ 1408 and 1409.   Each of the Debtors was and is qualified to be a debtor under Bankruptcy Code § 109.   This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2), including those proceedings set forth in subsections (b)(2)(A), (B), (G), (I), (K), (L), (M), and (O), and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### Notice, Solicitation and Acceptance

B.     <u>Service of Solicitation Materials and Notices</u>.    As evidenced by the *Certificate of Service* [Docket No. 693], all appropriate pleadings, notices, and Ballots were transmitted, mailed, and served to the extent required by the Disclosure Statement Orders and Bankruptcy Rule 3017(d).   The Debtors timely and properly served (1) all holders of Claims and/or Equity

Interests in Classes 1, 2, 7 and 8, the following: (a) the Disclosure Statement with a copy of the Plan attached thereto as an exhibit (which may have been provided by CD rather than hard copy) and (b) the Notice of Non-Voting Status (the form of which was approved by the Disclosure Statement Order) setting forth (i) the subject Creditors' classification as either an Unimpaired Creditor in Class 1 or 2, or as an Impaired Creditor or Equity Interest Holder not entitled to vote in Class 7 or 8, (ii) the deadline to object to Confirmation of the Plan, and (iii) the date and time of the Confirmation Hearing, and (2) all holders of Claims in Classes 3, 4, 5, 6A and 6B and all parties in interest on the Debtors' Master Service List a Solicitation Package (as defined below). The "Solicitation Package" was comprised of the following: (a) cover letter describing the contents of the Solicitation Package; (b) a copy of the Disclosure Statement Order; (c) the Disclosure Statement with a copy of the Plan attached thereto as an exhibit (which may have been provided by CD rather than hard copy); (d) the Notice of Disclosure Statement Order (the form of which was approved by the Disclosure Statement Order) setting forth the deadline to vote on the Plan, the deadline to object to the Plan, and the Confirmation Hearing; and (e) as to holders of Claims entitled to vote on the Plan, an appropriate Ballot (the form of which was approved by the Disclosure Statement Order) and a return addressed envelope.

        C.      <u>Adequate Notice of Confirmation Hearing.</u>  In accordance with Bankruptcy Rules 2002, 3018, 3019, 6004, 6006, 9007 and 9014, N.D. Tex. L.B.R. 2002-1, 3018-1, and 9014-1, and the Disclosure Statement Order, adequate notice of the time for filing objections to Confirmation of the Plan and the authorizations and transfers contemplated thereby and adequate notice of the Confirmation Hearing was provided to all holders of Claims and Equity Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the

Bankruptcy Rules. No other or further notice of the Confirmation Hearing or Confirmation of the Plan is necessary or required.

D. <u>Adequate Notice of Supplemental Motion.</u> In accordance with the Bankruptcy Rules and the Local Bankruptcy Rules, adequate notice of the Supplemental Motion and the hearing thereon was provided to all holders of Claims and Equity Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules. No other or further notice of the Supplemental Motion or the hearing thereon is necessary or required.

E. <u>Good Faith Solicitation (11 U.S.C. § 1125(e)).</u> Based on the record, the Plan Proponents, and their respective directors, officers, employees, managers, members, attorneys, affiliates, agents, and professionals (including but not limited to their attorneys, financial advisors, investment bankers, accountants, solicitation agents, and other professionals that have been retained by such parties) have acted in "good faith" within the meaning of Bankruptcy Code § 1125(e) and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order and applicable non-bankruptcy law in connection with all of their respective activities relating to (1) the solicitation of acceptances or rejections of the Plan, (2) the offer, sale, issuance and distribution of the Liquidating Trust Interests under the Plan, and (3) their participation in the other activities described in Bankruptcy Code § 1125. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code §§ 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. In addition, all procedures used to distribute the Solicitation Package to Holders of Claims and Equity Interests were fair,

and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws and regulations. Therefore, the Plan Proponents and their respective directors, officers, employees, managers, members, attorneys, affiliates, agents, and professionals are entitled to the full protections afforded by Bankruptcy Code § 1125(e).

## Compliance with Bankruptcy Code § 1129

F.     <u>The Plan Proponents have satisfied their burden of proof</u>. A plan proponent has the burden to prove the requirements for confirmation by a preponderance of the evidence.[2] Here, the Plan Proponents have satisfied their burden of proof with respect to Confirmation of the Plan.

G.     <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code § 1129(a)(1). Congress enacted Bankruptcy Code § 1129(a)(1) to ensure that a plan complies with the Bankruptcy Code's provisions regarding classification of claims and interests (11 U.S.C. § 1122) and the contents of a plan of reorganization (11 U.S.C. § 1123).[3] These provisions are discussed in the following paragraphs.

H.     <u>Plan Compliance with Bankruptcy Code § 1122</u>. The Plan complies with the classification requirements of the Bankruptcy Code. Classification of claims and interests is governed by Bankruptcy Code § 1122, which provides that "a plan may place a claim or interest

---

[2]  *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1163-65 (5th Cir. 1993) (recognizing that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cram down").

[3]  *See* S. REP. NO. 95-989, at 126 (1971), *reprinted in* 1978 U.S.C.C.A.N. 5787; H.R. REP. NO. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; *see also Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988).

in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). This section does not require that claims or interests within a particular class be identical.[4] A plan proponent has flexibility in classifying claims, so long as the proponent has some reasonable basis for the classification or the creditor agrees to it.[5]

       I.       Under the Plan, the Claims or Equity Interests within each Class are substantially similar to the other Claims or Equity Interests within that Class. The Plan classifies Claims and Equity Interests as follows:

---

[4] *In re DRW Property Co.*, 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986); *see also Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1278-79 (5th Cir. 1991) ("A fair reading of both subsections [of section 1122] suggests that ordinarily 'substantially similar claims,' those which share common priority and rights against the debtor's estate, should be placed in the same class").

[5] *See In re Jersey City Med. Center*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [under section 1122 of the Bankruptcy Code] to decide the propriety of plans in light of the facts of each case."). A plan proponent cannot "classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan," but there may be good business reasons to support separate classification. *In re Briscoe Enterprises.*, 994 F.2d at 1167 (quotations omitted); *see also In re The Heritage Org., L.L.C.*, 375 B.R. 230, 288 (Bankr. N.D. Tex. 2007) ("Substantially similar claims must be classified together unless some reason, other than gerrymandering, exists for separating them").

| Class | Class Description |
|-------|-------------------|
| Class 1 | Allowed Ad Valorem Tax Claims |
| Class 2 | Allowed Priority Claims |
| Class 3 | Allowed Senior Lien Secured Claims |
| Class 4 | Allowed M&M Secured Claims |
| Class 5 | Allowed Other Secured Claims |
| Class 6A | Allowed Senior Lien Deficiency Claims |
| Class 6B | Allowed Non-Senior Lien General Unsecured Claims |
| Class 7 | Allowed Subordinated Claims |
| Class 8 | Allowed Equity Interests |

J.     Valid business, legal, and factual reasons exist for the separate classification of each of these Classes of Claims and Equity Interests, and there is no unfair discrimination or gerrymandering between or among the holders of Claims and Equity Interests. Classifying and treating Allowed Non-Senior Lien General Unsecured Claims (Class 6B) differently than the Allowed Senior Lien Deficiency Claims (Class 6A) is reasonable and appropriate.

K.     Similarly, a reasonable justification also exists for the classification of Class 4 Allowed M&M Lien Claims. Secured claims, in particular mechanics liens, may be classified together when there is a reasonable basis for doing so.[6] The Allowed M&M Secured Claims are

---

[6] *See* COLLIER ON BANKRUPTCY, ¶ 1122.03[4][c]; COLLIER ON BANKRUPTCY, ¶ 1111.03[2][a] ("Mechanics lienors may also comprise such a class" of claims.); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2nd Cir. 1993) (holding the debtors had a rational basis for classifying indemnity claims secured by letters or credit or surety bonds separately from an unsecured indemnity claim); *In re Mid-State Raceway, Inc.*, 343 B.R. 21 (Bankr. N.D.N.Y. 2006) (holding creditors asserting mechanics' liens must be classified together as there was no business justification for classifying

in fact substantially similar under Bankruptcy Code § 1122(a), and there is a reasonable basis for classifying them together. All of the Allowed M&M Secured Claims arise under a common source—contractual relationships and state law providing similar relief to providers of goods and services to operators—and are secured by similar collateral—portions of the proceeds of the Debtors' former oil and gas interests and related assets. Thus, the Allowed M&M Secured Claims are substantially similar, and the classification of those Claims in one Class is appropriate.[7]

L. In sum, all Claims and Equity Interests within each Class under the Plan are substantially similar and are afforded equal and reasonable treatment, or the claimant has agreed to the classification. Accordingly, the classification of Claims and Equity Interests under the Plan satisfies the requirements of Bankruptcy Code § 1122.

M. <u>The Plan Complies with Bankruptcy Code § 1123</u>. In accordance with Bankruptcy Code § 1123(a), the Plan: (1) designates Classes of Claims and Equity Interests, other than Claims of a kind specified in Bankruptcy Code §§ 507(a)(2), 507(a)(3), or 507(a)(8); (2) specifies Classes of Claims and Equity Interests that are not Impaired under the Plan; (3) specifies the treatment of Classes of Claims and Equity Interests that are Impaired under the Plan; (4) provides the same treatment for each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest agrees to less favorable treatment of their respective Claim or Equity Interest; (5) provides for adequate means for the Plan's

---

them separately); *In re Dupell*, No. 99-10561DWS, 2000 WL 192972 (Bankr. E.D. Pa. Feb. 15, 2000) (classifying secured mortgages on nine different properties into five classes based on whether the property securing the mortgages was rental or nonrental income).

[7] *See In re Valley Park Group, Inc.*, 96 B.R. 16 (Bankr. N.D.N.Y.1989) (stating that "holders of mechanic's liens hold claims markedly different from the claims of the unsecured trade creditors and should be treated by and classified in the Plan accordingly").

implementation; (6) is a liquidating plan and accordingly (a) provides for the cancelation, termination, and extinguishment of the Equity Interests, (b) does not provide that any holder of Claims, any holder of Equity Interests, or any other Person will receive equity or other interests in the Debtor entities, (c) does not provide for either the Debtors or the Liquidating Trust to issue securities other than the Liquidating Trust Interests (which are not equity securities) to any Person, and (d) provides for the termination of all of the directors, officers, and/or managers of any of the Debtors; and (7) contains only provisions that are consistent with the interests of holders of Claims and Equity Interests and with public policy with respect to the manner of selection of the Liquidating Trustee and Liquidating Trust Committee members on and after the Effective Date. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of the Estates. Therefore, the Plan satisfies the requirements of Bankruptcy Code § 1123(a) and (b).

N. <u>Plan Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. In accordance with Bankruptcy Code § 1129(a)(2), the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code. The Debtors are proper debtors under Bankruptcy Code § 109. The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code (including §§ 1122, 1123, 1124, 1125, 1126, and 1128), the Bankruptcy Rules (including Bankruptcy Rules 3017, 3018, and 3019), and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and all related documents and notices, and in soliciting and tabulating votes on the Plan.

O. Votes to accept or reject the Plan were solicited by the Debtors and their respective members, partners, representatives, officers, directors, employees, advisors, attorneys

and agents after the Court approved the adequacy of the Disclosure Statement pursuant to Bankruptcy Code § 1125(a).

P.     The Plan Proponents and their respective members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents have solicited and tabulated votes on the Plan and have participated in the activities described in Bankruptcy Code § 1125 fairly, in good faith within the meaning of Bankruptcy Code § 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable laws, rules, and regulations and are entitled to the protections afforded by Bankruptcy Code § 1125(e) and the exculpation provisions set forth in <u>Article XIV</u> of the Plan.

Q.     The Plan Proponents and their respective members, officers, directors, employees, advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions or Payments made pursuant to the Plan, so long as such Distributions or Payments are made consistent with and pursuant to the Plan.

R.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).</u>  To be confirmed, a plan must have been "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  A plan is proposed in good faith if there is a reasonable likelihood that the plan

will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.[8] "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan . . . ."[9]

S. There is no question that the Plan is proposed in good faith and not by any means forbidden by law. The Debtors filed these reorganization cases with the legitimate and honest purpose of developing an orderly process to compensate legitimate claimants while maximizing value. The Plan culminates an eleven-month reorganization process during which the Debtors consistently have engaged in arm's-length negotiations among entities having very different and, in many instances, competing interests, all aimed at an over-arching goal of maximizing the value of the Debtors and the recovery to holders of Claims and Equity Interests in accordance with the Bankruptcy Code. In accordance with Bankruptcy Code § 1129(a)(3), the Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law. The treatment of holders of Claims and Equity Interests contemplated by the Plan was negotiated and consummated at arm's-length, without collusion, and in good faith. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan and the solicitation of votes to accept or reject the Plan. Furthermore, the Plan represents extensive arms-length negotiations among the Plan Proponents and other parties in interest, as well as their respective legal and financial advisors, and reflects the best interests of the Debtors' Estates and holders of Claims and Equity Interests.

---

[8] *In re T-H New Orleans Ltd. P'ship*, 116 F.3d at 802; *In re Madison Hotel Assocs.*, 749 F.2d 410, 424-425 (7th Cir. 1984).

T.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).     In accordance with Bankruptcy Code § 1129(a)(4), all payments and distributions, made or to be made by the Plan Proponents or the Liquidating Trustee for services or for costs and expenses in, or in connection with, these Cases, or in connection with the Plan and incident to these Cases, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable, unless otherwise ordered by the Bankruptcy Court.

U.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).     The Plan Proponents have complied with Bankruptcy Code § 1129(a)(5).     The Persons that must be identified pursuant to Bankruptcy Code § 1129(a)(5) have been identified in the Disclosure Statement, the Plan, or the Plan Supplement.     These provisions of the Plan are consistent with the interests of Claim and Equity Interest holders and with public policy, thereby satisfying Bankruptcy Code § 1129(a)(5).

V.     No Rate Changes (11 U.S.C. § 1129(a)(6)).     In accordance with Bankruptcy Code § 1129(a)(6), the Debtors are not subject to any governmental regulation of any rates.

W.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).     Bankruptcy Code § 1129(a)(7), the "best interests of creditors test," requires that, with respect to each impaired class, each holder of a claim or interest in the class:

i.     has accepted the plan; or

ii.     will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

---

[9] *Brite v. Sun Country Dev. (In re Sun Country Dev.)*, 764 F.2d 406, 408 (5th Cir. 1985); *see also In re JT Thorpe Co.*, 308 B.R. 782, 787 (Bankr. S.D. Tex. 2003).

X. The testimony and liquidation analysis presented by the Debtors' financial advisor, FTI Consulting, Inc., in connection with the Confirmation Hearing, and other evidence admitted at the Confirmation Hearing, establish that the requirements of Bankruptcy Code § 1129(a)(7) are satisfied by the Debtors' Plan. In accordance with Bankruptcy Code § 1129(a)(7), with respect to Classes of Impaired Claims or Impaired Equity Interests (*i.e.*, Classes 3 through 8 of the Debtors), each holder of a Claim or Equity Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

Y. <u>Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Classes 1 and 2 are not Impaired and thus are deemed to have accepted the Plan. Classes 3, 4, 5, 6A, and 6B are Impaired, and as demonstrated by the BMC Declaration, those Classes have accepted the Plan in accordance with Bankruptcy Code § 1126(c). Classes 7 and 8 are Impaired, and the holders of Claims and Equity Interests in those Classes are not entitled to receive or retain any property under the Plan and they are deemed to have rejected the Plan.

Z. <u>Treatment of Administrative, Priority, and Tax Claims (11 § U.S.C. § 1129(a)(9))</u>. The Plan's treatment of Claims of a kind specified in Bankruptcy Code §§ 507(a)(1) through (8) satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9).

AA. <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. The evidence establishes, as discussed above, that all of the voting Impaired Classes under the Plan voted to accept the Plan. In accordance with Bankruptcy Code § 1129(a)(10), at least one Class of

Claims that is Impaired under the Plan has voted to accept the Plan, without including acceptances of the Plan by any insider.

BB.    Feasibility (11 U.S.C. § 1129(a)(11)).   The evidence proffered or adduced at the Confirmation Hearing with respect to feasibility (1) is persuasive, credible, and accurate as of the dates such analysis was prepared, presented, or proffered, (2) utilizes reasonable and appropriate methodologies and assumptions, (3) has not been controverted by other evidence, (4) establishes that Confirmation of the Plan is not likely to be followed by the need for further financial reorganization or liquidation of the Liquidating Trust except with respect to such liquidation proposed in the Plan, and (5) establishes that the Liquidating Trust will have sufficient funds available to meet their obligations under the Plan.   Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(11).

CC.    Payment of Fees (11 U.S.C. § 1129(a)(12)).   In accordance with Bankruptcy Code § 1129(a)(12), to the extent that fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6) have not been paid, the Plan provides for the payment of all such fees on the Effective Date of the Plan and as they come due after the Effective Date.

DD.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).   In accordance with Bankruptcy Code § 1129(a)(13), the Plan does not alter retiree benefits to the extent any such benefits currently exist.

EE.    Other Provisions of 11 U.S.C. § 1129(a).   The provisions of 11 U.S.C. §§ 1129(a)(14), (a)(15), and (a)(16) are not applicable to the Debtors.

FF.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).   The Bankruptcy Court finds and concludes that Classes 7 and 8 are Impaired Classes of Claims and Equity Interests, respectively, that are deemed to have rejected the Plan pursuant to Bankruptcy

Code § 1126(g). The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 7 and 8, as required by Bankruptcy Code § 1129(b)(1) and (2).

GG. <u>Class 7 Subordinated Claims</u>. The Plan also satisfies the requirements of Bankruptcy Code § 1129(b)(1) and (2) with regard to Class 7 (Allowed Subordinated Claims). There are no known claims in Class 7. If a Claim arises that is properly classified as a Class 7 Claim, the treatment of Class 7 creditors under the Plan does not reflect disparate treatment between similarly situated creditors. Subordinated Claims are accorded lesser priority under the Bankruptcy Code than timely-filed General Unsecured Claims. Further, no Class junior to Class 7 will receive any property under the Plan. Hence, the Plan satisfies the fair and equitable test under Bankruptcy Code § 1129(b)(2)(B) with respect to Class 7.

HH. <u>Class 8 Equity Interests</u>. The Plan is fair and equitable and does not discriminate unfairly as to Class 8 Equity Interests. With respect to a class of *equity interests*, "fair and equitable" includes the requirement that either (i) each impaired equity interest receives or retains, on account of that equity interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, *or the value of the equity interest*, or (ii) the holder of any equity interest that is junior to the equity interest of that class will not receive or retain under the plan, on account of that junior equity interest, any property. 11 U.S.C. § 1129(b)(2)(C).

II. Based on the evidence, the Equity Interests are not entitled to any fixed liquidation preference or redemption price pursuant to their terms, and the value of the Equity Interests in the Debtors is negative. Accordingly, the first prong of Bankruptcy Code § 1129(b)(2)(C) is satisfied. In addition, no junior classes will receive any property under the Plan, so the second prong of Bankruptcy Code § 1129(b)(2)(C) is also satisfied.

JJ.     Therefore, the Plan may be confirmed as to Classes 1, 2, 3, 4, 5, 6A, 6B, 7, and 8. Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes of Claims and Equity Interests, including, but not limited to, Classes 1, 2, 3, 4, 5, 6A, 6B, 7, and 8.

KK.     <u>Only One Plan – 11 U.S.C. § 1129(c)</u>.  The Bankruptcy Court finds and concludes that, other than the Plan (including previous versions thereof), no other plan has been filed in the Cases. Accordingly, the requirements of Bankruptcy Code § 1129(c) have been satisfied.

LL.     <u>Principal Purpose (11 U.S.C. § 1129(d))</u>.  No Person, including but not limited to the SEC (as defined below) or any other Governmental Authority, has requested that the Bankruptcy Court deny Confirmation on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of section 5 of the 1933 Act.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the 1933 Act.

MM.     <u>Burden of Proof</u>.  The Plan Proponents have met their burden of proving the elements of Bankruptcy Code §§ 1129(a) and (b).

<strong><u>Modifications to the Plan</u></strong>

NN.     <u>Approval of Plan Modifications</u>.  Bankruptcy Code § 1127(a) provides, with respect to chapter 11 plan modifications:

> The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of Sections 1122 and 1123 of this title.  After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

11 U.S.C. § 1127(a).  In addition, Bankruptcy Rule 3019 provides as follows:

> In a chapter 9 or chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds

after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

Fed. R. Bankr. P. 3019. The Plan Proponents made certain modifications to the Plan, all of which have been filed with the Court ("Modifications"). The Modifications do not materially and adversely affect or change the treatment of any Claims or Equity Interests. The Modifications comply with Bankruptcy Code § 1127, Bankruptcy Rule 3019, and all other provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code §§ 1122 and 1123, and do not require additional disclosure under Bankruptcy Code § 1125 or the re-solicitation of ballots under Bankruptcy Code § 1126, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast votes as filed with the Bankruptcy Court. Disclosure of the Modifications constitutes due and sufficient notice thereof under the circumstances of these Cases. Accordingly, the Plan, as modified, is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to the Modifications shall be binding and shall be deemed to be cast with respect to the Plan, as modified on the date of this Confirmation Order, pursuant to Bankruptcy Code § 1127(d) and Bankruptcy Rule 3019.

## **Appeal of this Confirmation Order**

OO.     The reversal or modification on appeal of this Confirmation Order does not affect the validity of the authorizations and transfers contemplated under the Plan with respect to an entity that acquired property or an interest in property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorizations and transfers contemplated under the Plan are stayed pending appeal.

## Securities Findings and Conclusions/Exemptions

PP.    _Issuance of Liquidating Trust Interests_.  The Liquidating Trust constitutes or will constitute a "successor" and a "newly organized successor" to the Debtors under the Plan solely for purposes of Bankruptcy Code §§ 1145 and 1125(e) and each of the Plan Proponents has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, sale, issuance and distribution of the Liquidating Trust Interests.  With respect to the offer, sale, issuance and distribution of the Liquidating Trust Interests (to the extent such interests and/or rights constitute securities under the 1933 Act or any State or local law) pursuant to the terms of the Plan, (1) neither the Debtors nor the Liquidating Trust are underwriters within the meaning of Bankruptcy Code § 1145(b), (2) the offer, sale, issuance and distribution of the Liquidating Trust Interests shall be pursuant to the Plan, (3) the Liquidating Trust Interests are to be distributed in exchange for Claims against the Debtors, and (4) the Liquidating Trust Interests (to the extent constituting a security under the 1933 Act or any State or local law), constitute securities of a successor or newly organized successor to the Debtors under the Plan for purposes of Bankruptcy Code §§ 1145 and 1125(e).  The findings of fact and conclusions of law in this Paragraph OO shall be binding upon all parties to the Cases, the Debtors, the Liquidating Trust, the Liquidating Trustee, the U.S. Securities and Exchange Commission (the "SEC"), and all other federal, state, and local regulatory enforcement and other agencies.

QQ.    _Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C. § 1146(a))_. The Bankruptcy Court finds and concludes that, in accordance with Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of any security, and the making or delivery of any instrument of transfer pursuant to the Plan shall not be subject to any document recording tax, stamp tax,

conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.

## Authorizations and Transfers Pursuant to the Plan

RR.     Settlement and Releases.   Pursuant to Bankruptcy Code §§ 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the Distributions and Payments and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims, Causes of Action and controversies that a holder of any Claim may have with respect to any Allowed Claim or any Distribution or Payments to be made on account of such Allowed Claim, including but not limited to the settlement and compromise among the Debtors, the Committee, the members of the Committee (but only in their capacity as members of the Committee), the Senior Lien Agent, the Senior Lien Holders, and the elections that may be made by certain holders of M&M Claims and Operational Cure Claims.  The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Causes of Action and controversies and the Bankruptcy Court's finding that such compromise or settlement (i) is in the best interests of the Debtors, their Estates and the holders of such Claims, (ii) is fair, equitable, and reasonable, (iii) maximizes the value of the Estates, and (iv) is essential to the successful implementation of the Plan. To the extent provided by the Plan and Liquidating Trust Agreement, pursuant to Bankruptcy Code §§ 363 and 1123 and Bankruptcy Rule 9019(a), without any further notice or action, order, or approval of the Bankruptcy Court, the Debtors may compromise and settle Claims against them and Causes of Action against other Persons, in their sole and absolute discretion, and after the Effective Date, such right shall pass to the Liquidating Trust and the Liquidating Trustee, as applicable, with respect to the Liquidating Trust Assets.

SS. <u>Legal Binding Effect</u>. The provisions of the Plan will bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept the Plan.

TT. <u>Release and Exculpation.</u> The release and exculpation provisions are an integral part of the Plan and represent a valid exercise of the Debtors' business judgment. Pursuing any such claims against the Released Parties is not in the best interest of the Debtors' estates and various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims. The failure to affect the release and exculpation provisions of the Plan would impair the Debtors' ability to confirm the Plan, and the release and exculpation provisions of the Plan are fair, equitable and reasonable. Accordingly, the compromises and settlements embodied in the release and exculpation provisions described in <u>Article XIV</u> of the Plan are approved.

UU. <u>Issuance of Liquidating Trust Interests.</u> The issuance and distribution of the Liquidating Trust Interests in accordance with the provisions of the Plan are reasonable and necessary.

VV. <u>Transfer of the Liquidating Trust Assets</u>. The Debtors' transfer of the Liquidating Trust Assets (including, but not limited to, the Causes of Action) to the Liquidating Trust on the Effective Date in accordance with the Plan and the Liquidating Trust Agreement is reasonable and necessary and made in accordance with applicable state law and applicable provisions of the Bankruptcy Code, including Bankruptcy Code §§ 363(b) and 1123(b)(3).

WW. <u>Rejection of Executory Contracts and Unexpired Leases.</u> The rejection of executory contracts and unexpired leases pursuant to the Plan and this Confirmation Order is (i) a sound and reasonable exercise of the Debtors' business judgment, (ii) in the best interests of

the Debtors, their Estates, holders of Claims and Equity Interests, and (iii) necessary for the implementation of the Plan.

XX. <u>Plan Documents Valid and Binding.</u>  All other documents reasonably necessary to implement the Plan have been negotiated in good faith and at arm's length, shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements, and are in the best interests of the Debtors and their Estates and have been negotiated in good faith and at arm's length.

YY. <u>Compliance with Bankruptcy Rule 3016.</u>  In accordance with Bankruptcy Rule 3016(a), the Plan is dated and the Plan Proponents that submitted it and filed it are appropriately identified.  The filing of the Disclosure Statement with the clerk of this Court satisfies Bankruptcy Rule 3016(b).

**The Liquidating Trust Is Not A Successor to the Debtors**

ZZ. Save and except for purposes of compliance with Bankruptcy Code § 1145, the Liquidating Trust and its affiliates, successors, or assigns is not, as a result of actions taken in connection with the Plan, a successor to any of the Debtors or a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors.  The Liquidating Trust shall be deemed to be a successor to the Debtors only for purposes of compliance with Bankruptcy Code § 1145 and for no other reason under any state or federal law.

**The Supplemental Motion**

AAA. The entry of this Confirmation Order shall constitute (a) the Bankruptcy Court's approval of the compromises and settlements pursuant to the Supplemental Motion that are fully set forth herein and (b) the Bankruptcy Court's finding that such compromises and settlements (i) are in the best interests of the Debtors, their Estates and the holders of Claims and Equity

Interests, (ii) are fair, equitable, and reasonable, (iii) maximizes the value of the Estates, and (iv) are essential to the successful implementation of the Plan.

## Miscellaneous Provisions

BBB.  <u>Best Interests of Persons.</u>  Confirmation of the Plan is in the best interests of the Debtors, their Estates, holders of Claims and Equity Interests, and all other parties in interest.

CCC.  <u>Findings of Fact and Conclusions of Law on the Record.</u>  All findings of fact and conclusions of law announced by this Bankruptcy Court on the record in connection with Confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference.  To the extent that any of the findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

## ORDER

Based on the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** that:

1.  <u>Confirmation of Plan.</u>  The Plan, as modified herein, is **APPROVED** and **CONFIRMED** under Bankruptcy Code § 1129.  Except as otherwise set forth in this Confirmation Order, the Plan is valid and enforceable pursuant to its terms and the terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

2.  <u>Supplemental Motion.</u>  The Supplemental Motion is **APPROVED** and **GRANTED** in part to the extent set forth herein.

3.  <u>Objections Overruled.</u>  All objections that have not been withdrawn, waived, or settled are **OVERRULED** on the merits.

4.  <u>Approval of Plan Documents.</u>  The form and substance of the Plan Documents, as reflected in the Plan Supplement or otherwise (including all exhibits and attachments thereto and

documents referred to therein) are hereby **APPROVED**. The execution, delivery, and performance by the Debtors, the Liquidating Trustee, and the Liquidating Trust of the Plan Documents are authorized and approved without the need for further corporate or other organizational action or further Order or authorization of the Bankruptcy Court. The Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan and Plan Supplement that may be agreed to by the parties thereto and that are consistent with the Plan and the terms of this Confirmation Order.

5. <u>Authority</u>.

a. The Debtors, the Liquidating Trustee, and the Liquidating Trust are authorized and empowered (including, without limitation, with the authorities set forth in <u>Section 6.11</u> of the Plan) to take such actions and do all things as may be necessary or required to implement and effectuate the Plan, the transfer to the Liquidating Trust of the Liquidating Trust Assets, and this Confirmation Order.

b. The Debtors, the Liquidating Trustee, the Liquidating Trust, and their respective directors, officers, partners, members, managers, trustees, agents, representatives, and attorneys, are authorized, empowered, and ordered to carry out all of the provisions of the Plan, to issue, execute, deliver, file and record, as appropriate, any instrument, or perform any act necessary to implement, effectuate, or consummate the Plan and this Confirmation Order, and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or

documents (collectively, "Documents"), and to perform such other acts and execute and deliver such other Documents as are required by, consistent with and necessary or appropriate to implement, effectuate, or consummate the Plan and this Confirmation Order and the transfers contemplated thereby and hereby, all without the requirement of further application to, or order of, the Bankruptcy Court or further action by their respective directors, stockholders, managers, members, or other beneficiaries, and with the like effect as if such actions had been taken by unanimous action of the respective directors, stockholders, managers, members, or other beneficiaries of such entities.

c.      The Debtors are further authorized, empowered, and ordered to enter into and, if applicable, cause to be filed with the Secretary of State or other applicable officials of any applicable Governmental Authority any and all amended and/or restated certificates or articles of incorporation, organization, or formation or amendments to limited liability company agreements, operating agreements, or regulations and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Authorities with respect to compliance with Bankruptcy Code § 1123(a)(6).

d.      This Confirmation Order shall constitute all approvals and consents, if any, required by the Louisiana Civil Code as supplemented by the Louisiana Revised Statutes, the Delaware Revised Uniform Limited

Partnership Act, and the Delaware Limited Liability Company Act, and all other applicable business organization, corporation, trust, and other laws of the applicable Governmental Authorities with respect to the implementation and consummation of the Plan and all actions authorized by this Confirmation Order.

e.    Any officer of the Debtors and, from and after the Effective Date, the Liquidating Trustee are authorized to execute and perform, for and on behalf of each Debtor, any and all Documents and other instruments referred to in the foregoing clauses (b) and (c) and to certify or attest to any of the foregoing actions taken by the Debtors. The execution of any such Document or instrument or the taking of any such action by any officer of the Debtors or, from and after the Effective Date, the Liquidating Trustee, shall be, and hereby is, deemed conclusive evidence of the authority of such action.

f.    As of the Effective Date, the Liquidating Trustee (as trustee of the Liquidating Trust) is hereby irrevocably appointed as the Debtors' attorney-in-fact (which appointment as attorney-in-fact shall be coupled with an interest), with full authority in the place and stead of each Debtor and in the name of each Debtor to take any action and to execute any instrument that the Liquidating Trustee, in the Liquidating Trustee's discretion, may deem to be necessary or advisable to convey, transfer, vest, perfect, and confirm title of the Liquidating Trust Assets, including without limitation to issue, execute, deliver, file, and record such

contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, and to file any claims, to take any action, and to institute any proceedings that the Liquidating Trustee may deem necessary or desirable in furtherance thereof.

g.  All amendments to the certificates of incorporation or formation, the articles of incorporation or organization, the operating agreements, the limited liability company agreements, the partnership agreements, and/or bylaws of any of the Debtors and all other corporate action on behalf of any of the Debtors as may be necessary to put into effect or carry out the terms and intent of the Plan, including, without limitation, any mergers, consolidations, or dissolutions of the Debtors, may be effected, exercised, and taken without further action by the Debtors' directors, officers, managers, and/or members with like effect as if effected, exercised, and taken by unanimous action of the directors, officers, managers, and/or members of the Debtors.  The Liquidating Trustee, as authorized signatory of each respective Debtor, is authorized to execute any document, certificate or agreement necessary to effectuate any and all transactions contemplated under the Plan on behalf of such Debtor (including, without limitation, any mergers, consolidations or dissolutions of the Debtors), and file with the Secretary of State of the States of Delaware and Louisiana any articles or certifications of merger or dissolution or such other documents as may be necessary in order to effect such actions, which

documents, certificates and agreements shall be binding on the Debtors, all

holders of Claims, and all holders of Equity Interests and, upon execution

by the Liquidating Trustee as authorized herein, shall have the same force

and effect as if approved by all requisite partners, members, managers or

Equity Interest holders of each Debtor.

6.    Approval of Liquidating Trust Agreement.  The Liquidating Trust Agreement in

substantially the form admitted into evidence at the Confirmation Hearing (together with all

schedules, addendums, exhibits, annexes, and other attachments thereto and as supplemented,

amended, and modified, the "Liquidating Trust Agreement") is **APPROVED**, and the Debtors,

the Liquidating Trustee, and the Liquidating Trust are authorized to take all actions contemplated

under the Liquidating Trust Agreement, including making appropriate modifications that do not

materially affect substantive rights.

7.    Settlements.  Each settlement embodied in the Plan and **Exhibit A** to this

Confirmation Order between the Plan Proponents and holders of Claims and Equity Interests is

**APPROVED** in all respects and the Claims in the amounts reflected in **Exhibit A** are hereby

Allowed.

8.    Plan Classification Controlling.    The terms of the Plan shall govern the

classification of Claims and Equity Interests for purposes of the Distributions and Payments to be

made thereunder.   The classifications set forth on the Ballots tendered to or returned by the

Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely

for purposes of voting to accept or to reject the Plan; and (b) shall not be binding on the Debtors

except for voting purposes.

9. **Preservation of Causes of Action.** The provisions of <u>Sections 6.14</u> and <u>7.10</u> of the Plan are hereby approved in their entirety. The Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable, expressly reserve all rights to prosecute any and all of their respective Causes of Action against any Person, except as otherwise expressly provided in the Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable, expressly reserve all of their respective Causes of Action for later adjudication.

10. **Liquidating Trust Assets.** The property of the Debtors' Estates will not revest in the Debtors on or after the Effective Date. Except as otherwise set forth in the Plan or this Confirmation Order, on the Effective Date, the Liquidating Trust Assets shall be transferred and assigned to the Liquidating Trust Free and Clear but subject to the Liquidating Trust's obligations under the Plan. The Debtors shall convey, transfer, assign and deliver the Liquidating Trust Assets to the Liquidating Trust Free and Clear. Except as otherwise set forth in the Plan, from and after the Effective Date, the Liquidating Trust shall perform and pay when due liabilities under, or related to the ownership or operation of, the Liquidating Trust Assets.

11. **Liquidating Trustee and Liquidating Trust Committee.** Jason Searcy is hereby approved to serve as the Liquidating Trustee subject to the terms set forth in the Plan, including the Plan Supplement, and the Liquidating Trust Agreement. The Liquidating Trustee is authorized to take the actions contemplated in the Plan, the Liquidating Trust Agreement, and this Confirmation Order. The Liquidating Trustee shall be permitted to pay his fees and expenses and the fees and expenses of his professionals for services rendered in connection with these Cases and the Liquidating Trustee's appointment under the Plan, the Liquidating Trust

Agreement, and this Confirmation Order to the extent permitted by the Plan, the Plan Supplement, and the Liquidating Trust Agreement. Such payments shall be made by the Liquidating Trust from the Liquidating Trust Expense Reserve and the Unrestricted Liquidating Trust Cash Proceeds in accordance with the <u>Section 7.6</u> of the Plan and the Liquidating Trust Agreement. Chris Ryan, Mary Katherine Turner, and John Young are hereby approved to serve on the Liquidating Trust Committee. If Chris Ryan resigns or is otherwise removed, Randy Snyder shall be appointed to serve on the Liquidating Trust Committee to fill the vacancy created by Chris Ryan's resignation or removal. If Mary Katherine Turner resigns or is otherwise removed, Joe Argue shall be appointed to serve on the Liquidating Trust Committee to fill the vacancy created by Mary Katherine Turner's resignation or removal; if Joe Argue is unable to serve or otherwise resigns, the Senior Lien Agent shall appoint a replacement for Joe Argue. If John Young resigns or is otherwise removed, an individual selected by the remaining members of the Liquidating Trust Committee shall be appointed to serve on the Liquidating Trust Committee to fill the vacancy created by John Young's resignation or removal.

12. <u>Ad Valorem Tax Claims</u>**.** The Liens related to Ad Valorem Tax Claims shall be retained by the holders of such Liens and shall attach to the Cash held in the Senior Claim Reserve with the same force, validity, priority, and effect, if any of such security interest and Lien, until such time as such Ad Valorem Tax Claims, including all taxes, penalties and interest, secured by those Liens have been paid in full. The Ad Valorem Tax Claims shall be entitled to interest under Bankruptcy Code §§ 506(b) and 1129 from the Petition Date until such Claims are paid in full at the applicable statutory rate as mandated by Bankruptcy Code § 511. Inasmuch as the holders of such Ad Valorem Tax Claims are exempt from Federal taxation, they shall not be subject to the requirements regarding IRS Form W-9.

13.     Notwithstanding any other provision in this Confirmation Order, the Plan or any amendment, supplement, or modification of or to the Plan, Dallas County is the holder of an Allowed Class 1 Ad Valorem Tax Claim for ad valorem property taxes owed by TriDimension Energy, LP.  Dallas County shall receive payment in full of all amounts owed on account of such claim pursuant to Texas law on the Effective Date in the amount of $1,471.69 if payment occurs in May 2011.  If payment occurs later than May 2011, counsel for the Liquidating Trustee or the Liquidating Trustee shall contact Laurie Spindler Huffman or Elizabeth Weller, counsel for Dallas County, to obtain the amount required to pay Dallas County's Allowed Class 1 Ad Valorem Tax Claim in full.

14.     <u>Liquidating Trust Expense Reserve, Senior Claim Reserve, and Carveout Reserve</u>. On the Effective Date, the Liquidating Trustee shall deposit Cash from the Liquidating Trust Assets into (a) the Liquidating Trust Expense Reserve in the amount of $100,000, (b) the Senior Claim Reserve in the amount of $2,392,882.33, and (c) the Carveout Reserve in the amount of $1,200,949.71.  Those Cash deposits are necessary and appropriate to satisfy the obligations of the Liquidating Trust.

15.     <u>Settling Holders of M&M Secured Claims and Operational Cure Claims</u>.  The holders of M&M Claims and Operational Cure Claims identified on the list attached hereto as **Exhibit A** have made the election set forth in <u>Section 4.2(d)(iii)</u> or <u>6.12</u> of the Plan (as applicable), and the Plan Proponents have consented to the holder of such M&M Claims making such an election.  Those Persons identified on **Exhibit A** shall be bound by <u>Section 4.2(e)</u> and <u>6.12</u> of the Plan (as applicable), including the treatment and releases set forth therein.

16.     <u>Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)</u>. Except to the extent (a) the Debtors previously have assumed, and (if applicable) assigned, or

rejected an executory contract or unexpired lease or (b) prior to the Effective Date, the Bankruptcy Court has entered an Order authorizing the assumption, and (if applicable) assignment, of an executory contract or unexpired lease, the Debtors' executory contracts and unexpired leases shall be deemed rejected on the Effective Date, pursuant to Bankruptcy Code §§ 365 and 1123.

17. <u>Authority</u>. All actions and transfers contemplated under the Plan, including but not limited to, any certificates, agreements or other documents or instruments to be executed in connection with the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust Free and Clear shall be authorized upon entry of this Confirmation Order without the need of further approvals, notices or meetings of the Debtors' directors, officers, managers, and/or members.

18. Notwithstanding anything to the contrary, nothing in the Plan or this Confirmation Order shall affect or impair creditors' or working interest owners' rights to enforce paragraphs 50 and 51 of the Sale Order or working interest owners' rights to seek an accounting of the rights and obligations of working interest owners in the joint account for any property by, among other things, seeking relief in this Court. In addition, on and after the Effective Date, the Liquidating Trustee shall have the power and authority to enforce paragraphs 50 and 51 of the Sale Order by, among other things, seeking relief in this Court.

19. <u>Legal Binding Effect</u>. The provisions of the Plan shall bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept the Plan.

20. <u>Exculpations and Releases</u>. The exculpations and releases set forth in the Plan, including in <u>Article XIV</u> of the Plan, are approved and authorized in their entirety.

21.     _Insurance_.  Notwithstanding anything to the contrary in this Order or the Plan, neither the releases set forth in the Plan nor Confirmation and consummation of the Plan shall have any effect on insurance policies of any of the Debtors or their current or former directors and officers (including, but not limited to, director and officer liability policies to the extent that the Debtors or their current or former directors and officers have any rights under such policies) in which any of the Debtors or their current or former directors and officers are or were an insured party or any claim asserted thereunder.  Each insurance company is prohibited from denying, refusing, altering or delaying coverage for any Debtor (or their current or former directors and officers) on any basis regarding or related to any of the Debtors' Cases, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan for insured Claims.

22.     _Exemption from Certain Taxes_.  In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under the Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the transfer of title to or ownership of any of the Debtors' interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the releases of Liens contemplated under the Plan, shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. Federal, state and/or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and to

accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

23.     Exemption from Securities Laws.  To the extent constituting securities under the 1933 Act, the Liquidating Trust Interests offered, sold, issued and/or distributed pursuant to the Plan are deemed to have been offered, sold, issued and distributed pursuant to Bankruptcy Code § 1145.  Pursuant to Bankruptcy Code § 1145, the exemption of the offer and sale of securities from the registration requirements of the 1933 Act, and any state or local law requiring registration for the offer or sale of a security, applies with respect to the Liquidating Trust Interests distributed pursuant to the Plan, to the extent constituting securities under the 1933 Act. Without limiting the generality of the foregoing the offer, sale, issuance, and distribution of the Liquidating Trust Interests to Claimants pursuant to the Plan are and shall be exempt from the requirements of Section 5 of the Securities Act and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer, broker, or dealer thereof pursuant to Bankruptcy Code § 1145(a).

24.     Cancellation of Securities.  On the Effective Date, in accordance with Bankruptcy Code § 1141(d)(1):  (i) all of the Equity Interests in the Debtors (including all Equity Interests of the Debtors held in treasury by any Debtor immediately before the Effective Date) and all rights of the holders of Equity Interests of the Debtors therein, (ii) all certificates that previously evidenced those Equity Interests and (iii) all other agreements heretofore binding upon the Debtors or their assets with respect to the Equity Interests of Debtors shall be deemed to be terminated, cancelled, extinguished, void, and of no further force or effect, except for the limited purposes set forth in Section 7.8 of the Plan, without any action by the holders of such Equity

Interests of Debtors, and no consideration shall be paid or delivered with respect thereto in accordance with the Plan.

### Resolution of Confirmation Objections and Certain Claims Between the Debtors and SR Acquisition I, LLC

25.    For purposes of the Plan, the Purchase Agreement Holdback Amount shall be reduced from $625,000 to $25,000.  On or as soon as reasonably practicable after the Effective Date of the Plan, the Purchase Agreement Holdback Amount (as reduced herein) shall be paid to SR Acquisition I, LLC ("SR Acquisition") in full and final satisfaction of any and all purchase price adjustment liabilities of the Debtors and/or the Liquidating Trustee pursuant to Section 2.10 of the Purchase Agreement.  Contemporaneously therewith, the Debtors and/or Liquidating Trustee shall also release to SR Acquisition the $1,250,000 held in the escrow fund in accordance with Section 2.12(b) of the Purchase Agreement.

26.    On account of any and all claims of any type or priority or counterclaims asserted or to be asserted by SR Acquisition or any of its affiliates against any of the Debtors, their estates, or the Liquidating Trust, the Liquidating Trustee shall reserve, on the Effective Date and as part of the Senior Claim Reserve, $700,000 from the Sale Proceeds (the "SR Acquisition Reserve") on account of such administrative claims.  The SR Acquisition Reserve shall be withheld for the sole purpose of satisfying liability, if any, of the Debtors, their estates, or the Liquidating Trust to SR Acquisition with regard to such administrative claims, if any, and shall not be available for distribution to other creditors; otherwise the SR Acquisition Reserve shall remain part of the Senior Claim Reserve in accordance with the terms of the Plan.  The SR Acquisition Reserve shall be the sole source of recovery for SR Acquisition or any of its affiliates on account of any and all claims of any type or priority or counterclaims against the

Debtors or their estates, including any and all claims arising under or related to the Purchase Agreement and the transaction thereunder, provided that this shall not affect any rights of SR Acquisition or the Debtors (or, pursuant to the Plan or assignment thereunder, the Senior Lien Holders) in connection with the $2,846,000 held in escrow for certain environmental defects asserted by SR Acquisition, including any and all recoveries that may be sought by SR Acquisition in regards to Adversary Proceeding No. 11-03282-SGJ filed by the Debtors against SR Acquisition.

27.     Pursuant to paragraph 51 of the Sale Order, SR Acquisition agrees to promptly pay portions of cure amounts under the Pryme JOAs (as defined in the Sale Order) in the amount of $206,260.21 (the "Cure Payments"), subject to the execution of lien releases in recordable form reasonably satisfactory to SR Acquisition, to the claimants reflected on the attached **Exhibit "B"**; provided, however, that such Cure Payments shall be made without prejudice to SR Acquisition's ability to seek contribution from, and to pursue all remedies against, working interest holders, Pryme Oil and Gas, Inc. and Pryme Lake Exploration, LLC with respect to the Cure Payments.

## Resolution of Claims Among the Debtors and the Vada Parties

28.     Within three (3) Business Days after the date on which this Confirmation Order becomes a final, non-appealable order, the Vada Parties (as defined in the Supplemental Motion) will pay to the Debtors the sum of (a) $75,000 plus (b) $273,610.66. Vada shall account for and pay the Debtors' allocable share of production revenues (less the Debtors' allocable share of applicable operating expenses, taxes, and costs) attributable to the Debtors' interests in the Vada Wells (as defined in the Supplemental Motion) for all oil and gas production occurring prior to November 1, 2010 and which was either withheld from, or first became due and payable to, the

Debtors on or after the Petition Date (the "Post-Petition Revenues," and together with the payment set forth in clause (a), the "Vada Payment"). Vada believes that the payment under (b) above is the full amount of the Post-Petition Revenues. The Post-Petition Revenues payable by the Vada Parties to the Debtors hereunder shall not be less than $273,610.66. The Vada Parties shall provide the Debtors a reconciliation and accounting of the Post-Petition Revenues detailing the gross revenues and assessed lease operating expenses on a per-well basis within 14 days after entry of this Confirmation Order. The Debtors shall conduct their review of the accounting and reconciliation data and advise the Vada Parties if the $273,610.66 payment is sufficient to fully pay the Post-Petition Revenues and, if insufficient, demand any additional amounts from the Vada Parties. Should the Vada Parties fail to pay the Debtors or the Liquidating Trustee (as applicable) such additional amounts within 10 days of receipt of written demand, this Court retains exclusive jurisdiction so long as the Debtors' Cases are pending to (i) enforce and implement the terms and provisions of this Paragraph and (ii) determine as a core proceeding (by motion and without necessity for an adversary proceeding) any proceeding, dispute, or controversy arising out of or related to the obligations of the Vada Parties under this Paragraph, including, without limitation, any dispute over documentation required for accounting and reconciliation or any additional monies to be paid by the Vada Parties for the Post-Petition Revenues, if any.

29. Within five (5) Business Days after the later of (a) the date on which this Confirmation Order becomes a final, non-appealable order and (b) the Debtors' receipt of the Vada Payment, the Debtors and the Vada Parties shall jointly submit an order to this Bankruptcy Court for the dismissal of the Vada Adversary Proceeding (as defined in the Supplemental Motion and as consolidated with the Motion to Recoup (as defined in the Supplemental Motion))

with prejudice, with each of the parties to bear its own fees, costs, and expenses with respect thereto.

30.     Within five (5) Business Days after the date on which this Confirmation Order becomes a final, non-appealable order, the Vada Parties shall submit an order to the District Court dismissing the Vada Appeal (as defined in the Supplemental Motion) with prejudice, with each of the parties to bear its own fees, costs, and expenses with respect thereto.

31.     Any and all proofs of claim filed by any of the Vada Parties in the Cases are hereby disallowed and expunged in their entirety including, without limitation, Proof of Claim No. 92 in the asserted amount of $1,320,626.51.  No amounts will be reserved for the benefit of either of the Vada Parties as part of the Senior Claim Reserve under the Plan.  The Vada Parties shall have no claims of any kind or priority in the Debtors' Cases or against the Liquidating Trust or the Liquidating Trustee, other than the Vada Parties' rights under this Confirmation Order.

32.     **EFFECTIVE AS OF THE DEBTORS' OR THE LIQUIDATING TRUSTEE'S (AS APPLICABLE) RECEIPT IN FULL OF THE VADA PAYMENT, THE DEBTORS, THEIR ESTATES, THE LIQUIDATING TRUST, AND THE LIQUIDATING TRUSTEE, ON ONE HAND, AND THE VADA PARTIES, ON THE OTHER HAND (COLLECTIVELY, THE "VADA SETTLEMENT RELEASING PARTIES"), SHALL BE DEEMED TO HAVE IRREVOCABLY RELEASED AND DISCHARGED EACH OF THE OTHER VADA SETTLEMENT RELEASING PARTIES AND ALL ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND PROFESSIONALS, IF ANY, EMPLOYED BY ANY OF THE VADA SETTLEMENT RELEASING PARTIES (BUT SOLELY IN THE CAPACITIES SO EMPLOYED) OF**

AND FROM ANY CLAIM, CAUSE OF ACTION, LIABILITY, AND RIGHT TO PAYMENT, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, ARISING FROM OR RELATED TO ACTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE (ALL OF THE FOREGOING BEING HEREIN CALLED THE "VADA SETTLEMENT RELEASED CLAIMS"); PROVIDED, HOWEVER, THAT NO VADA SETTLEMENT RELEASING PARTIES SHALL BE RELEASED AND DISCHARGED FROM (AND THE VADA SETTLEMENT RELEASED CLAIMS SHALL NOT INCLUDE) OBLIGATIONS UNDER THIS CONFIRMATION ORDER, INCLUDING ANY OBLIGATIONS UNDER PARAGRAPH 28 HEREIN. EACH OF THE VADA SETTLEMENT RELEASING PARTIES REPRESENTS AND WARRANTS THAT EACH SUCH VADA SETTLEMENT RELEASING PARTY HAS NOT TRANSFERRED, PLEDGED OR OTHERWISE ASSIGNED TO ANY OTHER PERSON OR ENTITY ALL OR ANY PORTION OF ANY CLAIM RELEASED OR ANY RIGHTS OR ENTITLEMENTS WITH RESPECT THERETO AND THE EFFECTUATION OF THIS RELEASE DOES NOT VIOLATE OR CONFLICT WITH THE TERMS OF ANY CONTRACT TO WHICH SUCH VADA SETTLEMENT RELEASING PARTY IS A PARTY OR BY WHICH SUCH VADA SETTLEMENT RELEASING PARTY OTHERWISE IS BOUND.

33.     <u>Reservation of Rights</u>.  Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained herein or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

34.     <u>Notice of Effective Date</u>.  On or before five Business Days after the occurrence of the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all holders of Claims in Class 6B that are not Disallowed Claims via first class United States mail, postage prepaid, a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

35.     <u>Waiver or Estoppel</u>.  Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated, by virtue of an agreement made with the Debtors or their counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with this Court prior to the Confirmation Date.

36.     <u>Non-Occurrence of Effective Date</u>.  If Confirmation does not occur, or if the Effective Date does not occur on or prior to 120 days after the Confirmation Date, then (a) the Plan shall be null and void in all respects, (b) settlements or compromises embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), rejections of executory contracts or unexpired leases affected by the Plan, and any documents or

agreements executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

37.    References to Plan Provisions.  The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety (except as otherwise modified in this Confirmation Order).

38.    Reversal.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order.  Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

39.    Applicable Non-Bankruptcy Law.  Pursuant to Bankruptcy Code §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

40. <u>Modification of the Plan Prior to Substantial Consummation</u>. After the Confirmation Date and prior to the Effective Date of the Plan, the Plan Proponents may, under Bankruptcy Code § 1127(b), (i) amend the Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, and (iii) amend the Plan as may be necessary to carry out the purposes and effects of the Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims or Equity Interests under the Plan; <u>provided, however</u>, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

41. <u>Conflicts between Plan and Confirmation Order.</u> If there is any conflict between the Plan (as supplemented by the Plan Supplement) and this Confirmation Order, the terms of this Confirmation Order shall control.

42. <u>Severability of Plan Provisions</u>. Each term and provision of the Plan, as it may be altered or interpreted, is valid and enforceable pursuant to its terms.

43. <u>Retention of Jurisdiction</u>. This Bankruptcy Court's retention of jurisdiction as set forth in <u>Article XV</u> of the Plan is approved. Such retention of jurisdiction does not affect the finality of this Confirmation Order. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over all pending matters, including adversary proceedings.

44. <u>Nonseverable and Mutually Dependent</u>. The provisions of this Confirmation Order are nonseverable and mutually dependent.

45. <u>Recordable Form</u>. This Confirmation Order shall be, and hereby is, declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any

applicable Governmental Authority for filing and recording purposes without further or additional orders, certifications or other supporting documents. Further, the Bankruptcy Court authorizes the Liquidating Trustee and the Liquidating Trust, as applicable, to file a memorandum of this Confirmation Order in any appropriate filing or recording office as evidence of the matters herein contained.

46. <u>Waiver of Stay</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (as applicable), the Debtors shall be authorized to consummate the Plan and the transfers contemplated thereby immediately after entry of this Confirmation Order.

<b># # # END OF ORDER # # #</b>

Submitted By:

William L. Wallander, SBT #20780750
Clay Hufft, SBT #24056658
Beth Lloyd, SBT #24060179
Bradley R. Foxman, SBT #24065243
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel:   214.220.7700
Fax:  214.220.7716
bwallander@velaw.com; chufft@velaw.com;
blloyd@velaw.com; bfoxman@velaw.com

**COUNSEL FOR THE LP DEBTORS**


Peter Franklin, SBT #07378000
Erin K. Lovall, SBT #24032553
**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**
10501 N. Central Expressway, Suite 106
Dallas, TX  75231
Tel:  972.755.7100
Fax:  972.755.7110
pfranklin@fslhlaw.com; elovall@fslhlaw.com

**COUNSEL FOR THE GP DEBTORS**

# EXHIBIT A

## [Settling M&M Claims and Operational Cure Claims]

## [See Docket No. 773]

**EXHIBIT B**

**[Cure Payments to Be Made by SR Acquisition]**

**[See Docket No. 774]**